## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 22-cv-10018 (JSR) |
| DEUTSCHE BANK AKTIENGESELLSCHAFT, DEUTSCHE BANK AG NEW YORK BRANCH, AND DEUTSCHE BANK TRUST COMPANY AMERICAS, | |
| Defendants. | |
| JANE DOE 1, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 22-cv-10019 (JSR) |
| JP MORGAN CHASE BANK, N.A., | |
| Defendant. | |

## JPMORGAN CHASE BANK, N.A.'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ........................................................................................................2

ARGUMENT ............................................................................................................5

I.      The Complaint Does Not Plead A Tort Claim Against JPMC (Counts I-IV) ...................5

        A.      The Complaint Fails To Plead Aiding And Abetting Battery (Count I)................5

        B.      The Complaint Fails To Plead Intentional Infliction of Emotional Distress
                (IIED) (Count II)................................................................................7

        C.      The Complaint Fails To Plead Negligence (Counts III and IV) ...........................10

                1.      JPMC did not owe a duty to protect Plaintiff from its customers.............10

                2.      JPMC did not proximately cause Plaintiff's injuries .................................13

II.     The Complaint Does Not Plead A TVPA Claim Against JPMC (Counts V-X)...............16

        A.      Plaintiff's TVPA Claims Are Time-Barred (Counts V-X)..................................17

        B.      The Complaint Does Not State A Claim For Beneficiary Liability For A
                Violation Of §1591(a) (Count V) ...........................................................18

                1.      The Complaint does not plead facts sufficient to show that JPMC
                        participated in an Epstein sex-trafficking venture .....................................18

                2.      The Complaint does not plead facts sufficient to show that JPMC
                        knew that Plaintiff or any specific person was trafficked by means
                        of force, fraud, or coercion ......................................................................21

                3.      The Complaint does not plead facts sufficient to show that any
                        benefit to JPMC arose from the sex-trafficking venture..........................24

        C.      The Complaint Does Not State A Claim For Perpetrator Liability For A
                Violation Of §1591(a)(2) (Count V).........................................................25

        D.      The Complaint Does Not State A Claim For Perpetrator Liability For A
                Violation Of §1591(a)(1) (Count VI) ......................................................25

        E.      The TVPA Aiding and Abetting Claim Should Be Dismissed (Count VII)..........26

                1.      Section 1595 does not provide a civil cause of action for aiding and
                        abetting....................................................................................................26

                2.      The Complaint does not plausibly allege that JPMC knew that
                        Epstein was using its services to force, defraud, or coerce Doe to
                        engage in commercial sex .......................................................................27

        F.      The Obstruction Claim Should Be Dismissed (Count X)....................................27

                1.      A private plaintiff has no cause of action under §1595(a) for a
                        violation of §1591(d) ............................................................................28

i

2.      The Complaint fails to sufficiently plead obstruction................................28

G.    The Attempt (Count IX) and Conspiracy (Count VIII) Claims Should Be
        Dismissed........................................................................................................30

        1.      The Complaint fails to state a claim for conspiracy or attempt to
                violate §1591(a)(2) by knowingly benefitting from Epstein's sex
                trafficking.....................................................................................................30

                a)      Section 1595 does not provide a civil cause of action for
                        attempt or conspiracy to benefit from a TVPA violation for
                        conduct prior to January 2023.......................................................30

                b)      Even if the 2023 amendment did apply retroactively, the
                        Complaint fails to sufficiently allege JPMC attempted to
                        knowingly benefit from Epstein's sex trafficking ........................32

                c)      Even if the 2023 amendment did apply retroactively, the
                        Complaint fails to sufficiently allege that JPMC conspired
                        to knowingly benefit from Epstein's sex trafficking ...................32

        2.      The Complaint fails to state a claim for attempt or conspiracy to
                violate §1591(a)(1) by perpetrating a sex-trafficking venture .................33

        3.      The Complaint fails to state a claim for conspiracy to violate
                §1591(d) by obstructing enforcement of the TVPA ................................34

CONCLUSION............................................................................................................35

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A.D. v. Wyndham Hotels & Resorts, Inc.*,
   2020 WL 8674205 (E.D. Va. July 22, 2020) .......................................................31

*Adorno v. Correctional Services Corp.*,
   312 F. Supp. 2d 505 (S.D.N.Y. 2004)...........................................................4, 20

*Aiken v. Interglobal Mergers & Acquisitions*,
   2006 WL 1878323 (S.D.N.Y. July 5, 2006) ......................................................13

*Amtrust North America, Inc. v. Safebuilt Insurance Services, Inc.*,
   2016 WL 6561548 (S.D.N.Y. Nov. 3, 2016) .....................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................2, 5

*Bardwil Indus. Inc. v. Kennedy*,
   2020 WL 2748248 (S.D.N.Y. May 27, 2020) .....................................................2

*BedRoc Ltd., LLC v. United States*,
   541 U.S. 176 (2004)...........................................................................................31

*Benacquista v. Spratt*,
   217 F. Supp. 3d 588 (N.D.N.Y. 2016)...........................................................9, 10

*Bethel v. New York City Transit Authority*,
   703 N.E.2d 1214 (N.Y. 1998)............................................................................10

*Bigio v. Coca-Cola Co.*,
   675 F.3d 163 (2d Cir. 2012)................................................................................6

*Canosa v. Ziff*,
   2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) .......................................19, 22, 24

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994)...........................................................................................26

*Conboy v. AT&T Corp.*,
   84 F. Supp. 2d 492 (S.D.N.Y. 2000), *aff'd*, 241 F.3d 242 (2d Cir. 2001)...........................8

*Cromer Finance Ltd. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001)................................................................7

*David v. Weinstein Co.*,
   431 F. Supp. 3d 290 (S.D.N.Y. 2019)..............................................................10

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)..........................................................................20

*Ditullio v. Boehm*,
    662 F.3d 1091 (9th Cir. 2011) .....................................................................32

*Doe #1 v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) ...............................................18, 19, 21, 24, 32

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014).............................................................34

*Doe v. Fitzgerald*,
    2022 WL 2784805 (C.D. Cal. May 13, 2022) ...............................................31

*Doe v. Fitzgerald*,
    2022 WL 425016 (C.D. Cal. Jan. 6, 2022) ...................................................28

*Doe v. Poly Prep Country Day School*,
    2022 WL 4586237 (E.D.N.Y. Sept. 29, 2022) ...........................................9, 10

*E.S. v. Best Western Int'l, Inc.*,
    510 F. Supp. 3d 420 (N.D. Tex. 2021) .........................................................21

*Eskridge v. Diocese of Brooklyn*,
    180 N.Y.S.3d 179 (App. Div. 2022) ...............................................................9

*Fleites v. MindGeek S.A.R.L.*,
    2022 WL 4456077 (C.D. Cal. July 29, 2022)...........................................21, 22

*Freeman v. Jacobson*,
    2021 WL 3604754 (S.D.N.Y. Aug. 13, 2021) .............................................5, 7

*G.G. v. Salesforce.com, Inc.*,
    603 F. Supp. 3d 626 (N.D. Ill. 2022) ..................................................18, 19, 20

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019)........................................19, 24, 25, 26, 31

*Gilbert v. United States Olympic Committee*,
    423 F. Supp. 3d 1112 (D. Colo. 2019)...........................................................28

*H.H. v. G6 Hospitality, LLC*,
    2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ...............................................22

*Hain v. Jamison*,
    68 N.E.3d 1233 (N.Y. 2016)..................................................................13, 15

*Herrick v. Grindr, LLC*,
    306 F. Supp. 3d 579 (S.D.N.Y. 2018) ..................................................................8

*Howell v. New York Post Co.*,
    612 N.E.2d 699 (N.Y. 1993) ..............................................................................7

*In re Agape Litigation*,
    681 F. Supp. 2d 352 (E.D.N.Y. 2010) ........................................................12, 13

*In re Agape Litigation*,
    773 F. Supp. 2d 298 (E.D.N.Y. 2011) ..............................................................23

*In re Terrorist Attacks on Sept. 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008), *and aff'd*,
    714 F.3d 118 (2d Cir. 2013)...............................................................................15

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 118 (2d Cir. 2013)........................................................................11, 15

*In re Terrorist Attacks on Sept. 11, 2001*,
    740 F. Supp. 2d 494 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 118 (2d Cir. 2013) ................14, 15

*Jean-Charles v. Perlitz*,
    937 F. Supp. 2d 276 (D. Conn. 2013) ...............................................................27

*Jingyu Chen v. Yong Zhao Cai*,
    2022 WL 917575 (S.D.N.Y. Mar. 28, 2022) .....................................................34

*Kiser v. HSH Nordbank AG*,
    2010 WL 286647 (S.D.N.Y. Jan. 20, 2010) ........................................................8

*Land v. Forgione*,
    114 N.Y.S.3d 464 (App. Div. 2019) ....................................................................6

*Lauer v. City of New York*,
    733 N.E.2d 184 (N.Y. 2000)..............................................................................11

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006).............................................................5, 6, 11, 14

*Linde v. Arab Bank PLC*,
    384 F. Supp. 2d 571 (E.D.N.Y. 2005) ...............................................................15

*Lindsay v. Lockwood*,
    625 N.Y.S.2d 393 (Sup. Ct. 1994)......................................................................6

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019) .............................................................22

*Marlin v. Moody National Bank, N.A.*,
  2006 WL 2382325 (S.D. Tex. Aug. 16, 2006), *aff'd*, 248 F. App'x 534
  (5th Cir. 2007)............................................................................................................13

*Martin v. Citibank, N.A.*,
  762 F.2d 212 (2d Cir. 1985)........................................................................................9

*Maurizi v. Callaghan*,
  2022 WL 1446500 (W.D.N.Y. Feb. 25, 2022) ..........................................................7, 9

*McKiernan v. Vaccaro*,
  91 N.Y.S.3d 478 (App. Div. 2019) .............................................................................6

*Naughright v. Weiss*,
  826 F. Supp. 2d 676 (S.D.N.Y. 2011)..........................................................................5

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018)..............................................................18, 19, 27

*Nungesser v. Columbia University*,
  244 F. Supp. 3d 345 (S.D.N.Y. 2017)..........................................................................8

*Pincover v. J.P. Morgan Chase Bank, N.A.*,
  592 F. Supp. 3d 212 (S.D.N.Y. 2022)....................................................................11, 12

*Pinks v. Turnbull*,
  2009 WL 4931802 (N.Y. Sup. Ct. Dec. 11, 2009) .....................................................9

*Pulka v. Edelman*,
  358 N.E.2d 1019 (N.Y. 1976)....................................................................................10

*Purdy v. Public Administrator of Westchester*,
  526 N.E.2d 4 (N.Y. 1988)..........................................................................................10

*Purgess v. Sharrock*,
  33 F.3d 134 (2d Cir. 1994).........................................................................................18

