**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jane Doe 1, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>Deutsche Bank Akteingesellschaft, et. al.,<br><br>    Defendants. | Case No. 1:22-CV-10018 (JSR) |
| Jane Doe 1, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>JPMorgan Chase Bank, N.A.,<br><br>    Defendant. | Case No. 1:22-CV-10019 (JSR) |

**PLAINTIFF JANE DOE 1'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DEFENDANT JPMORGAN CHASE BANK, N.A. TO PRODUCE RELEVANT <u>DOCUMENTS IN CLASS PERIOD PRIOR TO 2006</u>**

Plaintiff Jane Doe 1 ("Doe") submits this Memorandum of Law in Support of her Motion to Compel Defendant JPMorgan Chase Bank, N.A. ("JPMC") to Produce Relevant Documents in Class Period Prior to 2006.

## BACKGROUND

Doe moves to compel JPMC to produce custodial documents and ESI responsive to its requests for production for the same time period that matches the Class Period in her complaint. She has brought a putative class action against JPMC for its critical role in facilitating, benefiting from, and directly participating in Jeffrey Epstein's sex-trafficking venture, on behalf of herself and the following proposed class:

> All women who were sexually abused or trafficked by Jeffrey Epstein during the time when JP Morgan maintained bank accounts for Epstein and/or Epstein related-entities, which included January 1, 1998, through in or about August 2013, both dates inclusive, and continuing to the time of Epstein's death on August 10, 2019 (the "Class Period").

Dkt. 36 ("FAC") ¶ 276. She has alleged that in 1998, Epstein realized he needed a reliable bank that would, among other things, provide the necessary legitimate appearance for and facilitate the commercial aspect of his operation, so he began banking with JPMC. *Id.* ¶ 123. From 1998 through 2013, JPMC knowingly provided the financial lifeblood of Epstein's sex-trafficking enterprise. *Id.* ¶ 124. JPMC even continued to conspire with Epstein and his co-conspirators up to the time of Epstein's death in 2019. *Id.* ¶ 274.

While it appears that the parties have reached an agreement as to the custodians whose ESI JPMC will search for responsive information, JPMC has to date failed to produce *any* documents from before 2006, and is refusing to review pre-2006 materials for at least three key custodians: Jamie Dimon, Stephen M. Cutler, and Vanessa Budhu, claiming that doing so would be unduly

1

burdensome.[1]  JPMC has also failed to substantiate the purported burden of searching for and reviewing such pre-2006 documents in any meaningful or specific way.  JPMC's refusal to comply with its discovery obligations for the same period of time as Doe's Class Period flies in the face of Rule 26's broad scope of discoverability and has left Doe no choice but to file this motion.

## ARGUMENT

"A district court has wide latitude to determine the scope of discovery."  *In re Agent Orange Prod. Liability Litig.,* 517 F.3d 76, 103 (2d Cir. 2008).  Rule 26 of the Federal Rules of Civil Procedure provides that a party is entitled to discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Rule also sets forth factors to consider in analyzing proportionality:  "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*

"Where a party objects to a discovery request, the objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive by *submitting affidavits or offering evidence revealing the nature of the burden*."  *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (emphasis added); *see also Hicks v. Leslie Feely Fine Art, LLC*, 2021 WL 3617208, at *4 (S.D.N.Y. Aug. 13,

---

[1] While earlier dates for Dimon's and Budhu's documents may have been discussed in the parties' negotiations, it is unclear whether JPMC was only willing to accept those dates for their custodial documents absent plaintiffs' agreement to forego other issues.  To the extent JPMC is now taking the position that it need not produce documents from before 2006 for *any* custodian, the Court should reject that contention for the reasons set forth in this motion.

2021) ("General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information"."); *Harris v. Bronx Parent Hous. Network, Inc*., 2020 WL 763740, at *4 (S.D.N.Y. Feb. 14, 2020) (granting motion to compel documents where "Defendant has made no specific showing that producing 'all' documents responsive to these relevant requests would be overly burdensome").

Doe is entitled to discovery that supports her claims during the Class Period as set forth in her complaint, as documents and communications from this period are highly relevant to not only her claims against JPMC, but those of other Class Members. For starters, JPMC has contended in its motion to dismiss Plaintiff's claims that it did not have knowledge that Epstein was engaged in a sex-trafficking venture. ECF No. 46 at 21–24. Jeffrey Epstein started banking with JPMC in 1998. FAC ¶ 123. It follows that any documents, communications, or other materials concerning, for example, JPMC's onboarding of Epstein would be highly relevant to Doe's claims, as the JPMC-Epstein relationship—and the knowledge that JPMC had of his crimes throughout the relationship—is the centerpiece of Doe's claims *and* JPMC's defenses. JPMC cannot seriously contend that only documents after 2006 are relevant to Doe's claims when the genesis of its relationship with Epstein began at least eight years prior. Indeed, as the complaint makes clear, "between (at least) 2000 and 2005, Epstein provided clients to JP Morgan and, in exchange, JP Morgan allowed Epstein to do as he pleased with his JP Morgan accounts." *Id.* ¶ 189.

