**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

JANE DOE 1, individually and on behalf of all others similarly situated,

Plaintiff,

v.

JP MORGAN CHASE BANK, N.A.,

Defendant.

Case No. 22-cv-10019 (JSR)

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JANE DOE 1'S MOTION TO COMPEL**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 1

A. Doe's Allegations Related to JPMC's Interactions with Jeffrey Epstein ..... 1

B. JPMC's Agreement to Expansive Discovery ..... 3

C. Doe's Improper Filing ..... 5

ARGUMENT ..... 5

CONCLUSION ..... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Bilotta v. Novartis Pharms. Corp.*,
No. 11 CIV. 0071 (PGG), 2015 WL 13649823 (S.D.N.Y. July 29, 2015)..........................7

*EM Ltd. v. Republic of Argentina*,
695 F.3d 201 (2d Cir. 2012)..........................6

*Robertson v. People Mag.*,
No. 14-cv-6759, 2015 WL 9077111 (S.D.N.Y. Dec. 16, 2015)..........................6

*Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*,
No. 12-cv-6383, 2016 WL 4703656 (E.D.N.Y. Sept. 7, 2016)..........................7

*Vaigasi v. Solow Mgmt. Corp.*,
No. 11-cv-5088, 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016)..........................6

**Other Authorities**

Fed. R. Civ. P. 1..........................6

Fed. R. Civ. P. 26..........................6, 8

## PRELIMINARY STATEMENT

Doe's motion should not be before this Court because it seeks to re-litigate, without prior attempts at informal resolution, the start date for electronically stored information ("ESI") on which the parties already reached agreement.

Doe's motion misrepresents the record, suggesting that JPMC has refused to search for, review, and produce ESI prior to 2006. In fact, JPMC has agreed to produce pre-2006 documents for fourteen of the twenty-three agreed-upon custodians. The only three custodians Doe references in its brief—JPMC's CEO (Jamie Dimon), its former General Counsel (Stephen Cutler), and a business analyst (Vanessa Budhu)—demonstrate the baselessness of this motion. For Dimon, the parties agreed that JPMC would search his ESI back to July 2, 2004—the day he joined JPMC through a merger. For Budhu, the parties agreed that JPMC would begin in 2003, subject to JPMC's confirmation that she did not work on Epstein accounts prior to then. And Cutler did not even join JPMC until 2007. In addition to this group, from the outset, JPMC agreed to search the files of a dozen custodians back to 2000, including James Staley, the private bankers who covered Epstein, and others. For the remaining custodians, the parties agreed to individualized start dates, recognizing that one size does not fit all—particularly over such an extended period.

Doe's motion should be denied.

## BACKGROUND

### A. Doe's Allegations Related to JPMC's Interactions with Jeffrey Epstein

Prior to his arrest on federal charges in July 2019, Jeffrey Epstein was not the infamous, household name that he became. He was investigated by federal and local authorities in 2005, arrested in 2006, and he resolved those charges by pleading guilty in

Florida state court in 2008 to two solicitation charges. Dkt. 36 ("FAC") ¶¶ 79-80[1]; *see also* Dep't of Just., *Executive Summary of Report: Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and its Interactions with Victims during the Investigation* at ii (Nov. 2020) (hereinafter, "DOJ Report").[2] That same year, Epstein and federal law enforcement entered into a non-prosecution agreement. FAC ¶ 80. On the solicitation charges, Epstein was sentenced to eighteen months in county jail, but he was allowed to leave on unsupervised work release for up to twelve hours a day, and only ended up serving thirteen months of his sentence. *See id.* ¶ 106; DOJ Report at iii. In July 2019, federal prosecutors indicted Epstein for sex trafficking, and arrested him. FAC ¶ 89-90.

Although Doe's complaint alleges that JPMC's had a banking relationship with Epstein from 1998 to 2013, it contains no allegations of conduct by JPMC prior to 2000. Doe alleges that Epstein's relationship with Jes Staley began "[a]round 2000," FAC ¶¶ 125, 130, and then cites to message pads reflecting that Staley called Epstein's Florida residence seven times in 2004 and 2005, *id.* ¶ 148. This carries through to her moving papers, where none of the allegations she cites begin earlier than 2000. *See, e.g.*, Dkt. 51 ("Doe MOL") at 3 ("[A]s the complaint makes clear, 'between 2000 and 2005, Epstein provided clients to JP Morgan, and in exchange, JP Morgan allowed Epstein to do as he pleased with JP Morgan accounts.'" (citing FAC ¶ 189)); *id.* ("[A]round 2000, Epstein developed a key relationship with James 'Jes' Staley ...."). Her citation to the USVI complaint only serves to underscore that point,

---

1 For purposes of this Memorandum only, JPMC does not dispute the allegations in Doe's First Amended Complaint, because Doe relies on these allegations to establish the scope of relevant discovery.

2 Available at https://www.justice.gov/opr/page/file/1336471/download.

noting that the USVI complaint refers to alleged payments with "Epstein recruiters and/or victims" that took place "between 2003 and 2013." *Id.* at 4 (emphasis in original)).

