# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 22-cv-10018 (JSR) |
| DEUTSCHE BANK AKTIENGESELLSCHAFT, DEUTSCHE BANK AG NEW YORK BRANCH, AND DEUTSCHE BANK TRUST COMPANY AMERICAS, | |
| Defendants. | |
| JANE DOE 1, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 22-cv-10019 (JSR) |
| JP MORGAN CHASE BANK, N.A., | |
| Defendant. | |

## JPMORGAN CHASE BANK, N.A.'S REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................2

I.  The Complaint Does Not Plead A Tort Claim Against JPMC (Counts I-IV) ...................2

    A.  The Complaint Does Not State A Claim For Aiding And Abetting Battery ...........2

    B.  The Complaint Does Not State A Claim For IIED .................................................3

    C.  The Complaint Does Not State Claims For Negligence ........................................4

II. The Complaint Does Not Plead A TVPA Claim Against JPMC (Counts V-X).................6

    A.  Plaintiff's TVPA Claims Are Time-Barred ..........................................................6

    B.  The Complaint Does Not State A Claim For Beneficiary Liability For A
        Violation Of §1591(a).........................................................................................7

    C.  The Complaint Does Not State A Claim For Perpetrator Liability For A
        Violation Of §1591(a)(2) Or §1591(a)(1)...........................................................11

    D.  The Complaint Does Not State A Claim For Aiding and Abetting .....................12

    E.  The Complaint Does Not State A Claim For Obstruction ...................................12

    F.  The Complaint Does Not State A Claim For Attempt Or Conspiracy To
        Knowingly Benefit From A TVPA Violation.......................................................13

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABKCO Music, Inc. v. LaVere*,
  217 F.3d 684 (9th Cir. 2000) ...................................................................................14

*Adorno v. Correctional Services Corp.*,
  312 F. Supp. 2d 505 (S.D.N.Y. 2004)...................................................................9, 10

*Barnes v. City of New York*,
  2020 WL 6947424 (S.D.N.Y. Nov. 25, 2020)...............................................................7

*Berdeaux v. OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021).........................................................................2

*Brown v. Thompson*,
  374 F.3d 253 (4th Cir. 2004) ...................................................................................14

*Canosa v. Ziff*,
  2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ...........................................................7, 8

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)...................................................................................................12

*Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021) ...............................................................................9, 11

*E.S. v. Best Western Int'l, Inc.*,
  510 F. Supp. 3d 420 (N.D. Tex. 2021) ........................................................................8

*Elmaliach v. Bank of China Ltd.*,
  971 N.Y.S.2d 504 (App. Div. 2013).............................................................................5

*Ford v. Grand Union Co.*,
  197 N.E. 266 (N.Y. 1935)............................................................................................4

*G.G. v. Salesforce.com, Inc.*,
  603 F. Supp. 3d 626 (N.D. Ill. 2022) ..........................................................................8

*Galasso, Langione & Botter, LLP v. Galasso*,
  113 N.Y.S.3d 110 (App. Div. 2019)............................................................................6

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019)....................................................................9, 11

*Hausler v. JP Morgan Chase Bank, N.A.*,
   127 F. Supp. 3d 17 (S.D.N.Y. 2015)...................................................................7

*J.C. v. I Shri Khodiyar, LLC*,
   2022 WL 4482736 (N.D. Ga. Aug. 29, 2022) ......................................................8

*Jean-Charles v. Perlitz*,
   937 F. Supp. 2d 276 (D. Conn. 2013).................................................................10

*Kiser v. HSH Nordbank AG*,
   2010 WL 286647 (S.D.N.Y. Jan. 20, 2010) .........................................................3

*Landgraf v. USI Film Products*,
   511 U.S. 244 (1994).............................................................................................14

*LBF Travel, Inc. v. Fareportal, Inc.*,
   2014 WL 5671853 (S.D.N.Y. Nov. 5, 2014)......................................................13

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006).........................................................................2, 5, 6

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   739 F.3d 45 (2d Cir. 2013)...................................................................................5

*Maurizi v. Callaghan*,
   2022 WL 1446500 (W.D.N.Y. Feb. 25, 2022) ....................................................2

*Moreira v. Société Générale, S.A.*,
   573 F. Supp. 3d 921 (S.D.N.Y. 2021)..................................................................6

*Murphy v. Murphy*,
   486 N.Y.S.2d 457 (App. Div. 1985).....................................................................4

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018)..................................................................9

*Pinks v. Turnbull*,
   2009 WL 4931802 (N.Y. Sup. Ct. Dec. 11, 2009) ..............................................3

*Ratha v. Phatthana Seafood Co.*,
   35 F.4th 1159 (9th Cir. 2022) ......................................................................13, 14

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013)..................................................................................12

*S.J. v. Choice Hotels Int'l, Inc.*,
   473 F. Supp. 3d 147 (E.D.N.Y. 2020) ...............................................................10

