LAW OFFICES
## WILLIAMS & CONNOLLY LLP®

BRENDAN V. SULLIVAN, JR.
(202) 434-5800
bsullivan@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

April 6, 2023

Hon. Jed S. Rakoff
Via ECF

    Re:    <u>Third-Party Defendant James Staley's Motion to Sever and Reconsider</u>

Dear Judge Rakoff:

    Third-Party Defendant James Staley became a party to these cases less than a month ago. The allegations against him are baseless but serious: Mr. Staley is accused of aiding and abetting Jeffrey Epstein, one of the most notorious criminals in recent American history. As to potential liability, Third-Party Plaintiff JPMorgan Chase Bank, N.A. seeks to hold Mr. Staley liable for the entirety of any judgment entered in not one but two cases. It also seeks to disgorge several years of compensation. All that is to say: the stakes could hardly be higher for Mr. Staley. Disproving these false and highly-publicized allegations is of paramount importance to him. Yet this Court's scheduling rulings have severely prejudiced his ability to do so. Despite the high stakes and the massive volume of discovery, the Court entered a schedule that afforded Mr. Staley ***less than one month*** to serve written discovery and ***roughly two and a half months*** to complete fact discovery. By contrast, even though JPMorgan seeks to offload all liability onto Mr. Staley, it has been afforded ***six months*** to complete fact discovery.

    This breakneck pace is unnecessary and prejudicial to Mr. Staley. He therefore respectfully requests that the Court grant two, independent forms of relief: ***first***, the Court should sever the third-party claims against Mr. Staley from the claims against JPMorgan and order that those sets of claims be tried separately; ***second***, the Court should reconsider its prior scheduling order and (a) grant Mr. Staley the right to take 7-hour, in-person depositions of all witnesses; (b) set a May 8, 2023 deadline for Mr. Staley to respond to the third-party complaints; (c) vacate the current fact discovery deadlines as to Mr. Staley; (d) set a new trial date in March 2024; and (e) order JPMorgan and Mr. Staley to meet and confer on all other deadlines.

    <u>Background</u>: On November 24, 2022, Jane Doe 1, on behalf of a purported class, filed a complaint against JPMorgan, alleging that it was "the lifeblood for [Epstein's] sex-trafficking venture." Compl. ¶ 140. The *Doe* complaint alleges (without citation to any evidence) that Mr. Staley, who was a high-ranking executive at the bank, knew that Mr. Epstein was engaged in sex trafficking. The United States Virgin Islands then filed its own complaint, which also included allegations about Mr. Staley. Those two cases were consolidated for discovery, and, pursuant to the original Case Management Plan, the parties had to complete all fact discovery by April 24, 2023—***a full five months*** after the *Doe* complaint was filed. Dkt. 16 (*Doe* case). The Court set trial for September 5, 2023.

WILLIAMS & CONNOLLY LLP
April 6, 2023
Page 2

On March 8, 2023, JPMorgan filed two third-party complaints against Mr. Staley. Those complaints are largely based upon the plaintiffs' allegations and seek to hold Mr. Staley fully liable for any judgment in both cases. The third-party complaints also seek repayment of all compensation that JPMorgan paid to Mr. Staley from 2006 to 2013. Although the third-party complaints are heavily based on the allegations by Doe and the USVI, JPMorgan does make significant additional allegations against Mr. Staley.

On March 14, 2023, JPMorgan filed a standard waiver of service signed by undersigned counsel, which stated that "I understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within **60 days** from 03/09/2023." Dkt. 64. Two days later, on March 16, 2023, this Court held a scheduling conference to address how Mr. Staley's late addition as a party would impact the case schedule. At the conference, undersigned counsel requested that the Court set trial in March 2024 in light of the magnitude and gravity of the case. The Court instead continued the trial for only six weeks, to October 23, 2023. During the conference, the Court raised the fact that JPMorgan had filed a waiver of service, which provided Mr. Staley 60 days to respond under Federal Rules of Civil Procedure 4(d)(3) and 12(a)(1)(A)(ii). The Court encouraged JPMorgan to personally serve Mr. Staley, apparently expecting that personal service would vitiate the waiver and trigger the 21-day response deadline under Rule 12(a)(1)(A)(i).

