

50 East Washington St.　　　　　　　　　　　　　　　　　　　　1000 Maine Avenue, SW
Suite 400　　　　　　　　　　　　　　　　　　　　　　　　　　Suite 450
Chicago, IL 60602　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20024

April 7, 2023

The Honorable Jed S. Rakoff
Judge, United States District Court
Southern District of New York
Via ECF

　　　　Re:　　*Jane Doe 1 v. JPMorgan Chase Bank, N.A.*, 1:22-cv-10019-JSR (S.D.N.Y).

Dear Judge Rakoff:

　　　　JPMorgan Chase Bank, N.A. files this response to the motions by James E. "Jes" Staley and Jane Doe 1, seeking reconsideration of the Court's denial of his motion to sever JPMC's claims against Staley. Staley primarily asserts that severance is required because he is prejudiced by the court's schedule. As discussed below, Staley fails to provide any reason to reconsider the Court's decision.

　　　　Doe's submission warrants a different response. Instead of focusing on the legal issues, counsel baselessly attacks JPMC's motive for filing its impleader complaint against Staley. Counsel asserts that JPMC filed its third-party complaint to "harass and intimidate." That allegation is meritless. Epstein's actions against his victims are reprehensible. JPMC recognizes the privacy concerns of and emotional trauma suffered by Epstein's victims and has therefore agreed to every request to make matters confidential. JPMC will continue to agree to measures to protect the privacy of and minimize the impact on victims through protective orders, courtroom closures, or any other measure the Court deems appropriate.

　　　　Importantly, however, Doe has made serious accusations against Staley, and expressly tied his conduct and knowledge to JPMC. He is a key witness who will be prominent in this case regardless of severance. Staley—who Doe alleges assaulted her—should be held to account if those allegations are true. Severing him from this case, despite Doe's allegations putting him at the center of it, will only increase the costs of litigation, the danger of inconsistent verdicts, and the risk that justice will not be served.

　　　　Advocacy for clients does not justify plaintiff's counsel's conduct. "[U]nfounded and inflammatory" attacks in any litigation are inappropriate. *See United States v. Young*, 470 U.S. 1, 9 (1985). This Court should disregard this attack on JPMC's motives and decline Doe's motion to sever.

### THE COURT SHOULD NOT RECONSIDER ITS DECISION TO REFRAIN FROM SEVERING JPMC'S THIRD-PARTY COMPLAINT AGAINST STALEY.

　　　　This Court has twice denied Staley's request to sever JPMC's third-party complaint against him. Staley's reconsideration request, therefore, faces a particularly high threshold. "A motion for reconsideration should be granted only when the [moving party] identifies an intervening change

of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted).

In addition, a party moving for severance bears the burden of demonstrating that "severance is needed to avoid prejudice or confusion and to promote the ends of justice." *Bey v. City of N.Y.*, 2009 WL 1911742, at *1 (S.D.N.Y. June 30, 2009). As this Court has recognized, "the joinder of claims is 'strongly encouraged,' . . . and, concomitantly, severance should generally be granted only in 'exceptional circumstances.'" *Compania Embotelladora del Pacifico v. Pepsi Cola Co.*, 256 F.R.D. 131, 133 (S.D.N.Y. 2009) (citations omitted). There is no basis upon which to grant reconsideration of the Court's previous orders here.

As this Court heard in open court the first time it considered Doe's motion to sever, courts consider five factors in deciding a motion to sever: (1) whether the claims arise out of the same transaction or occurrence, (2) whether the claims present common questions of fact or law, (3) whether severance would serve judicial economy, (4) whether severance would cause or avoid prejudice to the parties, and (5) whether the claims involve different witnesses and evidence. *See Boston Post Road Med. Imaging, P.C. v. Allstate Ins. Co.,* 2004 WL 1586429 at *1 (S.D.N.Y. July 15, 2004). All of the factors require denial of Staley's request.

