# EXHIBIT 13



PAUL G. CASSELL
Ronald N. Boyce Presidential Professor of Criminal Law
and University Distinguished Professor of Law
S.J. Quinney College of Law University of Utah
383 South University Street
Salt Lake City, UT 84112
Telephone: 801-585-5202
cassellp@law.utah.edu
(institutional address for identification purposes only
and not to imply institutional endorsement)

October 7, 2021

<u>Via Email</u>

Merrick B. Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Brian H. Fletcher
Acting Solicitor General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

   Re:  Supreme Court No. 21-351, *Wild v. U.S. Dist. Court for the Southern District of Florida*

Dear General Garland and General Fletcher:

   We write as counsel for Courtney Wild, one of the Jeffrey Epstein's sexual assault victims, who is seeking certiorari in the above-captioned case.  We write with two requests. First, we ask you to support Ms. Wild's petition in your response, due to be filed by November 4. Second, we ask you to work with us to disclose to the Supreme Court and the District Court that handled this litigation that, in the proceedings below, the Justice Department falsely represented that it had properly produced all relevant documents connected with the Epstein non-prosecution agreement (NPA). We request that the Department disclose to us all the improperly concealed documents and work with us to build a complete and accurate factual record. We also request a meeting at your earliest convenience to discuss these issues.

   By way of background, one of us (Cassell) had the pleasure of working with then-Associate Deputy Attorney General Garland on the Oklahoma City bombing case, when the Justice Department worked hand-in-hand with the bombing victims to enforce crime victims' rights. This case presents an opportunity for the Department to similarly play an important role in protecting crime victims' rights.

As you are aware, Ms. Wild's cert petition seeks review of whether the Crime Victims' Rights Act (CVRA) allows the Department to negotiate secret plea deals with powerfully and politically connected defendants—like Jeffrey Epstein. Ms. Wild's position is that Congress intended for the CVRA to extend to victims an opportunity to confer with prosecutors before such deals are concluded. This was the formal position of the Justice Department in this case back in 2006 and 2007. Indeed, the Justice Department directly conveyed this promise to Ms. Wild and dozens of other Epstein victims in formal letters that prosecutors sent to the victims in 2006 and 2007.

And yet, when Ms. Wild sought to hold the Department to those promises in court, the Justice Department reversed course and took that position that she had no CVRA rights. This change in position occurred through an Office of Legal Counsel (OLC) memorandum that was finalized on December 17, 2010, but not publicly released until May 20, 2011. Once the memorandum was disclosed, it drew a quick rebuke from then-Senator Jon Kyl, who was disturbed to see that his remarks on the Senate floor during the CVRA's passage were quoted out of context by OLC. *See* Letter from Sen. Jon Kyl to Attorney General Eric Holder, Jr., *reprinted in* 157 CONG. REC. S3607-08 (daily ed. June 8, 2011).

This week, former Senator Kyl along with Senator Dianne Feinstein and former Senator Orrin Hatch, the CVRA's congressional sponsors, filed an amicus brief supporting Ms. Wild's cert petition, leaving little doubt that Congress intended for the CVRA to apply to victims like Ms. Wild. In addition, Ms. Wild's petition was supported by amicus briefs from the National Crime Victim Law Institute, EPCAT-USA, Legal Momentum (formerly the National Organization for Women Legal Defense Fund), and CHILD USA.

We hope that the Department will take a close look at this issue of the CVRA's proper interpretation, particularly in light of the recent amicus filings. We believe our legal position that the CVRA should be interpreted to block deceitful behavior (such as affirmatively misleading crime victims about the existence of an NPA) deserves the Department's support.

Even if the Department is unable to fully endorse Ms. Wild's legal position on interpretating the CVRA, however, we believe the Department should at the very least support Ms. Wild's effort to have this important legal question decided by the Supreme Court. The Eleventh Circuit en banc observed that the Department's behavior in leaving Ms. Wild and other victims "in the dark" by concealing the Epstein plea deal was "shameful" and had produced a "national disgrace." The Department should take a small step toward redressing its behavior by acquiescing in a cert grant

In addition to requesting support for Ms. Wild's petition, we write to ask you to correct the false and misleading record that the Department has built in this case, so that the Supreme Court has all relevant information before it when it rules on Ms. Wild's petition. The Department can readily determine that its attorneys have failed to forthrightly reveal all relevant facts by reviewing the 290-page report from the Department's Office of Professional

2

Responsibility (OPR) regarding the U.S. Attorney's Office for the Southern District of Florida's resolution of its 2006-08 federal criminal investigation of Jeffrey Epstein. Sadly, despite our repeated requests, the Department has not provided a full copy of the report to Ms. Wild (or any of the dozens of other Epstein victims), although we have seen what appears to be a full copy of the report via a media leak.

