# EXHIBIT 14



PAUL G. CASSELL
Ronald N. Boyce Presidential Professor of Criminal Law
and University Distinguished Professor of Law
S.J. Quinney College of Law University of Utah
383 South University Street
Salt Lake City, UT 84112
Telephone: 801-585-5202
cassellp@law.utah.edu
(institutional address for identification purposes only
and not to imply institutional endorsement)

December 27, 2021

<u>Via Email</u>

Brian H. Fletcher
Office of the Solicitor General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

    Re:    Ending the Cover Up of Relevant Materials in Supreme Court No. 21-351, *Wild v. U.S. Dist. Court for the Southern District of Florida*

Dear Mr. Fletcher:

    We write as a follow up to our October 7, 2021, letter to you and General Garland, our telephone conference call on October 29, 2021, and your email of December 23, 2021. We write to request that you immediately take all necessary steps to end the Justice Department's concealment of important materials in the above-captioned case from the Jeffrey Epstein victims we represent, particularly our client before the Supreme Court, Ms. Courtney Wild.

    We know that you are familiar with our earlier letter, so we will jump quickly to the point—the Justice Department has an ethical and legal obligation to end the cover up that is occurring in this case. Your Office should immediately produce to us important materials and information that it has improperly concealed in violation of orders in the Jeffrey Epstein litigation and to immediately take steps to inform the U.S. Supreme Court and the U.S. District Court for the Southern District of Florida of the false representations that Department attorneys made to it while the matter has been litigated. We explained in our October 7 letter why the Department was obligated to take those steps.

    In our October 29 conference call, we reiterated our allegations of the Government's improper concealment of important information. It was our understanding at the conclusion of that call that you (and others in your Office) had agreed to investigate our "serious" (your words) factual allegations and get back to us about them. To facilitate that investigation, we agreed to an extension of time for the Department to file its response to our pending certiorari petition from November 4 to January 4 (and the Department obtained such an extension from the Supreme Court). In securing our agreement to that extension, we were told that the

Department would use that extra time to "further explore the issues" that we had raised about Department misconduct.

In our October 7 letter, we itemized three categories of false statements and misrepresentations we believe the Department's attorneys (outside of your Office) have made at earlier points in this litigation. In particular, Department Attorneys have made the following misrepresentations:

*1. The concealment of a "data gap" in the emails surrounding the Jeffrey Epstein non-prosecution agreement (NPA).*

It is our understanding that the Department attorney have long been aware of a "data gap" in the email inbox of then-U.S. Attorney Alexander Acosta from May 26, 2007, through April 2, 2008. And, as we understand the facts, those emails were likely missing back in 2013 and even earlier, which means that the Justice Department falsely represented to us and to the U.S. District Court for the Southern District of Florida that it has produced all relevant emails and materials—including those that fell within that data gap. The "data gap" covers precisely the months of greatest interest to anyone trying to determine what happened during the Justice Department negotiations with Epstein's attorneys in crafting (and concealing) the NPA. The surgical precision of the data gap's span—and its later apparent concealment by Department attorneys—suggest possible deliberate destruction of evidence.

*2. The concealment of "external" emails, communications, and documents between prosecutors and Epstein's defense counsel from us.*

As you are aware, by agreement between the Department's attorneys and us—formalized in various orders from the U.S. District Court for the Southern District of Florida—the Department was to provide to us all "external" emails between prosecutors and Epstein's defense counsel regarding the "infamous" NPA. In 2013, the Department attorneys represented to us and the district court that they had made full production to us. It has since become clear that the Department has failed to produce to us dozens—and likely hundreds—of emails and other communications likely spanning thousands of pages. Here again, the circumstances are highly suspicious, given the questions that have swirled around how and why Epstein's NPA was negotiated.

*3. The concealment of "internal" emails, communications, and documents from the U.S. District Court for the Southern District of Florida.*

As you are aware, prosecutors in the proceedings in the district court represented that they had disclosed all relevant "internal" emails between the prosecutors regarding the Epstein NPA, so that the district court could make a determination of whether these communications were privileged. This production was made in the face of our extensive arguments that the emails were not privileged for multiple reasons. It has since become clear that that the

2

Department has failed to produce to the district court dozens – and likely hundreds — of emails and other communications likely spanning thousands of pages. Here again, the circumstances are highly suspicious, as it appears that many of the emails not produced to the district court contained some of the most important information regarding the NPA's negotiation.

As we have discussed on October 29, we have made multiple specific requests to the Justice Department for all such improperly concealed emails and documents, extending back not only through the litigation in the district court since 2010 but to also to a very specific request made in September 2020 to the Deputy Attorney General's Office as the recent investigation by the Department's Office of Professional Responsibility (OPR) was concluding. For the last fifteen months, our client (Ms. Wild) has been wondering when we would get some action on these requests.

