# EXHIBIT 20

No. 21-351

# In the Supreme Court of the United States

COURTNEY WILD,
*Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA,
*Respondent.*

**On Petition for Writ of Certiorari to the United States Court of Appeals for the Eleventh Circuit**

**REPLY BRIEF IN SUPPORT OF CERTIORARI**

BRADLEY J. EDWARDS
EDWARDS POTTINGER LP
425 North Andrews Ave.
Suite 2
Fort Lauderdale, FL 33301
(800) 400-1098

JAY HOWELL
JAY HOWELL & ASSOCIATES
644 Cesery Blvd., Suite 250
Jacksonville, FL 32211
(904) 680-1234

PAUL G. CASSELL
  *Counsel of Record*
S.J. QUINNEY COLLEGE OF LAW
AT THE UNIVERSITY OF UTAH*
383 S. University St.
Salt Lake City, UT 84112
(801) 585-5202
cassellp@law.utah.edu

(*institutional address for identification purposes, not to imply institutional endorsement)

*Counsel for Petitioner*

January 18, 2022

Becker Gallagher · Cincinnati, OH · Washington, D.C. · 800.890.5001

i

## PARTIES TO THE PROCEEDINGS BELOW

The disclosure made in the petition for a writ of certiorari remains accurate.

ii

**TABLE OF CONTENTS**

PARTIES TO THE PROCEEDINGS BELOW . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . iii

REPLY BRIEF IN SUPPORT OF CERTIORARI. . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   WHETHER THE CRIME VICTIMS' RIGHTS ACT PERMITS THE GOVERNMENT TO CONCEAL NON-PROSECUTION AGREEMENTS FROM VICTIMS IS A VITAL ISSUE REQUIRING IMMEDIATE REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  THE ELEVENTH CIRCUIT ERRONEOUSLY CONCLUDED THAT VICTIMS' CANNOT ENFORCE ANY CVRA RIGHTS UNTIL CHARGES ARE FILED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. THE GOVERNMENT'S POLICY CONCERNS PROVIDE NO BASIS FOR IGNORING THE CVRA'S LANGUAGE EXTENDING RIGHTS TO VICTIMS BEFORE CHARGING. . . . . . . . . . . . . . . 9

IV.  REVIEW IS ALSO WARRANTED TO CORRECT THE ERRORS IN THIS EXTRAORDINARILY INFLUENTIAL CASE . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iii

# TABLE OF AUTHORITIES

**CASES**

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)....................... 6, 7

*In re Allen*,
  701 F.3d 734 (5th Cir. 2012)................. 4

*In re Brown*,
  932 F.3d 162 (4th Cir. 2019)................. 4

*In re Dean*,
  527 F.3d 391 (5th Cir. 2008)................. 7

**STATUTES**

9 U.S.C. § 12................................ 9

9 U.S.C. § 13................................ 9

18 U.S.C. § 3771........................ *passim*

**RULES**

Fed. R. Crim. P. 17(c)......................... 9

Fed. R. Crim. P. 41(g)......................... 9

Sup. Ct. R. 10(c) ............................ 3

**OTHER AUTHORITIES**

150 Cong. Rec. S4266 (Apr. 22, 2004) ........... 7

*Black's Law Dictionary* (11th ed. 2019) .......... 9

iv

Letter from Rep. Jackie Speier to Attorney General Barr (Nov. 21, 2019), reprinted in CONG. REC.—EXTENSION OF REMARKS E1495 (Nov. 21, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S. Dep't of Justice, *Attorney General Guidelines for Victim and Witness Assistance* (rev. May 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1

## REPLY BRIEF IN SUPPORT OF CERTIORARI

### INTRODUCTION

Trust us, says the Government. It "deeply regrets" failing to "communicate more clearly and forthrightly" with Ms. Wild, while it secretly immunized Jeffrey Epstein and his co-conspirators for their sex trafficking crimes against her. Resp. 17. And in the future, the Government claims, it can be counted on to keep crime victims informed when prosecutors reach non-prosecution agreements (NPAs). Resp. 27-28. But, the Government maintains, Ms. Wild is powerless to seek redress for what has become a "tale of national disgrace" (App. 3) and cert should be denied here.

