**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

JANE DOE 1, individually and on behalf of
all others similarly situated,

               Plaintiff,

v.

JP MORGAN CHASE BANK, N.A.,

       Defendant/Third-Party Plaintiff.

Case No. 22-cv-10019 (JSR)

---

JPMORGAN CHASE BANK, N.A.,

            Third-Party Plaintiff,

v.

JAMES EDWARD STALEY,

             Third-Party Defendant.

**JPMORGAN CHASE BANK, N.A.'S OPPOSITION
TO BRADLEY J. EDWARDS' MOTION TO DISQUALIFY WILMERHALE**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................2

    A.    WilmerHale's Representation Of JPMC.............................................2

    B.    WilmerHale's Representation of ECPAT ...........................................4

ARGUMENT .........................................................................................................6

I.    The Motion Should Be Denied Because No Former Client Has Sought Disqualification And No Party In This Case Has Raised Disqualification ......................7

II.    WilmerHale Has Not Represented Any Party Adverse To JPMC In This Case ................9

III.    WilmerHale's Filing Of An Amicus Brief In The CVRA Case Does Not Give Rise To A Conflict In This Case...................................................................10

    A.    WilmerHale Does Not Have A Conflict Arising From Its Former Representation of ECPAT..................................................................10

    B.    WilmerHale Did Not Obtain Information Belonging to Ms. Wild Under A Common Interest Agreement ...............................................13

        1.    There was no common interest agreement.................................14

        2.    Ms. Wild's counsel did not share any of Ms. Wild's confidential information with WilmerHale in connection with ECPAT's amicus brief ...............................................................................17

        3.    WilmerHale's representation of ECPAT in the CVRA Case is not substantially related to this case...............................................19

IV.    Disqualification of JPMC's Chosen Counsel At This Stage Of The Litigation Would Be Highly Prejudicial........................................................................19

CONCLUSION.....................................................................................................20

**Cases**

*Bennett Silvershein Assocs. v. Furman*,
  776 F. Supp. 800 (S.D.N.Y. 1991) ...........................................................................6

*Board of Education Of City of New York v. Nyquist*,
  590 F.2d 1241 (2d Cir. 1979)...........................................................................6, 20

*Decker v. Nagel Rice, LLC*,
  716 F. Supp. 2d 228 (S.D.N.Y. 2010).....................................................................6

*Evans v. Artek Systems Corp.*,
  715 F.2d 788 (2d Cir. 1983)...................................................................................10

*Gillette Co. v. Provost*,
  2016 WL 2610677 (Mass. Super. Ct. Feb. 11, 2019) ............................................12

*Glueck v. Jonathan Logan, Inc.*,
  653 F.2d 746 (2d Cir. 1981)......................................................................................6

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005)...............................................................................10, 12

*HSH Nordbank AG New York Branch v. Swerdlow*,
  259 F.R.D. 64 (S.D.N.Y. 2009) ...............................................................................15

*In re Gabapentin Patent Litigation*,
  407 F. Supp. 2d 607 (D.N.J. 2005) ....................................................................13, 14

*Leslie Dick Worldwide, Ltd. v. Soros*,
  2009 WL 2190207 (S.D.N.Y. July 22, 2009) ..............................................11, 12, 19

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017)......................................................................................8

*Roosevelt Irrigation District v. Salt River Project Agricultural & Power District*,
  810 F. Supp. 2d 929 (D. Ariz. 2011) ...........................................................13, 14, 15

*Satina v. New York City Human Resources Admininistration*,
  2015 WL 6681203 (S.D.N.Y. Nov. 2, 2015)..............................................................7

*Shamis v. Ambassador Factors Corp.*,
  34 F. Supp. 2d 879 (S.D.N.Y. 1999).......................................................................16

*TERA II, LLC v. Rice Drilling D, LLC*,
    2022 WL 2383543 (S.D. Ohio July 1, 2022) ........................................................16

*United States v. Cunningham*,
    672 F.2d 1064 (2d Cir. 1982) .............................................................................7

*United States v. Prevezon Holdings Ltd.*,
    839 F.3d 227 (2d Cir. 2016) ............................................................................10

*United States v. Rogers*,
    9 F.3d 1025 (2d Cir. 1993) .................................................................................7

*United States v. Schwimmer*,
    892 F.2d 237 (2d Cir. 1989) ............................................................................18

*United States v. Weissman*,
    195 F.3d 96 (2d Cir. 1999) ..........................................................................15, 16

*United States Football League v. National Football League*,
    605 F. Supp. 1448 (S.D.N.Y. 1985) ...................................................................11

*Wilson P. Abraham Construction Corp. v. Aramco Steel Corp.*,
    559 F.2d 250 (5th Cir. 1977) ............................................................................17

**Rules**

ABA Model Rules of Professional Conduct, Rule 1.7, Cmt. 25 ....................................9

ABA Model Rule of Professional Conduct, Rule 1.9 .............................................7, 12

N.Y. Rules of Professional Conduct, Rule 1.7, Cmt. 25 .............................................9

N.Y. Rules of Professional Conduct, Rule 1.9 ....................................................7, 12

Sup. Ct. R. 37(1) ...........................................................................................16

Sup. Ct. R. 37(6) ...........................................................................................16

**Other Authorities**

ABA Formal Op. 497 (Feb. 10, 2021) ..................................................................12

