IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>　　　　　Defendant/Third-Party Plaintiff.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>　　　　　Third-Party Plaintiff,<br><br>　v.<br><br>JAMES EDWARD STALEY,<br><br>　　　　　Third-Party Defendant. | Case No. 22-cv-10019-JSR |

**DECLARATION OF FELICIA H. ELLSWORTH
IN SUPPORT OF JPMORGAN CHASE BANK, N.A.'S OPPOSITION
TO BRADLEY J. EDWARDS' MOTION TO DISQUALIFY WILMERHALE**

Pursuant to 28 U.S.C. § 1746, I, Felicia H. Ellsworth, declare under penalty of perjury as follows:

1. I am a member in good standing of the bar of the Commonwealth of Massachusetts. I am one of the attorneys representing Defendant JPMorgan Chase Bank, N.A. ("JPMC") in the above-captioned action ("Action") and have been admitted to this Court *pro hac vice*. I am a Partner and a Vice-Chair of the Litigation/Controversy Department with the law firm of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), 60 State Street,

Boston, Massachusetts 02109. I provide this declaration in support of JPMorgan Chase Bank N.A.'s Opposition to Mr. Edwards' Motion to Disqualify WilmerHale.

**WilmerHale Represented ECPAT-USA in Connection with an Amicus Brief**

2. In September 2021, ECPAT-USA, a non-profit anti-child trafficking policy organization, retained WilmerHale to represent it in connection with providing an amicus brief (the "ECPAT Amicus Brief") in support of a petition for a writ of certiorari to the Supreme Court of the United States. WilmerHale agreed to undertake that representation on a *pro bono* basis. The question presented by the certiorari petition was "Whether the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771 (2004), a comprehensive bill of rights for federal crime victims with specific enforcement pro-visions, contains rights-creating language that allows crime victims to bring a suit to enforce their right to confer with prosecutors and other CVRA rights before the Government files a federal indictment." Cassell Exhibit 2, Cert Petition at i.

3. Attorney Paul Cassell, Professor at S.J. Quinney College of Law at the University of Utah, and Bradley Edwards of Edwards Pottinger LP represented the Petitioner, Ms. Courtney Wild, in connection with the certiorari petition. Ms. Wild is not and has never been a client of WilmerHale.

4. On October 4, 2021, WilmerHale filed the ECPAT Amicus Brief, which argued that the CVRA applied pre-indictment and highlighted the harms to victims of child sex trafficking if the government were allowed to secretly enter into plea agreements with sex traffickers without first conferring with victims. I was asked to join the team of WilmerHale lawyers working on the ECPAT Amicus Brief because I am a member of the Supreme Court bar, and I reviewed and commented on the ECPAT Amicus Brief after

being asked to join. I had no communications with ECPAT-USA or Mr. Cassell prior to the filing of the ECPAT Amicus Brief.

5. After WilmerHale filed the ECPAT Amicus Brief, I participated in one telephone call with Mr. Cassell on January 5, 2022. I am a former law clerk to Chief Justice John G. Roberts, a member of WilmerHale's Appellate and Supreme Court Litigation practice group, and a member of the Supreme Court bar. My recollection and understanding of the reason that Mr. Cassell sought to speak with WilmerHale after the ECPAT Amicus Brief had been filed was that Mr. Cassell had questions about Supreme Court practice, and so I participated in this call with my partner Cynthia Vreeland given my familiarity with Supreme Court practice and procedures. At no time during this call did Mr. Cassell state he was providing any of Ms. Wild's confidential information to the WilmerHale participants, including me, nor was there any discussion of a common interest understanding between his client Ms. Wild and WilmerHale's client ECPAT-USA.

6. Further, I have reviewed the email correspondence with WilmerHale that Mr. Cassell attached to his declaration. In none of these emails did Mr. Cassell state that he was providing any confidential information about Ms. Wild to WilmerHale, nor do any of the emails discuss a common interest agreement or identify the communications as subject to such an agreement.

