**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>         Defendant/Third-Party Plaintiff. | Case No. 22-cv-10019-JSR |
| JPMORGAN CHASE BANK, N.A.,<br><br>         Third-Party Plaintiff,<br><br>   v.<br><br>JAMES EDWARD STALEY,<br><br>         Third-Party Defendant. | |

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN OPPOSITION TO
THIRD-PARTY DEFENDANT JAMES EDWARD STALEY'S MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT .....................................................................................................................4

I.      JPMC'S Third-Party Complaint Contains Well-Pleaded Allegations. ..............................4

II.     Indemnification and Contribution Claims Are Permissible Under The TVPA. .................6

III.    Staley's Additional Attacks On JPMC's Indemnity Claim Are Meritless. ......................11

        A.      Delaware Law And JPMC's Bylaws Empower JPMC To Bring An
                Indemnity Claim Against Staley On These Facts. ..................................................11

        B.      Doe And USVI's Attempts To Claim Direct Liability Against JPMC Do
                Not Preclude JPMC's Indemnification Claims Against Staley. ...........................13

        C.      Staley's Scope Of Employment Argument Is Misguided....................................14

IV.     JPMC Has Stated A Claim For Contribution....................................................................15

V.      JPMC's Breach Of Fiduciary Duty And Faithless Servant Causes Of Action
        Would Survive Dismissal Of the Indemnification And Contribution Claims. .................16

VI.     Staley's Challenges To The Breach of Fiduciary Duty And Faithless Servant
        Claims Are Without Merit. ..............................................................................................18

        A.      The Breach Of Fiduciary Duty And Faithless Servant Claims Are Timely. .........18

        B.      The Third-Party Complaint States A Claim For Breach Of Fiduciary Duty. ........20

        C.      The Third-Party Complaint States A Faithless Servant Claim. ............................23

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Marriott International, Inc.*,
  2020 WL 3642485 (E.D. Pa. July 6, 2020) .............................................................. 6, 7

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  175 F. Supp. 3d 44 (S.D.N.Y. 2016) ....................................................................... 20

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*,
  140 F.3d 101 (2d Cir. 1998) ................................................................................... 16

*Beard Rsch., Inc. v. Kates*,
  8 A.3d 573 (Del. Ch.),
  *aff'd sub nom.*
  *ASDI, Inc. v. Beard Rsch., Inc.*,
  11 A.3d 749 (Del. 2010) ......................................................................................... 21

*Beauchamp v. City of New York*,
  3 A.D.3d 465 (2d Dep't 2004) ................................................................................ 14

*Bellis v. Tokio Marine & Fire Ins. Co.*,
  2002 WL 193149 (S.D. N.Y. 2002) ........................................................................ 15

*Carnegie–Mellon University v. Cohill*,
  484 U.S. 343 (1988) .......................................................................................... 16, 17

*Certainteed Corp. v. Celotex Corp.*,
  2005 WL 217032 (Del. Ch. Jan. 24, 2005) ............................................................. 18

*Chemung Canal Tr. Co. v. Sovran Bank/Maryland*,
  939 F.2d 12 (2d Cir. 1991) ....................................................................................... 9

*Cisse v. Annucci*,
  2022 WL 1183274 (N.D.N.Y. Apr. 21, 2022) ........................................................... 5

*City of Los Angeles v. AECOM Servs., Inc.*,
  854 F.3d 1149 (9th Cir. 2017) ................................................................................ 11

*Corley v. Country Squire Apartments, Inc.*,
  32 A.D.3d 978, 820 N.Y.S.2d 900 (2006) .............................................................. 14

*Croons v. New York State Office of Mental Health*,
  18 F. Supp. 3d 193 (N.D.N.Y. 2014) ........................................................................ 5

*Crow-Crimmins-Wolff & Munier v. Westchester Cnty.*,
  90 A.D.2d 785, 455 N.Y.S.2d 390 (1982) .............................................................. 16

*Dery v. Wyer,*
    265 F.2d 804 (2d Cir.1959) ....................................................................................... 16

*Digilytic Int'l FZE v. Alchemy Fin., Inc.,*
    2022 WL 912965 (S.D.N.Y. Mar. 29, 2022) ................................................................. 5

*Ditullio v. Boehm,*
    2010 WL 11534265 (D. Alaska 2010) .......................................................................... 7

*Ebel v. G/O Media, Inc.,*
    2021 WL 2037867 (S.D.N.Y. May 21, 2021) ............................................................. 24

*Epiphany Cmty. Nursery Sch. v. Levey,*
    171 A.D.3d 1, 94 N.Y.S.3d 1 (2019) .......................................................................... 19

*Est. of Eller v. Bartron,*
    31 A.3d 895 (Del. 2011) ............................................................................................. 21

*Fei Hang Chen v. Jing Fong Rest., Inc.,*
    582 F. Supp. 2d 602 (S.D.N.Y. 2008) ................................................................... 17, 18

*Feiger v. Iral Jewelry, Ltd.,*
    41 N.Y.2d 928, 394 N.Y.S.2d 626, 363 N.E.2d 350 (N.Y. 1977) ......................... 23, 24

*Felder v. Casey,*
    487 U.S. 131 (1988) ..................................................................................................... 8

*Godoy v. Abamaster of Miami,*
    302 A.D.2d 57, 754 N.Y.S.2d 301 (2d Dep't 2003) .................................................. 15

*Herman v. RSR Security Services Ltd.,*
    172 F.3d 132 (2d Cir. 1999) ........................................................................................ 9

*Honeywell, Inc. v. J.P. Maguire Co.,*
    1999 WL 102762 (S.D.N.Y. Feb. 24, 1999) .............................................................. 13

*In re Bernard L. Madoff Investment Securities LLC.,*
    721 F.3d 54 (2d Cir. 2013) ................................................................................... 10, 11

*In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.,*
    2021 WL 4993536 (S.D.N.Y. Oct. 26, 2021) ............................................................ 22

*In re Dole Food Co., Inc. Stockholder Litig.,*
    2015 WL 5052214 (Del. Ch. Aug. 27, 2015) ............................................................. 12

*In re ICP Strategic Income Fund, Ltd.,*
    730 F. App'x 78 (2d Cir. 2018) .................................................................................. 18

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
  2008 WL 2676278 (S.D.N.Y. July 8, 2008) ............................................................ 6

*Int'l Paper Co. v. Ouellette*,
  479 U.S. 481 (1987) ................................................................................................ 8

*Jackson v. Odenat*,
  9 F. Supp. 3d 342 (S.D.N.Y. 2014) ........................................................................ 7

*Jones v Rath Packing Co.*,
  430 U.S. 519 (1977) ................................................................................................ 8

*Lamela v. Verticon, Ltd.*,
  185 A.D.3d 1319, 128 N.Y.S.3d 91 (2020) ......................................................... 13

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*,
  2015 WL 7078641 (S.D.N.Y. Nov. 12, 2015) ..................................................... 17

*Metro Storage Int'l LLC v. Harron*,
  275 A.3d 810 (Del. Ch. 2022),
  *judgment entered sub nom.*
  *In re Metro Storage Int'l LLC v. Harron*
  (Del. Ch. 2022) ..................................................................................................... 18

*Milwaukee v. Illinois and Michigan*,
  451 U.S. 304 (1981) ................................................................................................ 8

*Morgan Stanley v. Skowron*,
  989 F. Supp. 2d 356 (S.D.N.Y. 2013) ............................................................. 23, 24

*New York State Elec. & Gas Corp. v. FirstEnergy Corp.*,
  2007 WL 1434901 (N.D.N.Y. May 11, 2007) ....................................................... 7