*Ratha v. Phatthana Seafood Co.*,
  35 F.4th 1159 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 491 (2022)..................................31

*Roe v. Domestic & Foreign Missionary Society of the Protestant Episcopal Church*,
  155 N.Y.S.3d 418 (App. Div. 2021) ...........................................................................10

*Rosner v. Bank of China*,
  2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637 (2d Cir. 2009) ...15

*Rothstein v. UBS AG*,
  647 F. Supp. 2d 292 (S.D.N.Y. 2009), *aff'd*, 708 F.3d 82 (2d Cir. 2013)........................16

*Rothstein v. UBS AG,*
    708 F.3d 82 (2d Cir. 2013)............................................................................26

*S.J. v. Choice Hotels Int'l, Inc.,*
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ...............................................21, 23, 24

*Salmon v. Blesser,*
    802 F.3d 249 (2d Cir. 2015)..........................................................................8

*Scollo ex rel. Scollo v. Nunez,*
    2007 WL 2228771 (N.Y. Sup. Ct. Aug. 3, 2007), *aff'd*, 874 N.Y.S.2d 380
    (App. Div. 2009) ..........................................................................................7

*Shea v. Cornell University,*
    596 N.Y.S.2d 502 (App. Div. 1993) ............................................................6, 7

*Silverman Partners, L.P. v. First Bank,*
    687 F. Supp. 2d 269 (E.D.N.Y. 2010) ......................................................12, 13

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,*
    56 Cal. Rptr. 2d 756 (Ct. App. 1996) ...........................................................12

*SPV OSUS Ltd. v. AIA LLC,*
    2016 WL 3039192 (S.D.N.Y. May 26, 2016) ..................................................7

*Steinberg v. Goldstein,*
    279 N.Y.S. 240 (App. Div. 1967) .................................................................5

*Taggart v. Costabile,*
    14 N.Y.S.3d 388 (App. Div. 2015).................................................................8

*Turley v. ISG Lackawanna, Inc.,*
    774 F.3d 140 (2d Cir. 2014)..........................................................................9

*Tzaras v. Evergreen Int'l Spot Trading, Inc.,*
    2003 WL 470611 (S.D.N.Y. Feb. 25, 2003)..................................................12

*United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.,*
    318 F. Supp. 3d 680 (S.D.N.Y. 2018)...........................................................23

*United States v. Anderson,*
    747 F.3d 51 (2d Cir. 2014)...........................................................................33

*United States v. Espinoza-Valdez,*
    889 F.3d 654 (9th Cir. 2018) ........................................................................33

*United States v. Farah,*
    766 F.3d 599 (6th Cir. 2014) ........................................................................28

*United States v. Farhane*,
    634 F.3d 127 (2d Cir. 2003)............................................................................32

*United States v. Smith*,
    294 F.3d 473 (3d Cir. 2002)............................................................................33

*United States v. Svoboda*,
    347 F.3d 471 (2d Cir. 2003)......................................................................31, 33

*United States v. Tutstone*,
    525 F. App'x 298 (6th Cir. 2013) ...................................................................4, 23

*United States v. Wesley*,
    417 F.3d 612 (6th Cir. 2005) ...........................................................................32

*Velez v. Sanchez*,
    693 F.3d 308 (2d Cir. 2012)............................................................................32

## DOCKETED ENTRIES

*United States v. Maxwell*, No. 1:20-CR-00330-AJN (S.D.N.Y.) ..................................................20

## STATUTES, RULES, AND REGULATIONS

18 U.S.C. §2...........................................................................................................................26

18 U.S.C. §1591(a) ..........................................................................................................16, 31, 32

18 U.S.C. §1591(a)(1).......................................................................................................16, 25, 26

18 U.S.C. §1591(a)(2)............................................................................................16, 25, 26, 30, 32

18 U.S.C. §1591(d)..............................................................................................28, 29, 30, 34

18 U.S.C. §1591(e)(4)..............................................................................................................25

18 U.S.C. §1595(a) ..............................................................................16, 21, 26, 27, 28, 31

18 U.S.C. §1595(c)(1)...........................................................................................................17

Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347, 136 Stat. 6199
    (2023).................................................................................................................27

Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-
    164, 132 Stat. 1253 (2018).............................................................................27

Financial Crimes Enforcement Network; Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. 75,593 (Dec. 3, 2010) (codified at 31 C.F.R. Ch. X)....................29

H.R. 1865, 115th Cong. (as introduced in House, April 3, 2017) ................................................27

New York Adult Survivors Act, N.Y. C.P.L.R. § 214-j .................................................................5

Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464........................................................................................................................................27

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ...........................................................................................29

## OTHER AUTHORITIES

Brown, *How a Future Trump Cabinet Member Gave a Serial Sex Abuser the Deal of a Lifetime*, Miami Herald (Nov. 28, 2018) .....................................................................2

U.S. DOJ, Off. of Pro. Resp., Executive Summary of Report, *Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and its Interactions with Victims during the Investigation* (Nov. 2020) ........................................2

## PRELIMINARY STATEMENT

In November 2018, five years after JPMorgan Chase Bank, N.A. (JPMC) severed its banking relationship with Jeffrey Epstein, a bombshell *Miami Herald* story exposed shocking details about sex-trafficking crimes Epstein reportedly had committed.  Plaintiff Jane Doe 1, a survivor of Epstein's sexual abuse, is entitled to her day in court—especially since Epstein's death, before his trial on sex-trafficking charges, prevented him from facing criminal justice.  But this lawsuit against JPMC is legally meritless and directed at the wrong party.  Plaintiff's first amended complaint (the "FAC" or "Complaint") inundates the Court with more than fifty pages of prurient and irrelevant allegations, covering the waterfront with multiple untenable new legal theories and baldly stated legal conclusions.  This haphazard approach attempts to obscure, but in fact further illuminates, that the Complaint has done nothing to cure the legal deficiencies identified in JPMC's original motion to dismiss and still falls short of alleging what is legally required.  Even after an opportunity to amend, the Complaint's conspicuously sparse allegations and meritless legal theories against JPMC fail to state a single viable claim and should be dismissed.

The Complaint now pleads four tort claims, all legally deficient in multiple respects.  The aiding and abetting battery claim fails because there is no allegation that JPMC knew of or committed some overt act in furtherance of Epstein or others battering Plaintiff.  Such claims routinely fail when premised on an alleged institutional failure to act on purported warning signs that an individual would commit an intentional tort.  The intentional infliction of emotional distress claim fails because none of the allegations regarding JPMC rises to the level of "extreme or outrageous conduct," which must be an affirmative action (not a failure to intervene) intentionally directed at a plaintiff—in fact, JPMC is not alleged to have intentionally directed any conduct at Plaintiff at all.  Plaintiff's negligence claims fail as well, for two reasons.  As to duty, a bank does not owe non-customers like Plaintiff a duty to protect them from its customers' wrongful acts.

1

And Plaintiff does not plausibly allege that her injuries directly resulted from JPMC's conduct—rather than the crimes that she asserts Epstein committed against her.

The Complaint also attempts to shoehorn JPMC's alleged conduct into the civil cause of action in the Trafficking Victims Protection Act (TVPA).  But those efforts, too, fall short.  To start, the TVPA claims are time-barred.  And even if they were not, the new allegations would fail to cure the deficiencies in the original complaint, and the new claims would be statutorily foreclosed.  The Complaint's allegations do not plausibly establish that JPMC "perpetrate[d]" sex trafficking, "participate[d]" in an Epstein sex-trafficking venture, "knowingly" received benefits from any alleged participation, or knew that an Epstein venture trafficked Plaintiff.  As for aiding and abetting, attempt, conspiracy, and obstruction, §1595 did not provide a private right of action for such claims at the relevant times; in any event, the Complaint's allegations do not plausibly establish JPMC's liability under any of those theories.  The Complaint should be dismissed.

## BACKGROUND[1]

The *Miami Herald*'s exposé on Jeffrey Epstein in November 2018, *see* Brown, *How a Future Trump Cabinet Member Gave a Serial Sex Abuser the Deal of a Lifetime*, Miami Herald (Nov. 28, 2018), led to intense public scrutiny that would culminate in his July 2019 arrest, *see* U.S. DOJ, Off. of Pro. Resp., Executive Summary of Report, *Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and its Interactions with Victims during the Investigation* at iii-iv

---

[1] For purposes of this motion only, JPMC accepts the Complaint's factual allegations as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, Plaintiff's attempt to "adopt[] by reference" certain unspecified allegations in the USVI Complaint only to the extent that they are not "inconsistent" with Doe's own allegations, FAC ¶ 182 n.1, should be rejected.  "Such guesswork is antithetical to the 'fair notice' that Rule 8 requires."  *Bardwil Indus. Inc. v. Kennedy*, 2020 WL 2748248, at *4 (S.D.N.Y. May 27, 2020).

(Nov. 2020); FAC ¶¶ 89-90.  Epstein's arrest on sex-trafficking charges came roughly six years after JPMC decided to terminate its banking relationship with Epstein in 2013.  *See* FAC ¶¶ 90, 263.  The Complaint seeks to hold JPMC liable based on alleged acts and omissions by JPMC that occurred earlier still, beginning when Plaintiff met Epstein in 2006.  *See id.* ¶ 94.

Before JPMC decided to terminate its relationship with Epstein in 2013, Epstein used his JPMC accounts to make wire transfers and withdraw cash, some of which he used in connection with his alleged sex-trafficking activities.  *See, e.g.*, FAC ¶¶ 38-45, 108-109, 129, 155, 243, 253-256, 261.  The only connection alleged between JPMC and Plaintiff is that Epstein paid her with "large sums of cash" he had withdrawn from JPMC accounts.  *Id.* ¶ 108; *see also id.* ¶¶ 109, 112, 159.  The Complaint alleges that in permitting Epstein to make withdrawals and transfers not atypical of high net-worth accounts, the bank ignored "red flags" of illicit conduct, *e.g.*, *id.* ¶¶ 134, 163, 352-354, and "knowingly and intentionally participated" in his sex-trafficking, *id.* ¶ 122.

The Complaint states repeatedly that Epstein "was an extraordinarily wealthy man."  FAC ¶ 61; *see also id.* ¶¶ 33, 64, 202, 210.  However, it offers no specific factual basis for an inference that JPMC knew that Epstein's wealth was tied up in sex trafficking—or that the numerous business entities that Epstein oversaw, *see id.* ¶ 106, were all fronts for sex trafficking.  On the contrary, the Complaint belies its own allegations that Epstein "had no documented expertise that would provide the requisite skill or knowledge to amass his vast wealth" and that "none of" his companies "had any legitimate business structure or purpose," *id.* ¶ 210, by alleging that Epstein was "one of the most powerful and connected people in the United States," *id.* ¶ 34, and by alleging that his wealth came from legitimate sources, including managing the funds of billionaire Les Wexner, *see id.* ¶¶ 127-128, 150.  The Complaint makes only a conclusory allegation that JPMC "knew" Epstein was lying about being "a money manager to a stable of clients."  *Id.* ¶ 128.