The complaint alleges many other crucial events that took place in the time period before 2006. For example, around 2000, Epstein developed a key relationship to expanding exploitative sexual abuse and his sex-trafficking operation when he began working with James "Jes" Staley, the then-head of JP Morgan's private banking division. *Id.* ¶ 125. After teaming up with Epstein, Staley was later promoted to CEO of JPMC's Asset Management in 2001. *Id.* ¶ 131. In 2004,

3

Staley, acting on behalf of JPMC, arranged for JPMC to acquire a majority stake in Highbridge Capital Management, run by billionaire Glenn Dubin, which was a highly lucrative deal for JPMC. *Id.* ¶¶ 165, 167. Highbridge, as a subsidiary of JPMC, even trafficked young women and girls on its own private jet from Florida to Epstein in New York. *Id.* ¶ 170. Staley himself was also a regular visitor of Epstein's throughout the Class Period, and personally observed Doe as a sexual trafficking and abuse victim at times including through his departure from JPMC in 2013. *Id.* ¶ 115. Message pads pulled from Epstein's Florida mansion during the Palm Beach Police Department's 2005 investigation into Epstein showed that Staley was a frequent caller as well. *Id.* at 38–39 (message pads dated 2004 and 2005). In 2005, during the criminal investigation into Epstein, Staley flew on Epstein's plane along with his co-conspirators. *Id.* ¶ 153. Documents from the 1998–2006 period (coinciding with the Class Period) would therefore be highly relevant to Doe's sex-trafficking claims.

If that were not enough, the complaint filed in *Government of the United States Virgin Islands v. JPMorgan Chase Bank, N.A.*, Case No. 22-cv-10904-JSR, details further allegations of relevant pre-2006 events that warrant discovery. FAC ¶¶ 182, 182 n.1 (adopting by reference USVI FAC (Dkt. 16) at 16–17 (S.D.N.Y. Jan. 10, 2023)). As alleged, "between 2003 and 2013," Epstein and his associates used his accounts with JPMC to make numerous payments to individual women and related companies, the recipients of which included numerous women with Eastern European surnames publicly identified as Epstein recruiters and/or victims. *Id.* ¶ 182.

It bears repeating that Epstein sex-trafficking enterprise began in the early 1990s with help from his paramour and madam, Ghislaine Maxwell. FAC ¶¶ 22, 35. Epstein was abusing girls and young women—sometimes multiple a day—for years, totaling in the hundreds of victims. *Id.* ¶ 38. It was because Epstein had expanded his sex-trafficking venture at such an accelerated rate

4

in the late 1990s that he needed the assistance of a willing bank to be his co-conspirator, which he found in JPMC. *Id.* ¶¶ 38, 39. Discovery relating to Epstein's sex-trafficking is therefore necessary to Doe's and other Class Members' claims. *See S.E.C. v. Galleon Management, LP.*, 274 F.R.D. 120, 123 (S.D.N.Y. 2011) (Rakoff, J.) (granting plaintiff's motion to compel where information sought was plainly relevant to claims and defenses and plaintiff adequately explained relevance of categories of information requested).

JPMC has not explained why it should not search for and produce pre-2006 materials. In its conferrals with Plaintiff, JPMC has not made any showing that this time period is irrelevant (nor could it, given the above), nor has it articulated any burden that would justify the wholesale exclusion of these documents. In email exchanges with the parties, JPMC has baldly stated that searching for pre-2006 documents would impose "needless burden and expense." But JPMC has not provided Plaintiff with a single piece of concrete information about the burden that searching for pre-2006 documents would impose, such as, for example, reports that show the number of documents from the pre-2006 time period that it would need to review in order to meet its discovery obligations.[2] If JPMC contends that few relevant documents from this time period exists, then searching for and producing any small number of responsive documents would impose little to no burden—but JPMC has not provided Plaintiff with such information, either. It was its burden to do so. *See Mason Tenders District Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42–43 (S.D.N.Y. 2016) (granting plaintiffs' motion to compel relevant documents for time period after December 31, 2013, the last day of the relevant auditing period, where defendants failed to provide an adequate explanation for noncompliance).

---

[2]  JPMC has provided Plaintiff with only a single report of the number of hits on proposed searched terms, but did not break out the report by time period, making it impossible for Doe to know how many of those hits are from the pre-2006 period.

Finally, if searching for pre-2006 documents is at all burdensome—a burden that Plaintiff cannot assess given JPMC's failure to provide any specific information—the needs of the case justify any such burden. Doe has brought serious, widespread, and long-running allegations against JPMC. Epstein's relationship with JPMC lasted for more than a decade, Epstein's sex-trafficking venture lasted for even longer, and the number of potential class members who were harmed by JPMC's facilitation of that venture is likely in the hundreds. If JPMC seeks to introduce evidence at trial that it was ignorant of Epstein's sex trafficking and that it was not a key player in that trafficking, discovery into its *entire* relationship with Epstein is absolutely warranted, and any burden is justified. Further, JPMC is a large institution that routinely deals with complex litigation involving substantial ESI obligations.

In sum, obtaining pre-2006 relevant documents and communications—within the very Class Period of the complaint—is proportional to Doe developing her claims, as well as the Class's claims. JPMC's refusal to do so, or sufficiently explain why it cannot, flouts the dictates of Rule 26. Accordingly, the Court should order JPMC to produce documents from before 2006. In the alternative, if JPMC does not produce documents from before 2006, the Court should preclude JPMC's ability to claim that its actions or knowledge prior to 2006 were any different than their actions and knowledge after 2006, and prevent JPMC from introducing evidence concerning that time period at trial.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Doe's motion to compel.

Dated: February 23, 2023                    Respectfully Submitted,

*/s/ David Boies*

David Boies
Andrew Villacastin
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com

Sigrid McCawley
*Pro Hac Vice*
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com

Bradley J. Edwards
Edwards Pottinger LLC
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954)-524-2822
Email: brad@epllc.com

Brittany N. Henderson
Edwards Pottinger LLC
1501 Broadway
Floor 12
New York, NY
Telephone: (954) 524-2820
Fax: (954) 524-2820
Email: brittany@epllc.com

*Counsel for Plaintiff Jane Doe 1*