**B. JPMC's Agreement to Expansive Discovery**

Because Doe's case has been consolidated with the case brought by the United States Virgin Islands ("USVI") for all pre-trial matters, *see* Dec. 29, 2022 Order, No. 22-cv-10904, Dkt. 5, JPMC has negotiated the scope of discovery through joint meet and confers with counsel for both Doe and USVI, throughout which USVI has made multiple custodian proposals on behalf of both plaintiffs.

For collection and review of ESI, JPMC initially proposed twelve key custodians whose files it was prepared to collect and review for a fourteen-year period (from 2000-2013[3]) using an expansive set of seventy search terms. Ex. 1 (B. Conery email from 2/3/23 at 8:11p). The custodians were selected to provide insight into Epstein's relationship with the bank throughout these years. Included in this group are Staley; the private bankers who covered Epstein's accounts from 2000 to his involuntary exit in 2013 (Mary Casey, Paul Morris, and Justin Nelson); other employees who worked on Epstein's accounts (Kyle Siebert and Tom McGraw); senior executives at JPMC's private bank (Mary Erdoes and Catherine Keating); and compliance and risk management personnel (William Langford, Philip DeLuca, Jim Dalessio, and Maryanne Ryan). *Id.*

In response, counsel for USVI—on behalf of *both* plaintiffs—wrote to demand JPMC add an additional fourteen custodians for a total of twenty-six. Ex. 2 (S. Aguiniga email on 2/6/23 at 5:44p) (sending letter seeking additional custodians "[o]n behalf of [USVI], and with consent of Victims' Counsel"). Neither plaintiff objected to JPMC's proposed start date of 2000. JPMC responded and informed both plaintiffs that this initial proposal swept in

3 JPMC subsequently agreed to expand this period to fifteen years by extending to 2014 the proposed date ranges that ended in 2013.

more than 300,000 ESI documents, which it estimated would exceed two million pages, but that it would consider plaintiffs' request. Ex. 3 (F. Ellsworth email on 2/8/23 at 1:03p).

JPMC explained that, given the accelerated nature of the case and the volume of documents generated by its proposal, JPMC did not believe that any additional custodial discovery was needed. Ex. 3 (J. Butts email on 2/10/23 at 7:26p). Nonetheless, as compromise, JPMC accepted eight additional custodians (bringing the total number to 20), but—in an effort to mitigate burden—JPMC proposed individualized time periods for these supplemental custodians. *Id.* The start date for this supplemental group was either the period in which an employee moved into a position of potential relevance (*e.g.*, John Duffy became the CEO of JPMC's US Private Bank in 2011) or 2006 when Epstein was arrested in Florida.[4]

The USVI (again, on behalf of both plaintiffs) thanked JPMC for attempting to compromise, withdrew three requested custodians, and implicitly accepted JPMC's proposed date ranges, writing that Budhu, Cutler, and Dimon were the only custodians that remained in dispute. Ex. 3 (L. Singer email on 2/12 at 9:01a). Following additional meet and confer discussions, JPMC agreed to add these three custodians as well—bringing the total number of custodians to 23 (out of Plaintiffs' requested 26)—offering for Dimon, a date range beginning on July 2, 2004 (the day he joined JPMC); for Cutler, a 2006 start (a slight misstatement as he did not join JPMC until 2007); and for Budhu, 2003-2011, based on JPMC's understanding of when Budhu work interacted with Epstein's accounts. Ex. 4 (J. Butts emails on 2/21/23 at 5:55p and 2/22/23 at 3:29p). Plaintiffs accepted these proposed start dates for all three

---

[4] JPMC agreed to add (for the time period listed parenthetically): Ann Boroweic (2006-2010); John Duffy (2011-2013); Elizabeth Hogan (2006-2013); Prashant Khanjo (2006-2013); Bonnie Perry (2006-2013); Lisa Waters (2006-2013); Marcus Sheridan (2006-2013); Valerie-Leila Jaber (2012-2013). *Id.* JPMC subsequently agreed to extend all date ranges ending in 2013 to 2014.

custodians, subject to confirmations on Cutler's and Budhu's interactions on Epstein accounts.[5] Ex. 4 (D. Ackerman email on 2/22/23 at 4:26p).

The parties have also discussed search terms, through which Plaintiffs demanded JPMC add an additional 300+ search terms. Although JPMC did not believe any were necessary, as a compromise to avoid discovery disputes, it accepted nearly all of those terms subject to certain modifications on February 23. With these additional terms run across the custodians and date ranges discussed above, JPMC's search will yield over 364,000 documents, which JPMC estimates will likely yield more than two-and-a-half million pages.

**C. Doe's Improper Filing**

On February 17, the Court granted leave for USVI to file a motion to compel, stating "[t]he USVI may file such motion by no later than 5:00 PM on 2/21/23." On February 23, USVI sought an extension to the deadline to file a motion to compel. The Court granted "USVI's application" and extended the deadline to 5:00 PM that day noting, "[t]here will be no further extensions." Without having requested (or being given) the Court's permission and without having even raised the issue with JPMC, Doe filed a motion to compel later that day, raising for the first time, its demand that JPMC's email review go back to 1998 for all custodians. It does not cite to any correspondence reflecting such a demand during the parties' lengthy and well-documented meet and confer process.