*Salmon v. Blesser*,
  802 F.3d 249 (2d Cir. 2015)..........................................................................................3

*SPV OSUS Ltd. v. AIA LLC*,
  2016 WL 3039192 (S.D.N.Y. May 26, 2016), *aff'd sub nom. SPV OSUS Ltd. v. UBS
  AG*, 882 F.3d 333 (2d Cir. 2018) ...............................................................................2

*Stagl v. Delta Airlines, Inc.*,
  52 F.3d 463 (2d Cir. 1995)...........................................................................................4

*United States v. Tutstone*,
  525 F. App'x 298 (6th Cir. 2013) ...............................................................................10

*Winkler v. Battery Trading, Inc.*,
  934 N.Y.S.2d 199 (App. Div. 2011) .............................................................................5

## DOCKETED CASES

*Doe v. Epstein*, No. 08-CV-80119 (S.D. Fla. 2008) ......................................................13

## STATUTES

18 U.S.C. §2.....................................................................................................................12

18 U.S.C. §371.................................................................................................................12

18 U.S.C. §1591(a) .......................................................................................................9, 12

18 U.S.C. §1591(a)(1)................................................................................................11, 13

18 U.S.C. §1591(a)(2)................................................................................................11, 13

18 U.S.C. §1591(d) ..........................................................................................................13

18 U.S.C. §1595(a) .............................................................................................8, 9, 12, 13

18 U.S.C. §1595(c)(1).........................................................................................................6

18 U.S.C. §2333...............................................................................................................12

## OTHER AUTHORITIES

J.P. Morgan Investment Management Inc., Form ADV Part 2A (Nov. 4, 2022) ...........................1

U.S. DOJ, Off. of Pro. Resp., Executive Summary of Report, *Investigation into
  the U.S. Attorney's Office for the Southern District of Florida's Resolution of
  its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and its
  Interactions with Victims during the Investigation* (Nov. 2020) .............................13

Plaintiff's opposition does not cure the Complaint's core flaw: the lack of any legal basis for concluding that JPMC should bear liability for the crimes masterminded by Jeffrey Epstein. Simply reciting—again and again—the Complaint's allegations of appalling wrongdoing by Epstein and other participants in his purported venture, alongside bare conclusory statements, does not address the *legal* deficiencies described in JPMC's motion.

For example, the opposition devotes pages and pages to referencing the same allegations concerning Jes Staley, a former JPMC executive who allegedly met Plaintiff and witnessed sexual groping of Plaintiff and others.  *See* Opp. 2-4, 6, 15, 24, 26.  But, notably, nowhere does the Complaint offer any allegations to support that Staley witnessed or knew that Plaintiff or anyone else was subject to *trafficking*—*i.e.*, force, fraud, or coercion to engage in commercial sex.  Nor do any allegations explain how any of Staley's purported misdeeds with regard to Plaintiff were plausibly within the scope of his employment such that JPMC is liable.  Similarly, the opposition baldly alleges over and over that Highbridge "trafficked" women and girls on a private plane.[1] Opp. 2, 5-7, 11-16, 20-21, 35.  While if true, that allegation would be abhorrent, it does not actually establish how and when any of the alleged trafficking occurred; that Plaintiff herself was involved in any way; or that JPMC should have known that unspecified individuals used a plane Highbridge allegedly owned for purported sex trafficking.  That Plaintiff leans on these same conclusory allegations as proof of nearly every element of every one of her ten claims is telling and inadequate.

Neither the sheer volume of the Amended Complaint nor the repetition of the same allegations in Plaintiff's brief explains away the legal deficiencies of each of the claims.  The Complaint should be dismissed with prejudice.

---

[1] While they share a corporate parent, Highbridge is not a subsidiary of defendant JPMC. *See* J.P. Morgan Investment Management Inc., Form ADV Part 2A (Nov. 4, 2022), at Item 4(A).

## ARGUMENT

### I.   THE COMPLAINT DOES NOT PLEAD A TORT CLAIM AGAINST JPMC (COUNTS I-IV)

#### A.   The Complaint Does Not State A Claim For Aiding And Abetting Battery

Count I fails because Plaintiff has not established that JPMC knew of or substantially assisted her battery.  First, she fails to plead the "requisite knowledge for aiding and abetting," *see* Opp. 7, which is actual knowledge of the underlying tort, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006).   Contrary to Plaintiff's assertion, Opp. 6, this actual knowledge requirement applies even when Rule 9(b)'s heightened pleading standard does not, *see Lerner*, 459 F.3d at 294 (aiding and abetting fiduciary breach).   Plaintiff cites no authority for a lesser knowledge requirement for aiding and abetting a battery.  While courts in this district have split over whether "allegations of conscious avoidance" establish actual knowledge for "aiding and abetting fraud," *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 415-416 (S.D.N.Y. 2021), Plaintiff does not explain why this applies to her *battery* claim, or how she plausibly alleged that JPMC knew of her existence, let alone was "willfully blind" to Epstein's conduct towards her.