The parties then presented the Court with their positions on all interim deadlines via email. As Exhibit A reflects, Mr. Staley proposed a standstill of all depositions until May 31, 2023, and that fact discovery close on July 31, 2023. During an off-the-record argument regarding the schedule, Mr. Staley's counsel explained, among other things, that Mr. Staley could not adequately prepare a defense with any less time and that lead counsel for Mr. Staley has a federal criminal trial beginning in late May 2023. The Court's scheduling order nonetheless set a May 30 deadline for the close of fact discovery. Dkt. 74. The Court also required that Mr. Staley serve all interrogatories and requests for admission by April 7—less than a month after he entered the case and before any response to the complaint was due. *Id.* The Court further ordered that there would be no standstill of depositions, ruling instead that Mr. Staley could re-depose any witnesses deposed before April 24. The Court stated, however, that Mr. Staley's depositions would be limited to two hours and had to be conducted telephonically. *Id.* Finally, the Court ordered Mr. Staley to respond to the complaint by April 26—46 days from when he waived service. *Id.*

The discovery in this case—which JPMorgan did not begin sending until March 21—has been voluminous. Mr. Staley has, to date, received well over 45,000 documents, spanning 240,000 pages. We estimate that it would take over 900 hours of attorney time to review that volume (assuming a 50 document per hour pace). It appears that JPMorgan and the other parties are continuing to make rolling productions, meaning that the volume of documents will only continue to grow.

Argument: As to the scheduling issue, a motion for reconsideration should be granted in order to "prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). As to the severance issue, it is governed by Federal Rules of Civil Procedure 14(a)(4) and 42(b) under which this Court has the discretion to sever third-party claims and order that they be tried separately "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Here, to prevent a manifest injustice and to avoid severely

WILLIAMS & CONNOLLY LLP®
April 6, 2023
Page 3

prejudicing Mr. Staley's defense, the Court should, for four reasons, grant the independent forms relief mentioned above – modification of the schedule and severance.

*First*, Mr. Staley is severely prejudiced by the schedule and cannot adequately prepare a defense without reasonable time for discovery. His lead counsel has trial in May—meaning that the current schedule effectively deprives Mr. Staley of his longtime lawyer and choice of counsel. But even absent the trial conflict, the present schedule affords Mr. Staley grossly insufficient time to mount a defense. The allegations against him are slanderous, and the potential damages are astronomical. Given these stakes, he should, at the very least, be afforded the same rights as any other litigant before this Court, including those in this case. This is all the more true given the volume of discovery and the late date on which Mr. Staley started to receive it. But, despite JPMorgan trying to stick Mr. Staley with all the liability, he has somehow ended up with *less* time than any other party. JPMorgan has no answer to Mr. Staley's prejudice other than to state that he received a deposition subpoena when a non-party. This isn't a serious argument: preparing for a deposition as a non-party witness bears no relation to defending and trying an entire case. And, if anything, it is the other parties who have an advantage due to their prior knowledge and possession of documents: the USVI and counsel for Doe have been involved in Epstein-related litigation for years, and JPMorgan possesses a library of relevant materials, which it presumably reviewed pre-complaint, given that its relationship with Epstein has received such scrutiny.

*Second*, the current schedule deprives Mr. Staley of basic procedural rights. By allowing Mr. Staley to re-depose witnesses whose depositions occur before April 24, the Court recognized that Mr. Staley has a lot of catching up to do, given JPMorgan's several-month (at least) head start. But the Court limited those depositions to just two hours and required that they be conducted telephonically. Rule 30, however, provides that civil litigants have "1 day of 7 hours" to conduct their examinations. Fed. R. Civ. P. 30(d)(1). The Rule also defaults to in-person depositions. Fed. R. Civ. P. 30(b)(4). But Rule 30 is not the only Rule that has been modified for Mr. Staley. Both Rule 4(d)(3) and Rule 12(a)(1)(A)(ii) provide that any defendant who timely returns a waiver of service need not respond to any complaint until 60 days after the request was sent. That is exactly what Mr. Staley did. And yet this Court shaved two weeks off Mr. Staley's response deadline.

*Third*, Mr. Staley's defenses raise different issues and require broader discovery than JPMorgan's defenses. For example, Mr. Staley's defenses will require exploration of his relationship with JPMorgan dating back to at least 2000—23 years ago—and extending well beyond the time he left. Similarly, JPMorgan seeks damages that exceed what it may owe plaintiffs, claiming, for example, losses from "adverse publicity" that would require document discovery—even expert discovery—far beyond plaintiffs' case, Dkt. 59 ¶ 64. It is impossible to take the necessary discovery on such issues in a matter of 10 weeks.

*Fourth*, there would be no prejudice to any other party from severing the third-party claims. The plaintiffs support severance. And JPMorgan should not be heard to complain given that it has the most to gain from the prejudice to Mr. Staley. And even if there were some minor prejudice to JPMorgan's witnesses from having to appear at two trials, that prejudice pales in comparison to the prejudice that Mr. Staley would suffer if he were not granted additional time for fact discovery.

Respectfully submitted,

/s/ *Brendan V. Sullivan, Jr.*