Neither Staley nor Doe makes an effort to show that factors 1, 2, and 5 favor severance. Nor could they. JPMC's claims arise out of the same transactions and occurrences as the Plaintiffs' claims (factor 1), they concern common questions of fact and law (factor 2), and involve many of the same witnesses and evidence (factor 5). In particular, JPMC's third party complaint against Staley seeks indemnification and contribution, as well as damages for fiduciary duty breaches and faithless servant conduct. And Staley's alleged conduct and knowledge form a significant part of the Plaintiffs' claims. Doe's amended complaint mentions him ninety-seven times and repeatedly alleges that JPMC knew of or participated in Epstein's sex trafficking venture "through Staley." *See, e.g.*, Dkt. 36, Doe FAC, ¶¶ 135, 164, 200, 205–206, 230–231, 239, 327–328, 360. And the USVI's amended complaint mentions Staley thirty-nine times, citing (and reproducing) numerous emails between Staley and Epstein to provide a basis for its claims *against JPMC. See, e.g.*, Dkt. 17, USVI FAC, ¶¶ 52–63. Not surprisingly, JPMC's claims against Staley involve the very same alleged conduct and knowledge, and will therefore involve substantially overlapping witnesses and evidence. *See* Dkt. 59, Doe Third-Party Complaint, ¶¶ 22–33; Dkt. 70, USVI Third-Party Complaint, ¶¶ 22–33.

Staley's assertion that his defenses "raise different issues and require broader discovery" (Staley Ltr., at 3) is puzzling. Staley's employment at JPMC is not a new issue: Both Doe and the USVI seek to impute Staley's conduct and knowledge to JPMC. JPMC's request for additional damages due to Staley's disloyalty does not change the fact that its underlying claims against Staley turn on the same facts as Plaintiffs' claims against JPMC, and it does not warrant two separate trials with the same evidence and witnesses. Indeed, severance will not serve judicial economy (factor 3), but instead will result in duplicative and wasteful litigation.

Staley's assertion of prejudice does not justify reconsideration. Indeed, his complaint is primarily with the *schedule* set by the Court and not with the concept of joining the litigation. *See,*

*e.g.*, Staley Ltr., 3 ("Mr. Staley is severely prejudiced by the schedule"); *id*. ("the current schedule deprives Mr. Staley of basic procedural rights"). But this Court is fully capable of exercising its discretion to set a schedule that accommodates the interest of all parties; indeed, it already has. And while Staley continues to complain that he is a recent entry to the case, he was already involved with (and faced potential legal jeopardy from) Doe's allegations. Facing legal consequences for his alleged relationship with Epstein is also not new to Staley, as he had already been subject to rigorous and ongoing investigations well before this case was filed. He also produced documents to the USVI in its prior case against Epstein's estate. Both complaints contain serious accusations against Staley, and the parties to this case had already sought his testimony and scheduled his deposition by agreement – all before JPMC impleaded him. Staley was no mere witness among many; he was the central focus of both Doe's and USVI's claims. The Court should therefore deny Staley's motion.

Doe's motion also should be denied. At the hearing on March 16, 2023, Doe's counsel requested severance because "[m]aintaining the trial date is extraordinarily important to our clients." Ex. A, 3/16/23 Tr., at 13; *see also id*. at 19 ("Jane Doe's preference is to keep the trial dates."). JPMC, on the other hand, stated that it would be "happy to proceed on any schedule." *Id*. at 5. Because this Court was able to change the schedule to accommodate Staley's entry as a party and moved the trial by only a matter of weeks, Doe's counsel now abandons the scheduling argument and instead pivots to a remarkable assertion: that impleading the man Doe alleged assaulted her and made Epstein "untouchable" within JPMC is only a "ploy" to put Doe's "most private and intimate matters—medical records, emails, and text messages—in front of one of her abusers," to "send[] a message to potential class members." Doe Ltr. at 3.

The baseless assertion that JPMC filed a third-party complaint against Staley not to seek justice but instead to intimidate Doe and others is wholly inappropriate and unworthy of the Court's consideration. Doe has made serious allegations against Staley, including rape (Dkt. 36, Doe FAC ¶ 107), and seeks to use those allegations to impose substantial damages on JPMC. It is no surprise that JPMC would seek to hold Staley accountable for Doe's accusations against him. Improper motive is "easy to allege and hard to disprove." *See Crawford–El v. Britton,* 523 U.S. 574, 584–85 (1998). Because counsel's accusations lack any support in either the evidence or common sense, the Court should disregard them.

As Doe acknowledged in her Complaints and by seeking Staley's deposition and subpoenaing documents from him before JPMC impleaded him, Staley is vital to her claims. Yet despite the parties conferring multiple times a week regarding discovery issues, counsel for Doe has never raised any concerns about discovery being shared with Staley. This Court can easily alleviate any such concerns should they in fact exist through a protective order that restricts the viewing of particularly sensitive information to counsel. JPMC would consent to such a motion, as it has agreed to other mechanisms to protect Doe's privacy throughout this case.

Sincerely,

/s/ Leonard A. Gail

Leonard A. Gail