Based on our review of the leaked copy, the OPR Report disclosed important new information that the Department now has an ethical obligation to disclose to the Supreme Court—and to the U.S. District Court for the Southern District of Florida and to Ms. Wild. During this litigation, the District Court directed the Department to provide to Ms. Wild all communications regarding the Epstein deal that the Department had with Epstein's attorneys. In 2013, Department's attorneys represented to us and the District Court that it had made complete production of relevant materials to Ms. Wild. We relied on those representations during the next eight years of litigation. As we understand the situation today, the Department's representations were false.

First, the OPR Report revealed that significant emails from U.S. Attorney Alex Acosta's inbox were missing from the Department's record retention system. In reaching its conclusions about how Ms. Wild was treated unfairly, OPR relied primarily on communications (especially emails) among prosecutors and between prosecutors and Epstein's vast defense team. OPR's 286-page report quotes extensively from these various emails. However, it is not until after the end of the report—at page 287, buried in a "methodology" addendum—that the OPR Report reveals a "data gap" in Mr. Acosta's email inbox. Specifically, OPR admits that it was unable to recover emails to Mr. Acosta that were sent during a period spanning more than ten months—from May 26, 2007, through April 2, 2008. And, as we understand the facts, those emails were likely missing back in 2013 and even earlier.

As even passing familiarity with the Epstein case would make clear, this "data gap" covers precisely the months of greatest interest to anyone trying to determine what happened during the Epstein NPA negotiations. The gap begins just a few weeks before the first substantive meeting between prosecutors and Epstein's defense team; the gap ends just as Epstein's appeals regarding the NPA were concluding. And the "data gap" is for the records of *the* U.S. Attorney—*the* person who orchestrated and approved the "shameful" NPA.

The remarkable precision with which the "data gap" covers the documents of greatest interest could conceivably be just a coincidence. But what clearly cannot be ascribed to bad luck is that, after twelve years of hard-fought efforts by Ms. Wild to determine what happened in the case, the gap's existence did not surface until November 2020—after Ms. Wild had fought to obtain these very emails for more than nine years! During these nine years, the Department never disclosed this alleged "technical glitch." To the contrary, Justice Department represented to the District Court—and to Ms. Wild—that it had produced all relevant "external" emails to her and all relevant "internal" emails to the District Court for *in camera* review. Given the data

3

gap, those representations could not possibly have been true—a fact that the Department must have known for many months, and likely for many years.

We believe that the Department owes a duty of candor to the Supreme Court to disclose that it concealed the existence of this email gap from the District Court and Ms. Wild, so that the Department's concealment becomes part of the record as the Court evaluates the cert-worthiness of Ms. Wild's petition. *See* Pet. at 33.

Second, the OPR Report revealed that other emails existed between prosecutors and defense counsel that the Department should have previously disclosed to the District Court—and to Ms. Wild—but did not. After reaching page 287 of the OPR Report—and learning for the first time of the "data gap"—Ms. Wild's counsel began to wonder if other emails were also missing. As the old saying goes, the thirteenth stroke of a clock is not only itself discredited but also calls into doubt what came before. The fact that the Justice Department had, for more than nine years, concealed a ten-month data gap in emails of central importance to this case led Ms. Wild's counsel to wonder what else might be missing.

And, sure enough, in a few minutes' time, after comparing the 850,000 pages of documents that OPR had access to with the far fewer documents produced in discovery below, Ms. Wild's counsel quickly located other examples of missing documents. It appears that the missing documents include both "external" emails to and from Epstein's defense counsel to prosecutors and "internal" emails between the prosecutors—internal emails that should have been disclosed to the District Court during proceedings involving alleged privileged communications.

Here again, it is hard to understand why the fact that emails were missing was never properly disclosed to the District Court—or to Ms. Wild. Indeed, for some reason the OPR Report makes no mention of this failure. And despite Ms. Wild's specific request to the Deputy Attorney General's Office, made in September 2020 for any missing emails or other documents uncovered by OPR, the Department has yet to make any effort to cure its earlier deficiencies, either with the District Court or with Ms. Wild.

Again, we believe that, at the very minimum, the Department owes a duty of candor to the U.S. Supreme Court to disclose the fact that the Justice Department failed to properly make court-ordered production of highly relevant emails in the District Court below. We also believe that the Department owes a duty to Ms. Wild to disclose all of the improperly concealed materials to her. More broadly, we believe that, if the Department is not going to support Ms. Wild's cert petition, then it should ask the Supreme Court to grant, vacate, and remand to the District Court to develop a complete record about the factual circumstances of this case.

We realize that neither the Attorney General's Office nor the Solicitor General's Office were previously involved in earlier decisions in this litigation—including the earlier failures to make proper disclosures. We hope that the fact you now have the opportunity to take a fresh

4

5

and independent look at this "national disgrace" will lead to new results. We would like to schedule a meeting to discuss these requests with you before you make your filing in the Supreme Court.

    Thank you in advance for considering these requests.

Sincerely,

Paul G. Cassell
Bradley J. Edwards
Counsel for Courtney Wild