After our October 29 conference call, we did not hear anything back from you about your Office's investigation of the Department's concealment of these materials. So on December 2, we sent an email to the line attorney in your Office (Christopher Michel) to inquire about exactly where things stood. We indicated that it was our understanding that your Office would be using the extra time to investigate our allegations of concealment, which might involve your Office cross-checking our assertions with our components in the Department who possess the documents and other information—including OPR, which had reportedly already collected all of these materials back in 2020.

On December 6, we heard from Mr. Michel that our email had been received and "we'll be back in touch." Two weeks went by and the holiday season drew even nearer. So, after further calls and emails to see what was happening, finally late on December 23 we received the following email from you:

> Dear Paul-
>
> I'm writing in response to your emails to Chris below. We appreciate your continued outreach about this case, and we were glad to have the chance to discuss it with you and Brad in October. As we said when we spoke, the Department takes these issues very seriously and deeply regrets the way Ms. Wild and other victims were treated during earlier stages of the Epstein investigation.
>
> We have a different understanding of where we left things than the one described in your email. We did not agree to further discussions aimed at a negotiated resolution of this case. Instead, as reflected in Chris's November 2 email below, we asked for more time to allow the Department to consider the issues you have raised, including how those issues bear on your pending petition in the Supreme Court. Based on that further consideration, we have decided that additional discussions in connection with your pending petition would not be

3

>productive. Instead, we will address the legal issues presented in the petition in the brief we will be filing on January 4.
>
>In addition to raising those legal issues, you have also suggested that DOJ attorneys handling earlier stages of this case may have engaged in professional misconduct. The Department's Office of Professional Responsibility is responsible for investigating such allegations. Your October 7 letter to me and the Attorney General has been shared with OPR for its review and any further action it concludes is appropriate.
>
>Best,
>Brian

We—and our client, Courtney Wild—were stunned by this email. We had understood that, in the face of "serious" allegations of concealment and misrepresentations by the Justice Department, your Office was investigating those allegations and would either confirm or deny them. We had strong reasons for believing that your investigation would fully confirm our allegations.  It never occurred to us that you would take several months and then attempt to duck our question of whether our allegations of misconduct and concealment are true. We believe the obvious inference to be drawn from this sequence of events is that our allegations *are* true and you are unwilling to take any remedial steps to bring to an end what can only be described as a cover-up of relevant facts—in a case that has already attracted widespread attention because of a "shameful" plea deal, whose concealment from Epstein's victims was a "national disgrace."

Your email also recharacterizes what we understood was happening over the last several months. We had understood that you were going to report back to us on whether our allegations were true, because if they were true, they would immediately trigger ethical and legal obligations for the Department to correct the misrepresentations. We did not view our request for information about the misrepresentations as "settlement" discussions (although were happy to try and settle the issue if your Office was interested in such discussions).

We were also surprised to see your Office sending these issues to OPR.  You assert that OPR is responsible for investigating such allegations. But we've been told exactly the opposite—by OPR itself. On December 10, 2010 one of us (Cassell) wrote to the Department requesting an OPR investigation regarding the Epstein NPA.  Five months later, on May 6, 2011, Counsel for OPR (Robin C. Ashton) wrote back stating that it would not investigate the allegations, as they were currently being litigating.

The responsibility for ending this cover up belongs to the Department's attorneys currently litigating this case—and we understand you are that attorney, acting on behalf of your Office.  Your referral of the matter to OPR does not absolve your Office of its duty to immediately discharge its own ethical and legal responsibilities. As you know, OPR's authority

4

in connection with investigating the professional conduct of its attorneys is limited. *See generally* 28 C.F.R. § 0.39a(a)(1). Moreover, our allegations involve the conduct of attorneys who have since *left* the Department, including former-U.S. Attorney Alex Acosta, whose email in box contains a "data gap."

We believe that your Office is ethically and legally obligated to immediately produce to us—and our client, Ms. Wild—all of the improperly concealed materials (or, alternatively, with regard to the "internal" emails, produce them immediately to the U.S. District Court for the Southern District of Florida for in camera review). We further believe that your duty of candor to the Supreme Court and opposing counsel obligates you to disclose all of the circumstances surrounding the cover up the United States Supreme Court, so that it is aware that the "record" in the case is deceptively incomplete due to a cover up by the Department's attorneys below. The Court requires that information so that it can properly and fairly evaluate our pending petition for a writ of certiorari.

We ask that you disclosures and production be made to us and the U.S. District Court for the Southern District of Florida no later than December 31, 2021. It is our understanding that OPR has already assembled the (reportedly) 850,000 pages of documents in question into an electronic file, so that they could simply be released to us and the district court with a few computer keystrokes.

Finally, as you know, the Department has recognized Ms. Wild as a "victim" of Jeffrey Epstein's sex trafficking offenses. Accordingly, we continue to invoke her right to "confer" about all these matters.

                    Sincerely,

                    Paul G. Cassell
                    Bradley J. Edwards
                    *Counsel for Courtney Wild*

cc via email:
Attorney General Merrick Garland
Solicitor General Elizabeth Prelogar