This Court should provide a different conclusion to Ms. Wild's thirteen-year litigation saga. In enacting the Crime Victims' *Rights* Act (CVRA), Congress enacted enforceable "rights." This Court should review the critical question of whether secret NPAs accord with prosecutors' obligations under the nation's preeminent crime victims' rights statute.

As explained by the many amici—including the CVRA's congressional sponsors—this Court must review this question now. *See, e.g.,* Amicus Br. of Senator Dianne Feinstein and Former Senators Jon Kyl and Orrin Hatch at 12-16. The Government is silent on how this Court will ever again be able to review covert practices that, by definition, could not normally lead to litigation. This petition presents a now-or-never opportunity for this Court to review whether, in crafting the CVRA, Congress

2

unintentionally created a loophole allowing prosecutors to dispense with victims' rights whenever they so choose.

The CVRA's plain language clearly contemplates victims, such as Ms. Wild, possessing enforceable rights before prosecutors file charges. The CVRA specifically provides that victims can assert their rights under the Act "in the district court in which a defendant is being prosecuted for the crime or, *if no prosecution is underway*, in the district court in the district in which the crime occurred." 18 U.S.C. § 3771(d)(1) (emphasis added). And the CVRA covers federal employees "engaged in the detection, *investigation*, or prosecution of crime …." 18 U.S.C. § 3771(c)(1) (emphasis added). Here, Ms. Wild did exactly what Congress authorized: Since no prosecution of Epstein for his crimes was "underway," she asserted her rights—e.g., a right confer—in the district where Epstein had sexually abused her and where the FBI and the U.S. Attorney's Office was investigating him. The Eleventh Circuit's later decision that she had no ability to enforce her rights was manifest error.

This Court also needs to review this astonishing case to restore public confidence that victims harmed by well-connected criminals will be treated fairly. Epstein's "infamous" non-prosecution agreement (App. 4) has taken on outsized importance in creating a public perception that prominent criminals receive favorable treatment in the federal criminal justice system. This "shameful" case (App. 7) warrants further review, particularly because its many "mysteries" deserve further airing. App. 184.

3

## I. WHETHER THE CRIME VICTIMS' RIGHTS ACT PERMITS THE GOVERNMENT TO CONCEAL NON-PROSECUTION AGREEMENTS FROM VICTIMS IS A VITAL ISSUE REQUIRING IMMEDIATE REVIEW.

The Eleventh Circuit en banc has "decided an important question of federal law that has not been, but should be, settled by this Court …." S. Ct. R. 10(c). As Ms. Wild explained in her petition, the Eleventh Circuit en banc has greenlighted the kinds of "secret plea deals and deception pre-charge that resulted in the travesty" here. Pet. 18 (*citing* App. 182). Of course, the sex traffickers and other criminals who will benefit from such deals are those, like Jeffrey Epstein, who possess wealth, power, and influence. Given a growing public perception that the federal criminal justice system treats well-connected defendants—and their victims—differently than others, it is imperative for this Court to review the disturbing practices that the Epstein case has exposed. Pet. 17-22.

The Government recognizes that this importance-of-the-issue argument is Ms. Wild's principal argument for certiorari. Resp. at 26. But tellingly, the Government never directly contests certworthiness. Instead, the Government rehashes its merits' contentions that the sky will fall if Ms. Wild prevails on the question presented. Resp. at 26-27. These policy concerns are meritless, as we explain below. *See infra* 9-11. But in failing to dispute the issue's importance, the Government implicitly concedes that denying review will "make[] the Epstein case a poster child for an entirely different justice system for crime victims of wealthy defendants." App. 184-85.

4

Ms. Wild explained in her petition why this case likely presents "a now-or-never opportunity" to review the far-reaching question of whether the Government can covertly negotiate pre-charging deals with criminals. Pet. 19. No worries, the Government sanguinely responds: The critical issue of whether the CVRA's pre-charging application blocks secret deals "could arise in many different contexts." Resp. 27. But the Government never explains exactly how victims will be able to learn about (much less challenge) arrangements crafted covertly before charges are filed. *See* Amicus Br. of the National Crime Victim Law Institute at 17-18; Amicus Br. of Legal Momentum at 14-18. And the two cases the Government cites only reinforce the point, as neither involves pre-charging issues. *See* Resp. at 27 (*citing In re Brown*, 932 F.3d 162, 168 (4th Cir. 2019) (sentencing issue); *In re Allen*, 701 F.3d 734, 735 (5th Cir. 2012) (same)).