## PRELIMINARY STATEMENT

With just over three weeks remaining until the close of fact discovery, Bradley J. Edwards, a nonparty in this case and counsel to Plaintiff Jane Doe 1, brings this motion to disqualify Wilmer Cutler Pickering Hale and Dorr LLP from continuing to serve as counsel to Defendant JP Morgan Chase Bank, N.A. Mr. Edwards' attempts to cobble together a non-existent conflict based upon WilmerHale's former pro bono representation of ECPAT-USA as an amicus curiae in an unrelated case fails. ECPAT, a non-profit organization focused on preventing the commercial sexual exploitation of children, is not a party in this case and has not sought disqualification of WilmerHale. WilmerHale's representation of ECPAT was limited to the filing of an amicus brief in support of a petition for certiorari submitted to the Supreme Court by Courtney Wild relating to the Crime Victims' Rights Act (the "CVRA Case"), raising the right to consult with federal criminal prosecutors in connection with pre-indictment plea agreements, and specifically seeking to invalidate the secret non-prosecution agreement entered into between the United States Government and Jeffrey Epstein. Ms. Wild is not a party in the present case, and WilmerHale's work on the CVRA Case was unrelated to and had nothing to do with the issue presented here—namely, Plaintiff's attempt to impose classwide civil liability on JPMC based on its prior banking relationship with Mr. Epstein.

Mr. Edwards' motion is improper, lacks merit, and should be denied for at least three independent reasons. *First*, no current or former client of WilmerHale seeks disqualification, a prerequisite for a valid motion to disqualify in this Circuit. *Second*, no conflict with any party adverse to JPMC in this case is presented by WilmerHale's former representation of ECPAT as an amicus curiae in an unrelated matter. *Third*, Mr. Edwards' legally infirm attempts to impute a conflict to WilmerHale based on the interests of Ms. Wild are nonsensical because Ms. Wild was never a client of WilmerHale, no common interest agreement existed between Ms. Wild and

ECPAT in the CVRA Case, WilmerHale never received any information from Ms. Wild's counsel that was identified as confidential information belonging to Ms. Wild, and the CVRA Case (which sought invalidation of Mr. Epstein's secret criminal plea agreement) is not substantially related to Plaintiff Jane Doe 1's attempt in this case to hold JPMC civilly liable based on its prior banking relationship with Mr. Epstein.

Further, and apart from the lack of any disqualifying conflict, the motion smacks of gamesmanship. Mr. Edwards' efforts to remove an adversary from the case at this advanced stage based on a non-existing conflict would cause JPMC severe hardship and prejudice by denying JPMC its counsel of choice. The motion should be denied.[1]

## BACKGROUND

### A.     WilmerHale's Representation Of JPMC

On November 24, 2022, Plaintiff Jane Doe 1 commenced this civil action against JPMC. Plaintiff seeks to hold JPMC civilly liable for alleged violations of the Trafficking Victims Protection Act ("TVPA") and common law torts.

WilmerHale first appeared on JPMC's behalf on December 2, 2022, and appeared before the Court at a December 5, 2022, conference. WilmerHale's work to date on this case has been extensive and the litigation is well underway. WilmerHale, on behalf of JPMC, has filed two motions to dismiss, presented oral arguments on behalf of JPMC at the motion to dismiss hearing, and filed a third-party impleader complaint. Declaration of Felicia H. Ellsworth (hereinafter cited as Ellsworth Decl.) ¶ 13. On the same day it is filing this brief, WilmerHale is filing an opposition to a third-party motion to dismiss, and it will be filing JPMC's opposition to class certification in

---

[1] JPMC does not agree that anything in Mr. Edwards' motion or declaration, or this opposition or the declarations submitted in support of the opposition, are confidential. Nonetheless, erring on the side of caution, JPMC is submitting public versions of these documents that redact information consistent with what was redacted in Mr. Edwards' submissions.

just four days on May 12, 2023.  *Id.*  As of the date of this filing, fact discovery has been ongoing for 167 days and ends in just 22 days, on May 30, 2023.  *Id.* at ¶ 14.  To date, WilmerHale has held more than 20 meet and confer conferences with counsel for Plaintiff, produced more than 375,000 pages of documents across 55 production volumes, attended or defended 14 depositions, responded to 180 requests for production and will respond later this week to more than 400 requests for admission, and participated in more than a dozen hearings with the Court (including telephone hearings).  *Id.*  Trial is scheduled to begin in just five months, on October 23, 2023.  *Id.* at ¶ 15

As part of fact discovery, WilmerHale, on behalf of JPMC, served Mr. Edwards with a subpoena.  *Id.* at ¶ 11.  Through his extensive prior representations of victims, Mr. Edwards has in his possession transcripts of deposition and trial testimony from other matters relevant to this case. *Id.*  Mr. Edwards retained Paul Cassell, who is not counsel for the Plaintiff in this case, to represent him in responding to the subpoena.  *Id.*[2].

On April 4, 2023, Mr. Cassell suggested for the first time that WilmerHale was conflicted from representing JPMC in this case.  *Id.* at ¶ 15.  The speciousness of this belated attempt to deprive JPMC of its chosen counsel is all the more apparent due to the fact that both Mr. Edwards and Mr. Cassell were well aware of WilmerHale's representation of trafficking survivors in other cases.  For example, a prior WilmerHale representation was raised at the March 16, 2023, motion to dismiss hearing in the related case brought by the U.S. Virgin Islands, a hearing Mr. Cassell and Mr. Edwards both attended.  More remarkably, both Mr. Cassell and Mr. Edwards represented Ms.