**WilmerHale's Current Representation of JPMC in Unrelated Civil Litigation**

7. As counsel for JPMC in the Action, I have personal knowledge about the allegations the Plaintiff, Jane Doe 1, has brought against JPMC. This is a civil action on behalf of an individual proceeding under the pseudonym Jane Doe, who seeks to be appointed as a representative of a putative class, alleging that JPMC can be held liable under the

Trafficking Victims Protection Act ("TVPA") for its prior banking relationship with Jeffrey Epstein.

8. As counsel for JPMC in the Action, I am aware of Plaintiff Jane Doe 1's identity. The Plaintiff in the Action is not Courtney Wild.

9. The Action is entirely unrelated to the amicus work WilmerHale performed on behalf of ECPAT-USA relating to victims' rights under the CVRA.

10. Before agreeing to represent JPMC in the Action, WilmerHale ran a conflicts check and determined there was no conflict with representing JPMC in the Action.

11. I participated in a conference call with Mr. Cassell, as counsel for Mr. Edwards, concerning the scope of a document subpoena JPMC served upon Mr. Edwards. During this call, I recall discussing whether Mr. Edwards had in his possession any prior deposition or trial testimony related to Mr. Epstein based on his prior representations of victims of Mr. Epstein. This request for factual information relating to Mr. Edwards' prior cases does nothing to make the certiorari petition in the CVRA case somehow related to this case against JPMC.

12. WilmerHale first interacted with Plaintiff's counsel, including Mr. Edwards, on November 30, 2022, when we informed Mr. Edwards and other counsel for the Plaintiff that WilmerHale would be representing JPMC in the Action. I was copied on the November 30, 2022 email to Mr. Edwards. On December 1, 2022, I participated in a meet and confer conference with Plaintiff's counsel, including Mr. Edwards, to discuss a proposed case management plan to submit to the Court, and Mr. Edwards and I participated in a telephone conference with the Court later that same day to discuss the timing for submission of a proposed case management plan. Two WilmerHale attorneys

filed notices of appearance in the Action on December 2, 2022, and on December 5, 2022, I attended an in-person status conference before the Court, at which I was granted *pro hac vice* admission on oral motion. Mr. Edwards (in his capacity as counsel for Plaintiff Jane Doe 1) and Mr. Cassell (in his capacity as counsel for the plaintiff in a consolidated case that has been filed against a different defendant) also attended this December 5, 2022 status conference.

13. WilmerHale has represented JPMC in this Action since November 24, 2022, when Plaintiff first filed the complaint. Since then, WilmerHale has filed two motions to dismiss, presented oral arguments on behalf of JPMC at the motion to dismiss hearing, and filed a third party impleader complaint against third party defendant James Staley. Simultaneous to the filing of its opposition to Mr. Edwards' Motion, WilmerHale is filing an opposition to a third motion to dismiss (by Mr. Staley), and in four days, on Friday, May 12, 2023, WilmerHale will file an opposition to Plaintiff Jane Doe 1's motion for class certification.

14. Over the course of discovery, WilmerHale has participated in more than 20 meet and confer meetings, produced more than 375,000 pages of documents across 55 production volumes, attended or defended 14 depositions, responded to 180 requests for production and will respond later this week to more than 400 requests for admission, and participated in more than a dozen hearings with the Court (including telephonic hearings).

15. Mr. Cassell first raised the alleged conflicts issue on April 4, 2022, after 19 weeks of fact discovery. As of the date of this filing, fact discovery ends in 22 days, on May 30, 2023, and trial is scheduled to begin in just five months, on October 23, 2023. Depriving JPMC of its litigation and trial counsel in this large and fast-moving case would prejudice JPMC

and cause JPMC substantial harm.

I declare under penalty of perjury that the foregoing is true and correct.

Date: May 8, 2023

Felicia H. Ellsworth