*Nw. Airlines, Inc. v.*
  *Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77 (1981) .................... 8, 9, 11

*O'Melveny & Myers v. FDIC*,
  512 U.S. 79 (1994) .................................................................................................. 8

*O'Connor v. Seaboard Com. Corp.*,
  32 Del. Ch. 143, 82 A.2d 102 (1951) ................................................................... 11

*Pers. Touch Holding Corp. v. Glaubach*,
  2019 WL 937180 (Del. Ch. Feb. 25, 2019) ......................................................... 18

*Phansalkar v. Andersen Weinroth & Co., L.P.*,
  344 F.3d 184 (2d Cir. 2003) ........................................................................... 23, 24

*Riviello v. Waldron*,
  47 N.Y.2d 297 (1979) ........................................................................... 14

*Sec. & Exch. Comm'n v. SeeThruEquity, LLC*,
  2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019) ........................................... 5

*Serv. Sign Erectors Co. v. Allied Outdoor Advert., Inc.*,
  175 A.D.2d 761, 573 N.Y.S.2d 513 (1991) ............................................ 12

*Serviz, Inc. v. ServiceMaster Co., LLC*,
  2022 WL 1164859 (Del. Super. Ct. Apr. 19, 2022) ................................ 18

*Stanley v. Skowron*,
  989 F. Supp. 2d 356 (S.D.N.Y. 2013) ..................................................... 23

*Starr Int'l Co. v. Fed. Rsrv. Bank of New York*,
  906 F. Supp. 2d 202 (S.D.N.Y. 2012),
  *aff'd sub nom.*
  *Starr Int'l Co. v. Fed. Rsvp. Bank of New York*,
  742 F.3d 37 (2d Cir. 2014) ...................................................................... 7

*State Nat'l Ins. Co. v. Certain Interested Underwriters at Lloyd's London*,
  2022 WL 4547444 (S.D.N.Y. Sept. 29, 2022) ....................................... 17

*Stefanovic v. Old Heidelberg Corp.*,
  2022 WL 3928370 (S.D.N.Y. Aug. 31, 2022) ........................................ 23

*Texas Industries v. Radcliff Materials*,
  451 U.S. 630 (1981) ...................................................................... 10, 11

*Too, Inc. v. Kohl's Department Stores, Inc.*,
  213 F.R.D. 138 (S.D.N.Y.2003) ............................................................... 7

*Utilisave, LLC v. Khenin*,
  2015 WL 4920078, (Del. Ch. Aug. 18, 2015) ........................................ 18

*VonFeldt v. Stifel Fin. Corp.*,
  1999 WL 413393 (Del. Ch. June 11, 1999) ............................................ 12

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  860 A.2d 312 (Del. 2004) .................................................................. 18, 19

*Waltuch v. Conticommodity Servs., Inc.*,
  88 F.3d 87 (2d Cir. 1996) ...................................................................... 12

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
  792 F.3d 1313 (11th Cir. 2015) ........................................................... 5, 6

*Yukos Capital S.A.R.L. v. Feldman,*
    977 F.3d 216 (2d Cir. 2020) ............................................................. 18, 21

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC,*
    286 F. Supp. 3d 634 (S.D.N.Y. 2017) .................................................... 17

*Zurich Am. Life Ins. Co. v. Nagel,*
    2021 WL 3077861 (S.D.N.Y. July 20, 2021) .................................... 17, 18

**Statutes**

28 U.S.C. § 1367(c) .................................................................................. 16

N.Y. C.P.L.R. § 213(8) ............................................................................. 18

N.Y. C.P.L.R. § 1401 ...................................................................... 6, 7, 15

**Codes**

10 Del. C. § 8106 .................................................................................... 18

Del. Code Ann. tit. 8, § 122(2) ............................................................... 11

Del. Code Ann. tit. 8, § 145(a) ............................................................... 12

Del. Code Ann. tit. 8, § 145(b) ....................................................... 11, 12

**Rules**

Fed R. Civ. P. 12(e) .................................................................................. 6

Fed. R .Civ. P. 14(a) .......................................................................... 2, 22

Fed. R. Civ. P. 9(b) ................................................................................ 21

**Other Authorities**

6 Fed. Prac. & Proc. Civ. § 1446 (3d ed.) ............................................. 22

H.R. Rep. No. 108-264(II) (2003) ................................................. 2, 9, 10

Pub. L. No. 106-386 § 102, 114 Stat. 1488 (2000) ................................... 8

Simon Clark, Barclays CEO Under Investigation Over Links to Jeffrey Epstein, Wall Street
    Journal (Feb. 13, 2020), https://www.wsj.com/articles/barclays-ceos-links-to-jeffreyepstein-
    probed-by-u-k-regulators-11581582115?mod=djemalertNEWS ............................................. 20

## PRELIMINARY STATEMENT

Plaintiffs level serious allegations against JPMC's former employee James Edward "Jes" Staley with regard to Jeffrey Epstein's sex-trafficking venture. Doe alleges (among other things) that Staley "knew without any doubt that Epstein was trafficking and abusing girls," spent time with young girls whom he met through Epstein on several occasions, "visited young girls at Epstein's apartments," observed Epstein "sexually grab young women in front of him," and sexually assaulted her with force and aggression as a part of the very same sex trafficking venture for which Doe seeks to hold JPMC liable. Doe Dkt. 36 (Doe FAC), ¶¶ 115, 128, 226, 227. Such behavior is not tolerated at JPMC, but until this lawsuit JPMC did not know about this alleged misconduct by Staley. The USVI suggests that Staley participated in Epstein's sex trafficking scheme, citing (and reproducing) numerous emails between Staley and Epstein. *See, e.g.*, USVI Dkt. 108 (USVI SAC), ¶¶ 52–63. In total, Doe's complaint mentions Staley *ninety-seven* times, while USVI's complaint mentions him *forty-one* times. If these allegations are proven to be true then Staley must be held accountable for his alleged misconduct and any harm that conduct caused to victims and the company.

It is perhaps surprising then that Doe and USVI bring their misguided lawsuits not against Staley, but instead against Staley's former employer JPMorgan Chase Bank, N.A. (JPMC). Plaintiffs seek to leverage common-law principles of vicarious liability to argue that JPMC knew of, participated in, and benefitted from Epstein's sex trafficking venture "acting *through* Staley." Doe FAC ¶ 328. JPMC continues to dispute the veracity of Plaintiffs' allegations that JPMC may be held liable for alleged conduct clearly outside of Staley's scope of employment. But if the Court were to reject that notion, the very same principles of agency law plainly allow JPMC to seek contribution and indemnification from Staley, the agent who caused JPMC to incur derivative liability. This straightforward third-party complaint thus preserves JPMC's ability to do

exactly what Rule 14 entitles it to do: hold "a nonparty who is or who may be liable for all or part of the claim against [JPMC]" responsible.  Fed R. Civ. 14(a)(1).

Staley's effort to seek effective immunity from these claims, whether under the TVPA or as a result of JPMC's generic indemnification of its officers and directors, should be rejected.  Nothing about the TVPA's objective, "to ensure punishment of traffickers," supports the idea that Congress impliedly preempted third parties who may be found negligent in providing services to sex traffickers from seeking to hold the direct perpetrators responsible—even if their purposeful actions were hidden from detection. H.R. Rep. No. 108-264(II) (2003), at *2. JPMC's bylaws only indemnify officers and directors for actions taken in good faith and so they clearly do not require *JPMC*'s indemnification of *Staley*'s conduct here. Those bylaws are governed by Delaware law, which specifically empowers JPMC to pursue lawsuits against its officers and nowhere restricts the nature of the claims it is able to pursue in such a lawsuit against a former officer who has acted in bad faith.