James "Jes" Staley, a former JPMC executive, left the bank in 2013.  FAC ¶ 115.  The Complaint alleges that Epstein and Staley had a "special" relationship, *id.* ¶ 132, and that Staley was "one of Epstein's closest pals," *id.* ¶ 226.  According to the Complaint, Staley was aware that Epstein was operating an illegal venture; that "Epstein was trafficking and abusing girls"; and that "all of [Epstein's] staff, including his main attorney and accountant, worked full time to conceal the illegal operation."  *Id.* ¶ 128.  The Complaint further alleges that Staley, in some unspecified way, "observed" Plaintiff "as a sexual trafficking and abuse victim," *id.* ¶ 115;[2] visited Epstein and flew on his private jet, *see id.* ¶¶ 153, 203, 205, 226-229; and assured Epstein that he would have access to his cash, *see id.* ¶ 157.

The Complaint also makes conclusory allegations that in these Staley-Epstein interactions, Staley was acting within the scope of his employment at JPMC, and at least partially for the benefit of JPMC.  *See, e.g.*, FAC ¶¶ 18, 138, 171, 203, 205, 226.  However, the Complaint does not explain how or why Staley's alleged interactions with Epstein—including "personally observ[ing] the sexual abuse of young women, including Jane Doe 1" by Epstein and others, *id.* ¶ 226—were plausibly within the scope of a bank executive's employment.  The Complaint also does not adequately explain how or why any knowledge of Epstein's illicit activities involving Plaintiff or any other women, on Staley's part, can be imputed to JPMC.  *See Adorno v. Corr. Servs. Corp.*,

---

[2] The only specific allegation in the Complaint of Staley observing sexual misconduct is that Staley saw "Epstein sexually grab[bing] young women," FAC ¶ 227, which—though odious and addressed by other laws—is not actionable under the TVPA, which prohibits only the "sex trafficking of children" and the "sex trafficking of adults that is accomplished through force, fraud, or coercion."  *United States v. Tutstone*, 525 F. App'x 298, 302 (6th Cir. 2013).  There is no allegation that Plaintiff was underage at the time of the alleged abuse, nor is there any allegation that Staley witnessed the use of force, fraud, or coercion to cause her to engage in a commercial sex act.  This omission is not only fatal to Plaintiff's claims, but also particularly revealing given that Plaintiff had notice of the deficiencies in her original pleading, yet still failed to remedy them.

312 F. Supp. 2d 505, 516-517 (S.D.N.Y. 2004) ("New York courts have repeatedly found no vicarious liability for claims involving sexual misconduct, including sexual assault.").

## ARGUMENT

### I.   THE COMPLAINT DOES NOT PLEAD A TORT CLAIM AGAINST JPMC (COUNTS I-IV)

The Complaint includes four tort claims against JPMC revived by the New York Adult Survivors Act, N.Y. C.P.L.R. § 214-j, which temporarily revives otherwise time-barred tort claims for injuries resulting from sexual offenses.  Each fails as a matter of law and should be dismissed.

### A.   The Complaint Fails To Plead Aiding And Abetting Battery (Count I)

Count I should be dismissed because the Complaint does not establish JPMC's knowledge of, or "substantial assistance" in, the battery.  *Freeman v. Jacobson*, 2021 WL 3604754, at *9 (S.D.N.Y. Aug. 13, 2021); *see Naughright v. Weiss*, 826 F. Supp. 2d 676, 691 (S.D.N.Y. 2011) (aiding and abetting requires (1) "wrongful act producing an injury"; (2) "defendant's awareness of a role as a part of an overall illegal or tortious activity at the time [of] the assistance"; and (3) "defendant's knowing and substantial assistance in the principal violation") (citations omitted).

The Complaint does not establish that JPMC knew that Epstein battered Plaintiff.  This defect is fatal because "actual knowledge is required to impose liability on an aider and abettor under New York law."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006); *Steinberg v. Goldstein*, 279 N.Y.S. 240, 242 (App. Div. 1967) (dismissing aiding and abetting claim given "no allegation that [defendant] knew an assault was planned or was to take place").  Actual knowledge of Plaintiff's battery cannot be established by the unsupported assertion that, at an unspecified time, Staley "observed [Plaintiff] in circumstances indicating sexual abuse and trafficking," FAC ¶ 328; *see also id.* ¶ 115, which is a "'legal conclusion couched as a factual allegation,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nor can actual knowledge arise from JPMC's alleged awareness of "red flags" with Epstein's accounts; as *Lerner* explained, such red flags may "put the

bank[] on notice that some impropriety [is] taking place," but do not establish the bank's actual knowledge that the customer is using bank funds to commit an intentional tort. 459 F.3d at 294.

Nor does the Complaint establish that JPMC substantially assisted Epstein by "commit[ting] some overt act, either by words or conduct, in furtherance of" the battery of Plaintiff. *McKiernan v. Vaccaro*, 91 N.Y.S.3d 478, 481 (App. Div. 2019); *Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 397 (Sup. Ct. 1994). Allegations that JPMC gave Epstein access to his own cash, failed to take steps that could have revealed his crimes, or should have foreseen the injuries he would cause, FAC ¶¶ 295-297, cannot establish substantial assistance. They do not "giv[e] rise to an inference that the defendant's conduct contributed in some way to the conduct constituting the primary tort." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012).

The Complaint instead falls far short of showing substantial assistance. Its conclusory allegations that JPMC took no action to stop Epstein after Staley "observed [Plaintiff] in circumstances indicating sexual abuse," FAC ¶ 328, do not establish that JPMC "gave assistance or encouragement" to Epstein in furtherance of a battery, *Lindsay*, 625 N.Y.S.2d at 397. That is because "'[s]ubstantial assistance requires an affirmative act on the defendant's part.'" *Land v. Forgione*, 114 N.Y.S.3d 464, 467 (App. Div. 2019). JPMC must have engaged in "intentional or deliberate acts directed at causing harm" to Plaintiff, or "overt encouragement of the offensive behavior." *Shea v. Cornell Univ.*, 596 N.Y.S.2d 502, 503-504 (App. Div. 1993). The Complaint does not plausibly allege this required element. Rather, the Complaint emphasizes JPMC's alleged failure to act on warning signs that Epstein would commit intentional torts. *See* FAC ¶¶ 296-297. But such allegations cannot establish substantial assistance. New York courts have rejected aiding and abetting claims even when presented with evidence that defendants "should have been aware of [the assailant's] crude and vulgar nature, his demeaning and malevolent attitude toward women,

6

and … his history of hostile physical aggression toward women." *Shea*, 596 N.Y.S.2d at 503. By contrast, courts have allowed aiding and abetting claims to proceed where, unlike here, plaintiffs have established that the defendant "'encourag[ed] the wrongdoer' to act." *Scollo ex rel. Scollo v. Nunez*, 2007 WL 2228771, at *4 (N.Y. Sup. Ct. Aug. 3, 2007), *aff'd*, 874 N.Y.S.2d 380 (App. Div. 2009); *see also Freeman*, 2021 WL 3604754, at *10 (defendants hired perpetrator to batter plaintiff, threatened plaintiff with physical harm during attack, and "prevent[ed] him from seeking help"); *Maurizi v. Callaghan*, 2022 WL 1446500, at *14 (W.D.N.Y. Feb. 25, 2022) (defendant skating club knew coach sexually abused young skaters yet endorsed him for a new position).

The Complaint's remaining aiding and abetting theory—that JPMC substantially assisted Epstein by making financial resources available to him, FAC ¶ 295—has been squarely rejected by this Court and others. This Court found "woefully deficient" the theory that entities had substantially assisted Bernie Madoff by facilitating funding for him, without which he "'would not have been able to continue to operate'" his Ponzi scheme. *SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at *6 (S.D.N.Y. May 26, 2016). And that is for good reason. An immeasurable range of activities—licit and illicit—require access to cash. To impose aiding and abetting liability on banks for making cash available to a primary tortfeasor would thus "eviscerate" the liability-limiting function of the substantial assistance requirement. *Id.* at *7; *see also Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 472 (S.D.N.Y. 2001) (substantial assistance not established by allegations that Ponzi scheme "may only have been possible" due to action or inaction of bank).

### B.  The Complaint Fails To Plead Intentional Infliction of Emotional Distress (IIED) (Count II)

Count II should be dismissed because it fails to plead that JPMC engaged in "extreme and outrageous conduct" that was intentionally directed at Plaintiff or that caused Plaintiff's emotional distress. *See Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993).

The Complaint does not allege any actions by JPMC that meet the standard for extreme and outrageous conduct, which must "'go beyond all possible bounds of decency, and … be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kiser v. HSH Nordbank AG*, 2010 WL 286647, at *1 (S.D.N.Y. Jan. 20, 2010) (Rakoff, J.). "Satisfying [this standard] is difficult, even at the pleadings stage." *Conboy v. AT&T Corp.*, 84 F. Supp. 2d 492, 507 (S.D.N.Y. 2000), *aff'd*, 241 F.3d 242 (2d Cir. 2001). The Complaint simply repeats the conclusory assertions that JPMC "aid[ed], abet[ted], and facilitat[ed] Epstein's tortious conduct and sex crimes," FAC ¶ 303, and "intentionally and knowingly participated in Epstein's sex-trafficking venture," *id.* ¶ 304. This defect alone requires dismissal of Count II.[3]

While the crimes Epstein was accused of were extreme and outrageous, JPMC's alleged failure to detect or prevent those crimes was not. New York courts routinely hold that a "failure to affirmatively intervene" to stop misconduct does not amount to "extreme and outrageous" behavior. *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 594 (S.D.N.Y. 2018) (defendant's failure to "search for and remove the impersonating profiles" on its platform was not "extreme and outrageous"); *see also Taggart v. Costabile*, 14 N.Y.S.3d 388, 394 (App. Div. 2015) (no IIED claim against landlord who was on notice of tenants' illegal activity but did not act to stop tenants from injuring plaintiffs). The Complaint thus cannot plead IIED based on allegations that JPMC passively allowed Epstein to engage in suspicious transactions. *See* FAC ¶¶ 110, 124, 181, 295.

---

[3] The circular allegations in Count II also underscore that the IIED claim is impermissibly duplicative of Plaintiff's other causes of action. An IIED claim "may 'be invoked only as a last resort,'" *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015), and therefore will not lie "where the conduct underlying the claim falls within the ambit of traditional tort liability," *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 378 (S.D.N.Y. 2017). Even assuming the allegations in Count II could otherwise state an IIED claim—they cannot—they merely recycle legal conclusions urged in support of the other claims. Count II therefore must be dismissed.