**ARGUMENT**

As detailed above, JPMC has proposed reasonable date ranges for collection, review, and production of documents from 23 custodians, including a period starting in 2000 for a dozen custodians, including, among others, Staley and the private bankers who covered

---

[5] During the discussions about the last three custodians, USVI raised the possibility of globally starting the review at 2006, but sought to impose other conditions to which JPMC did not agree, preventing resolution. *Id.* Consequently, JPMC's review will be over the periods set for the above.

Epstein, and for another 4 others, including JPMC's CEO, Jamie Dimon, and its former General Counsel, Stephen Cutler, back to date they joined JPMC. Doe's new demand for an across-the-board start in 1998 is inappropriate on many levels.[6]

The Federal Rules of Civil Procedure are intended "to 'secure the just, speedy, and inexpensive determination of lawsuits." Fed. R. Civ. P. 1. That goal is reinforced by the proportionality doctrine set forth in Rule 26(b)(1), which is consistent with the "broad latitude" of district courts "to determine the scope of discovery and manage the discovery process," *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), and "serves to exhort judges to exercise their preexisting control over discovery more exactingly," *Robertson v. People Mag.*, No. 14-cv-6759, 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015). Among other things, it considers "the importance of the discovery in resolving the issues," and whether "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In that respect, "[p]roportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016).

In addition to trying to re-trade settled issues, Doe's attempt to push the start of electronic discovery to 1998 ignores the limitations of her allegations about JPMC's alleged wrongdoing, which Doe's motion confirms begin in 2000. *See* Doe MOL at 3 ("[A]s the complaint makes clear, 'between 2000 and 2005, Epstein provided clients to JP Morgan, and

---

6 While Doe's motion focuses entirely on pre-2006 documents, JPMC adopts by reference all arguments regarding post-2014 discovery made in its opposition to USVI's motion to compel (filed contemporaneously). JPMC further notes that no class has been certified in the instant case, and Doe's allegations regarding her own sexual abuse end in either 2012 or 2013. See Dkt. No. 32 at 17-18 & n.6; FAC ¶ 113. Since her claims rely entirely on JPMC's purported knowledge of the Epstein sex trafficking enterprise Doe has alleged, post-2013 discovery is wholly irrelevant to her claims.

in exchange, JP Morgan allowed Epstein to do as he pleased with JP Morgan accounts.'" (citing FAC ¶ 189)).

The fact Doe began the putative class period in 1998 or made other conclusory allegations about 1998-2000 is not significant to this issue. *See United States ex rel. Bilotta v. Novartis Pharms. Corp.*, No. 11 CIV. 0071 (PGG), 2015 WL 13649823, at *3 (S.D.N.Y. July 29, 2015) ("[R]ote allegations of 'ongoing' illegal activity, unaccompanied by allegations of specific instances of wrongdoing, are insufficient to justify discovery beyond the time period during which specific instances of wrongdoing have been alleged."). Rather, "the party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. 12-cv-6383, 2016 WL 4703656, at *2 (E.D.N.Y. Sept. 7, 2016). Doe has not done so. Her motion is all but silent about 1998-2000, while going on about alleged wrongdoing beginning in 2000.

It is also insignificant that some custodians begin in later years. The start date for four (Dimon, Cutler, Jaber, and Khanjo) encompasses the date they joined the company. And for others, the period is tailored for other reasons, such as transferring into a relevant position (Boroweic moving from investor relations); moving into a leadership position that Plaintiffs assert makes them relevant (Duffy); or the year of Epstein's arrest in Florida.

These burden and proportionality concerns are particularly germane in that Doe's requested time period would require JPMC to collect physical back-up tapes containing data that is over two decades old and attempt to restore that date before reviewing and producing

it.[7] That expansion is cause for grave concern in any matter,[8] but particularly so here, given the fast-paced case schedule.

## CONCLUSION

For the foregoing reasons, Doe's Motion to Compel should be denied.

---

7 Because this time period was never discussed during the parties' meet-and-confer process, JPMC has not attempted to collect this ESI and is unable to confirm its existence or accessibility. In the event that the Court grants Doe's motion for discovery from 1998 onward, JPMC reserves all arguments under Fed. R. Civ. P. 26(b)(2)(B) related to the burden associated with accessing this data.

8 Doe glibly suggests, "If JPMC contends that few relevant documents from this time period exists, then searching for and producing any small number of responsive documents would impose little to no burden." Doe MOL at. 5. This reasoning is flawed. Search terms are notoriously indiscriminate, returning far more false hits than relevant documents, particularly here where Plaintiffs have insisted on voluminous terms pairing the common name "Epstein" with a common banking terms like "cash" and "KYC."

Dated: February 28, 2023

Respectfully submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth
John J. Butts
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Hillary Chutter-Ames
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
hillary.chutter-ames@wilmerhale.com

*Attorneys for JPMorgan Chase Bank, N.A.*