Plaintiff's substantial assistance theories also fail because she does not establish that JPMC committed any intentional acts to cause or encourage the battery.  Mot. 6-7.  Indeed, she cites no case holding that a plaintiff can establish substantial assistance under New York law absent allegations of deliberate conduct that contributed to the battery.  *Cf. Maurizi v. Callaghan*, 2022 WL 1446500, at *14 (W.D.N.Y. Feb. 25, 2022) (defendant knew of alleged abuse by employee and yet endorsed employee for new position where abuse of plaintiff continued).  Equally puzzling is Plaintiff's quarrel with *SPV OSUS Ltd. v. AIA LLC*, which squarely held that even making financial resources available to a tortfeasor does not constitute substantial assistance.  2016 WL 3039192, at *6 (S.D.N.Y. May 26, 2016), *aff'd sub nom. SPV OSUS Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018).  Despite Plaintiff's overstatement, she merely describes an alleged "fail[ure]

to stop Epstein's actions or fail[ure] to act on warning signs," Opp. 7-8 (citing allegations that JPMC made Epstein's own cash available to him and failed to prevent structuring violations or file SARs), and repeats her deficient conclusory statement regarding Highbridge. She alleges no deliberate conduct by JPMC that contributed to her battery.[2]

## B.     The Complaint Does Not State A Claim For IIED

Plaintiff has not established that JPMC engaged in extreme and outrageous conduct that was intentionally directed at her. The Court should thus dismiss her IIED claim at the pleading stage—which, contrary to Plaintiff's suggestion, Opp. 9, courts routinely do, *see e.g.*, *Salmon v. Blesser*, 802 F.3d 249 (2d Cir. 2015) (duplicative IIED claim dismissed); *Kiser v. HSH Nordbank AG*, 2010 WL 286647, at *1 (S.D.N.Y. Jan. 20, 2010) (failure to plead outrageous conduct).

Plaintiff falls far short of establishing behavior by JPMC that "go[es] beyond all possible bounds of decency." *Kiser*, 2010 WL 286647, at *1. She does not identify any case allowing IIED claims to proceed in the absence of outrageous affirmative conduct, or even point to a case holding an institution liable for enabling the misconduct of a non-employee third party. *Cf. Pinks v. Turnbull*, 2009 WL 4931802, at *6 (N.Y. Sup. Ct. Dec. 11, 2009) (employer on notice of sexual abuse by employee failed to protect plaintiff and even sent plaintiff to summer program where he would be in abuser's presence); *see also* Mot. 9 (citing cases). As JPMC has shown, the Complaint does not plausibly allege that JPMC affirmatively participated in any sex-trafficking venture. Mot. 18-21. No matter how Plaintiff tries to repackage them, *see* Opp. 9-11, allegations that JPMC provided routine banking services to Epstein, or allegedly failed to detect and prevent Epstein's use of money in his accounts at JPMC to facilitate a purported sex-trafficking venture involving

---

[2] Cases about primary liability for sexual assault under a concerted action theory, *see* Opp. 7, do not support Plaintiff's claim. She does not allege that JPMC committed sexual assault or argue that concerted action provides for liability absent knowledge or substantial assistance.

Plaintiff, do not establish the "continuous nature of abusive conduct," *see* Opp. 9 n.2, let alone the extreme and outrageous conduct a viable claim for IIED requires.

Nor can Plaintiff establish that JPMC intentionally directed any conduct at her.  Plaintiff lobs assertions that range from the conclusory, FAC ¶ 303 (alleging IIED "against Jane Doe 1"), to the utterly unpled, *see* Opp. 11 (proclaiming JPMC facilitated withdrawals and acquired Highbridge "for the specific purpose [of] trafficking").  But none demonstrates that JPMC knew of Plaintiff's existence, let alone intended to cause her emotional distress.[3]

### C.    The Complaint Does Not State Claims For Negligence

Plaintiff does not dispute that New York law ordinarily imposes no duty on JPMC to protect non-customers from its customers' intentional torts.  Opp. 12.  Because Plaintiff cannot justify a departure from this black-letter principle, it forecloses her negligence claims.