The Government also cites the proposed Courtney Wild Crime Victims' Rights Reform Act of 2019 as demonstrating a way these issues could be resolved. Resp. 27. But the Government fails to disclose that the congresswoman sponsoring the legislation previously wrote to the Attorney General to question such misleading claims. Refuting a similar argument by Government attorneys in the Eleventh Circuit, Congresswoman Speier told the Attorney General that "[y]our prosecutors are obviously attempting to suggest that it is my view, and the view of my legislative co-sponsors, that existing law does not provide protection to Courtney Wild and other victims. But … the [proposed] legislation is designed to 'clarify' what we understood to already be existing law and

5

Congressional intent under the CVRA." Letter from Rep. Jackie Speier to Attorney General Barr (Nov. 21, 2019), *reprinted in* CONG. REC.—EXTENSION OF REMARKS E1495 (Nov. 21, 2019). Representative Speier explained that the district court, in this very case, properly "rejected the Department's crabbed interpretation, relying on numerous court opinions correctly holding that the rights guaranteed by the CVRA extend to the pre-charge stage of criminal investigations and proceedings." *Id.*

The Government also asks for trust because it has promulgated guidelines purportedly requiring pre-charging notifications to victims. Resp. 27-28. But even a quick glance at the guidelines reveals they are insufficient and toothless. The guidelines call only for such notifications as the Justice Department deems to be "feasible and appropriate." U.S. Dep't of Justice, *Attorney General Guidelines for Victim and Witness Assistance* 35 (rev. May 2012). And the guidelines "are not intended to, do not, and should not be relied upon to create any procedural or substantive rights or to establish procedural or substantive standards of conduct or are enforceable at law in any matter, civil or criminal." *Id.* at 53.

The Government also grandly announces that it has "recently embarked on a review of its guidance to prosecutors regarding victim and witness assistance." Recently indeed! This "review" began on October 1, 2021—conveniently just a few weeks before the Government response was due in this case.

The Government makes no argument that any vehicle problems or procedural barriers prevent

reviewing the important question Ms. Wild presents. And, after thirteen years of litigation—including appellate decisions spanning more than a hundred pages from both the panel and en banc Court below—the issue is thoroughly developed. The Court should grant this petition to review a plainly certworthy issue.

## II. THE ELEVENTH CIRCUIT ERRONEOUSLY CONCLUDED THAT VICTIMS CANNOT ENFORCE ANY CVRA RIGHTS UNTIL CHARGES ARE FILED.

On the merits, the Eleventh Circuit's en banc opinion is so palpably wrong that this Court should immediately review it and reverse it.

In its en banc opinion, the Eleventh Circuit shoehorned this case into the doctrine of "private rights of action," exemplified by *Alexander v. Sandoval*, 532 U.S. 275 (2001). This understanding of the case was a new one: In the previous *twelve years* of litigation, the district court and the initial Eleventh Circuit panel had not viewed *Alexander* as controlling.

The en banc Court got off on the wrong foot. The CVRA indisputably creates a private right of action for crime victims. In the "[e]nforcement" provision for the Crime Victims' *Rights* Act, Congress provided that crime victims "may assert the rights described" in the statute. 18 U.S.C. § 3771(d)(1). Congress then directed that victims could "assert[]" their rights "in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred." 18

7

U.S.C. § 3771(d)(3). This is exactly the kind of "rights-creating" language that *Alexander* said Congress should use to create enforceable rights. 532 U.S. at 291.

Indeed, in enacting the CVRA, Congress's animating purpose was enshrining "enforceable" rights—i.e., rights enforced by a private right of action. *See generally* Amicus Br. of Senator Dianne Feinstein and Former Senators Jon Kyl and Orrin Hatch at 2-7, 12-16. The CVRA's most important reform, Senator Kyl emphasized, was that it granted victims "the right to *enforce* the[ir] rights"—they now would "have legal standing to *enforce* their rights in court." 150 CONG. REC. S4266 (Apr. 22, 2004) (emphases added).