---

[2] Neither Mr. Cassell nor Mr. Edwards was a party in the CVRA Case or is a party in this case.  This motion is filed in Mr. Edwards' personal capacity and not on behalf of Plaintiff Jane Doe 1.  Mr. Edwards' only personal involvement in this case is as a recipient of a third-party subpoena.  However, the alleged conflict is unrelated to his receipt of the subpoena, he does not identify any personal interest harmed by the alleged conflict, and the motion fails to provide any basis that Mr. Edwards has standing to bring it.

Wild in the CVRA Case, and never raised this purported conflict prior to April 4, 2023. Mr. Cassell provides vague explanations as to why he supposedly did not remember WilmerHale's representation of ECPAT as an amicus curiae in that case. *See, e.g.*, Br. 13; Cassell Decl. ¶¶ 54, 102, 115. At most, that only serves to show the unrelatedness of the CVRA Case to the current litigation.

### B. WilmerHale's Representation of ECPAT

Ms. Wild was engaged in litigation for many years alleging violations of her rights under the CVRA. Cassell Ex. 2 (Cert. Pet.); Cassell Decl. ¶ 15. Ms. Wild argued in the CVRA Case that the United States government violated her rights by entering into a secret pre-indictment non-prosecution agreement with Jeffrey Epstein without having given Ms. Wild a right to confer with the government. The United States District Court for the Southern District of Florida agreed that the federal government had violated Ms. Wild's rights but dismissed her action as moot after Mr. Epstein's death. The Eleventh Circuit affirmed. *See* Cassell Ex. 2 (Cert. Pet. at ii); Cassell Decl. ¶¶ 25-26. On August 31, 2021, Ms. Wild filed a petition for a writ of certiorari to the Supreme Court of the United States. *See* Cassell Ex. 2 (Cert. Pet.); Cassell Decl. ¶ 27. The issue on which Ms. Wild sought Supreme Court review was "[w]hether the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771 (2004), a comprehensive bill of rights for federal crime victims with specific enforcement provisions, contains rights-creating language that allows crime victims to bring a suit to enforce their right to confer with prosecutors and other CVRA rights before the Government files a federal indictment." Cassell Exhibit 2 (Cert Petition at i).

On September 9, 2021, Mr. Cassell contacted ECPAT, a non-profit organization focused on preventing the commercial sexual exploitation of children, seeking amicus support for Ms. Wild's petition. *See* Cassell Decl. ¶ 34. On September 21, 2021, ECPAT retained WilmerHale as pro bono counsel to prepare an amicus brief on its behalf. Declaration of Cynthia D. Vreeland

(hereinafter cited as Vreeland Decl.) ¶ 2.  Over the next two weeks, WilmerHale lawyers and Mr. Cassell exchanged emails relating to the amicus brief and spoke on the phone regarding the factual background of the case, which had been publicly disclosed in Ms. Wild's petition and earlier legal filings.  *Id.* at ¶ 5.

WilmerHale filed ECPAT's amicus brief on October 4, 2021.  *Id.* at ¶ 4; Ellsworth Decl. ¶ 4.  The amicus brief argued that secret, pre-indictment plea agreements in criminal cases violate the rights of crime victims and have a chilling effect on the reporting of these crimes.  Cassell Ex. 12 (ECPAT Amicus Br.); Vreeland Decl. ¶ 4; Ellsworth Decl. ¶ 4.  The brief also emphasized the harms to victims should the government be allowed to enter into such plea agreements.  Cassell Ex. 12 (ECPAT Amicus Br.); Vreeland Decl. ¶ 4; Ellsworth Decl. ¶ 4.

On December 29, 2022, almost three months after ECPAT's brief was filed, Mr. Cassell informally reached out to WilmerHale with questions related to the reply brief he was preparing in support of Ms. Wild's petition, including the best procedural mechanism to address the ███████████████████████████████████ relevant to the non-prosecution agreement. Cassell Ex. 19; Vreeland Decl. ¶ 6.  Mr. Cassell explained that he hoped WilmerHale, due to its "expertise on Supreme Court procedures and perceptions, might be able to give me some strategic guidance on ██████████████████████." Cassell Ex. 19, p. 9.  WilmerHale participated in two brief calls with Mr. Cassell to discuss these topics on January 5 and January 14, 2022.  Vreeland Decl. ¶ 5; Ellsworth Decl. ¶ 5.

Mr. Cassell does not claim that he identified any of Ms. Wild's information he may have shared in correspondence or phone conversations as confidential, nor do the WilmerHale attorneys recall Mr. Cassell ever identifying any of Ms. Wild's information as confidential or sharing any of her confidential information with them.  Vreeland Decl. ¶ 7.  Ellsworth Decl. ¶¶ 5-6.  Additionally,

WilmerHale and Mr. Cassell never discussed (let alone agreed to enter) a common interest agreement between Ms. Wild and ECPAT. Vreeland Decl. ¶ 8; Ellsworth Decl. ¶¶ 5-6. Mr. Cassell does not claim that he ever told lawyers from WilmerHale he believed a common interest agreement existed, or ever suggested that he was sharing information pursuant to a common interest agreement with WilmerHale or that he understood there to be such an agreement, and no documents were marked as being shared pursuant to any such agreement. Vreeland Decl. 8; Ellsworth Decl. ¶¶ 5-6.