Finally, JPMC's third-party complaint contains more than sufficient allegations to support JPMC's breach of fiduciary duty and faithless servant claims. Those allegations establish that Staley repeatedly concealed his improper activities from JPMC, such that his own illicit ends overrode the interests of his employer to foster bona fide business, especially when JPMC sought Staley's counsel with regards to retaining Epstein as a client. Staley's motion to dismiss should be denied.

## BACKGROUND

Plaintiffs Jane Doe 1 and the United States Virgin Islands (Doe and the USVI respectively) brought separate actions alleging that JPMC knowingly benefitted from a sex trafficking venture maintained by Jeffrey Epstein, for whom JPMC provided routine banking services until it severed its relationship with him in 2013. Doe and the putative class assert causes of action against JPMC

for knowingly benefitting from sex trafficking under the federal Trafficking Victims Protection Act (TVPA) and obstructing enforcement of the TVPA, as well as negligence under New York law. The USVI asserts causes of action alleging that JPMC participated in or knowingly benefited from sex trafficking under the TVPA and obstructed enforcement of the TVPA.

As this Court has recognized, Staley "is a key figure in the allegations made in the plaintiff's and co-plaintiff's complaints . . . [H]e and the facts relating to him will therefore be a prominent focus of the trial of the underlying case between plaintiff Jane Doe 1, co-plaintiff the Government of the United States Virgin Islands, and JP Morgan." Doe Dkt. 82, Order Denying Motion to Sever at 2. It is alleged that JPMC knew about Epstein's sex trafficking allegations "through Staley" (Doe FAC ¶¶ 200, 230, 231, 239), and that Staley influenced JPMC's decisions regarding Epstein's accounts before Staley left JPMC in 2013 (USVI Dkt. 13, USVI FAC ¶¶ 62–63).

Following Doe's deposition, where she expanded on her allegations concerning Staley's involvement with Epstein' misconduct and accused Staley of the horrific act of forcible sexual assault, JPMC then filed third-party complaints against Staley. Staley promised repeatedly to abide by JPMC's code of conduct, under which he acknowledged a duty to act in JPMC's best interests, to avoid conflicts of interest, and to avoid any activities that would damage JPMC either financially or reputationally. JPMC Compl. ¶¶ 17-20. Yet, according to Doe, Staley knew that Epstein was trafficking and abusing girls, "personally observed Doe as a sex trafficking and abuse victim," "personally spent time with young girls whom he met through Epstein on several occasions," "personally visited young girls at Epstein's apartments located at 301 East 66th Street," "personally observed Epstein around young girls," and personally observed "Epstein sexually grab young women in front of him." *Id.* ¶¶ 22, 24, 26 (citing Doe FAC ¶¶ 115, 128, 226, 227). Doe

further alleges that Staley sexually assaulted her with force and aggression, adding that he had Epstein's permission to "do what he wanted to her." *Id.* ¶ 27 (citing Doe FAC ¶ 107). The USVI also alleged that specific communications between Staley and Epstein "suggest (in the USVI's words) that Staley may been involved in Epstein's sex trafficking operation. *Id.* ¶¶ 29-32 (citing USVI FAC ¶¶ 53-61). Moreover, Plaintiffs allege that Staley promised to "use his clout within JP Morgan to make Epstein untouchable," "repeatedly thwarted JPMC's efforts to sever ties with Epstein," *id.* ¶ 28 (citing Doe FAC ¶¶ 132, 184, 188) and played "a role in convincing JPMC to maintain Epstein as a JPMC client." *Id.* ¶ 33 (citing USVI FAC ¶¶ 47, 52–63, 71–73).

JPMC alleges that, if Plaintiffs' allegations regarding Epstein's and Staley's conduct are true, then Staley affirmatively concealed this highly relevant information, clearly in violation of JPMC's Code of Conduct, from JPMC. *See id.* ¶¶ 34, 36. Staley did not disclose this information to JPMC even when JPMC asked him to offer his views as to whether JPMC should retain Epstein as a client, putting his personal interests first, and in opposition to JPMC's interests. *Id.* ¶¶ 37, 39.

JPMC's third-party complaints against Staley assert claims of indemnification, contribution, breach of fiduciary duty, and violation of the faithless servant doctrine.

## ARGUMENT

### I.     JPMC'S THIRD-PARTY COMPLAINT CONTAINS WELL-PLEADED ALLEGATIONS.

Staley contends that the Indemnity and Contribution claims should be dismissed as an impermissible "shotgun pleading." Mtn. at 7-8. Yet his own motion to dismiss belies his assertions that these counts are confusing or lacking in adequate notice of the allegations that support the claims against him. Indeed, Staley's motion to dismiss painstakingly articulates *exactly* what allegations he believes are insufficient to state the claims that have been brought against him: Indemnification on both the negligence and TVPA claims, and contribution on the negligence and TVPA claims. Because the complaint "makes clear which allegations of fact are intended to

support which claim(s) for relief," it is not an improper shotgun pleading. *Sec. & Exch. Comm'n v. SeeThruEquity, LLC*, 2019 WL 1998027, at *3 (S.D.N.Y. Apr. 26, 2019) (quoting *Croons v. New York State Office of Mental Health*, 18 F. Supp. 3d 193, 199 (N.D.N.Y. 2014) (internal quotation marks omitted); *see also Digilytic Int'l FZE v. Alchemy Fin., Inc.,* 2022 WL 912965, at *5 (S.D.N.Y. Mar. 29, 2022) (rejecting request for dismissal because the complaint "is not confusing and is not drafted in a manner that gives rise to an inference of bad faith.").

Staley appears to rely solely on the hyper technical assertion that the complaint does not contain two indemnification counts and two contribution counts—one each for the TVPA and another two for the underlying negligence claims. Mtn. at 8. But Staley fails to articulate any prejudice; in fact, he concedes that New York state law would provide the rule of decision for contribution and indemnification under the TVPA and urges the court to analyze the TVPA and state law indemnification and contribution claims together. *Id.* at 12 n.7.

The only authority Staley invokes is a parenthetical reference in a district court case to "types" of shotgun pleadings, including "one that ... [does] not separat[e] into a different count each cause of action or claim for relief." *See Cisse v. Annucci*, 2022 WL 1183274, at *2 (N.D.N.Y. Apr. 21, 2022) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015)). But *Weiland* did not establish a rule that any and every complaint that fails to include each cause of action in a separate count must be dismissed. Quite the contrary, the court explained that "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. While several claims in *Weiland* fell within the definition of one of the "types" of shotgun pleadings, dismissal

was unwarranted because "whatever their faults," the counts were "informative enough to permit a court to readily determine if they state a claim upon which relief can be granted." *Id*. at 1326.

That is precisely the case here. JPMC relies on the very same allegations that Doe and USVI brought against JPMC in the first instance and which this Court found adequate to survive a motion to dismiss.  Moreover, despite Staley's formulistic argument, he voices no confusion whatsoever regarding the claims that are brought against him. Nor did he seek a more definite statement under Fed R. Civ. P. 12(e)—the appropriate remedy for an actual shotgun pleading. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 2008 WL 2676278, at *2 (S.D.N.Y. July 8, 2008); *Weiland* 792 F.3d at 1324.