The Complaint's conclusory allegation that Staley observed Plaintiff in "circumstances indicating sexual abuse," FAC ¶ 328, does not alter this result.  The Complaint does not establish that JPMC had the power to stop, but instead ignored or concealed, Epstein's crimes.  It thus falls far short of alleging the kind of "extreme and outrageous" conduct committed by institutions that cover up sexual abuse.  *Eskridge v. Diocese of Brooklyn*, 180 N.Y.S.3d 179, 181 (App. Div. 2022) (IIED alleged where diocese undertook deliberate efforts to "conceal[]" priest's abuse of plaintiff "and permit[] it to continue"); *Pinks v. Turnbull*, 2009 WL 4931802, at *5-6 (N.Y. Sup. Ct. Dec. 11, 2009) (student reported sexual abuse by choir employee to choir president, and choir subsequently "fail[ed] to take any action to protect plaintiff from the presence of his tormentor"). Even if the Complaint could establish that JPMC should have acted differently—and it cannot— it would suggest only "a failure to understand the gravity of a situation," which "is rarely if ever considered so beyond the pale as to reach the extreme threshold necessary for an IIED claim." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 161 (2d Cir. 2014).

Nor does the Complaint establish that any alleged conduct by JPMC was carried out with the requisite intent.  Under New York law, the conduct alleged must be "intentionally directed at the plaintiff" to support an IIED claim.  *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985); *see also Doe v. Poly Prep Country Day Sch.*, 2022 WL 4586237, at *13 (E.D.N.Y. Sept. 29, 2022) (allegations that defendant generally "tolerated and covered up sexual abuse" do not establish IIED where plaintiff "fail[s] to allege any conduct … 'intentionally directed at [her]'").  Courts thus consistently reject IIED claims that, like Count II, lack plausible allegations that the defendant's conduct was intentionally directed at the plaintiff.  *See, e.g.*, *Maurizi*, 2022 WL 1446500, at *15-16 (no intent directed at plaintiff from allegations that defendants failed to "conduct[] a proper investigation which would have … prevented [] continued sexual abuse"); *Benacquista v. Spratt*,

9

217 F. Supp. 3d 588, 606 (N.D.N.Y. 2016) (no intent to cause plaintiff distress based on school's "alleged failure to investigate complaints" about sexual abuse).  Here, as in *Poly Prep*, *Maurizi*, and *Benacquista*, the Complaint does not establish that JPMC directed its conduct toward Plaintiff.

Finally, an IIED claim must be dismissed absent "a causal connection between the defendant['s] allegedly outrageous conduct and the plaintiff's injuries."  *Roe v. Domestic & Foreign Missionary Soc'y of the Protestant Episcopal Church*, 155 N.Y.S.3d 418, 422 (App. Div. 2021).  As discussed further below (in Section I.C.2), the Complaint does not establish that JPMC caused the emotional distress Plaintiff suffered as a result of her interactions with Epstein.

## C.    The Complaint Fails To Plead Negligence (Counts III and IV)

Counts III and IV, though labeled as two separate causes of action, both sound in simple negligence and both fail to state a claim.  No matter how styled, a claim that asserts the failure to exercise "reasonable care under the circumstances" merely recites "the traditional, basic negligence standard."  *Bethel v. N.Y.C. Transit Auth.*, 703 N.E.2d 1214, 1215 (N.Y. 1998).  Simple negligence claims must plead "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  *David v. Weinstein Co.*, 431 F. Supp. 3d 290, 305 (S.D.N.Y. 2019).  Counts III and IV should be dismissed because JPMC owed Plaintiff no duty that it could have breached and did not proximately cause any injury to Plaintiff.

### 1.    JPMC did not owe a duty to protect Plaintiff from its customers

The Complaint's allegations "do not establish the threshold element of duty."  *David*, 431 F. Supp. 3d at 305.  First, JPMC owed no duty to Plaintiff to prevent the physical harm inflicted by Epstein.  New York law ordinarily "does not impose a duty to control the conduct of third persons to prevent them from causing injury to others."  *Purdy v. Public Adm'r of Westchester*, 526 N.E.2d 4, 8 (N.Y. 1988).  And while such a duty may arise between a master and servant, parent and child, or common carrier and passenger, no such "special relationship" is

present here.  *Id.*; *Pulka v. Edelman*, 358 N.E.2d 1019, 1022 (N.Y. 1976) (defendant not "answerable merely because there are others whose activities are such as to cause [the defendant] to envision damages or injuries as a consequence of those activities").  Similarly, JPMC owed no duty to avoid the potentially limitless range of conduct that could "set forces in motion that … created a risk of physical harm" to Plaintiff.  FAC ¶ 313.  A plaintiff must "'be able to point the finger of responsibility at a defendant owing, not a general duty to society, but a specific duty to [her].'"  *Lauer v. City of N.Y.*, 733 N.E.2d 184, 188 (N.Y. 2000).  The Complaint pleads none.

Second, JPMC owed no duty to Plaintiff arising out of its banking relationship with Epstein.  The Second Circuit has long recognized that "'banks and other financial institutions do not owe non-customers a duty to protect them from the intentional torts of their customers.'"  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 126 (2d Cir. 2013) (cleaned up).  Consistent with that settled law, courts routinely dismiss negligence claims against banks for lack of duty owed to third parties.  *E.g.*, *Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 228-229 (S.D.N.Y. 2022).  Plaintiff's negligence claims fail under this rule, and the Complaint's allegations that JPMC overlooked "red flags" associated with Epstein's accounts, *e.g.*, FAC ¶ 181, do not support a departure.  As *Lerner* explains, banks do not owe a duty to non-customers like Plaintiff to investigate and address alleged red flags such as dishonored transactions or suspicious transfers.  459 F.3d at 294.  Permitting third parties to bring negligence claims under such circumstances would "unreasonably expand banks' orbit of duty."  *Id.* at 286 (cleaned up).

The presence of purported "red flags" is thus irrelevant to any legal duty JPMC could owe to Plaintiff.  But even if they were relevant, whether considered individually or together, none of the alleged "red flags" plausibly alerted JPMC to the fact that Epstein's accounts were being used to facilitate Plaintiff's sex-trafficking.  The Complaint alleges that transactions are indicative of

sex-trafficking if they are too large, FAC ¶ 110, too small, *id.* ¶¶ 249, 372, or too regular, *id.* ¶ 231. Yet "[a]ccount activity, whether in large sums or small, whether frequent or infrequent, is the nature of the beast—far from being suspicious, it is expected, routine behavior." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756, 763 (Ct. App. 1996). Large-scale, facially innocuous transactions are not uncommon in the accounts of customers with access to "virtually unlimited wealth," FAC ¶ 26, and courts routinely hold that allegedly suspicious account activity does not create a duty to non-customers.[4] It makes no difference that an employee of the bank allegedly shares a close relationship with the customer, even where the employee is "dedicated solely to [the] 'needs and purposes'" of the customer and facilitates the specific transactions at issue. *In re Agape Litig.*, 681 F. Supp. 2d 352, 358 (E.D.N.Y. 2010).

The Complaint also pushes the theory that Epstein's 2008 conviction for solicitation necessarily transmutes this traditional banking activity into a series of transactions that JPMC knew to be tainted. It does not. *See Agape Litig.*, 681 F. Supp. 2d at 358-359 (dismissing allegations that account activity raised "'red flags' or badges of fraud that should have induced [the bank] to investigate" perpetrator of Ponzi scheme "particularly in light of [his] criminal history"). Many millions of Americans have felony convictions, and hundreds of thousands are registered sex offenders. Those individuals are permitted access to U.S. financial institutions, and their transactions are not automatically suspicious. A bank is not tasked with eliminating those with criminal histories from the banking system or protecting non-customers from what former felons may or may not do with their finances.

---

[4] *See, e.g.*, *Pincover*, 592 F. Supp. 3d at 228; *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 279-282 (E.D.N.Y. 2010) (no duty to investigate suspicious large withdrawals); *Tzaras v. Evergreen Int'l Spot Trading, Inc.*, 2003 WL 470611, at *5-7 (S.D.N.Y. Feb. 25, 2003) (no duty to address suspicious transfers of $1.7 million).

Finally, JPMC owes no duties *to Plaintiff* under the Bank Secrecy Act (BSA) or "Know Your Customer" (KYC) rules.  *See Marlin v. Moody Nat'l Bank, N.A.*, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006) ("The obligation under [the BSA] is to the government rather than [a] remote victim."), *aff'd*, 248 F. App'x 534 (5th Cir. 2007).  Under these laws, "banks do not become guarantors of the integrity of the deals of their customers." *Id.*  Courts thus uniformly hold that these regulations "cannot form the basis for a negligence claim" where no pre-existing duty exists, *Silverman Partners*, 687 F. Supp. 2d at 282 (no duty based on KYC rules "to protect borrowers from harm done by co-borrowers"); *Agape Litig.*, 681 F. Supp. 2d at 360 (no duty of care "predicated upon [the BSA's] monitoring requirements"), and have rejected calls for "an expansion of the scope of the duty of care based upon the monitoring and reporting requirements imposed under the Bank Secrecy Act," *Aiken v. Interglobal Mergers & Acquisitions*, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) (citation omitted).

### 2.      JPMC did not proximately cause Plaintiff's injuries

Even if JPMC did owe a duty to Plaintiff, Counts III and IV fail for lack of proximate cause.  Alleged negligence "is not enough by itself to establish liability"; rather, it must be "a proximate, or legal, cause" of Plaintiff's harm.  *Hain v. Jamison*, 68 N.E.3d 1233, 1236-1237 (N.Y. 2016).  Where the alleged injury was caused by an intervening criminal act, as it was here, that act must be "'a natural and foreseeable consequence of a circumstance created by [the] defendant.'" *Id.* at 1237-1238.  "[P]roximate cause will be found lacking where the original negligent act merely 'furnished the occasion for'—but did not cause—'an unrelated act to cause injuries not ordinarily anticipated.'"  *Id.* at 1238.  Because "manageable limits" must be placed "'upon the liability that flows from negligent conduct,'" proximate cause imposes a demanding limitation.  *Id.* at 1237.

The Complaint does not plead proximate cause because it does not establish that Plaintiff's injuries were a foreseeable consequence of JPMC's provision of "banking support and assistance

for Epstein." FAC ¶ 324; *see id.* ¶ 313 (alleging JPMC "set forces in motion" that injured Plaintiff by "providing financial and other support" for Epstein's sex-trafficking venture).

First, nowhere does the Complaint establish what is required to show foreseeability here: that JPMC knew or should have known that Epstein was sex trafficking Plaintiff and using JPMC accounts to facilitate that conduct. As noted above, it cannot do so based on the conclusory assertion that Staley "observed [Plaintiff] in circumstances indicating sexual abuse and trafficking." FAC ¶ 328. Nor can Plaintiff establish foreseeability through the sole alleged link between Plaintiff and Epstein's JPMC accounts—that "Epstein used [JPMC] accounts to pay, through wire transfers and in cash, for coerced commercial sex acts by [Plaintiff]." *Id.* ¶ 256. The Complaint does not establish that anything about these specific transactions should have raised red flags, let alone suggested that they were payments for coerced commercial sex.