First, JPMC is not liable for the injurious conduct of third parties such as Epstein.  Mot. 10-11.  Plaintiff argues that an exception applies because "JPMC (through its agent-employee, Staley, and others)" "create[d] a risk of physical harm" by setting "forces … in motion" that resulted in her injuries, Opp. 12, but she fails to cite any case imposing liability under such a rule-swallowing exception.  In *Stagl v. Delta Airlines, Inc.*, an airline owed a "traditional landowner's duty" to a passenger injured in the baggage area.  52 F.3d 463, 468-469 (2d Cir. 1995).  And in *Ford v. Grand Union Co.*, a business that owed a duty as employer and landowner to a third party injured by employees' recklessness was not liable because its employees acted outside their employment, 197 N.E. 266, 268 (N.Y. 1935), as Staley would have been in connection with the Plaintiff's allegations concerning his actions.  Nor does the Complaint establish that JPMC's

---

[3] Plaintiff also fails to plead that JPMC caused her injuries.  *See Murphy v. Murphy*, 486 N.Y.S.2d 457, 459 (App. Div. 1985) (IIED requires proximate cause); *see also infra* p. 6.

conduct *set in motion* forces that injured Plaintiff by offering routine financial services that Epstein purportedly used to fund a sex-trafficking venture, or do more than baldly reference unspecified trafficking of unspecified women—not Plaintiff—on an alleged Highbridge plane.  Opp. 12-13. Indeed, to the contrary, Plaintiff admits Epstein had already built a purported "sex trafficking operation" before he began banking with JPMC.  FAC ¶ 123.

Second, Plaintiff does not dispute the general rule that banks "do not owe non-customers a duty to protect them from the intentional torts of their customers." *Lerner*, 459 F.3d at 286 (citation omitted); *see* Opp. 13.  She offers no reason to deviate from this rule, which New York courts reaffirm routinely.  *E.g.*, *Winkler v. Battery Trading, Inc.*, 934 N.Y.S.2d 199, 201 (App. Div. 2011).  And she admits that neither the BSA nor alleged red flags impose a duty on JPMC.  Opp. 14 n.5.  Contrary to Plaintiff's assertion, banks do not owe noncustomers a general "duty to not perform non-routine banking services." *Id.*  No case cited by Plaintiff has imposed such a duty. *Elmaliach v. Bank of China Ltd.* held only that a New York court may recognize a duty to noncustomers *under Israeli law* where a bank "knowingly facilitated acts of terrorism against innocent civilians." 971 N.Y.S.2d 504, 517 (App. Div. 2013).  But it nowhere suggested that banks can be liable to noncustomers absent allegations of knowing involvement in terrorist activity.  *See id.*  In fact, the Second Circuit suggested that no such duty existed while rejecting *Elmaliach*'s core choice-of-law holding as a misreading of New York law.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50 (2d Cir. 2013) (describing New York as place "whose laws did not impose … a duty").  None of Plaintiff's allegations, Opp. 14, establishes that JPMC harmed her by engaging in "non-routine banking services."  She alleges only JPMC's failure to exercise appropriate vigilance by detecting "structuring violations" or timely reporting suspicious activity, FAC ¶¶ 189, 224, and acts not alleged to have injured her at all, *id.* ¶¶ 170, 203.

Plaintiff likewise fails to establish that JPMC caused her injuries. A bank does not proximately cause injuries to noncustomers inflicted through the use of the customer accounts alleged to be at issue here. Mot. 14-15. Plaintiff cites no case holding otherwise. She instead relies on cases finding proximate cause in the specific context of *trust* accounts, where, unlike here, noncustomers may be foreseeable victims of a bank's failure to safeguard against a customer's misappropriation. *See Lerner*, 459 F.3d at 289-290; *Galasso, Langione & Botter, LLP v. Galasso*, 113 N.Y.S.3d 110, 116 (App. Div. 2019). Plaintiff does not dispute that to establish foreseeability, she must plausibly allege that JPMC knew or should have known its conduct would harm *her*. But Plaintiff cannot, as she attempts to, Opp. 15, make this showing by alleging that Staley, acting outside the scope of his employment, observed her abuse. *See supra* p. 1.

## II.   THE COMPLAINT DOES NOT PLEAD A TVPA CLAIM AGAINST JPMC (COUNTS V-X)

### A.   Plaintiff's TVPA Claims Are Time-Barred

Plaintiff's opposition argues that she has alleged sex trafficking "through 2013," Opp. 19, but the Complaint actually pleads that she was sexually abused "on a number of occasions" at unspecified times "from 2006 through 2013," FAC ¶ 99. There is no specific allegation that Plaintiff was a victim of trafficking within the ten-year limitations period established by 18 U.S.C. §1595(c)(1)—much less any specific allegation that JPMC somehow contributed in any legally significant manner to any injury Plaintiff suffered within that time period.[4] Mot. 17-18; *see also Moreira v. Société Générale, S.A.*, 573 F. Supp. 3d 921, 928-929 (S.D.N.Y. 2021) ("[C]onclusory assertions of 'continuing' or 'ongoing' conduct do not cut it."). The same problem time-bars the conspiracy claim, since Plaintiff does not allege any specific "overt act alleged to have caused

---

[4] Plaintiff's argument that "JPMC's culpability extended beyond" when it exited Epstein in August 2013, Opp. 19, relies on only conclusory allegations, *see* FAC ¶¶ 186-187, and alleges no injuries that *she* suffered after 2013, when she alleges she escaped from Epstein, *id.* ¶ 113.

damage" to her within the limitations period.  *Barnes v. City of New York*, 2020 WL 6947424, at *3 (S.D.N.Y. Nov. 25, 2020) (cleaned up)).[5]

### B.     The Complaint Does Not State A Claim For Beneficiary Liability For A Violation Of §1591(a)

The Complaint does not plausibly allege that (1) JPMC participated in an Epstein sex-trafficking venture; (2) JPMC knew or should have known that the venture violated the TVPA as to Plaintiff; or (3) JPMC received benefits in exchange for its purported participation.