Because the CVRA clearly contains explicit rights-creating language, the issue below was never whether the CVRA *created* a private right of action; instead, the issue below was only the *scope* of that private right of action. On that question, the Eleventh Circuit en banc took a "strategic bypass." App. 164. The Circuit ducked deciding whether the CVRA creates pre-charging rights. Yet under the statute's plain language, "[t]here are clearly rights under the CVRA that apply before any prosecution is underway. Logically, this includes the CVRA's establishment of victims' reasonable right to confer with the attorney for the Government." *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (cleaned up). Against this backdrop of pre-charging rights, the Eleventh Circuit absurdly concluded that Congress forgot to create any means for victims to enforce these pre-charging rights. Pet. 26.

The Eleventh Circuit en banc also created another absurdity: that the CVRA's authorization for victim

8

enforcement actions when "no prosecution is underway" should be read as covering only situations after a prosecution is finally concluded. The Government neglects to explain how the Circuit's en banc holding—that victims must assert their rights in on-going proceedings—can be squared with its conclusion that victims are allowed to assert rights after those proceedings have concluded! *Compare* Resp. 22 *with* Pet. 25.

The Government also recognizes that, under the Eleventh Circuit's interpretation, victims might be required to file a CVRA motion "in the district where the crime occurred in which there is no pending or closed court proceeding because the defendant was prosecuted in a different district." Resp. 23 (discussing Pet. 25). The Government doggedly maintains that these situations are "unlikely" to occur (Resp. 23)—but fails to explain why its reading should be preferred to Ms. Wild's (and the dissents' below) under which such incongruities would *never* occur.

The Government also cannot explain why Congress directed that best efforts to protect CVRA rights must be made by federal agencies "engaged in the *detection, investigation, **or** prosecution of crime* . . . ." 18 U.S.C. § 3771(c)(1) (emphases added). Citing the decision below, the Government contends that this language is "a 'to whom' provision, not a 'when' provision." Resp. 24. But the plain language directs federal agencies to accord victims their rights *when* they are "engaged in" (for example) the "investigation . . . of crime." 18 U.S.C. § 3771(c)(1). And reading the provision as applying only while agencies are involved in a post-indictment

9

"prosecution" renders the "detection" and "investigation" language superfluous. App. 117.

The Government also notes that the CVRA uses the term "motion" to describe the vehicle for victims asserting their rights, arguing that this term does not include initiating legal proceedings. Resp. 19-20. But the Government is forced to concede that the federal rules use the term "motion" in exactly that way—twice—in analogous situations involving third-parties asserting rights outside of ongoing prosecutions. *See* Resp. 20 n.5 (*discussing* Fed. R. Crim. P. 41(g) (authorizing a person aggrieved by an unlawful seizure of property to file a "*motion* … in the district where the property was seized"); Fed. R. Crim. P. 17(c) (providing that a recipient of a grand jury subpoena can file a "motion" to quash or modify an unreasonable subpoena)); *see also* 9 U.S.C. §§ 12, 13 (directing that "motions" are to be used to initiate free-standing arbitration proceedings). And "the common, general definition of the word motion is '[a] written or oral application requesting a court to make a specified ruling or order.'" App. 134-35 (*quoting Black's Law Dictionary* (11th ed. 2019)).

### III. THE GOVERNMENT'S POLICY CONCERNS PROVIDE NO BASIS FOR IGNORING THE CVRA'S LANGUAGE EXTENDING RIGHTS TO VICTIMS BEFORE CHARGING.

As with the decision below, the Government's main concern appears to be the policy implications of extending victims' rights pre-charging—not faithfully discerning whether the statute's text extends such rights. The Government's policy concerns rest on a

10

slippery slope argument: that if Ms. Wild is allowed to assert her CVRA rights, then in the future nothing in the statute will bar "victims from bringing freestanding suits to remedy asserted CVRA violations when criminal prosecutions are not commenced for other reasons . . . ." Resp. 27. Not so. In crafting the CVRA, Congress created carefully defined rights that operate comfortably within traditional federal criminal justice boundaries.

Many CVRA rights apply only after charges are filed, such as the "right to reasonable, accurate, and timely notice of any public court proceeding" and the "right not to be excluded from any such public court proceeding." 18 U.S.C. § 3771(a)(2) & (3). The Government's parade of horribles cannot materialize for these rights tied to particular "proceedings."