**ARGUMENT**

Disqualification of a party's chosen counsel "is only warranted in the rare circumstances where an attorney's conduct 'poses a significant risk of trial taint.'" *Decker v. Nagel Rice, LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)). Courts show "considerable reluctance to disqualify attorneys" in light of "the fact that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, … that disqualification motions are often interposed for tactical reasons," and that "motions [for disqualification] inevitably cause delay." *Bd. of Educ. Of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). "With rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests ... undermines the court's confidence in the vigor of the attorney's representation of the client … or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation … thus giving the present client an unfair advantage." *Id.* "[T]he party seeking disqualification must carry a 'heavy burden,' and must meet a 'high standard of proof' before a lawyer is disqualified." *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991). Mr. Edwards does not come close to meeting this heavy burden.

WilmerHale's representation of JPMC in this case does not give rise to *any* conflict with *any* current or former client of WilmerHale—and no current or former client contends otherwise. WilmerHale has not previously represented Jane Doe 1, and no party in this case argues that WilmerHale is in a position to use privileged information gained from any prior representation to give JPMC an unfair advantage. There is no substantial relationship between WilmerHale's representation of ECPAT in the CVRA Case, challenging Epstein's secret plea agreement, and WilmerHale's representation of JPMC here. The purported conflicts raised by Mr. Edwards— who is neither a party to this case nor a current or former client of WilmerHale—are devoid of any legal or factual basis. This misguided motion to disqualify should be denied.

## I. THE MOTION SHOULD BE DENIED BECAUSE NO FORMER CLIENT HAS SOUGHT DISQUALIFICATION AND NO PARTY IN THIS CASE HAS RAISED DISQUALIFICATION

As a threshold matter, Mr. Edwards cannot seek WilmerHale's disqualification. Mr. Edwards is not a current or former client of WilmerHale. And, "'[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification.'" *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir. 1993) (quoting *United States v. Cunningham*, 672 F.2d 1064, 1072 (2d Cir. 1982)); *see also id.* ("No case has been called to our attention, and we are aware of none, in which an attorney has been disqualified on grounds of conflicting prior representation solely at the behest of a person other than the former client or its privy."); *Satina v. New York City Hum. Res. Admin.*, 2015 WL 6681203, at *2 (S.D.N.Y. Nov. 2, 2015) (denying motion for disqualification where movant was not a former client, noting that "no Second Circuit case has ever approved of such third-party disqualification motions").[3] Tellingly, WilmerHale's former client ECPAT—whose interests the motion to disqualify purports

---

[3] This is logical, given that a former client may choose to consent to an adverse representation. *See* ABA Model Rules of Pro. Conduct, Rule 1.9; N.Y. Rules of Pro. Conduct, Rule 1.9.

to advance—is not the moving party, nor has ECPAT moved to intervene for purposes of raising a conflict.  That alone is sufficient reason to deny the motion.

Even more remarkable, no party to this case has seen fit to join the motion to disqualify or even to suggest a conflict exists.[4]  The parties to this litigation are well aware of WilmerHale's involvement in trafficking cases.  Mr. Edwards himself served as co-counsel for Ms. Wild in the CVRA Case and has served as counsel to Plaintiff in this case from its start.  And yet, neither Mr. Edwards nor any other counsel for Plaintiff ever raised the purported conflict on behalf of the Plaintiff.[5]  Plaintiff has had ample opportunity to raise any purported conflicts in the more than five months since the complaint was filed and WilmerHale's attorneys noticed their appearances. That Plaintiff has not done so speaks volumes about the lack of merit attached to the claimed conflict.  Indeed, in the last week alone, Plaintiff had at least three opportunities to join in Mr. Edward's quest to disqualify WilmerHale, including:  (1) during the May 1, 2023 telephone conference with the Court at which the purported conflict was raised, (2) when the Court reached out to the parties on May 2, 2023 to inquire who would be filing the motion to disqualify, and (3) by joining in the motion to disqualify itself.  Plaintiff did not do so.  And even should Plaintiff

---

[4] The motion to disqualify cryptically states that "[u]ndersigned counsel represents that Ms. Wild joins in this motion" and that "JPM Jane Doe 1 also joins in the motion, based on the public (redacted) memorandum of law."  Br. 3 n.2.  Notably, however, Plaintiff Jane Doe 1 did not *actually* join the motion, which would have been easy enough to do.  Counsel's footnote "representation" that Plaintiff joins the motion is insufficient, particularly since counsel for Mr. Edwards is *not* counsel for Plaintiff Jane Doe 1.

[5] WilmerHale's representation of trafficking victims was also raised at the March 16, 2023, motion to dismiss hearing in the USVI case that Mr. Edwards and Mr. Cassell both attended.  At that hearing, counsel for USVI referenced WilmerHale's representation of a trafficking survivor in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017).  In response, this Court remarked that it did not "see anything wrong … between a law firm arguing one position in one lawsuit and the opposite position in another lawsuit."  No. 22-cv-10904 (S.D.N.Y.), Dkt. 96 at 45:21-25.

belatedly attempt to join, that would not salvage the motion because Plaintiff has never been a client of WilmerHale and is, therefore, also not a proper moving party.