## II.   INDEMNIFICATION AND CONTRIBUTION CLAIMS ARE PERMISSIBLE UNDER THE TVPA.

The New York Legislature established a statutory right of contribution that, by its plain language, encompasses JPMC's TVPA claim against Staley. New York permits contribution where two parties are subject to potential "liability for damages for the same personal injury, injury to property or wrongful death." *See* N.Y. C.P.L.R. § 1401. JPMC's contribution claim based on the TVPA falls squarely within that language, and New York common law similarly recognizes its indemnification claim.

Staley fails to cite any case holding that the TVPA forecloses indemnification or contribution claims. Nor could he. The sole authority squarely on point holds just the opposite, under analogous Pennsylvania state law. In *A.B. v. Marriott International, Inc.*, the court held that a hotel chain sued under the TVPA for knowingly benefitting from sex trafficking could maintain third-party claims under Pennsylvania law for contribution and indemnity against local hotel franchisees and the sex traffickers. 2020 WL 3642485, at *2-*3 (E.D. Pa. July 6, 2020). Even though the TVPA did not "directly address[] how to apportion liability," the court found "Marriott's reading [] sufficiently supported by the Act's text to permit [the court] to conclude the

6

traffickers 'may be liable' to Marriott if Marriott is found liable to A.B. under Pennsylvania law of indemnity and contribution." *Id.* at *3; *but see Ditullio v. Boehm*, 2010 WL 11534265, at *2 (D. Alaska 2010) (dicta stating that untimely third-party complaint seeking apportionment of damages under Alaska law would be futile).

Staley argues that New York's contribution statute does not apply when the source of the underlying liability is a federal statute, rather than a state statute or state common law. But "the basis for liability upon which a contribution claim under section 1401 is predicated can arise from federal law"; "[t]here is nothing in section 1401" to the contrary. *New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 2007 WL 1434901, at *7 (N.D.N.Y. May 11, 2007). Courts thus regularly apply the New York contribution statute to federal causes of action. *See, e.g.*, *Jackson v. Odenat*, 9 F. Supp. 3d 342, 366 (S.D.N.Y. 2014) (Lanham Act); *New York State Elec. & Gas Corp.*, 2007 WL 1434901, at *8 (N.D.N.Y. May 11, 2007) (CERCLA); *Too, Inc. v. Kohl's Department Stores, Inc.,* 213 F.R.D. 138 (S.D.N.Y.2003) (Lanham Act). Indeed, the New York contribution statute expressly carves out "the workers compensation laws of … the federal government," N.Y. C.P.L.R. § 1401, surplusage were federal claims categorically exempted.

Staley also goes through great pains to argue that any contribution claim in this case must be a matter of federal common law, rather than state law. But that academic distinction is of no consequence here. As Staley himself recognizes, "New York state law [would] suppl[y] the rule of decision" for any contribution or indemnification claim that exists under the TVPA. Mot. 7 n.12. And that legal reality is beyond reproach: "federal courts applying federal common law frequently adopt, or borrow, state common law as the federal rule of decision." *Starr Int'l Co. v. Fed. Rsrv. Bank of New York*, 906 F. Supp. 2d 202, 233 (S.D.N.Y. 2012), *aff'd sub nom. Starr Int'l Co. v. Fed. Rsvp. Bank of New York*, 742 F.3d 37 (2d Cir. 2014). The Court here thus must engage

in the familiar task of determining whether "Congress intended to supersede or to supplement existing state remedies," as in all other cases of preemption. *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 91 (1981).

"Matters left unaddressed" in a federal statute, even a comprehensive and detailed one, are presumably left subject to the disposition provided by state law." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994) (citation and internal quotation marks omitted). That presumption is overcome only by an express preemption clause, if Congress has occupied the field by creating a scheme so comprehensive that it "le[aves] no room" for supplementary state regulation, *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491 (1987), were it impossible simultaneously to comply with federal and state law, or if state law "stand[s] as an obstacle to the accomplishment of Congress' goals." *Felder v. Casey*, 487 U.S. 131, 151 (1988). Implied preemption analysis "start[s] with the assumption that the historic police powers of the States [are] not to be superseded. . . unless that [is] the clear and manifest purpose of Congress." *Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 316-17 (1981) (quoting *Jones v Rath Packing Co.*, 430 U.S. 519, 525 (1977)). As the Supreme Court has directed, "whether Congress intended to create . . . . a right of contribution" is assessed by specific indicia.  "Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies." *Nw. Airlines,* 451 U.S. 77, 91 (1981).

Appling those factors here warrants denial of Staley's dismissal motion. It is undisputed that the TVPA does not expressly preempt New York contribution and indemnification law. Nor does it do so impliedly. Quite the contrary, the stated purpose of the TVPA is "to combat trafficking in persons, especially into the sex trade, slavery, and involuntary servitude." Pub.  L.

No. 106-386 § 102, 114 Stat. 1488 (2000). And the TVPA's legislative history confirms that Congress enacted the TVPA "to prevent trafficking in persons, *to ensure punishment of traffickers*, and to protect their victims." H.R. Rep. No. 108-264(II) (2003), at *2 (emphasis added). Staley's approach would shift liability entirely towards passive intermediaries accused of indirectly or unwittingly benefitting from sex-trafficking while at the same time *prohibiting* them from holding those alleged to be the direct perpetrators responsible for even a single dollar. Under Staley's interpretation, JPMC could not even seek contribution from Epstein himself, were he still alive.

As the Second Circuit explained in considering contribution under ERISA, there is no reason a party "who is only partially responsible for a loss should bear its full brunt"; the likely inference from Congress's silence on the contribution issue is that "Congress simply did not focus its attention" beyond the rights of victims. *Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16,18 (2d Cir. 1991). So too here.

Staley's reliance on cases in which no federal right to contribution was found does not yield a different result. In each, there was a clear congressional objective that would have been undermined by the allowance of contribution claims. For example, *Northwest. Airlines, supra* (Equal Pay Act and Title VII) and *Herman v. RSR Security Services Ltd.*, 172 F.3d 132 (2d Cir. 1999) (FLSA), both dealt with employment claims. In that context, the Supreme Court has made clear that the underlying statutes were "expressly directed against employers" and that Congress "intended . . . to regulate their conduct for the benefit of employees." *Northwest Airlines*, 451 U.S. at 92. Thus, the Court found that it would have flouted congressional objectives to allow offending employers a right of contribution. The Second Circuit in *Herman* relied on a similar analysis to reach the same conclusion for the FLSA (also finding that the statutory scheme preempted state law). *Herman* 172 F.3d at 143. Here, by contrast, it simply cannot be said that Congress enacted

the TVPA with the targeted goal of regulating companies who may unintentionally and unwittingly participate in a sex trafficking venture organized and operated by a principal perpetrator and hidden by a faithless employee. Far from obstructing congressional purposes, allowing contribution and indemnification under ordinary New York law would in this context ensure that the actors who engage in the most blameworthy conduct—intentional and egregious conduct—share in the sanction. Any other conclusion dilutes the deterrent effect against sex traffickers to a degree surely unimaginable to the TVPA's enactors.