Second, JPMC's support for routine banking transactions, such as large cash withdrawals and large wire transfers from high net-worth customers, is far too attenuated from any harm inflicted through those transactions to plead proximate cause. Banks like JPMC "cannot be held liable for the wrongdoing" of a customer "based solely on the allegations that [he] utilized the banking and financial services offered to all bank customers." *In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 518 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 118 (2d Cir. 2013). Indeed, the Second Circuit has held that non-customers such as Plaintiff are not foreseeable victims of a bank's alleged negligence even if the bank failed to report suspicious transactions associated with its customer's use of his accounts. *See Lerner*, 459 F.3d at 287, 294. A bank's lapses in monitoring a customer's accounts are simply "too far removed from the damages [the customer] subsequently cause[s] to persons," like Plaintiff, "who never deposited funds with the bank" to establish proximate cause. *Id.* at 287. Plaintiff cannot avoid dismissal of these claims by alleging that

JPMC's failure to act on red flags "merely 'furnished the occasion for'" Epstein's extreme and unforeseeable crimes against her.  *Hain*, 68 N.E.3d at 1238.

Third, none of the allegations in the Complaint establishes that JPMC offered Epstein *non-routine* services that the bank knew would facilitate his illicit venture.  *See Rosner v. Bank of China*, 2008 WL 5416380, at *13 (S.D.N.Y. Dec. 18, 2008) (rejecting conclusory allegation that bank's services were "atypical and non-routine"), *aff'd*, 349 F. App'x 637 (2d Cir. 2009).  At most, the Complaint asserts that JPMC allowed Epstein to maintain accounts that he used to engage in transactions that the bank should have flagged as suspicious because of their size or structure.  It does not establish that JPMC offered Epstein anything other than "banking and financial services offered to all bank customers."  *In re Terrorist Attacks*, 740 F. Supp. 2d at 518.  Even when a bank "continues to maintain [a customer's] accounts" despite warnings that the customer's assets are being used for illicit ends, there is "no basis for a bank's liability for injuries funded by money passing through it on routine banking business."  *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 831-833 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008), *and aff'd*, 714 F.3d 118 (2d Cir. 2013).  JPMC's alleged conduct does not approach the *non-routine* services of other cases, such as when a bank "play[ed] a central role in a well-publicized plan to reward terrorists" by serving as the "exclusive administrator of the death and dismemberment benefit plan" for the terrorists.  *Linde v. Arab Bank PLC*, 384 F. Supp. 2d 571, 577, 588 (E.D.N.Y. 2005).

Essentially, at most, the Complaint alleges that JPMC was a "mere unknowing conduit for the unlawful acts of others."  *Linde*, 384 F. Supp. 2d at 588.  The Complaint, with the benefit of hindsight, asserts that Epstein was using his JPMC accounts to facilitate sex trafficking, FAC ¶ 156, but it does not—and cannot—plausibly allege that Epstein had *no* legitimate uses for the routine banking services JPMC provided.  More is required to establish proximate cause.  *See*

*Rothstein v. UBS AG*, 647 F. Supp. 2d 292, 294 (S.D.N.Y. 2009) (bank providing routine services to customers did not proximately cause injuries suffered by illicit uses, in part because "cash dollars have multiple legitimate uses"), *aff'd*, 708 F.3d 82, 97 (2d Cir. 2013) (transfers to Iran did not cause injuries from attacks Iran allegedly funded, as Iran also had legitimate uses for money).

## II.   THE COMPLAINT DOES NOT PLEAD A TVPA CLAIM AGAINST JPMC (COUNTS V-X)

Plaintiff brings no fewer than six causes of action under §1595 of the TVPA, which permits "a victim" of sex trafficking to bring a civil action for a violation of the statute's substantive criminal provisions against either "the perpetrator" (perpetrator liability) or "whoever knowingly benefits" from "participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter" (beneficiary liability).  18 U.S.C. §1595(a).  The Complaint's revised allegations still fall short as a matter of law.

Counts V and VI pursue beneficiary and perpetrator liability claims against JPMC.  A plaintiff pleading a §1595(a) beneficiary claim must demonstrate a predicate "violation of this chapter."  18 U.S.C. §1595(a).  Count V alleges a §1595(a) beneficiary claim against JPMC for a violation of §1591(a)—which prohibits both direct participation in sex trafficking (*e.g.*, recruiting or transporting a victim), §1591(a)(1), and knowingly benefitting from participation in a sex-trafficking venture, §1591(a)(2).  Count V also pleads a perpetrator liability claim against JPMC for violating §1595(a)(2)—*i.e.*, for knowingly benefitting from participation in a sex-trafficking venture.  And Count VI adds a perpetrator liability claim against JPMC for violating §1591(a)(1)—*i.e.*, for direct participation in sex trafficking.  Finally, the Complaint also pleads §1595 claims for aiding and abetting (Count VII); for attempting (Count VIII) and conspiring (Count IX) to violate §1591; and for obstructing enforcement of the TVPA (Count X).

Altogether, Plaintiff stretches to assert every theory imaginable.  But despite Plaintiff's prolific effort, none of these claims is actionable—and all of them are time-barred.

### A.      Plaintiff's TVPA Claims Are Time-Barred (Counts V-X)

A TVPA claim must be brought by an adult sex-trafficking victim "not later than … 10 years after the cause of action arose[.]"  18 U.S.C. §1595(c)(1).  The Complaint contains no specific allegation that Plaintiff was trafficked after November 24, 2012, or that JPMC financially benefited, participated, attempted, or obstructed after that date.[5]  Plaintiff's TVPA claims are barred by the statute of limitations and should be dismissed.

The Complaint does not identify any specific act or omission by JPMC that injured Plaintiff on or after November 24, 2012.  Instead, Plaintiff alleges generally that the banking relationship between JPMC and Epstein existed approximately from 1998 to August 2013.  *See, e.g.*, FAC ¶¶ 124, 274.  Thus, only the very tail end of the banking relationship—a period of approximately nine months—overlaps with Plaintiff's non-time-barred claims.  And the Complaint says nothing about what happened in that months-long period; the allegations around this time period are, in fact, notably nonspecific.  Plaintiff alleges generally that she was victimized by Epstein and his sex-trafficking venture "from 2006 through 2013," *id.* ¶ 99, "until her ultimate escape around the end of 2013," *id.* ¶ 113.  These allegations do not plausibly state a claim for non-time-barred trafficking—much less show how JPMC contributed to any injury Plaintiff suffered between November 24, 2012 and August 2013.  Further obscuring the issue, ████████████████

████████████████████████████████████████████████████████

---

[5] In a last-ditch effort to rescue all of its otherwise time-barred TVPA claims, the Complaint alleges that Epstein's venture "constituted a criminal conspiracy" active "up to and following Epstein's death in 2019," FAC ¶ 274, and that JPMC was a co-conspirator, even after terminating its banking relationship with Epstein, *see id.* ¶¶ 186-187.  As explained below (in Section II.G), the Complaint does not plausibly allege that JPMC had any role whatsoever in a purported criminal conspiracy, let alone that JPMC is liable for acts taken by Epstein and others after it terminated its banking relationship with Epstein, up to and even "following" his death in 2019.  The Court should reject this attempted end run around §1595(c)(1).

████████████████████████████████████████████████ ██[6]

Because the Complaint contains no specific allegation that Plaintiff was trafficked within the

limitation period, the TVPA claims should be dismissed as time-barred.

> **B.  The Complaint Does Not State A Claim For Beneficiary Liability For A Violation Of §1591(a) (Count V)**

Count V should be dismissed because the Complaint does not plausibly allege that

(1) JPMC participated in an Epstein sex-trafficking venture; (2) JPMC knew that the sex-

trafficking venture violated the TVPA as to Plaintiff by using force, fraud, or coercion to induce

her into commercial sex; or (3) JPMC received benefits in exchange for participation in an Epstein

sex-trafficking venture.  *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021).

> **1.  The Complaint does not plead facts sufficient to show that JPMC participated in an Epstein sex-trafficking venture**

Section 1595 participation "requires more than just passive facilitation, but some level of

active engagement."  *G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626, 644 (N.D. Ill. 2022).

"[A]ssociation alone" is not enough.  *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y.

2018).  Instead, a plaintiff must allege that the defendant engaged in "specific conduct that

furthered the sex trafficking venture" and "some participation in the sex trafficking act itself."  *Id.*[7]

---

[6] ████████████████████████████████████ ████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

[7] As used in §1595, "participation in a venture" is defined by its ordinary meaning: "[P]articipate" means "to take part in or share with others in common or in an association," and "venture" means "an undertaking or enterprise involving risk and potential profit."  *Red Roof Inns*, 21 F.4th at 724-725.  Like the plaintiffs in *Red Roof Inns*, Plaintiff "chose to frame the venture[] at issue as [a] sex trafficking venture[.]"  *Id.* at 727; *see, e.g.*, FAC ¶¶ 62, 76, 87-88, 92, 98, 104, 110, 122, 124, 154, 162, 168, 172, 179.  Thus, because Plaintiff's theory depends on her allegation that JPMC participated in a *sex-trafficking* venture, she must establish that JPMC "took part in the common undertaking of sex trafficking."  *Red Roof Inns*, 21 F.4th at 727.  That requires factual

Allegations that a supposed beneficiary knew or should have known of a sex-trafficking venture, and then provided its normal business services, are not enough for participation. *See Red Roof Inns*, 21 F.4th at 725; *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 n.4 (S.D.N.Y. 2019) (dismissing claim where defendants were alleged to have had "involvement in making hush payments"); *Noble*, 335 F. Supp. 3d at 524 (dismissing claim where defendant was alleged to have "'facilitated'" perpetrator's travel "by virtue of his job responsibilities"). By contrast, if—unlike here—a defendant allegedly took actions to further the sex-trafficking venture that were entirely inconsistent with their ordinary job duties, that may state a participation claim. *See Canosa v. Ziff*, 2019 WL 498865, at *3-4 (S.D.N.Y. Jan. 28, 2019) (production company employee allegedly gave Harvey Weinstein medications and other paraphernalia to perform sexual acts). At bottom, the Complaint fails to plausibly allege anything more than that JPMC provided its normal banking services to Epstein—and conclusorily reciting that these services were "special" and "unusual," *e.g.*, FAC ¶ 435, does not transform the provision of normal banking services to a customer into participation in any sex-trafficking venture.