***No Participation.***  Allegations that JPMC provided routine banking services to Epstein— which he, in turn, illicitly used for sex trafficking—are insufficient to plausibly allege JPMC's participation in a sex-trafficking venture.  *See* Mot. 18 n.7 (arguing Plaintiff must establish JPMC "took part in the common undertaking of sex trafficking").  Plaintiff implicitly concedes this point, arguing instead that JPMC's provision of cash and wire services to Epstein was not routine—and that JPMC's conduct is "the same," Opp. 21, as that of the production companies in *Canosa v. Ziff*, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019).  Not so.  In *Canosa*, the production companies allegedly employed women responsible for "introducing Weinstein to young women and covering up his assaults."  *Id.* at *23.  These employees "gave Weinstein the medications … to perform sexual acts" and "cleaned up after his sexual assaults."  *Id.*  The companies even allegedly "linked … job benefits" to the sexual assaults.  *Id.*  None of this can plausibly be characterized as the routine activity of a production company.  And, even under Plaintiff's telling of events, JPMC did

---

[5] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████

not instruct employees to introduce Epstein to sex-trafficking victims; did not provide Epstein the instrumentalities of his sexual activity; and certainly did not pay its employees per-sexual-assault.[6]

*G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626 (N.D. Ill. 2022), is the more apt comparison. There, the court found that the complaint did not plausibly allege "Salesforce's *own* participation in any venture with Backpage" even though Salesforce's ordinary platform services "played a critical role in Backpage's expansion." *Id.* at 648 (emphasis added). Plaintiff's claim that *Salesforce.com* is inapposite because Salesforce only "provided its standard software to sex-trafficking website Backpage and nothing more," whereas JPMC "permitted Epstein and his co-conspirators to withdraw large sums of cash to pay victims," Opp. 20, again confuses JPMC's provision of routine banking services with Epstein's independent use of his withdrawn cash toward illicit ends. And Plaintiff's conjecture that JPMC's services somehow became extraordinary because JPMC allegedly failed to detect certain "red flags," Opp. 21, overlooks that a mere failure to detect sex trafficking does not constitute §1595(a) "participation" in it. *See E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427-428 (N.D. Tex. 2021).

Plaintiff alternatively pivots to arguing that, "through Highbridge," JPMC "*actually trafficked* women and girls." Opp. 21. But the Complaint includes no factual allegations whatsoever to support its bare legal conclusion that Highbridge "trafficked … women." FAC ¶ 170. In addition, the Complaint does not allege that Plaintiff herself was among the passengers on an alleged Highbridge plane—as is required for her to bring this lawsuit as a "victim" of the sex-trafficking venture under §1595(a)—or that JPMC knew or should have known at the time that

---

[6] Plaintiff's reliance on *J.C. v. I Shri Khodiyar, LLC* and other similar motel cases fares no better. 2022 WL 4482736 (N.D. Ga. Aug. 29, 2022); *see* Opp. 22. While renting rooms might be the ordinary commercial activity of a motel, renting rooms continuously to the same individuals—despite "obvious signs, characteristics, and behaviors of a minor victim of sex trafficking[,]" including physical deterioration, injuries, and soliciting male patrons—is not. *Id.* at *5.

any passengers on an alleged Highbridge plane were victims of an Epstein sex-trafficking venture. Nor does Plaintiff provide any explanation of how any employee who allegedly used a Highbridge plane for sex trafficking was acting within their scope of employment, thus permitting attribution to Highbridge. *See Adorno v. Correctional Servs. Corp.*, 312 F. Supp. 2d 505, 516-517 (S.D.N.Y. 2004). Even more, Plaintiff provides no basis for attributing Highbridge's conduct to JPMC, an entity that shares a corporate parent with Highbridge, when otherwise Highbridge is not alleged to have any involvement whatsoever in JPMC's business operations.[7]

It remains true that this case falls short even of *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019), and *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018). *See* Mot. 19-20 & n.8. Plaintiff's attempt to distinguish *Noble* because the defendant in *Noble* only "facilitated the perpetrator's travel" fails because JPMC likewise only provided Epstein with banking services. Opp. 22 n.10. The allegations that these banking services were anything but routine fail for the reasons discussed *supra* at pp. 7-8. Plaintiff's claim that *Geiss* is distinguishable because it involved conduct that "occurred after the trafficking" is undercut by the gravamen of her own complaint—that JPMC allegedly "helped to conceal" the venture's existence. FAC ¶ 366.