Congress also created several CVRA rights that apply beyond court proceedings, including the "reasonable right to confer with the attorney for the Government in the case" and the right "to be treated with fairness." 18 U.S.C. § 3771(a)(5) & (8). These rights apply pre-charging. If "Congress wanted the conferral and fairness rights to apply *only after* the government has filed an indictment in court, Congress could have easily written [these] subsections . . . more narrowly, as it did" with other CVRA rights. App. 274. These other CVRA rights "explicitly tied to court proceedings demonstrate[] that when Congress wants to limit crime victims' rights to post-indictment court proceedings it knows how to do so and does so expressly." App. 274.

11

Congress also incorporated powerful limiting principles into the right to confer. First, the conferral right is only with the Government's "attorney," not with police or investigators. Thus, the conferral right "presupposes that a readily identifiable attorney for the government has been assigned to the case," which means that the case "has matured beyond the … investigative stage before the right applies." App. 293.

Second, the right to confer applies only to the extent that conferral is "reasonable." This reasonableness limitation is "a forceful limiting principle" and "embodies a common, workable legal standard" that is sufficient to stave off the Government's speculative claim that the CVRA will inappropriately impair prosecutorial discretion. App. 293. Reasonableness limitations are a common fixture in the criminal justice system. *See* App. 294-95 (collecting examples). To the extent that the Government has conjured up examples of situations where conferral would be unreasonable, the CVRA conferral right is itself inapplicable.

Indeed, to underscore the CVRA's consistency with traditional prosecutorial prerogatives, Congress included express language that nothing in the Act "shall be construed to impair the prosecutorial discretion" of any federal prosecutor. 18 U.S.C. § 3771(d)(6). While the Government frets that the CVRA could be used to challenge a "prosecutorial declination" (Resp. 27), that possibility is expressly foreclosed. The CVRA only requires "reasonable" conferral, after which prosecutors remain free to handle the case as they see fit. Thus, Ms. Wild's reading gives crime victims a voice, not a veto—and

12

listening to victims is something that the Government concedes is part of "best practices" for prosecutors. Resp. 28.

## IV. REVIEW IS ALSO WARRANTED TO CORRECT THE ERRORS IN THIS EXTRAORDINARILY INFLUENTIAL CASE.

Finally, certiorari is also appropriate to correct errors in this infamous case, which is clearly shaping the nation's understanding as to how victims of wealthy and well-connected defendants fare in the federal criminal justice system. Pet. 31-34. The Government does not contest that this criminal case "may well be the most prominent . . . in recent memory—and has created a public view that, so long as a defendant is powerful enough, he can manipulate the federal criminal justice system" to his benefit. Pet. 33-34; *see also* Amicus Br. of ECPAT-USA at 7-14 (explaining how the Court of Appeals' decision will discourage child victims from reporting sex trafficking). Instead, the Government suggests that Ms. Wild could obtain only "limited" remedies were she to prevail. But the most important remedy that she seeks—rescinding the NPA's immunity provisions for Epstein's far-flung ring of co-conspirators—remains very much in play.

Moreover, the tranquil picture the Government paints is jarringly at odds with a lengthy footnote it drops on the brief's last page. The footnote reveals that, several days before filing its brief, the Solicitor General's Office referred to OPR allegations that the prosecutors handling this case concealed documents in earlier proceedings. The Government acknowledges that for months Ms. Wild's counsel has been asking for

13

review of these allegations—well-founded allegations that during discovery in this case prosecutors hid hundreds of critical emails from both Ms. Wild's counsel and the district court. Given that the Government's overarching theme is its request that the Court—and crime victims—should trust it to do the right thing, this disturbing development confirms that such faith would be misplaced. This disturbing case needs further review by this Court.

## CONCLUSION

The Court should grant the petition.

Respectfully submitted,

BRADLEY J. EDWARDS
EDWARDS POTTINGER LP
425 North Andrews Ave.
Suite 2
Fort Lauderdale, FL 33301
(800) 400-1098

JAY HOWELL
JAY HOWELL & ASSOCIATES
644 Cesery Blvd.
Suite 250
Jacksonville, FL 32211
(904) 680-1234

PAUL G. CASSELL
　*Counsel of Record*
S.J. QUINNEY COLLEGE OF LAW
AT THE UNIVERSITY OF UTAH*
383 S. University St.
Salt Lake City, UT 84112
(801) 585-5202
cassellp@law.utah.edu

(*institutional address for identification purposes, not to imply institutional endorsement)

*Counsel for Petitioner Courtney Wild*