## II.    WILMERHALE HAS NOT REPRESENTED ANY PARTY ADVERSE TO JPMC IN THIS CASE

The purported conflicts alleged in the motion do not arise from WilmerHale's representation in another matter of a party that is adverse to JPMC in this litigation, and therefore can provide no basis for disqualification. Mr. Edwards does not (and cannot) allege that WilmerHale currently has or has ever had an attorney-client relationship with Jane Doe 1 or Ms. Wild. Rather, Mr. Edwards' motion rests on two convoluted and factually inaccurate theories: (1) "WilmerHale has a conflict in acting directly against Courtney Wild" because WilmerHale's representation of JPMC is "materially adverse to ECPAT's interests in supporting Ms. Wild," Br. 15-18 (cleaned up); and (2) Ms. Wild's confidential information was shared with WilmerHale pursuant to a common interest agreement in the CVRA Case, Br. 18-22. But even if the allegations underpinning these theories were well-founded (as explained below, they are not), they would still fail to provide a basis for disqualification.

Ms. Wild is not a party in this case. While Mr. Edwards has identified Ms. Wild as a potential member of the putative class, no class has been certified and the bounds of any such class have not been defined. Moreover, even if this Court ultimately grants Plaintiff's motion for class certification and even if Ms. Wild is ultimately included within the certified class, unnamed class members are not parties to a case for conflicts purposes. *See* ABA Model Rules of Pro. Conduct, Rule 1.7, Cmt. 25 ("a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an unrelated

matter"); New York Rules of Pro. Conduct, Rule 1.7, Cmt. 25 (same).[6]  And in any event, Ms. Wild is not and has never been a client of WilmerHale.  Ellsworth Decl. ¶ 3.

## III.  WILMERHALE'S FILING OF AN AMICUS BRIEF IN THE CVRA CASE DOES NOT GIVE RISE TO A CONFLICT IN THIS CASE

Mr. Edwards presents two arguments for disqualification based on purported conflicts arising from WilmerHale's representation of ECPAT as an amicus in the CVRA Case.  Each of these arguments lacks legal and factual basis and provides no ground for disqualification.

### A.  WilmerHale Does Not Have A Conflict Arising From Its Former Representation of ECPAT

Mr. Edwards' first argument for disqualification, which is grounded in the assertion that WilmerHale has a conflict with a former client, is nonsensical.  The Second Circuit has repeatedly held that, "[i]n cases of successive representation, … an attorney may be disqualified if:  (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought has access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client."  *Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)); *see also, e.g.*, *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016).  Mr. Edwards has satisfied none of the three prongs here.

---

[6] The motion to disqualify addresses Comment 25 to ABA Model Rules of Professional Conduct, Rule 1.7 but points to the use of the word "unrelated" in this comment as reason to ignore it in this case.  *See* Br. 16 n.5 ("A comment to ABA Model Rule 1.7, dealing with conflicts involving current clients, indicates that 'a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an *unrelated* matter.' Cmt. 25. (emphasis added).").  For the reasons discussed below, this case is substantially different from the CVRA Case.  Moreover, WilmerHale has never represented Ms. Wild in *any* matter—related or unrelated.  Ellsworth Decl. ¶ 3.

*First*, as discussed above, the moving party—Mr. Edwards—is not a former client of WilmerHale.  ECPAT, WilmerHale's former client, is not the movant and has not joined Mr. Edwards in this motion.

*Second*, there is no substantial relationship between WilmerHale's representation of ECPAT as an amicus in the CVRA Case and WilmerHale's representation of JPMC in this case.  "A substantial relationship exists 'if the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same.'" *Leslie Dick Worldwide, Ltd. v. Soros*, 2009 WL 2190207, at *9 (S.D.N.Y. July 22, 2009) (quoting *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985)).  The fact that two cases "share a common background does not establish that the 'issues' [in one representation] are 'identical' to or 'essentially the same' as those [in the second representation]."  *Id.*

There are no common questions of fact or law that are material to both WilmerHale's prior representation of ECPAT in the CVRA Case and its representation of JPMC in this case.  WilmerHale's involvement on behalf of ECPAT in the CVRA Case was limited to an amicus brief in connection with a petition for certiorari, where the issue was whether the CVRA "contains rights-creating language that allows crime victims to bring a suit to enforce their right to confer with prosecutors and other CVRA rights before the Government files a federal indictment."  Cassell Ex. 2 (Cert. Pet. at i).  The amicus brief filed by WilmerHale on behalf of ECPAT highlighted the risks of interpreting the CVRA to allow the circumvention of victims' rights in the criminal context through secret pre-indictment plea deals.  Cassell Ex. 12 (ECPAT Amicus Br.).