*Texas Industries v. Radcliff Materials*, which addressed antitrust violations under the Sherman and Clayton Acts, is much the same. 451 U.S. 630 (1981). There, the Court placed dispositive reliance on "the provision of treble-damages action under the Clayton Act" against "participants in a conspiracy to restrain trade." *Id.* at 639. "The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." *Id.* The TVPA's *civil* prohibition—which again reaches any actor who benefits from a venture they "should have known" violated the TVPA, no matter how attenuated their connection—involves no such draconian statutory treble damage penalty and thus no analogous inference is justified.[1]

The Second Circuit in *In re Bernard L. Madoff Investment Securities LLC.*, 721 F.3d 54 (2d Cir. 2013), upon which Staley relies, is not to the contrary. *Madoff* did not address, because the trustee did not contend, as JPMC does here, that the relevant federal statute implied a right to contribution. *Id.* Rather, the trustee made clear that he was "not seeking contribution for violations of SIPA or any other federal statute." *Id.* Importantly, *Madoff* acknowledged that a federal statute

---

[1] In fact, Congress rejected a proposal to include a treble damages remedy in the TVPA. *See* H.R Rep. No. 108-264(II), at 16 (Department of Justice proposal to use civil RICO remedies to permit treble damages).

may provide a right to contribution by implication. *Id.* at 66 (citing *Texas Industries*, *supra*, which in turn relied on *Northwest Airlines, supra*). And that is what the TVPA does here. It's structure and legislative history reflect that Congress intended to ensure that traffickers would be held accountable and that Congress therefore did not intend to displace state contribution law.

A conclusion that congressional silence overrides the clearly expressed intent of the New York legislature to permit contribution and indemnification under state law would "turn[] the presumption against preemption on its head." *City of Los Angeles v. AECOM Servs.*, *Inc.*, 854 F.3d 1149, 1156-50 (9th Cir. 2017). Congress intended no such result.

## III.   STALEY'S ADDITIONAL ATTACKS ON JPMC'S INDEMNITY CLAIM ARE MERITLESS.

### A.   Delaware Law And JPMC's Bylaws Empower JPMC To Bring An Indemnity Claim Against Staley On These Facts.

As a bank governed by Delaware law, JPMC unquestionably has the authority to bring this lawsuit, Mtn. Ex. A, Delaware law § 7.06, as it can "sue and be sued in all courts." Del. Code Ann. tit. 8, § 122(2). The very provision of Delaware law that address JPMC's ability to indemnify its officers from third-party claims expressly contemplates an action by the corporation against its officers, and prohibits any indemnity to that officer adjudged liable to the corporation. Del. Code Ann. tit. 8 § 145(b). And nothing in Delaware law limits JPMC's ability to bring or restrict the claims it may assert in a lawsuit against a former officer who has acted in bad faith. *See O'Connor v. Seaboard Com. Corp.*, 32 Del. Ch. 143, 144, 82 A.2d 102, 102 (1951) (observing that an insolvent corporation has an "asset in the form of causes of action and possible causes of actions against its former officers and directors for breach of duty" under Delaware law). The controlling state law plainly empowers JPMC to bring this lawsuit against Staley.

Staley protests, however, that JPMC's indemnity claim is foreclosed by JPMC's bylaw offering indemnification to officers involved in litigation to the "fullest extent" permitted by law.

11

Mtn. Ex. A § 5.01. But Staley fails to explain what "the fullest extent" means. Indeed, Delaware law limits such an indemnity to cases in which "the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation." Del. Code Ann. tit. 8, § 145(a); *id.* § 145(b). And the governing Delaware statute expressly *prohibits* a corporation from indemnifying an officer or employee who acted in bad faith or contrary to the interest of the company. *See VonFeldt v. Stifel Fin. Corp.*, 1999 WL 413393, at *2 (Del. Ch. June 11, 1999) ("It should now be clear that, as far as § 145 is concerned, Delaware corporations lack the power to indemnify a party who did not act in good faith or in the best interests of the corporation."); *Waltuch v. Conticommodity Servs., Inc.*, 88 F.3d 87, 93 (2d Cir. 1996) (the Delaware good faith clause "must mean that there is *no* power to indemnify Waltuch if he did not act in good faith.") (emphasis in original).

"A corporate fiduciary … acts in bad faith when motivated by a purpose other than that of advancing the best interests of the corporation and its stockholders." *In re Dole Food Co., Inc. Stockholder Litig.*, 2015 WL 5052214, at *39 (Del. Ch. Aug. 27, 2015). Here, JPMC's third-party complaint alleges that Staley "repeatedly abandoned the interests of JPMC and served his own and Epstein's interests," JPMC Compl. ¶ 17, and "continuously breached his fiduciary duty, acting against the interests of JPMC and in his own personal interests and benefits and those of Epstein." *Id.* ¶ 59. *See also id.* ¶¶ 41, 66, 71, 79. JPMC's general indemnification provisions clearly do not require JPMC to indemnify Staley for the conduct alleged in this lawsuit.

None of the cases Staley cites take place in the context of such Delaware bylaws and are therefore inapposite. *See*, *Serv. Sign Erectors Co. v. Allied Outdoor Advert., Inc.,* 573 N.Y.S.2d 513, 514 (1st Dep't 1991)  (contractual indemnity dispute between general contractor and sub-

12

contractor); *see also Lamela v. Verticon, Ltd.*, 128 N.Y.S.3d 91, 95 (3d Dep't 2020) (same); *Honeywell, Inc. v. J.P. Maguire Co.*, 1999 WL 102762, at \*6 (S.D.N.Y. Feb. 24, 1999) (same).

### B.    Doe And USVI's Attempts To Claim Direct Liability Against JPMC Do Not Preclude JPMC's Indemnification Claims Against Staley.

Staley also contends that indemnification is inappropriate because he disputes that Doe and USVI seek to hold JPMC vicariously liable as a result of Staley's actions. Mtn. at 13-14. But that position misconstrues the Doe and USVI complaints, ignoring their repeated reliance on *Staley's* alleged actions to assert that his employer, JPMC, is responsible for the Plaintiffs' injuries. Doe's amended complaint invokes Staley *ninety-seven* times and repeatedly alleges that JPMC knew of or participated in Epstein's sex trafficking venture "through Staley." *See, e.g.*, Doe FAC ¶¶ 135, 164, 200, 205–206, 230–231, 239, 327–328, 360. And the USVI's Second Amended Complaint likewise mentions Staley *forty-one* times, citing (and reproducing) numerous emails between Staley and Epstein to provide a basis for its claims against *JPMC. See, e.g.*, USVI Dkt. 120, USVI SAC, ¶¶ 52–63. Even more, Doe asserts repeatedly that Staley's previously undisclosed conduct was within the scope of his employment—with the goal of imputing Staley's actions and knowledge to his employer, JPMC. *See, e.g.,* Doe FAC ¶¶ 203, 205, 226. *See also* Doe Dkt. 102, Opinion and Order, at 29-30. And both Doe and USVI seek to hold JPMC liable for retaining Epstein as a client, a decision that was "direct[ly] and proximat[ly] cause[d]" by Staley's active concealment of Epstein's wrongdoing, even when "JPMC ask[ed] him to offer his views as to whether JPMC should retain Epstein as a client." JPMC Compl. ¶ 37. In short, both Plaintiffs invoke agency law to hold JPMC responsible for their employee Staley's knowledge and actions, thereby giving rise to JPMC's claim for indemnification or contribution against Staley.

To be sure, Doe and USVI *also* allege that JPMC is responsible for their injuries based on other conduct. But JPMC vigorously disputes those allegations, and it is premature to foreclose

JPMC from seeking indemnity at this stage. Whether JPMC is liable because of Staley's actions, how Staley influenced others, or otherwise are questions to be resolved as the litigation proceeds. For that reason, Staley's contention that there are no allegations he was aware of Epstein's alleged cash withdrawals or Bank Secrecy Act (BSA) compliance issues (Mtn. at 14) misses the point.