That JPMC's status as Epstein's bank allowed him access to cash and banking services essential to operate any sex-trafficking venture, *e.g.*, FAC ¶¶ 39, 45, 122-123, 129, 252, simply does not constitute participation. *Salesforce.com* shows why. There, Salesforce's software allegedly allowed Backpage, a website advertising commercial sex, "to cultivate and expand a customer base of sex traffickers" (by enabling Backpage to scale operations and increase trafficking on the site). 603 F. Supp. 3d at 647. But the court found this insufficient to plead participation: that "Salesforce's software played a critical role in Backpage's expansion," even if

---

allegations sufficient to show that JPMC participated in the sex trafficking itself. *See id.* ("[O]bserving something is not the same as participating in it.").

expansion would not have been possible without it, "[was] not enough to demonstrate Salesforce's *own* participation in any venture with Backpage." *Id.* at 648 (emphasis added).[8]

Nor do the Complaint's allegations about Epstein's use of his JPMC accounts tie JPMC's alleged awareness *to participation in the sex-trafficking venture*. The Complaint alleges that JPMC "allow[ed] [Epstein] to run and grow" a sex-trafficking operation, FAC ¶ 134, because Epstein's account activity was cash-intensive and "a large number of cash transactions by a customer *can be* an indicator of criminal activity generally and sex trafficking in particular," *id.* ¶ 244 (emphasis added). It then concludes that JPMC "was aware that … some of these wire transfers … were in furtherance of the Epstein sex-trafficking venture." *Id.* ¶ 254.[9] But such allegations about Epstein's use of his own money drawn from JPMC accounts do not connect JPMC *to the sex-trafficking venture*. *See id.* ¶¶ 39, 45, 122-123, 129, 252. Bald assertions that JPMC "knew" where the cash was going, *see id.* ¶ 110, or that it is, in hindsight, purportedly clear

_____

[8] Indeed, the Complaint's allegations that JPMC participated in Epstein's sex trafficking are more deficient than the allegations deemed insufficient in *Geiss* and *Noble*: The Complaint does not—and cannot—offer any well-pleaded allegations that JPMC itself made "hush" payments or "settlement" payments. Nor do allegations that Staley "personally" spent time with young girls he met through Epstein or "personally" visited young girls at Epstein's apartments, FAC ¶ 227, constitute participation by his employer in a sex-trafficking venture. These allegations fail to allege Staley's involvement in a commercial sex act, as the TVPA requires. Further, notwithstanding the Complaint's conclusory legal assertions to the contrary, *see* FAC ¶¶ 18, 138, 171, 203, 205, 226, allegations about Staley's "personal" actions are not plausibly within the scope of a bank executive's employment. *See, e.g.*, *Adorno*, 312 F. Supp. 2d at 516-518.

[9] One allegation appears to suggest that during Ghislaine Maxwell's criminal trial, a JPMC representative testified that $31 million transferred from Epstein to accounts in Maxwell's name between 1999 and 2007 constituted "payment for her role in Epstein's … venture." FAC ¶ 175. That misstates the actual testimony; the JPMC representative said nothing about the purpose of those payments. Dec. 6, 2021 Trial Tr. 1348:6-14, *United States v. Maxwell*, No. 1:20-CR-00330-AJN (S.D.N.Y. Aug. 10, 2022), ECF 751 (JPMC representative Patrick McHugh testified that he did not "know the nature of the transactions" and did not think bank records facially indicated those transactions were improper); *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (court can consider "documents incorporated by reference in the complaint"). The Complaint also fails to allege that JPMC knew or should have known at the time—though it may be clear in hindsight—that Maxwell was Epstein's "main sex-trafficking madame." FAC ¶ 174.

where the money was going, *see id.* ¶¶ 110, 129, 194, 244, do not sufficiently allege that JPMC knowingly participated in an Epstein sex-trafficking venture.

Finally, the Complaint suggests that JPMC had an affirmative duty to police sex trafficking, and therefore "participated" in the venture by "failing to act on any red flags" related to Epstein. FAC ¶ 134.  But the TVPA does not require a business affirmatively to stop someone else's trafficking, and a failure to adequately uncover sex trafficking does not state a claim under the TVPA.  *See E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427-428 (N.D. Tex. 2021) (allegations that defendants failed to "properly intervene" to prevent sex trafficking were insufficient); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (same).

### 2. The Complaint does not plead facts sufficient to show that JPMC knew that Plaintiff or any specific person was trafficked by means of force, fraud, or coercion

Plaintiff also fails to plead that JPMC had either "constructive or actual knowledge that the undertaking or enterprise violated the [TVPA] *as to the plaintiff*."  *Red Roof Inns*, 21 F.4th at 726 (emphasis added).  Section 1595 "speaks in singular terms—'participation in *a* venture which that person … should have known *has* engaged in *an* act in violation of this chapter.'"  *Choice Hotels*, 473 F. Supp. 3d at 154 (alteration in original) (quoting 18 U.S.C. §1595(a)).  Plaintiff thus must sufficiently allege that JPMC knew or should have known that it facilitated a violation of §1591(a) "*as to* [*her*]."  *Red Roof Inns*, 21 F.4th at 726.

The Complaint's failure to plausibly allege that JPMC knew or should have known that Plaintiff or any other specific person was trafficked by means of force, fraud, or coercion requires dismissal.  In *Fleites v. MindGeek S.A.R.L.*, for example, the court dismissed a beneficiary liability claim against Visa because there were no allegations that Visa directly interacted with the plaintiff or the pornographic video at issue:  "[H]ow can it be said that Visa knew or should have known that Plaintiff was a victim of sex trafficking?"  2022 WL 4456077, at *9 (C.D. Cal. July 29, 2022).

In contrast, beneficiary liability claims may proceed past the pleading stage if (unlike here) the alleged beneficiary knew (1) of a specific victim and (2) that force, fraud, or coercion was being used. *See, e.g.*, *H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, at *1-3 (S.D. Ohio Dec. 6, 2019) (hotel defendant's staff allegedly saw "bottles of lubricants, boxes of condoms," and "'branding, restraints, bruises, [and] physical deterioration'"; cleaning staff saw plaintiff tied to bed and chained up in bathroom, and ignored "her desperate pleas for help"); *Canosa*, 2019 WL 498865, at *3 (corporate defendant employees "falsely assured" plaintiff "she would not be alone with Weinstein but then deserted her," and "cleaned up after the sexual assaults to avoid detection by others"); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 962, 967, 971 (S.D. Ohio 2019) (hotel defendant's staff allegedly saw victim's "physical deterioration," "bottles of lubricants, boxes of condoms, [and] used condoms in the trash," and heard her "desperate pleas and screams for help").  There is a stark contrast between those cases and this one.  While the Complaint alleges that Epstein used his cash from accounts at JPMC to pay Plaintiff, *see* FAC ¶¶ 123, 129, 252, the Complaint does not allege that JPMC knew or should have known that she or any other specific person would be induced into commercial sex using force, fraud, or coercion.

Beyond allegations that JPMC provided Epstein with banking services, the Complaint principally focuses on Jes Staley, with whom Plaintiff alleges Epstein developed a "symbiotic and special" relationship.  FAC ¶ 132.  The Complaint alleges that Staley personally visited Epstein when he was serving his jail sentence in Florida, as well as Epstein's private island in the United States Virgin Islands and Epstein's Manhattan townhouse.  *Id.* ¶¶ 203, 205, 226.  Plaintiff alleges that Staley "met many of Epstein's trafficking victims," including Plaintiff, and "personally observed the sexual abuse of young women," including Plaintiff, in the form of "Epstein sexually grab[bing] young women in front of him." *Id.* ¶¶ 226, 227.  But again, the TVPA does not federally

criminalize all forms of sexual misconduct, no matter how abhorrent—it criminalizes only the sex trafficking of "children" and "of adults that is accomplished through force, fraud, or coercion." *United States v. Tutstone*, 525 F. App'x 298, 302 (6th Cir. 2013). Plaintiff was not underage at the time, and the Complaint does not allege that Staley witnessed the use of force, fraud, or coercion to cause her to engage in commercial sex. Even after amending her complaint to try to fill this critical gap, the most that Plaintiff alleges is that that Staley saw "Epstein sexually grab[bing] young women." FAC ¶ 227. Although allegations of sexual grabbing are odious, they do not establish that Staley (and, by hypothesis, JPMC) knew that Plaintiff was a victim of sex trafficking as defined by the TVPA. Without that crucial detail, Plaintiff alleges nothing more than that a JPMC employee developed a bond with a wrongdoer customer, which does not suffice to establish JPMC's scienter. *See In re Agape Litig.*, 773 F. Supp. 2d 298, 315 (E.D.N.Y. 2011) (refusing to "infer actual knowledge from a close relationship between a bank employee and the perpetrators of the Ponzi scheme"). Plaintiff cannot establish a TVPA violation.

More generally, the Complaint alleges that reports of Epstein's sexual abuse were "widely publicized," FAC ¶ 33, in "hundreds of press reports," *id.* ¶ 211, and that Epstein also "paid to settle a number of civil lawsuits related to sexual abuse of underage girls," *id.* ¶ 216. But none of this establishes that JPMC acted with the requisite knowledge: "'Mere awareness of allegations concerning a defendant's misconduct is different from knowledge of actual misconduct.'" *United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 701 (S.D.N.Y. 2018) (Rakoff, J.) (cleaned up). And again, such general allegations of wrongdoing do not come close to satisfying "the knowledge element as to a *particular* sex trafficking venture." *Choice Hotels*, 473 F. Supp. 3d at 154. Plaintiff's reliance on "widely publicized" reports of sexual abuse lays bare her inability to establish JPMC's knowledge of any specific venture. FAC ¶ 33.

Finally, Plaintiff's allegations that JPMC failed to act upon "red flags" to investigate transactions, *see e.g.*, FAC ¶¶ 134, 163, fare no better on the scale of particularization. Allegations that a defendant missed "red flags" or failed to take appropriate steps to detect and prevent sex trafficking do not establish that the defendant "had the requisite knowledge of a specific sex trafficking venture [for it to] be held directly liable under the [TVPA]." *Choice Hotels*, 473 F. Supp. 3d at 154. Altogether, Plaintiff's allegations fail to "bridge[] the scienter gap between 'should have known' and 'might have been able to guess.'" *Id.*

### 3. The Complaint does not plead facts sufficient to show that any benefit to JPMC arose from the sex-trafficking venture

Finally, Plaintiff must allege facts sufficient to show a "causal relationship" between JPMC's alleged "affirmative conduct furthering the sex-trafficking venture and [its] receipt of a benefit" such that JPMC was receiving the benefit *in return for* its facilitation of sex-trafficking. *Geiss*, 383 F. Supp. 3d at 169-170; *Red Roof Inns*, 21 F.4th at 724. Consider *Geiss*. There, the Weinstein Company (TWC) "undoubtedly benefited" because Weinstein's "movies and influence generated revenue," some of which flowed to TWC's officers and directors. 383 F. Supp. 3d at 169-170. But, the complaint still failed because it did not plausibly allege that Weinstein provided any of those benefits to TWC *because of* TWC's facilitation of Weinstein's sexual misconduct. *Id.* In *Canosa*, on the other hand, the defendant directors allegedly engaged in conduct that was not typical of production company directors (*e.g.*, signing non-disclosure agreements with victims and paying employees to cover up Weinstein's assaults), the purpose of which could only have been to conceal Weinstein's behavior and retain him. 2019 WL 498865, at *24.