***No Knowledge.*** Plaintiff's claim should also be dismissed for failing to allege that JPMC had either "constructive or actual knowledge that the undertaking or enterprise violated the [TVPA] *as to the plaintiff*." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021) (emphasis added). Plaintiff resists this requirement, arguing that the TVPA does not require "an allegation that the defendant knew that the plaintiff specifically was being trafficked." Opp. 24. JPMC has never argued otherwise. The problem is that Plaintiff cannot demonstrate constructive

---

[7] Finally, the Complaint alleges that Highbridge trafficked women "as late as 2012," FAC ¶ 170, but only conduct after November 24, 2012 could fall within Plaintiff's claims under the statute of limitations, *see supra* Part II.A.

knowledge as to her either.  Plaintiff's own case was clear in finding that "an abstract awareness of sex trafficking" in motels did not suffice:  "The real issue is … whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture."  *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).  Because the TVPA allows only "a victim of a violation of this chapter" to sue, that "particular sex trafficking venture" must involve the plaintiff.  No sufficient allegation of knowledge as to such a venture is made here.

Plaintiff alternatively argues that she has satisfied this element because Staley "frequented Epstein's New York mansion (a site of sexual abuse), visited Epstein's stash house and observed Doe there."  Opp. 24.  But although the Complaint alleges that Staley witnessed misconduct in the form of "Epstein sexually grab[bing] young women in front of him," it does not allege that Staley witnessed sex trafficking through the use of force, fraud, or coercion—the only misconduct addressed by the TVPA.  *See United States v. Tutstone*, 525 F. App'x 298, 302 (6th Cir. 2013).  Finally, Plaintiff fails to establish that any of this conduct occurred within Staley's scope of employment and therefore can be imputed to JPMC.  *See Adorno*, 312 F. Supp. 2d at 516-517.[8]

Plaintiff fails to explain how Epstein's 2008 solicitation guilty plea would give JPMC actual or constructive knowledge that Epstein was engaging in ongoing sex trafficking of Plaintiff and using his funds to do so.  Opp. 23.  The rest of Plaintiff's scienter argument recites statements from the Complaint revealing knowledge of mere allegations of Epstein's misconduct.  *E.g.*, FAC

---

[8] Plaintiff's allegations regarding Staley are nothing like those in *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 280, 288-289 (D. Conn. 2013) (plausible inference that defendant priest knew of child sex trafficking because he allegedly "had an inappropriate sexual relationship" with perpetrator of child sexual abuse and "shunned" administrator who tried to stop perpetrator's child sexual abuse).  And because Plaintiff was an adult at the time of the relevant conduct, the TVPA requires Staley, unlike in *Perlitz*, to have known of force, fraud, or coercion.

¶¶ 207-208, 211-212.  But those generalized allegations of wrongdoing fail to establish that JPMC knew or should have known that Epstein was using his funds to traffic Plaintiff.  Mot. 23.

*No Benefit.*  Finally, Plaintiff's beneficiary claim fails because she has not demonstrated that JPMC was receiving any benefit *in return for* its facilitation of sex trafficking.  *See Geiss*, 383 F. Supp. 3d at 169-170; *see also Red Roof Inns*, 21 F.4th at 724.  She cites only allegations that "Epstein made it clear to Staley that if [JPMC] ever decided *to terminate its relationship* with Epstein, the bank would lose [] wealthy connections," FAC ¶ 152 (emphasis added), and that JPMC believed "Epstein was too valuable of a client to let go," *id.* ¶ 214; *see* Opp. 27.  But JPMC did, in fact, let Epstein go in 2013—and the Complaint does not allege JPMC lost any benefit thereupon.  FAC ¶ 263.  Further, Plaintiff does not explain how *outflows* of Epstein's own cash from JPMC to supposedly pay his victims for sex could have benefited JPMC, nor does she plausibly allege that any bank would knowingly risk handling unlawful transactions when any wire transfer fee, for example, would be no greater than for lawful transactions.  In short, she does not explain how JPMC financially benefited because of Epstein's trafficking, as the TVPA requires.