WilmerHale's representation of JPMC in this case has nothing to do with that.  This case concerns whether JPMC, as a corporate institution with which Mr. Epstein had bank accounts, has any civil liability arising from Mr. Epstein's sex trafficking venture.  The "legal issues [at play in

the first representation] are not presented in the current action; nor could they be considered 'material' to the present litigation." *Leslie Dick*, 2009 WL 2190207, at *11. Notably, JPMC has not raised the non-prosecution agreement the federal government entered into with Mr. Epstein—the subject of Ms. Wild's certiorari petition—as a defense to liability in the current case for the precise reason that it has no bearing on it. "[T]here are no identical or even similar questions of fact that are 'material in both' representations." *Id.* at *10.[7]

*Third*, the motion to disqualify does not allege that WilmerHale received relevant confidential information from any of its former clients; rather, at most, the motion alleges that WilmerHale received relevant confidential information of Ms. Wild, who is not and has never been WilmerHale's client. Even if this allegation were true (as discussed below, it is not), it does not give rise to a situation in which WilmerHale has "place[d] [itself] in a position where [it] could use *a client's privileged information* against that client." *Hempstead*, 409 F.3d at 133 (emphasis added).[8]

---

[7] Mr. Edwards cites statements made during a conference between counsel for JPMC and counsel for Mr. Edwards concerning the scope of the document subpoena to him, during which Mr. Edwards' prior representation of victims of Jeffrey Epstein was discussed in the context of a request for any deposition or trial testimony in Mr. Edwards's possession related to Mr. Epstein. Br. 12-13; Cassell Decl. ¶¶ 110-111. The request for factual information in Mr. Edwards' possession about previous cases does nothing to make the Supreme Court certiorari petition in the CVRA Case somehow related to this case against JPMC.

[8] ABA Model Rule of Professional Conduct, Rule 1.9 (and corresponding Rule 1.9 of the New York Rules of Professional Conduct) is to like effect. As explained above, there is no substantial relationship between WilmerHale's representation of ECPAT as an amicus in the CVRA Case and its representation of JPMC in this case. Moreover, WilmerHale's representation of JPMC is not materially adverse to ECPAT's interests. As noted by the ABA in Formal Opinion 497, material adversity "requires a conflict as to the legal right and duties of the clients," ABA Formal Op. 497 (Feb. 10, 2021) at 3 (*quoting* Gillette Co. v. Provost, 2016 WL 2610677, at *3 (Mass. Super. Ct. Feb. 11, 2019)), and cannot arise from "a claimed detriment that is not accompanied by demonstrable and material harm or risk of such harm to the former … client's interests," *id.* at 9. Here, ECPAT is not a party to, and its legal interests are not at stake in, this litigation.

## B.    WilmerHale Did Not Obtain Information Belonging to Ms. Wild Under A Common Interest Agreement

Mr. Edwards also argues for disqualification because his counsel Mr. Cassell allegedly shared Ms. Wild's confidential information with WilmerHale pursuant to an unwritten common interest agreement in the CVRA Case. Even if there were a common interest agreement—and, as discussed below, there was not—Mr. Edwards' argument would not avail. He cites no case (and JPMC is aware of no case) in which a court in the Second Circuit disqualified a party's chosen counsel on the basis of a common interest agreement, and there is no basis to do so under the ethical rules (which relate to conflicts arising from *client* relationships).

In fact, Mr. Edwards cites only two out-of-circuit cases that consider a motion to disqualify in the context of a common interest agreement. Br. 23 (discussing *Roosevelt Irrigation Dist. v. Salt River Project Agric. & Power Dist.*, 810 F. Supp. 2d 929 (D. Ariz. 2011), and *In re Gabapentin Patent Litig.*, 407 F. Supp. 2d 607 (D.N.J. 2005)). Both cases are inapposite. In both cases, unlike here, the relevant parties actually entered into joint defense agreements, and confidential information relevant to subsequent representations in the same or substantially similar cases was actually shared pursuant to these agreements. *See Roosevelt Irrigation*, 810 F. Supp. at 985-986 (attorney previously represented party to written joint defense agreement, attorney received confidential information of co-defendants pursuant to that agreement including information regarding potential liability of co-defendants for contamination of Roosevelt Irrigation's wells, and then joined new law firm that subsequently represented Roosevelt Irrigation in new lawsuit against co-defendants alleging liability for contamination of its wells); *Gabapentin*, 407 F. Supp. 2d at 612-615 (attorneys represented defendant in patent litigation, entered into written joint defense agreement on behalf of defendant, received confidential information of co-defendants

pursuant to that agreement, joined new law firm that represented plaintiff in the same litigation, and co-defendants did not consent to waiver of the conflict).

To the extent that the Court is even inclined to consider this novel theory for disqualification, Mr. Edwards entirely fails to articulate a clear standard by which this Court should do so. Although factually distinguishable, one of the out-of-circuit cases cited in the motion, *Roosevelt Irrigation*, does employ a standard, noting that "for a potentially disqualifying conflict stemming from a duty of confidentially created by a joint defense agreement to exist, the moving party must show: (1) the actual exchange of relevant confidential information; (2) the former representation was 'the same or substantially related' to the current litigation; and (3) the current client's interests are 'materially adverse' to interests of the party claiming to be protected by the joint defense agreement." 810 F. Supp. 2d at 973. Mr. Edwards can make none of those showings.

*First*, there was no common interest agreement—written or otherwise—between Ms. Wild and ECPAT. *Second*, Ms. Wild's counsel did not share any confidential information relevant to this litigation with WilmerHale during the course of WilmerHale's representation of ECPAT. *Third*, WilmerHale's representation of ECPAT in the CVRA Case was not the same as or substantially related to its representation of JPMC in this case.[9]

### 1. There was no common interest agreement

It is undisputed that there was no written or oral common interest agreement entered into by Ms. Wild and ECPAT. The absence of such an agreement is fatal to Mr. Edwards' common interest agreement argument. Mr. Edwards cites no case (and JPMC is aware of no case) in which any court has disqualified an attorney based on an implied common interest agreement. In fact, the only two cases cited by Mr. Edwards that consider motions to disqualify based on common

---

[9] Any suggestion of material adversity between JPMC and Ms. Wild is without merit because Ms. Wild is a non-party to this case and no class has yet been certified. *See supra* 9.

interest agreements involved written joint defense agreements, and the decisions in those cases relied on the specific terms of the agreements to determine that information was exchanged in confidence. *See Gabapentin*, 407 F. Supp. 2d at 613 (relying on "examination of the terms of the [joint defense agreement]" to find "a clear intent that any voluntarily-shared information would remain confidential and be protected by the attorney-client privilege"); *Roosevelt Irrigation*, 810 F. Supp. 2d at 971 (noting that "Paragraph 20 of the joint defense agreement contains a confidentiality provision").