### C.   Staley's Scope Of Employment Argument Is Misguided.

Staley also argues that JPMC's indemnification claim must be dismissed because it seeks "to hold Mr. Staley accountable for actions outside the scope of his responsibilities at the bank." Mtn. at 14. But while JPMC argues that many of Staley's alleged inappropriate activities (criminal and otherwise) fall outside his employment scope (JPMC Compl. ¶ 42), Doe explicitly alleges that Staley was acting within that scope when he visited Epstein both in New York and the USVI, used the massage room at Epstein's residence, met "many of Epstein's trafficking victims, including Jane Doe 1," and "personally observed the sexual abuse of young women, including Jane Doe 1." Doe FAC ¶¶ 203, 205, 226. Given the parties' competing factual allegations, Staley's attempt to dismiss the indemnity claim at this early stage should be rejected. *See Beauchamp v. City of New York*, 771 N.Y.S. 2d 129, 131 (2d Dep't 2004); *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979).

Whether Staley did or did not personally make the decision to retain Epstein as a JPMC client is irrelevant to JPMC's indemnity claim and misses the point. Mtn. at 14-15. Staley kept JPMC in the dark. Along the same lines, the good faith efforts of other employees at JPMC who made the final call were unmistakably and unknowingly influenced by Staley's failure to report material information (whether criminal or not) while vouching for Epstein and his character—acts and omissions "solely within [Staley's] province." *See* Mtn. at 14 (citing *Corley v. Country Squire Apartments, Inc.*, 820 N.Y.S.2d 900 (2d Dep't 2006)). The worst of Staley's alleged conduct involving Epstein (including rape) was undoubtedly outside the scope of this employment. But,

JPMC would plainly be entitled to indemnity if the court finds that Staley's failure to disclose information or his other misconduct gives rise to vicarious liability for JPMC.

## IV.   JPMC HAS STATED A CLAIM FOR CONTRIBUTION.

"Contribution is available where two or more tortfeasors combine to cause an injury and is determined in accordance with the relative culpability of each such person." *Godoy v. Abamaster of Miami*, 754 N.Y.S.2d 301, 306 (2d Dep't 2003) (internal quotation marks and citations omitted); *see* N.Y. C.P.L.R. § 1401. As Staley acknowledges (Mtn. at 15), JPMC states a claim for contribution if it alleges that Staley breached a duty to Plaintiffs or JPMC, his breach caused the injury, and the injury is the same for which JPMC is allegedly liable. *Bellis v. Tokio Marine & Fire Ins. Co., Ltd.*, 2002 WL 193149, at *17 (S.D.N.Y. 2002).

JPMC's third-party complaint adequately states a contribution claim. It incorporates the allegations of Doe and the USVI accusing Staley of observing specific trafficking victims (including Doe), sexually assaulting Doe, and engaging in conduct that suggests participation in Epstein's sex trafficking scheme. JPMC Compl. ¶¶ 23-33. JPMC's third-party complaint makes clear that, if those allegations are true, Staley caused harm to Doe and the USVI by concealing his improper conduct while vouching for Epstein's character within JPMC—"a direct and proximate cause of JPMC's decision to continue to do business with Epstein until 2013." *Id.* ¶¶ 36-41.

As Staley acknowledges, JPMC may base its contribution claim on Staley's duty to JPMC. Mtn. at 15. Thus, Staley's contention that there is no allegation that Staley owed a duty to Doe or the USVI is irrelevant. *Id.* at 15; JPMC Compl. ¶¶ 17, 37, 58. And his assertion that JPMC failed adequately to allege Staley breached his fiduciary duty is mistaken (*see* pp. 20-22, *infra*).

Staley's contention that JPMC has not adequately pled that Staley caused "the same harm" as JPMC supposedly did fares no better. JPMC's impleader complaint makes clear that Staley's concealment of his alleged conduct and knowledge of Epstein's activities, along with vouching for

Epstein and his character within JPMC, resulted in Epstein's continued retention as a JPMC client. *See, e.g.*, JPMC Compl. ¶¶ 36-42. Per Doe and USVI, JPMC's retention of Epstein enabled his sex trafficking venture, which caused their injuries. Any suggestion that this injury is somehow "separate and distinct" (Mtn. at 16) is specious.

Staley argues that the "crux" of Plaintiffs' complaints is that JPMC provided the "financial lifeblood" of Epstein's sex trafficking venture, which is a different sort of misconduct than Staley engaged in (Mtn. at 16). But, even if that were true, it would be of no consequence. "Contribution rules apply to the third-party action even though the respective liabilities of the [parties] might rest on different grounds, since the same injury to defendant is involved in each instance." *Crow-Crimmins-Wolff & Munier v. Westchester Cnty.*, 455 N.Y.S.2d 390, 391 (2d Dep't 1982). That JPMC's alleged liability may be based on different grounds thus does not foreclose its contribution claim for the Plaintiff's injuries.[2]

## V.    JPMC's BREACH OF FIDUCIARY DUTY AND FAITHLESS SERVANT CAUSES OF ACTION WOULD SURVIVE DISMISSAL OF THE INDEMNIFICATION AND CONTRIBUTION CLAIMS.

Even if the Court were to dismiss JPMC's indemnity and contribution claims, and JPMC respectfully submits it should not, this Court should not dismiss the remaining state law fiduciary duty and faithless servant claims. Under 28 U.S.C. § 1367(c) the court "*may* decline to exercise supplemental jurisdiction over a claim" even if "(3) the district court has dismissed all claims over which it has original jurisdiction." The Court should assess four factors to evaluate whether to exercise its discretion to do so: "judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). This discretion applies equally to third-party complaints. *See, e.g., Dery v. Wyer*, 265 F.2d 804, 807–08 (2d Cir.1959); *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105–06 (2d Cir. 1998).

---

[2] Staley is correct that punitive damages are unavailable on contribution claims.

Staley ignores this familiar standard and the factors that govern this Court's discretion. In fact, he fails even to acknowledge that this Court *has* discretion. Instead, Staley analyzes supplemental jurisdiction as if JPMC had in the first instance filed a third-party complaint based solely on non-derivative claims, and the cases he cites only address that situation. *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 2015 WL 7078641, at *3 (S.D.N.Y. Nov. 12, 2015); *State Nat'l Ins. Co. v. Certain Interested Underwriters at Lloyd's London*, 2022 WL 4547444, at *3 (S.D.N.Y. Sept. 29, 2022).[3] None of those cases address the standard for retaining jurisdiction over non-derivative causes of action after dismissal of contribution or indemnification claims.

*That* inquiry is governed by the factors articulated in *Carnegie-Melon*. And those factors counsel in favor of retaining jurisdiction even if the court dismisses the indemnity and contribution claims. JPMC's breach of fiduciary duty and faithless servant claims substantially overlap with the underlying Doe and USVI actions where, as described above, Staley's alleged conduct and knowledge form a significant part of the Plaintiffs' claims. Where, as here, the claims substantially overlap, "there is very substantial judicial economy in maintaining supplemental jurisdiction." *Fei Hang Chen v. Jing Fong Rest., Inc.*, 582 F. Supp. 2d 602, 603–04 (S.D.N.Y. 2008); *see also Zurich Am. Life Ins. Co. v. Nagel*, 2021 WL 3077861, at *4–5 (S.D.N.Y. July 20, 2021) (holding that cases involved "substantial overlap of the factual issues in both cases, making them more efficiently resolved in the same court under the same rules of evidence and discovery."). The parties, including Staley, have already engaged in substantial discovery, received numerous procedural rulings, and are scheduled for trial in October 2023. Judicial economy would be

---

[3] The other case upon which Staley relies, *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634 (S.D.N.Y. 2017), involved a decision not to retain jurisdiction over a third-party complaint after the court had dismissed the *entire* underlying action. Here, of course, the underlying action is alive and well, and substantially overlaps with JPMC's remaining claims.

thwarted were this Court to decline to exercise supplemental jurisdiction as JPMC would as a result be forced to restart the third-party claims in state court. *Fei Hang Chen*, 582 F. Supp. 2d at 603–04; *see also Zurich Am. Life Ins.*, 2021 WL 3077861, at *5.