Unlike the directors in *Canosa*, JPMC is alleged to have taken actions that are entirely consistent with normal banking activity for a wealthy client. Here, Plaintiff alleges that JPMC received benefits from its relationship with Epstein, including "earning millions of dollars," FAC

¶ 267, Epstein's agreement to "bring many ultra-high wealth clients to" JPMC, *id.* ¶ 132, and a "highly profitable deal," *id*. ¶ 165.  But as in *Geiss*, what is missing, fatally, is any allegation that JPMC knew it received those benefits *because* it was providing banking services that facilitated an Epstein sex-trafficking venture.  There is no plausible allegation, for example, that Epstein threatened to pull business from JPMC if the bank did not overlook alleged red flags, or that Epstein offered his business as a reward for JPMC's purported facilitation, or even that JPMC was Epstein's only bank.  The only allegations to that effect are conclusory at best.  *See id.* ¶¶ 164, 189, 265-270.  And the well-pleaded allegations establish only that JPMC received benefits typical of working with a well-connected and wealthy individual.

### C.   The Complaint Does Not State A Claim For Perpetrator Liability For A Violation Of §1591(a)(2) (Count V)

Plaintiff alternatively pleads a perpetrator liability claim under § 1595(a) against JPMC for an alleged *criminal* violation of §1591(a)(2).  *See* FAC ¶ 349.  Here, Plaintiff's pleading burden is even higher.  To state a §1591(a)(2) claim, Plaintiff would need to show, among other things, that JPMC "*knowingly* assist[ed], support[ed], or facilitat[ed]" a criminal violation of §1591(a)(1), *id.* §1591(e)(4) (emphasis added), and that JPMC knew or "reckless[ly] disregard[ed]" that Plaintiff was trafficked, *id.* §1591(a)(2).  Because Plaintiff cannot show even constructive knowledge, as discussed above, any criminal-perpetrator liability claim must also be dismissed.

### D.   The Complaint Does Not State A Claim For Perpetrator Liability For A Violation Of §1591(a)(1) (Count VI)

Count VI pleads a perpetrator liability claim for an alleged violation of 18 U.S.C. §1591(a)(1), which should also be dismissed in short order.  Section 1591(a)(1) addresses only "direct perpetrators of sex trafficking," *Geiss*, 383 F. Supp. 3d at 169, meaning someone who criminally "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits" an underage woman to engage in a commercial sex act or an adult woman

to do so through force, fraud, or coercion, 18 U.S.C. §1591(a)(1).  The Complaint formulaically recites the language of the statute to support this claim, *see* FAC ¶ 393, but when it comes to actual factual allegations, Plaintiff is crystal clear that "Epstein and his co-conspirators," not JPMC, "sexually trafficked and sexually abused Jane Doe 1," *id.* ¶ 20.  JPMC allegedly provided banking services for *Epstein*—not JPMC—to "recruit, lure, coerce, and entice" victims to engage in commercial sex acts.  *Id.* ¶ 122.

### E.    The TVPA Aiding and Abetting Claim Should Be Dismissed (Count VII)

Plaintiff alleges that JPMC aided and abetted an Epstein sex-trafficking venture, FAC ¶¶ 407-410, 412, 416, in violation of §1591(a)(1) and (a)(2).  But §1595 provides no cause of action to sue under 18 U.S.C. §2 for aiding-and-abetting liability.  Regardless, Plaintiff's claim fails because she does not sufficiently allege that JPMC acted with the requisite scienter.

### 1.    Section 1595 does not provide a civil cause of action for aiding and abetting

Section 1595(a) provides a civil cause of action for a victim to sue only for a violation "of this chapter."  But 18 U.S.C. § 2 is not in "this chapter"; rather, it is in another chapter in Title 18. What is more, the Supreme Court and Second Circuit have made clear that where Congress has not explicitly provided for civil aiding and abetting liability, courts cannot imply a civil cause of action.  *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 185, 190-191 (1994) ("aiding and abetting liability" cannot plausibly be inferred from "statutory silence"); *accord Rothstein v. UBS AG*, 708 F.3d 82, 98 (2d Cir. 2013).  Section 1595 makes no mention of civil aiding and abetting liability, and courts have routinely concluded that it does not comprise aiding and abetting.  *See Noble*, 335 F. Supp. 3d at 525-526; *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 287 (D. Conn. 2013).

Congress has made clear that it knows how to provide for aiding and abetting liability in the TVPA and has chosen not to in §1595. *Compare* Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, § 5, 132 Stat. 1253, 1255 (2018) (rejecting definition of "participation in a venture" that included "aids or abets") *with* H.R. 1865, 115th Cong. (as introduced in House, April 3, 2017) (bill draft proposing "aids or abets" in definition of participation in a venture); *see also, e.g.*, Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, 114 Stat. 1464 (imposing immigration consequences on those who aid and abet trafficking).  And when Congress amended §1595 in January 2023 to provide for civil liability for conspiracy and attempt, it did not provide for aiding and abetting liability.  *See* Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347, 136 Stat. 6199 (2023).  Congress's intent is thus inescapable and forecloses Plaintiff's claim.

### 2. The Complaint does not plausibly allege that JPMC knew that Epstein was using its services to force, defraud, or coerce Doe to engage in commercial sex

Even if §1595 provided for civil aiding and abetting liability, Plaintiff must allege that JPMC knew it was providing "substantial assistance" to Epstein to force, defraud, or coerce Doe to engage in commercial sex.  *Noble*, 335 F. Supp. 3d at 525-526.  As discussed above (in Section II.B.2), Plaintiff's allegations do not establish the requisite scienter.

### F. The Obstruction Claim Should Be Dismissed (Count X)

Plaintiff does not have a cause of action under §1595(a) for a violation of §1591(d) because if anyone is the "victim" of a §1591(d) violation, it is the government.  In any event, the Complaint fails to allege that JPMC knew of an ongoing investigation into or prosecution of Epstein for forcing, defrauding, or coercing Doe to engage in commercial sex or that JPMC intentionally acted in some way to obstruct, attempt to obstruct, interfere with, or prevent any such efforts.

1. **A private plaintiff has no cause of action under §1595(a) for a violation of §1591(d)**

Section 1595(a) provides a civil cause of action for a "victim" of a violation of this chapter, and the "victim" of the obstruction of enforcement targeted in §1591(d) is the government—the entity "enforcing" the criminal penalties. *See, e.g.*, *Doe v. Fitzgerald*, 2022 WL 425016, at *4 (C.D. Cal. Jan. 6, 2022) (private plaintiffs have no private right of action under § 1591(d)); *see also Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1143 (D. Colo. 2019) (§1591(d) concerns only government enforcement, not investigation by private party).

2. **The Complaint fails to sufficiently plead obstruction**

Even if a private plaintiff could be considered a "victim" of obstruction, Plaintiff would have to allege (1) that JPMC knew of an ongoing investigation or prosecution into Epstein for forcing, defrauding, or coercing Doe to engage in commercial sex, and (2) that JPMC voluntarily and intentionally acted to obstruct, attempt to obstruct, interfere with, or prevent that investigation or prosecution. *See United States v. Farah*, 766 F.3d 599, 612 (6th Cir. 2014).

The Complaint fails to allege knowledge of any ongoing investigation, let alone one as to Plaintiff, as §1595(a) requires. There is no allegation that JPMC knew (or believed) that there was any ongoing investigation into Epstein's sex trafficking, or that there would or should be. In fact, JPMC had every reason to believe that there was not, and would not be, such an investigation: As of 2009 there were public reports of a *non-prosecution* agreement regarding any potential TVPA violations by Epstein. FAC ¶¶ 80, 199. The allegation that JPMC knew of an investigation into TVPA violations because Epstein had pleaded guilty to a different offense in 2008, FAC ¶ 482, is also insufficient: Plaintiff must allege actual knowledge (or belief in the existence) of an investigation into TVPA violations, not some other crime.

28

Plaintiff's obstruction theory amounts to a truism:  Cash is hard to trace, and because Epstein used his cash it was hard for the government to trace his activities.  That JPMC was one of the banks from which Epstein withdrew his cash does not transmute this truism into obstruction.  Nor does the Complaint plead obstruction through allegations regarding JPMC's alleged failure to file SARs.[10]  *See* FAC ¶ 479 ("If JP Morgan had filed timely required SARs … the appropriate federal agencies would have been well positioned to investigate Epstein[.]"); *see also id.* ¶¶ 180-181, 183.  Here, Plaintiff alleges a highly attenuated series of conjectures:  JPMC allegedly did not timely file SARs about Epstein's cash use, *id.* ¶¶ 474-476; its alleged failure to timely do so "delay[ed]" the government from investigating Epstein, *id.* ¶ 473, as the government eventually did in 2019; and JPMC failed to act knowing that its inaction would prevent the government from timely investigating Epstein's sex trafficking, *id.* ¶¶ 480-481.  This string of counterfactuals does not support the inference that JPMC knowingly attempted to obstruct or obstructed an ongoing investigation or prosecution of Epstein for forcing, defrauding, or coercing Plaintiff to engage in commercial sex.[11]

---

[10]  The Complaint alleges that JPMC "can disclose its failure to file appropriate SARs without disclosing the existence of a SAR."  FAC ¶ 477.  But this directly violates the SAR regulations, which prohibit a financial institution from confirming whether it filed a SAR *or not*.  *See* Financial Crimes Enforcement Network; Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. 75,593, 75,595 (Dec. 3, 2010) (codified at 31 C.F.R. Ch. X) (banks cannot affirmatively state that a SAR has been filed because it reveals the confidential existence of a SAR, and "[b]y extension" "any document stating that a SAR has *not* been filed" should also be confidential).

[11]  To the extent the Complaint suggests that JPMC obstructed the U.S. Attorney's Office for the Southern District of Florida's criminal investigation of Epstein from 2006 to 2008, FAC ¶ 183, there is no plausible allegation that JPMC obstructed that investigation.  Regardless, §1591(d) does not apply retroactively to such conduct—§1591(d) was added to the statute only in 2008, *see* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 222(b)(5), 122 Stat. 5044, 5069, and cannot be applied retroactively to conduct preceding its enactment, *see infra* Section II.G.1(a).