### C.   The Complaint Does Not State A Claim For Perpetrator Liability For A Violation Of §1591(a)(2) Or §1591(a)(1)

Plaintiff's *criminal* §1591(a)(2) perpetrator liability claim necessarily fails: she cannot even show the constructive knowledge required for civil beneficiary liability, let alone the actual knowledge required by the criminal law.  Apart from a footnote purporting to preserve this claim, Opp. 28 n.13, Plaintiff says nothing about it.  Meanwhile, Plaintiff's §1591(a)(1) direct sex-trafficking claim fails because the Complaint is clear that "Epstein," not JPMC, "sexually abused and trafficked" her.  FAC ¶ 98.[9]

---

[9] In addition to repeating the deficient Highbridge allegation, *see supra* p.1, Plaintiff underscores an allegation that a "powerful financial executive" sexually assaulted Plaintiff, FAC ¶ 107.  Sexual assault is abhorrent but not synonymous with sex trafficking for purposes of proving

### D.      The Complaint Does Not State A Claim For Aiding and Abetting

Plaintiff's opposition ignores that Congress specifically chose not to include aiding and abetting liability in the TVPA.   Mot. 27.   Plaintiff instead engages in an atextual reading of §1595(a) that renders the words "this chapter" a nullity and the TVPA-specific conspiracy provisions of §1594 superfluous, given 18 U.S.C. §371.   *See* Opp. 29.   Because 18 U.S.C. §2 is not part of Chapter 77, the plain text of §1595(a) does not apply to violations of §2.   Plaintiff's attempt to extend the word "perpetrator" to cover one who commits *any* violation of *any* chapter in Title 18 cannot be squared with the statute's text.[10]   The Complaint also fails to plausibly allege JPMC knew it was providing "substantial assistance" to Epstein.   Mot. 27; *see supra* pp. 9-10.

### E.      The Complaint Does Not State A Claim For Obstruction

Plaintiff's opposition ignores the cases specifically holding that the victim of any obstruction under the TVPA is the government.   *See* Mot. 28; Opp. 30.   Instead, Plaintiff points to criminal cases allowing restitution for non-TVPA crimes and the inapposite observation that, under the Crime Victims' Rights Act, victims have a right to be heard in court proceedings (but not the right to sue in civil court for obstruction of government enforcement).   Plaintiff fails to explain how any of these non-TVPA criminal proceedings demonstrate why a civil plaintiff may sue for obstruction of a government investigation into TVPA violations.   Even if such a claim were available, it would fail because the FAC lacks any allegations that JPMC knew of any ongoing government investigation into Epstein's sex trafficking.   The only government investigations

---

a violation of the TVPA.  Moreover, the Complaint does not establish that sexual assault could in any way be within the scope of a financial executive's employment.

[10] Plaintiff tries to limit *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), to implied rights of action—but the holding was not so limited, as Second Circuit precedent firmly establishes.   *See* Mot. 26; *Rothstein v. UBS AG*, 708 F.3d 82, 97-98 (2d Cir. 2013) (no aiding and abetting liability under 18 U.S.C. §2333's express right of action).

Plaintiff mentions are the pre-2008 Southern District of Florida investigation and the pre-2019 SDNY investigation.  FAC ¶ 183.  But §1591(d) was added to the TVPA effective December 23, 2008, without retroactive effect, and none of Plaintiff's allegations show knowledge or obstruction of an ongoing investigation after that date.[11]  Plaintiff's other arguments fail to show obstruction and are unrelated to knowledge of any ongoing government investigation.[12]

### F.    The Complaint Does Not State A Claim For Attempt Or Conspiracy To Knowingly Benefit From A TVPA Violation

Plaintiff now narrows her §1594 allegations to two claims:  attempt and conspiracy to knowingly benefit from a sex trafficking venture in violation of §1591(a)(2).[13]  Both fail.

***No Retroactive Right of Action.***  The 2023 amendment to the TVPA does not apply retroactively to provide a right of action under §1595(a) for attempt or conspiracy to knowingly benefit from a sex-trafficking venture for the pre-2023 conduct alleged here.  Without repudiating the Ninth Circuit's decision in *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1176 (9th Cir. 2022), Congress passed an amendment that changed a defendant's substantive liability under the

---

[11] There is no allegation that JPMC could have known of, let alone obstructed, the Florida investigation prior to the NPA becoming public in September 2009, or that the investigation was ongoing.  U.S. DOJ, Off. of Pro. Resp., Executive Summary of Report, *Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and its Interactions with Victims during the Investigation* at i-iii (Nov. 2020).  Epstein's June 30, 2008 guilty plea to a state charge is not knowledge of a TVPA investigation and predates §1591(d)'s effective date.  *Id.* at ii.  And none of Plaintiff's cited allegations, Opp. 31, allege that JPMC knew of the SDNY investigation prior to 2019.

[12] A motion to quash a civil subpoena granted in default, FAC ¶ 223, *see Doe v. Epstein*, No. 08-CV-80119 (S.D. Fla. 2008) Dkt. 454, is neither obstruction nor a *government* investigation.  Opp. 30-31.  The bare assertion that JPMC "fail[ed] to timely file required SARs," *e.g.*, FAC ¶ 356, neither alleges obstruction nor JPMC's knowledge of any ongoing investigation.  Mot. 29.