And while a common interest agreement "need not be in writing," "the common interest doctrine applies only where a party has demonstrated the existence of an agreement to pursue a common legal strategy." *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 72 n.12 (S.D.N.Y. 2009). In other words, common interest agreements, like all contracts, require a meeting of the minds. *See, e.g.*, *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999) (finding "the impression of one side" to be insufficient to form implied joint defense agreement).

Mr. Edwards does not (and cannot) point to anything evidencing ECPAT's intent to enter into a common interest agreement with Ms. Wild. Tellingly, Mr. Edwards does not assert that the parties ever spoke about a common interest agreement, that communications or documents shared between the parties or their counsel were marked as provided under a common interest or joint defense agreement, or that ECPAT or WilmerHale ever articulated an intent to enter into a common interest agreement with Ms. Wild. Rather, the motion's bald assertion that "WilmerHale and counsel for Ms. Wild were operating under a common interest agreement," Br. 3, rests solely on Mr. Cassell's purported subjective impressions and unilateral, unspoken (and put forward now in hindsight for purposes of this motion to disqualify) intent. *See, e.g.*, Cassell Decl. ¶47 ("*From my perspective*, at that time (and continuing thereafter) the WilmerHale lawyers and I were engaged

in a joint and common effort…"); ¶ 61 ("*I understood* at that time, as I had earlier, that the WilmerHale lawyers and I were engaged in a joint effort…"); Br. 21 ("*undersigned counsel would never have* shared confidential strategic and tactical information about Ms. Wild's legal approach to the case without a confidentiality understanding"). But the unilateral intent of one party cannot create a common interest agreement. *See Weissman*, 195 F.3d at 100.

Moreover, ECPAT and Ms. Wild did not share a "common legal interest" in the outcome of, or a "common legal strategy" in litigating, the CVRA Case—each of which is necessary to give rise to a common interest agreement. ECPAT's role as amicus set it apart from Ms. Wild. "Simply put, an amicus's legal interest in the outcome of an action is not equivalent to that of a plaintiff or defendant, such that the amicus and the party can be considered truly united in a legal strategy or defense." *TERA II, LLC v. Rice Drilling D, LLC*, 2022 WL 2383543, at *4 (S.D. Ohio July 1, 2022) (finding materials shared with an amicus were not protected under common interest doctrine and therefore privilege had been waived). Indeed, despite engaging in cooperative efforts which are common among amici and the parties that they support, the mere fact of cooperation and a shared desire for a specific outcome does not create a common interest agreement. *See Weissman*, 195 F.3d at 99-100 (district court properly rejected argument that there was an implied JDA despite "parties' cooperative efforts," and even though "[i]nformation was shared and strategy developed in concert"); *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999) ("sharing a desire to succeed in an action does not create a 'common interest'").[10]

---

[10] The Cassell Declaration seems to suggest that a common interest agreement should be implied whenever a party to a litigation seeks out an amicus to submit a brief in support of the party's position. *See* Cassell Decl. ¶ 48; *see also* Br. 19-20. But presuming the existence of a common interest agreement between a party and an amicus would not only be unprecedented, it would also fly in the face of the very reason that courts entertain briefs submitted by amici as independent "friends of the court." *See* Sup. Ct. R. 37(1) (amicus briefs are intended to raise "relevant matter not already brought to [the court's] attention by the parties"); Sup. Ct. R. 37(6)

2. **Ms. Wild's counsel did not share any of Ms. Wild's confidential information with WilmerHale in connection with ECPAT's amicus brief**

Beyond the conclusory statement that Mr. Cassell would not have provided "confidential legal strategies" without a common interest agreement, Br. 20, the motion to disqualify does not articulate the basis for Mr. Edwards' claim. The mere fact that Ms. Wild's counsel spoke with WilmerHale about the case—and even that Ms. Wild's counsel discussed "legal strategies" with WilmerHale, *i.e.*, how to improve the chances that the Supreme Court would grant Ms. Wild's petition for certiorari—fails to establish that any of Ms. Wild's confidential information was provided, let alone that such information was protected under a common interest agreement. Indeed, neither the motion nor the Cassell Declaration claims that any information provided to WilmerHale—in writing or orally—was marked confidential or protected by a common interest agreement, and WilmerHale is aware of no such designation. Vreeland Decl. ¶¶ 7, 8; Ellsworth Decl. ¶¶ 5, 6. Tellingly, neither the motion to disqualify nor the Cassell Declaration mentions attorney-client privilege or work product. And neither the motion nor the Cassell Declaration specifically identifies the information that was purportedly confidential, and certainly neither includes any claims that Mr. Cassell did anything to confirm or communicate his unilateral "understanding" of confidentiality to the party with which he was sharing this purported information. Finally, when considering a motion to disqualify arising from a purported common