## VI.   STALEY'S CHALLENGES TO THE BREACH OF FIDUCIARY DUTY AND FAITHLESS SERVANT CLAIMS ARE WITHOUT MERIT.

### A.   The Breach Of Fiduciary Duty And Faithless Servant Claims Are Timely.

Staley argues that JPMC's breach of fiduciary duty and faithless servant claims are untimely because he left JPMC in 2013. But under the Delaware "discovery rule," which governs the breach of fiduciary duty claim,[4] the three-year limitations period under 10 Del. C. § 8106 is tolled "where the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). This is a "low threshold" for a plaintiff to meet. *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *9 (Del. Ch. Jan. 24, 2005); *Serviz, Inc. v. ServiceMaster Co., LLC*, 2022 WL 1164859, at *5 (Del. Super. Ct. Apr. 19, 2022). Under New York Law, the limitations period for "actions based upon fraud" like faithless servant claim at bar[5] extends "two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8).

---

[4] Staley mistakenly asserts that the breach of fiduciary claim is governed by New York law. However, it is governed by Delaware law. *See* Mtn., Ex. A, Delaware law, § 7.06; *In re ICP Strategic Income Fund, Ltd.*, 730 F. App'x 78, 81 (2d Cir. 2018). But the result is the same under either State's laws.

[5] The faithless servant claim is governed by New York law. *See, e.g., Utilisave, LLC v. Khenin*, 2015 WL 4920078, at *8 (Del. Ch. Aug. 18, 2015); *Pers. Touch Holding Corp. v. Glaubach*, 2019 WL 937180, at *26 (Del. Ch. Feb. 25, 2019) (assuming without deciding that New York law governs faithless servant claim). In any event, Delaware law permits disgorgement of a disloyal employee's salary as a remedy for breach of the duty of loyalty. *See, e.g., Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 863 and n. 31 (Del. Ch. 2022), *judgment entered sub nom. In re Metro Storage Int'l LLC v. Harron* (Del. Ch. 2022) (collecting cases) (citing *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 229 (2d Cir. 2020) (discussion of New York's faithless servant doctrine).

As the third-party complaint makes clear, Staley concealed his activities, and JPMC did not discover his alleged behavior and active concealment until Doe and the USVI brought these actions (which form the basis of JPMC's third-party complaint). *See* JPMC Compl. ¶¶ 36-42. For instance, JPMC did not know nor could it have reasonably known of Doe's allegations that Staley "personally spent time with young girls whom he met through Epstein on several occasions"; "personally visited young girls at Epstein's apartments located at 301 East 66th Street"; "personally observed Epstein around young girls"; and personally observed, "Epstein sexually grab young women in front of him." Doe FAC ¶ 227; see also *id.*, ¶ 226. Indeed, JPMC did not know that Doe's allegation that the "powerful financial executive" sexually assaulted her with Epstein's permission (*id.*, ¶ 107) was Staley until she revealed as much in discovery in this case.

Staley protests that JPMC could and should have discovered Staley's activities earlier. But that claim is flawed. It "involves a mixed question of law and fact. Where the record does not conclusively demonstrate that a plaintiff had knowledge of facts from which the alleged fraud might be reasonably inferred, the cause of action should not be disposed of summarily on statute of limitations grounds." *Epiphany Cmty. Nursery Sch. v. Levey*, 171 A.D.3d 1, 7, 94 N.Y.S.3d 1 (2019) (internal quotation marks omitted); *see also Wal-Mart,* 860 A.2d at 314 (where the limitations defense "poses issues that require a more developed record," it is "improperly disposed of on a motion to dismiss."). It is premature to resolve this factual issue based on the assertions in a few newspaper articles (*see* Mtn. at 19-20), without discovery and further factual inquiry. A few tidbits—including a Miami Herald article about *Epstein*'s activities (with no mention of Staley) and the fact Epstein had been arrested—hardly provide dispositive evidence that JPMC should have known that *Staley* may have participated in Epstein's sex trafficking. Staley offers no reason

why the fact that JPMC provided banking services to Epstein means it should have discovered *Staley*'s misconduct merely from Epstein's arrest.[6]

Even if no statutory discovery rule applied, Staley's active concealment of his activities tolls the limitations period. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 66 (S.D.N.Y. 2016) (under federal and New York law, "the statute of limitations is tolled where a plaintiff shows that a defendant committed fraudulent acts intended to conceal its misconduct and that the plaintiff's ignorance of the concealed misconduct was not a product of its own lack of reasonable diligence."). As the third-party complaint alleges, Staley hid his activities from his JPMC colleagues. *See* JPMC Compl. ¶¶ 36-42. That he did so should come as no surprise, as both Doe and the USVI allege that Staley engaged in misconduct so serious—even criminal—that Staley could not dare reveal it to JPMC. Staley allegedly learned of Epstein's sex trafficking operation by engaging in sexual activity with young women Epstein procured, and (according to Doe) sexually assaulted her with force and aggression. Staley affirmatively—and falsely—stated in his separation agreement that he had reported all code of conduct violations. JPMC Compl. ¶ 21. In doing so, he acted to protect himself and Epstein (who could have exposed Staley's misconduct). That concealment tolls the limitations period in this case.

### B.   The Third-Party Complaint States A Claim For Breach Of Fiduciary Duty.

Staley's contention that the third-party complaint does not adequately allege breach of fiduciary duty is without merit. To establish breach of fiduciary duty, one must allege: "(1) that a

---

[6] In a footnote, Staley cites a February 13, 2020, article indicating that he was "under investigation" in the United Kingdom over "links to Jeffrey Epstein." *See* Simon Clark, *Barclays CEO Under Investigation Over Links to Jeffrey Epstein*, Wall Street Journal (Feb. 13, 2020), https://www.wsj.com/articles/barclays-ceos-links-to-jeffreyepstein-probed-by-u-k-regulators-11581582115?mod=djemalertNEWS. But Staley neglects to point out his express statements denying knowledge of Epstein's activities or the statement by the Barclays that it had "full confidence" in him. *See id*. Nor does Staley explain how this article provided even a hint of the allegations made by Doe against Staley.

fiduciary duty existed and (2) that the defendant breached that duty." *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch.), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010); *see Est. of Eller v. Bartron,* 31 A.3d 895, 897 (Del. 2011).[7] The third-party complaint alleges both elements. *See* JPMC Compl. ¶¶ 58-65.

Staley's contention that JPMC's allegations are insufficiently specific under Fed. R. Civ. P. 9(b) ignores key aspects of JPMC's complaint (which, in turn, incorporates the USVI's and Doe's complaints). For instance, JPMC alleged that Staley acknowledged in writing that he had a duty to act in JPMC's best interests, to avoid conflicts of interest, and to avoid any activities that would damage JPMC either financially or reputationally. JPMC Compl. ¶¶ 17-20. And Staley plainly breached that duty, as made clear by Doe's allegations (recounted above) that Staley personally observed Epstein's sex trafficking, spent time with young girls he met through Epstein, and even sexually assaulted her with force and aggression while saying he had Epstein's permission to "do what he wanted to her." *See* pp. 3-4, *supra* (citing JPMC Compl. ¶¶ 22, 24, 26, 27; Doe FAC ¶¶ 115, 128, 226, 227).