### G.      The Attempt (Count IX) and Conspiracy (Count VIII) Claims Should Be Dismissed

The TVPA imposes criminal liability for attempt (§1594(a)) and conspiracy (§1594(c)) to violate §1591.   The Complaint purports to bring *civil* claims under §1595(a) for attempt and conspiracy (*i.e.*, violations of §1594(a) and (c)) to violate three separate provisions of §1591: (1) knowingly benefitting from sex trafficking (§1591(a)(2)), (2) direct sex trafficking (§1591(a)(1)), and (3) (only as to conspiracy) obstructing TVPA enforcement (§1591(d)).   All these claims fail.

### 1.      The Complaint fails to state a claim for conspiracy or attempt to violate §1591(a)(2) by knowingly benefitting from Epstein's sex trafficking

Section 1595 does not provide a cause of action for attempt or conspiracy to knowingly benefit for conduct prior to 2023.   Even if it did, Plaintiff fails to adequately plead either attempt or conspiracy to knowingly benefit from an Epstein sex-trafficking venture (*i.e.*, violate §1591(a)(2)).

### a)      Section 1595 does not provide a civil cause of action for attempt or conspiracy to benefit from a TVPA violation for conduct prior to January 2023

Prior to January 2023, §1595 did not provide a cause of action for conspiracy or attempt to benefit from a TVPA violation; Congress did not make retroactive the 2023 amendment creating a civil cause of action for conspiracy and attempt to benefit.   Counts VIII and IX accordingly must be dismissed to the extent they proceed on a beneficiary liability theory.

The text of the statute, caselaw interpreting it, and congressional action to amend it make clear that, before the 2023 amendment, §1595 did not provide a civil cause of action for conspiracy and attempt to benefit.   First, §1595 provided a cause of action against a "perpetrator" (as of 2003), and "whoever knowingly benefits" (as of 2008).   It did not provide a cause of action against those

who "conspired to knowingly benefit" or those who "attempted to knowingly benefit" from a TVPA violation.  The only circuit court to have considered these questions concluded that such attempt liability could not be read into that statutory text.  *See Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1176 (9th Cir. 2022) (concluding that "attempt to benefit" does not satisfy §1595(a)'s requirement that a civil defendant "knowingly benefit[]" from participation in a venture that violated the TVPA), *cert. denied*, 143 S. Ct. 491 (2022).  The same logic applies to conspiracy.  Like attempt, alleging (or being liable for) conspiracy does not require completion of the underlying predicate act:  The "gist" of conspiracy is the "agreement," not the completion of the underlying crime.  *United States v. Svoboda*, 347 F.3d 471, 476 (2d Cir. 2003).  Thus, a defendant who conspires to violate the TVPA is not someone who "knowingly benefits" from a TVPA violation, but rather is someone who "agrees to knowingly benefit."[12]

Furthermore, confirming *Ratha*'s reading of the applicable statute, Congress amended §1595(a), effective January 2023, to *add* civil causes of action for conspiracy and attempt to knowingly benefit from a TVPA violation.  Had such liability existed under the prior version of the statute, Congress would not have needed to add it. [13]  The amendments do not apply

---

[12] Pursuing these claims through a "perpetrator" theory fares no better.  When trafficking under §1591(a) is at issue, civil "perpetrator" liability under § 1595(a) refers to those who have actually committed criminal violations of §1591(a).  *See, e.g.*, *A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 8674205, at *2 (E.D. Va. July 22, 2020); *Geiss*, 383 F. Supp. 3d at 167 n.3; *Doe v. Fitzgerald*, 2022 WL 2784805, at *3 (C.D. Cal. May 13, 2022).  Accordingly, a "perpetrator" is not someone who merely attempts to violate §1591(a) (for purposes of §1594(a)) or conspires to do so (for purposes of §1594(c)).  That person has not "committed a criminal offense under § 1591 of the TVPRA" and thus is not subject to "perpetrator liability."  *A.D.*, 2020 WL 8674205, at *2.

[13] Congress labeling a substantive amendment "technical" does not change the retroactivity analysis:  If it was necessary in 2023 to add the language to clarify the scope of civil liability to include conspiracy and attempt, then the pre-2023 statute did not explicitly provide for conspiracy and attempt prior to 2023.  "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there."  *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (cleaned up).

retroactively, so they have no bearing on Plaintiff's claims against JPMC, which arise from pre-2023 conduct. *Cf. Velez v. Sanchez*, 693 F.3d 308, 324-325 (2d Cir. 2012) (other amendments to §1595(a) do not apply retroactively); *Ditullio v. Boehm*, 662 F.3d 1091, 1100 (9th Cir. 2011).

> **b)** **Even if the 2023 amendment did apply retroactively, the Complaint fails to sufficiently allege JPMC attempted to knowingly benefit from Epstein's sex trafficking**

Even if §1595 provided a cause of action for attempt to knowingly benefit for conduct occurring before 2023—and it does not—Plaintiff would still have to allege that JPMC (i) specifically intended to knowingly benefit from an Epstein sex-trafficking venture in violation of §1591(a)(2), and (ii) "engaged in conduct amounting to a substantial step towards" that offense. *United States v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2003). The Complaint does not adequately plead either.

*First*, the Complaint fails to plead the required element of specific intent to commit the underlying violation of §1591(a)(2). It does not contain plausible allegations that JPMC *knew* that it received any purported benefit because it was providing banking services that facilitated an Epstein sex-trafficking venture, *see supra* Sections II.B.3-II.C—let alone that it *intended* to do so. *See* 18 U.S.C. §1591(a) ("knowingly … benefits"); *Red Roof Inns*, 21 F.4th at 724. *Second*, the "substantial step" must be conduct "'planned to culminate' in the commission of the substantive crime being attempted." *Farhane*, 634 F.3d at 147; *see also United States v. Wesley*, 417 F.3d 612, 618-619 (6th Cir. 2005). But the Complaint simply describes the ordinary course of JPMC's banking practices, *see* FAC ¶¶ 434-438, not conduct "planned to culminate" in a TVPA violation.

> **c)** **Even if the 2023 amendment did apply retroactively, the Complaint fails to sufficiently allege that JPMC conspired to knowingly benefit from Epstein's sex trafficking**

Similarly, even if §1595 provided a cause of action for conspiring to knowingly benefit for pre-2023 conduct—and again, it does not—Plaintiff would still have to allege that JPMC and other

alleged co-conspirators (i) agreed to knowingly benefit from a venture using force, fraud, or coercion to cause someone to engage in a commercial sex act, (ii) "with the specific intent to aid in the accomplishment of those unlawful ends." *Svoboda*, 347 F.3d at 477.  The Complaint's bald recital of the elements of a conspiracy claim is insufficient.

Agreement to further a joint criminal enterprise requires more than "association" with other parties, *United States v. Espinoza-Valdez*, 889 F.3d 654, 657 (9th Cir. 2018), and is not sufficiently alleged unless the "reasonable and logical inference" is that "the activities of the participants *could not have been carried out* except as the result of a preconceived scheme or common understanding" to engage in the underlying criminal conduct, *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002).  The Complaint's allegations that JPMC agreed with Epstein to keep his cash withdrawals secret, FAC ¶ 432, or that "JPMC and Epstein had a meeting of the minds," *id.* ¶ 430, are simply legal conclusions.  Without plausible factual allegations to support them, those conclusions are not sufficient.

The Complaint also fails to plausibly allege that JPMC possessed the specific intent to knowingly benefit from participation in a sex-trafficking venture.  *See United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2014).  Allegations that JPMC "provid[ed] financial support" for a sex-trafficking venture, FAC ¶¶ 434-438, speak only to Epstein's use of the services, not to JPMC's intent in providing them.  As discussed above, *see supra* Section II.B.2, the Complaint's factual allegations are insufficient to establish JPMC's scienter.

### 2. The Complaint fails to state a claim for attempt or conspiracy to violate §1591(a)(1) by perpetrating a sex-trafficking venture

The attempt and conspiracy to violate §1591(a)(1) claims fail for the reasons stated above as to the §1591(a)(1) claim, *see supra* Section II.D.  The Complaint alleges that JPMC attempted to violate §1591(a)(1) because Epstein used its financial services and withdrew cash, and because

JPMC maintained a "special and unusual" financial relationship with Epstein.  FAC ¶¶ 456-457.

The Complaint fails to allege that JPMC intended to commit or took a substantial step to

accomplish any of the conduct prohibited by §1591(a)(1), which would require allegations that

JPMC itself obtained or solicited a person knowing that the person was forced, defrauded, or

coerced to engage in a commercial sex act.[14]  As for conspiracy to violate §1591(a)(1), there is

simply no plausible allegation that JPMC specifically intended to (or agreed to) recruit, entice,

provide, obtain, advertise, maintain, patronize, or solicit any person.  *See supra* Section II.D.[15]

### 3.    The Complaint fails to state a claim for conspiracy to violate §1591(d) by obstructing enforcement of the TVPA

Plaintiff's claims for conspiracy to violate §1591(d) fail for all the reasons described above

with regard to the obstruction claim, *see supra* Section II.F.  Even if Plaintiff had a cause of action

under §1595(a) for conspiracy to violate §1591(d)—and Plaintiff does not, *see supra* Section II.F.1

—the Complaint fails to allege the specific intent required for conspiracy because it fails to allege

that JPMC knew of (or believed there to be) an ongoing investigation into Epstein's sex trafficking

of Doe, FAC ¶¶ 432-433; *see supra* Section II.F.2.  Furthermore, the Complaint does no more than

---

[14] To the extent this theory rests on any involvement that Staley may have had with Epstein, the Complaint notably is lacking in factual allegations to demonstrate that Staley solicited such a person, nor does it allege Staley's knowledge of the use of force, fraud, or coercion to cause Doe or another person to engage in a commercial sex act, *see supra* Section II.B.2.  Furthermore, an employee's personal sexual misconduct cannot be imputed to their employer, even at the motion to dismiss stage.  *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) (collecting cases); *see also Jingyu Chen v. Yong Zhao Cai*, 2022 WL 917575, at *9 (S.D.N.Y. Mar. 28, 2022) (dismissing RICO-TVPA claim against organization).

[15] To the extent Plaintiff's theory for JPMC's conspiracy liability is based on Epstein's use of force, fraud, or coercion as to Plaintiff being foreseeable as a result of JPMC's alleged agreement to enter into a sex-trafficking venture with Epstein, the Complaint's factual allegations are insufficient.  JPMC's alleged agreement must have been with knowledge of the use of force, fraud, or coercion to cause a specific person to engage in a commercial sex act, and there is simply no allegation that reasonably supports the inference that the Bank agreed to any use of force, fraud, or coercion to cause anyone to engage in a commercial sex act.

conclusorily assert that JPMC agreed to obstruct government enforcement of the TVPA.  FAC ¶¶ 427, 429, 432-433, 446.  The conspiracy to violate §1591(d) claim fails.

## CONCLUSION

The Complaint should be dismissed with prejudice.

Dated: February 7, 2023

Respectfully submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Hillary Chutter-Ames
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
hillary.chutter-ames@wilmerhale.com

*Attorneys for JPMorgan Chase Bank, N.A.*