[13] Because Plaintiff advances no arguments as to her attempt or conspiracy to violate §1591(a)(1) or her conspiracy to obstruct TVPA enforcement claims, *see* Mot. 33-35, Opp. 30-35, the Court should dismiss those claims as abandoned.  *See LBF Travel, Inc. v. Fareportal, Inc.*, 2014 WL 5671853, at *16 (S.D.N.Y. Nov. 5, 2014).

statute.[14]  And Congress chose not to make that amendment retroactive—which it knows how to do, even when it passes "clarifying" amendments, as Plaintiff's own cases demonstrate.[15]  None of Plaintiff's quotations support such a confounding evasion of the *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), retroactivity analysis.[16]  The touchstone is whether Congress intended a substantive increase of a party's liability retroactively, not the formalistic label of its amendment.

***No Conspiratorial Agreement or Specific Intent.***  The allegations that Plaintiff points to in the Complaint, Opp. 34, fall far short of giving rise to the plausible inference that JPMC agreed with Epstein to knowingly benefit from furthering a criminal sex-trafficking conspiracy.  Plaintiff refers to the same bad actor as "the head of JPMC's private banking division" and "an executive," Opp. 34, to misleadingly argue that "member*s*" (plural) of an organization committed crimes, were present where the crimes were committed, and used code words to avoid detection.  But allegations concerning one bad actor's alleged sexual misconduct cannot render an employer liable for that misconduct, let alone establish the much further-reaching proposition that an employee's sexual misconduct constitutes the employer's agreement to engage in a conspiracy.[17]  Without any

---

[14] Plaintiff briefly tries to dismiss *Ratha*.  Opp. 32 n.18.  But similar to attempt, a TVPA conspiracy does not necessarily result in an actual benefit or a victim—it requires only an agreement and specific intent to benefit, but no overt act, actual benefit, or victim.  Mot. 31.

[15] *See Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) (amendment "expressly provided" that "clarifying amendments be made effective 'as if included in the enactment'" of prior legislation); *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689-692 (9th Cir. 2000) ("clarifying" amendment *specifically* applied "for any purpose" to distribution "before January 1, 1978").  As these cases show, the word "technical" by itself does not mean "retroactive."

[16] All involve inapposite situations where Congress signaled its position on a changing agency interpretation through a clarifying amendment and thus did not implicate the *Landgraf* analysis or involve increasing a party's civil liability for pre-enactment conduct.  Opp. 32.

[17] Plaintiff does not dispute that an employee's sexual misconduct cannot be imputed to an employer for negligent supervision, but confusingly argues—without citation—that it can be imputed to make this far larger leap.  Opp. 34 n.19.  Plaintiff similarly fails to cite a single case for why an employee's seniority changes the fundamental proposition.  *Id.*; Mot. 34 n.14.

allegation that JPMC knew at the time that passengers on a plane allegedly owned by Highbridge were being "trafficked," FAC ¶ 170, the legally conclusory allegation is insufficient, *see supra* pp. 1, 8-9.   And while Plaintiff's opposition says that "JPMC used" the accounts, the Complaint actually states that "*Epstein made payments* from these accounts," FAC ¶ 182 (emphasis added). This does not support, let alone plausibly, that *JPMC* agreed to anything.

Plaintiff's "quid pro quo" legal conclusions are not supported by any plausible factual inferences of specific intent to knowingly benefit.  Opp. 33.  While the Complaint recites the legal quid pro quo conclusion, FAC ¶ 173, there are no specific factual allegations to support it, but instead, contradictions: it is implausible that Epstein offered his business "exclusively" to JPMC "because" JPMC was purportedly aiding and concealing Epstein's conduct when Epstein moved his accounts to Deutsche Bank as soon as JPMC exited him in 2013.  *Id.* ¶¶ 139, 263.  Again, nothing in the Complaint alleges that JPMC received "exceptionally high rewards" that were inconsistent with JPMC's banking for any high-wealth client.  Opp. 33.

*No Attempt.*   First, just as the allegations are insufficient to allege specific intent as to conspiracy, they are also insufficient as to attempt.  Second, JPMC's supposed "substantial steps," Opp. 35, are either legal conclusions, FAC ¶¶ 457, 170, 176, or lack any factual basis for asserting that JPMC was purportedly continuing to bank Epstein because it was supposedly making so much money from sex trafficking, *id.* ¶ 172, as opposed to normal banking activity.  That Plaintiff yet again mischaracterizes the Complaint to argue that *Epstein's* actions in withdrawing his own cash and paying his victims, *id.* ¶ 155, are somehow *JPMC's* substantial steps, further demonstrates the deficiency of the attempt allegations.

## CONCLUSION

The Complaint should be dismissed with prejudice.

Dated: February 28, 2023

Respectfully submitted,

**WILMER CUTLER PICKERING
   HALE AND DORR LLP**

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth
John J. Butts
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Hillary Chutter-Ames
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
hillary.chutter-ames@wilmerhale.com

*Attorneys for JPMorgan Chase Bank, N.A.*

16