---

(requiring amici to "indicate whether counsel for a party authored the brief in whole or in part and whether such counsel or a party made a monetary contribution intended to fund the preparation or submission of the brief, and shall identify every person or entity, other than the *amicus curiae*, its members, or its counsel, who made such a monetary contribution to the preparation or submission of the brief"); *Tera II*, 2022 WL 2383543, at *4 ("Amici 'offer assistance in resolving issues properly before a court,' but are not parties to the litigation, and have a limited ability to impact the shape of litigation. So, without more, it would be improper to consider them 'parties' for the purpose of the common interest doctrine." (citations omitted)). Such a presumption would also likely lead law firms that routinely undertake pro bono representations of amici to reconsider this practice if the mere fact of such representation posed the risk of creating future conflicts.

interest agreement, "there is no presumption that confidential information was exchanged as there was no direct attorney-client privilege." *Wilson P. Abraham Constr. Corp. v. Aramco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977).

In any event, nothing that could conceivably have been shared with WilmerHale in the CVRA Case is materially relevant to this case. Conversations between Ms. Wild's counsel and WilmerHale focused on public facts about the underlying case and discussion of the certiorari briefing, including procedural mechanisms to address the ████████████████████████████ ████████████████████████ in the CVRA Case. *See* Vreeland Decl. ¶¶ 6-7; Ellsworth Decl. ¶ 5; Cassell Exs. 7-11, 15, 18-19.[11] Neither the motion nor the Cassell Declaration claims that JPMC was ever mentioned in any communication between Ms. Wild's counsel and WilmerHale. Further, for the reasons stated above, *see supra* 11-12, the issues at play in the CVRA Case—including whatever legal questions Ms. Wild's counsel chose to pose to WilmerHale—are not at issue in the JPMC case, and there is no basis to claim that WilmerHale's participation in these discussions will give JPMC an unfair advantage in this lawsuit.[12]

Mr. Edwards' conclusory assertions to the contrary do not change this simple fact. The legal issues presented by the certiorari briefing in the CVRA Case, ████████████████████ ████████████████████████████████████████████, and the possible ████████████████████ in a different case have nothing to do with the issue in this case—*i.e.*,

---

[11] It is worth noting that "[o]nly those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected" under a common interest agreement. *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). Thus, to the extent that Mr. Edwards alleges that information beyond the scope of certiorari briefing was shared with WilmerHale, that information would not be protected by a purported common interest agreement in any event.

[12] Ms. Wild's briefs and ECPAT's amicus brief have since been filed and are available to the public, and the CVRA Case is over.

whether JPMC has any civil liability arising from its prior banking relationship with Mr. Epstein. As such, "[t]here is no credible basis for finding that" any information that may have been shared with WilmerHale regarding any prior or future attacks on the validity of Mr. Epstein's non-prosecution agreement "would give [WilmerHale] an unfair advantage in the present litigation or otherwise taint this proceeding." *Leslie Dick*, 2009 WL 2190207, at *16.

### 3. WilmerHale's representation of ECPAT in the CVRA Case is not substantially related to this case

For the reasons stated above, *see supra* 11-12, WilmerHale's representation of ECPAT in the CVRA case is not substantially related to the JPMC case.

## IV. DISQUALIFICATION OF JPMC'S CHOSEN COUNSEL AT THIS STAGE OF THE LITIGATION WOULD BE HIGHLY PREJUDICIAL

The motion to disqualify asserts without any legal or factual support that disqualification of WilmerHale would not cause any "real prejudice to JP Morgan or the cases' schedule." Br. 24. This is patently false.

WilmerHale has served as JPMC's counsel from the start of this litigation, and has spearheaded the development and implementation of JPMC's legal strategy in this case. Declaration of Alla Lerner (hereinafter cited as Lerner Decl.) ¶ 4. To date, WilmerHale has filed two motions to dismiss, presented oral argument on behalf of JPMC at the motion to dismiss hearing, filed a third-party impleader complaint, held more than 20 meet and confer conferences with counsel for Plaintiff, produced more than 375,000 pages of documents across 55 production volumes, attended or defended 14 depositions, responded to 180 requests for production and later this week will respond to more than 400 requests for admission, and participated in more than a dozen hearings with the Court (including telephone hearings). Ellsworth Decl. ¶¶ 13-14. Simultaneous with the filing of this brief, WilmerHale is filing an opposition to a third-party motion to dismiss and will be filing JPMC's opposition to class certification in just four days on

May 12, 2023. *Id.* at ¶ 13. Fact discovery closes in just 22 days and trial is scheduled to begin in five months. *Id.* at ¶ 15. Mr. Edwards' assertion that JPMC would not suffer prejudice if it had to replace the law firm that has spearheaded these efforts borders on the absurd. It is indisputable that disqualification would have "an immediate adverse effect" on JPMC. *Nyquist*, 590 F.2d at 1246; *see also* Lerner Decl. ¶¶ 1-6; Ellsworth Decl. ¶ 15.

## CONCLUSION

The Motion should be denied.

Dated: May 8, 2023

Respectfully submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth
John J. Butts
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Hillary Chutter-Ames
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
hillary.chutter-ames@wilmerhale.com

*Attorneys for JPMorgan Chase Bank, N.A.*