JPMC further alleges that Staley concealed this highly relevant information from JPMC officials (which is not at all surprising given the serious legal jeopardy Staley would face if his alleged misconduct were revealed). *See* JPMC Compl. ¶¶ 34, 36. And, contrary to Staley's argument to the contrary, JPMC alleged (citing the Doe and USVI complaints) that Staley promised to "use his clout within JP Morgan to make Epstein untouchable" and "repeatedly thwarted JPMC's efforts to sever ties with Epstein," *id.* ¶ 28 (citing Doe FAC ¶¶ 132, 184, 188) and played "a role in convincing JPMC to maintain Epstein as a JPMC client." *Id.* ¶ 33 (citing

---

[7] As discussed above, *supra* note 4, Delaware law applies to the breach of a fiduciary duty claim. But New York law is substantively similar and would not yield a different result in this case. *See Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020).

USVI FAC ¶¶ 47, 52–63, 71–73). Indeed, Doe alleges that Staley was "generally in charge of Epstein's accounts" (Doe FAC ¶ 171) and was Epstein's "protector" at JPMC who prevented JPMC from getting rid of Epstein as a client before Staley left in 2013 (*id.*, ¶ 188). The USVI likewise alleges that Staley was a decision-maker with respect to Epstein's accounts and even talked to Epstein regarding trafficking allegations as part of JPMC's January 2011 review of his account. USVI FAC ¶¶ 47, 84. These allegations are sufficient to establish Staley's breach of fiduciary duty.

Staley's contention that JPMC failed to plead that it was damaged by his breach of fiduciary duty is wrong. The complaint expressly alleges that Staley's fiduciary duty breach "was a direct and proximate cause of JPMC's decision to do business with Epstein until 2013," and that Staley's breach caused JPMC to suffer both adverse publicity (for which it seeks reputational damages) *and* the cost of litigation from the Doe and USVI lawsuits. JPMC Compl. ¶¶ 63-65. That Doe and the USVI *also* tender independent allegations against JPMC (which, of course, have not been proven) does nothing to remove Staley from the chain of causation. Finally, Staley's argument that holding him responsible to JPMC for damages awarded in the Doe and USVI cases is improperly speculative ignores the plain text of Rule 14, which allows JPMC to implead Staley who "is or may be liable to [JPMC] for all of the claims against [JPMC]." Fed. R .Civ. P. 14(a); *see In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2021 WL 4993536, at *9 (S.D.N.Y. Oct. 26, 2021) (collecting cases); *see also* 6 Fed. Prac. & Proc. Civ. § 1446 (3d ed.) ("The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory.").

### C.      The Third-Party Complaint States A Faithless Servant Claim.

"One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." *Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928, 928 (N.Y. 1977); *see Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003). New York courts require either (a) "misconduct ... that rises to the level of a breach of a duty of loyalty or good faith," *Phansalkar*, 344 F.3d at 202; or (b) that the employee "substantially violates the contract of service such that it permeates the employee's service in its most material and substantial part." *Stefanovic v. Old Heidelberg Corp.*, 2022 WL 3928370, at *7 (S.D.N.Y. Aug. 31, 2022).

JPMC's third-party complaint adequately states a faithless servant claim against Staley under either standard. As noted above, JPMC's third-party complaint alleges that, despite having a duty of loyalty to JPMC, Staley abandoned JPMC's interest in favor of his own interest and that of Epstein. Staley allegedly knew of Epstein's sex trafficking operation, engaged in sexual activity with young women procured by Epstein, and (according to Doe) sexually assaulted her with force and aggression. JPMC Compl. ¶¶ 22-27, 29-32. Staley not only concealed that information, but thwarted any efforts within JPMC to sever ties with Epstein. *Id*. ¶¶ 28, 33. In doing so, he acted to protect himself and Epstein (who could have exposed Staley's misconduct). And Staley persisted for years in protecting Epstein in the face of attempts by JPMC personnel to end the company's relationship with Epstein on reputational grounds, made misrepresentations in the process, and continued to do so to the end of his JPMC tenure, stating in his separation agreement that he was unaware of any violations of JPMC's code of conduct. *Id.* ¶ 38. That is sufficient to state a faithless servant claim. *See, e.g., Morgan Stanley v. Skowron*, 989 F. Supp. 2d 356, 362 (S.D.N.Y. 2013) (employee who "admitted to one instance of insider trading" nevertheless permeated his service because he "lied and covered up his involvement for years afterwards.").

23

Staley's argument to the contrary assumes faithless servant claims are limited to cases of embezzlement or usurpation of the employer's business opportunities. But *Ebel v. G/O Media, Inc.*, 2021 WL 2037867 (S.D.N.Y. May 21, 2021), upon which Staley relies, merely offers embezzlement as one example of the broader category of cases in which the faithless servant doctrine applies: "where the employee has acted directly against the employer's interests." *See id.* at *7. That is *exactly* what JPMC's complaint alleges. An employee acts directly contrary to his employer's interests when he acts to protect himself and an alleged sex trafficker by concealing important information from his employer (including, according to Doe, his own crime).

Finally, Staley's suggestion that JPMC has not adequately alleged damage from Staley's disloyalty overlooks the allegations of the impleader complaints discussed above (pp. 21-22, *supra*) and the obvious long-term damage from his activities with Epstein and concealment of them. *Cf. Morgan Stanley* 989 F. Supp. 2d at 362 (employee "expos[ed] Morgan Stanley to government investigations and direct financial losses [and] damage[ing] the firm's reputation"). It also ignores the Second Circuit's clear pronouncement that "[i]t does not 'make any difference that the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent.'" *Phansalkar*, 344 F.3d at 200 (quoting *Feiger*, 41 N.Y.2d at 928–29).

## CONCLUSION

Staley's motion to dismiss should be denied.

Dated: May 8, 2023                                    Respectfully submitted,


**MASSEY & GAIL LLP**                                 **WILMER CUTLER PICKERING HALE AND DORR LLP**

/s/ Leonard A. Gail                                   /s/ Felicia H. Ellsworth
Leonard A. Gail (*pro hac vice*)                      Felicia H. Ellsworth
Rachel Morse (*pro hac vice*)                         John J. Butts
Caitlin Kovacs (*pro hac vice*)                       60 State Street
50 East Washington Street, Suite 400                  Boston, MA 02109
Chicago, IL 60602                                     (t) (617) 526-6000
(t) (312) 283-1590                                    (f) (617) 526-5000
lgail@masseygail.com                                  felicia.ellsworth@wilmerhale.com
rmorse@masseygail.com                                 john.butts@wilmerhale.com
ckovacs@masseygail.com

                                                      Boyd M. Johnson III
                                                      Robert L. Boone
                                                      Hillary Chutter-Ames
                                                      7 World Trade Center
                                                      250 Greenwich Street
                                                      New York, NY 10007
                                                      (t) (212) 230-8800
                                                      (f) (212) 230-8888
                                                      boyd.johnson@wilmerhale.com
                                                      robert.boone@wilmerhale.com
                                                      hillary.chutter-ames@wilmerhale.com

                                                      Ronald C. Machen
                                                      2100 Pennsylvania Avenue NW
                                                      Washington, DC 20037
                                                      (t) (202) 663-6000
                                                      (f) (202) 663-6363
                                                      ronald.machen@wilmerhale.com

                                                      *Attorneys for JPMorgan Chase Bank, N.A.*