UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jane Doe 1, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>　　　v.<br><br>JPMorgan Chase Bank, N.A.,<br><br>　　Defendant. | Case No. 1:22-CV-10019 (JSR) |

## BRADLEY J. EDWARDS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY WILMERHALE

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 1

I.  WilmerHale's Attempts to Interpose "Standing" Objections Are Unavailing ................... 1

II. WilmerHale's Materially Adverse Position to Putative Class Member Courtney Wild is Cognizable at this Stage of the Proceedings. ...................................................................... 2

III. WilmerHale's Previous Common Interest Support of Putative Class Member Courtney Wild and Receipt of Confidential Strategies from Ms. Wild in a Substantially Related Matter Gives Rise to a Conflict. ............................................................................................ 4

    A. A Common-Interest Agreement Existed between ECPAT and Ms. Wild. .................... 4

    B. Ms. Wild Shared Confidential Strategic Information with WilmerHale. ..................... 6

    C. The CVRA Case is Substantially Related to this Case. ................................................ 8

IV. To Preserve the Integrity of the Adversary Process, the Court Should Disqualify WilmerHale. ........................................................................................................................... 9

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*Battagliola v Natl. Life Ins. Co.*,
  2005 WL 101353 (S.D.N.Y. 2005) ............................................................................................ 9

*Cap Export, LLC v. Zinus, Inc. et al*,
  2:16-cv-00371-JWH-MRW (C.D. Cal. May 11, 2020) ............................................................ 9

*Cf. Selby v. Revlon Consumer Prods. Corp.*,
  6 F.Supp.2d 577 (N.D. Tex. 1997) .......................................................................................... 10

*Denney v. Jenkens & Gilchrist*,
  362 F. Supp. 2d 407  (S.D.N.Y. 2004) ................................................................................ 8, 12

*First NBC Bank v. Murex, LLC*,
  259 F. Supp. 3d 38 (S.D.N.Y. 2017) ....................................................................................... 11

*Global Gaming Philippines, LLC v. Razon*,
   No. 21-CV-02655 (LGS) (SN), 2021 WL 4243395 (S.D.N.Y. Sept. 17, 2021) ....................... 6

*Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*,
  449 Mass. 609 (Mass. 2007) ..................................................................................................... 5

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005) ...................................................................................................... 5

*In re Gabapentin Patent Litig.*,
  407 F. Supp. 2d 607 (D.N.J. 2005) ......................................................................................... 12

*In re Grand Jury Subpoena Duces Tecum,*
  406 F.Supp. 381 (S.D.N.Y.1975) .............................................................................................. 5

*In re Regents of Univ. of California*,
  101 F.3d 1386 (Fed. Cir. 1996) ................................................................................................. 5

*Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,
  616 F. Supp. 2d 461 (S.D.N.Y. 2009) ....................................................................................... 1

*J.L. on behalf of J.P. v. N.Y.C. Dep't of Educ.*,
  No. 17CV7150JPCKHP, 2022 WL 17730095 (S.D.N.Y. Dec. 15, 2022) ................................. 6

*Planning & Control, Inc. v. MTS Grp., Inc.*,
   No. 91-CV-2763, 1992 WL 51569 (S.D.N.Y. Mar. 11, 1992) ................................................. 2

*Roosevelt Irrigation Dist. v. Salt River Project Agric. & Power Dist.*,
   810 F. Supp. 2d 929 (D. Ariz. 2011) .............................................................................. 12

*Santina v. N.Y.C. Hum. Res. Admin.*,
   2015 WL 6681203 (S.D.N.Y. Nov. 2, 2015) ..................................................................... 2

*Streichert v. Town of Chester, N.Y.*,
   2021 WL 735475 (S.D.N.Y. Feb. 25, 2021) ...................................................................... 2

*TERA II, LLC v. Rice Drilling D, LLC*,
   No. 2:19-CV-2221, 2022 WL 2383543 (S.D. Ohio July 1, 2022) ..................................... 7

*Transmirra Prod. Corp. v. Monsanto Chem. Co.*,
   26 F.R.D. 572 (S.D.N.Y. 1960) ......................................................................................... 7

*U.S. v. Prevezon Holdings Ltd.*,
   839 F.3d 227, 241 (2d Cir. 2016) ...................................................................................... 5

*United States v. BDO Seidman, LLP*,
   492 F.3d 806 (7th Cir. 2007) ........................................................................................... 13

*United States v. Gonzalez*,
   669 F.3d 974 (9th Cir. 2012) ............................................................................................. 6

*United States v. Quest Diagnostics, Inc.*,
   734 F.3d 154 (2d Cir. 2013) ........................................................................................ 4, 13

*United States v. Schwimmer*,
   892 F.2d 237 (2d Cir. 1989) .......................................................................................... 6, 8

*United States v. Weissman*,
   1996 WL 737042 (S.D.N.Y. Dec. 26, 1996) ................................................................... 13

*Wyly v. Milberg Weiss Bershad & Schulman*,
   12 N.Y.3d 400 (N.Y. 2009) ............................................................................................... 4

*Zalewski v. Shelroc Homes, LLC*,
   856 F. Supp. 2d 426 (N.D.N.Y. 2012) .............................................................................. 9

**Other Authorities**

WILLIAM B. RUBENSTEIN, NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 19.21 at 330 (6th ed.
   2022) .................................................................................................................................. 3

**Rules**

ABA Model Rules of Pro. Conduct, Rule 1.7, Cmt. 25 .................................................................. 3

ABA Model Rules of Pro. Conduct, Rule 8.5 .............................................................................. 5

N.Y. Rule 1.9(c) ........................................................................................................................... 4

Bradley J. Edwards respectfully submits this reply memorandum of law, together with the reply declarations of Meg Garvin and James Marsh, in support of his Motion for Disqualification of Wilmer, Cutler, Pickering, Hale, and Dorr, LLP (hereinafter "WilmerHale") (DE 106).

## PRELIMINARY STATEMENT

To the ordinary observer, it would seem odd that a major law firm could initially work with a sex-trafficking victim to fight the Epstein sex-trafficking organization and then, a short time later, turn around and fight that same victim. But Wilmer Hale is staking out exactly that odd position here—apparently because (dare it be said) a well-heeled corporate client came calling. The Court should disqualify WilmerHale from further representation in this matter.[1]

## ARGUMENT

**I.   WilmerHale's Attempts to Interpose "Standing" Objections Are Unavailing**

WilmerHale initially attempts to avoid the Court even considering the merits of whether the firm should be disqualified by interposing several "standing" objections. First, WilmerHale argues that "no party" to the litigation has "seen fit" to join the disqualification motion. WilmerHale Resp. at 8. But as noted in the initial filing, Jane Doe 1 joins in this motion. *See* Edwards Memo. at 3 n.2. To eliminate any technical roadblock, Jane Doe 1 is contemporaneously working to file a formal joinder in the disqualification motion.

Second, with respect to WilmerHale's argument that Mr. Edward is not a former client of

---

[1] In the initial memorandum of law, undersigned counsel provided a sworn declaration of supporting facts. *See* Dkt. 107 and 34 supporting exhibits. In response, WilmerHale submits two declarations regarding the factual circumstances surrounding the conflict. *See* Ellsworth Dec.; Vreeland Dec. To the extent that the Court believes that relevant facts are now in conflict, an evidentiary hearing is appropriate and required. *See, e.g.*, *Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC,* 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009) (Rakoff, J.) (holding evidentiary hearing regarding on ethical issues). But even without further factual development, the existing record demonstrates that WilmerHale should be disqualified.

the firm, WilmerHale appears to argue that only ECPAT can pursue a disqualification motion. *See* WilmerHale Resp. at 7 (citing *Santina v. N.Y.C. Hum. Res. Admin.*, 2015 WL 6681203, at *2 (S.D.N.Y. Nov. 2, 2015) ("third-party disqualification motions" are not permitted)). But the viability of the case WilmerHale relies upon—*Santina*—is unclear, as a later opinion by this Court demonstrates. *See Streichert v. Town of Chester, N.Y.*, 2021 WL 735475, at *9 (S.D.N.Y. Feb. 25, 2021) (noting that "there appears to be disagreement in this District" about whether third-party disqualification motions can be brought; contrasting *Santina* with *Planning & Control, Inc. v. MTS Grp., Inc.*, No. 91-CV-2763, 1992 WL 51569, at *2 (S.D.N.Y. Mar. 11, 1992)). In any event, this motion is not properly described as a "third-party" disqualification motion, but rather a motion brought by a first-party—specifically, by Mr. Edwards to protect Ms. Wild's confidential information. In light of Ms. Wild's argument that a common-interest agreement existed between her and ECPAT, Ms. Wild is entitled to have the Court consider *her* arguments about *her* confidential information.[2]

## II. WilmerHale's Materially Adverse Position to Putative Class Member Courtney Wild is Cognizable at this Stage of the Proceedings.

In its next effort to deflect the Court from reaching the substance of the conflicts issue, WilmerHale recites the mantra that "unnamed class members are not parties to a case for conflicts purposes." WilmerHale Resp. at 9 (citing ABA Model Rules of Pro. Conduct, Rule 1.7, Cmt. 25 ("a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an unrelated matter")). And yet, "this mantra, and comment 25, are each limited in [various] ways." WILLIAM B. RUBENSTEIN, NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 19.21 at 330 (6th ed. 2022).

---

[2] As noted in the original memorandum, if a formal joinder motion by Ms. Wild is required to have these issues considered, Ms. Wild would seek leave to file one. Edwards Memo. at 3 n.2

In comment 25, the qualifier "typically" is important because that word limits the comment's application "to the 'typical' … situation." *Id.* Thus, the comment itself implies that there are factual situations where the "prejudice that would result to the client, if the position the lawyer advanced on behalf of the other clients was accepted, is so great there would be an appearance of impropriety." *Id.* (internal quotations omitted). And the comment applies to "unrelated matters" rather than the substantially related and overlapping matters here.

But more fundamentally, comment 25 to Rule 1.7 is inapplicable to the issues presented by this motion. Comment 25 deals with duty of loyalty issues for current clients—the issue covered by Rule 1.7. Absent class members do not have a traditional lawyer-client relationship with (for example) class counsel, who is permitted to take positions even in that action that may be adverse to the interests of some class members. *See, e.g.*, *Wyly v. Milberg Weiss Bershad & Schulman*, 12 N.Y.3d 400, 411-12 (N.Y. 2009). This same rationale is not present when a lawyer seeks to represent a defendant in a class action in which an unnamed class member is a former, traditional client of the lawyer—an issue covered by Rule 1.9. A traditional, former client of the lawyer *is* generally protected by the rule against subsequent adverse representation. *See, e.g., United States v. Quest Diagnostics, Inc.*, 734 F.3d 154, 157 (2d Cir. 2013) ("we agree that the attorney in question … violated N.Y. Rule 1.9(c) which, in relevant part, prohibits lawyers from 'us[ing] confidential information of [a] former client … to the disadvantage of the former client,' N.Y. Rule 1.9(c)"). And, by extension, where a party to a common interest agreement has exchanged confidential information with a traditional client, the issue is not one of duty of loyalty, but rather adverse representation involving unfair use of confidential information.

The ethical principles underlying Rule 1.9 are fully apply here. As explained below, as a party to a common-interest agreement, Ms. Wild functionally stepped into the shoes of ECPAT as

3

WilmerHale's former client—and she is entitled to assert a right against materially adverse representation involving her confidential information. Any other conclusion would mean that this Court would be powerless to "preserve the integrity of the adversary process." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (internal quotation omitted).

**III.   WilmerHale's Previous Common Interest Support of Putative Class Member Courtney Wild and Receipt of Confidential Strategies from Ms. Wild in a Substantially Related Matter Gives Rise to a Conflict.**

**A.  A Common-Interest Agreement Existed between ECPAT and Ms. Wild.**

This Court has long recognized the protection of communications among clients and attorneys "allied in a common legal cause." *In re Grand Jury Subpoena Duces Tecum,* 406 F.Supp. 381, 386 (S.D.N.Y.1975) (*quoted with approval in In re Regents of Univ. of California*, 101 F.3d 1386, 1389 (Fed. Cir. 1996)).[3] The common interest doctrine "protects communications when parties share a common interest about a legal matter." *J.L. on behalf of J.P. v. N.Y.C. Dep't of Educ.*, No. 17CV7150JPCKHP, 2022 WL 17730095, at *3 (S.D.N.Y. Dec. 15, 2022) (citing *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989)).

In this case, undersigned counsel (Cassell) reached out to ECPAT directly, seeking support for Ms. Wild's cert petition—which ECPAT agreed to provide through WilmerHale. Cassell Dec. ¶¶ 35-40. Indeed, ECPAT placed undersigned counsel directly in contact with WilmerHale to identify supporting arguments—which counsel worked together to craft. *Id.* ¶¶ 41-51. And

---

[3] As discussed in the initial brief, the preliminary question of whether a common-interest agreement existed between Ms. Wild and ECPAT is a matter of state evidence law. Edwards Memo. at 14. Accordingly, virtually all WilmerHale's federal case law is not directly applicable. Instead, this Court should look to state privilege law—and, particularly, Massachusetts and Utah law, where the attorneys' conduct had its predominant effect. *See* ABA Model Rules of Pro. Conduct, Rule 8.5; *see also Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 449 Mass. 609, 618 (Mass. 2007) (recognizing common interest doctrine); Utah R. Evid. 504(b)(2)(A)(ii) (same). But because even WilmerHale's federal authorities support the existence of a common interest agreement, the Court can grant the motion without exploring this point further.

4

thereafter, undersigned counsel sought "strategic guidance" on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is settled that a common interest agreement "may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who … have common interests in litigation." *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012); *see also Global Gaming Philippines, LLC v. Razon,* No. 21-CV-02655 (LGS) (SN), 2021 WL 4243395, at *3 (S.D.N.Y. Sept. 17, 2021) (explaining that common interest privilege applies even where parties do not have "identical legal interests" so long as they have "a limited common purpose") (internal quotations omitted); *Transmirra Prod. Corp. v. Monsanto Chem. Co.,* 26 F.R.D. 572, 577 (S.D.N.Y. 1960) (the common interest privilege applies even "without an express understanding that the recipient shall not communicate the contents thereof to others."). The "conduct and situation" here demonstrates a common interest agreement.[4] Indeed, undersigned counsel was not the only one to conclude that discussions in the CVRA case were under a common interest agreement. Two other amici organizations supporting Ms. Wild in the CVRA case both understood a common interest privilege existed at exactly the same time. *See* Ex.

---

[4] Unable to find any real support for its position in this Circuit, WilmerHale has located an unpublished decision from Ohio involving an amicus who could not "be considered truly united in a legal strategy" with a party. *TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2022 WL 2383543, at *4 (S.D. Ohio July 1, 2022). Here, the facts are very different, as demonstrated through an affidavit detailing efforts to coordinate legal strategy between Ms. Wild (a sex-trafficking victim) and ECPAT (an advocacy organization for sex-trafficking victims). Cassell Dec. ¶¶ 28-81.

WilmerHale also suggests that law firms may be less likely to undertake pro bono representations if those representations create a risk of future conflicts. WilmerHale Resp. at 17 n.10. But the conflict exists in this case only because WilmerHale undertook an adverse representation in a substantially related case—a case involving a specific sex trafficking organization who trafficked the same specific victim whom the firm had previously supported. These unusual facts are unlikely to recur with any frequency. And, in any event, in future cases, law firms who have concerns that they might take conflicting positions are free to secure a conflicts waiver in writing.

1 (declaration of Meg Garvin) (concluding that a common interest agreement existed in preparing amicus brief in the CVRA case); Ex. 2 (declaration of James Marsh) (same).

### B. Ms. Wild Shared Confidential Strategic Information with WilmerHale.

Next, WilmerHale seemingly argues that it did not receive confidential information from Ms. Wild. But on closer examination, it turns out that WilmerHale's position is much narrower—that the information exchanged was "not marked as confidential" or was not preceded by a specific oral statement that it "was confidential." Ellsworth Dec, ¶ 5; Vreeland Dec. ¶ 7. But the common interest privilege protects communications made "in the course of an ongoing common [legal] enterprise" and intended to further the enterprise. *Schaeffler v. United States*, 806 F.3d 34, 40 (2nd Cir. 2015) (citing *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). Given that no formal document is required to create the agreement itself, *see, e.g., Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004), it is hard to understand WilmerHale's position that a prerequisite for confidentiality under that agreement was special visual or verbal flagging.

More important, the sworn declaration provided by undersigned counsel (Cassell) has not been disputed by WilmerHale. The Cassell declaration specifically indicates that he exchanged information with WilmerHale about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Cassell Dec. ¶ 46. And, after WilmerHale's brief was filed, undersigned counsel held a "strategic and tactical discussion of the best way that Ms. Wild ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Cassell Dec. ¶ 66. Undersigned counsel also had a discussion with the WilmerHale attorneys about how to pursue a specific strategy to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

███████████████████████████████████████████████

███████████████████████████████████████ Id. ¶¶ 67-79.

Compared to this very detailed recitation of a "strategic and tactical discussion," *id.* ¶ 66, the WilmerHale declarations are not directly responsive. Instead, Ms. Ellsworth indicates vaguely that she thought ████████████████████████████ Ellsworth Dec. ¶ 5. And Ms. Vreeland recalls little about the conversation except that ████████████████ ███████████████████████████ Vreeland Dec. ¶ 6. Given the different level of detail in the affidavits, this Court should conclude that WilmerHale at least has access to Ms. Wild's confidential strategic information. *See, e.g., Battagliola v Natl. Life Ins. Co.*, 2005 WL 101353, at *15 (S.D.N.Y. 2005) ("While there is no reason to doubt [Heck's] claim that he does not remember any confidential information, the Court nevertheless finds that he was likely to have had access to such information"); *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012) ("It would be an unfair disadvantage for Defendants to be confronted by an attorney whom they believe possesses intimate knowledge of their views … even though that attorney professes that he has no knowledge nor recalls any ….").

In addition, on the subject of whether the confidential information could be used to harm Ms. Wild, the Court does *not* face conflicting affidavits. To the contrary, while the WilmerHale declarations fail to address the subject, the Cassell declaration contains specific—and uncontradicted—analysis. *See* Cassell Dec., ¶ 96 ("WilmerHale's knowledge of Ms. Wild's ████████████████████ is something that can be used against Ms. Wild in this litigation"). Notably, the Cassell declaration analyzes the TVPA obstruction-of-justice count that is moving

---

[5] WilmerHale provided the brief arguing for and ruling granting a Rule 60 motion in *Cap Export, LLC v. Zinus, Inc. et al*, 2:16-cv-00371-JWH-MRW (C.D. Cal. May 11, 2020).

forward and how the information WilmerHale has access to could harm Ms. Wild. Cassell Dec. ¶¶ 97-98. WilmerHale's memorandum of law and its two supporting declarations do not even *mention* the obstruction count, let alone refute Ms. Wild's analysis.

Finally, in considering how this case might play out in the future, this Court should consider the looming spectacle of WilmerHale cross-examining Ms. Wild. WilmerHale does not deny that Ms. Wild falls within the class that Jane Doe 1 proposes to certify. *See* Edwards Memo. at 11. Nor does WilmerHale deny that Ms. Wild will likely provide relevant testimony should this case proceed to trial. Accordingly, allowing WilmerHale to continue in this case could lead to the firm cross-examining Ms. Wild about the very subjects that the firm previously discussed confidentially with her attorney. *Cf. Selby v. Revlon Consumer Prods. Corp.,* 6 F.Supp.2d 577, 581 (N.D. Tex. 1997) (disqualifying law firm representing current client bringing sexual harassment case against employer because firm sought to depose former client).[6] It is in precisely such circumstances "any doubt should be resolved in favor of disqualification." *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 56 (S.D.N.Y. 2017).

### C. The CVRA Case is Substantially Related to this Case.

In one last effort to avoid disqualification, WilmerHale argues that "no common questions of fact or law" exist between its representation of ECPAT in the CVRA case and its representation of JP Morgan here. Not true. For starters, recall that WilmerHale set off this motion when it subpoenaed Jane Doe 1's lead attorney—Bradley J. Edwards—on the grounds that the firm needed to "get up to speed" about the CVRA case.[7]

---

[6] In future proceedings, Ms. Wild may also need to cross-examine JP Morgan's witness who has accused ECPAT of ███████████████ ███████████ Edwards Memo. at 18 (citing deposition of JP Morgan witness Mehlman-Orozco).
[7] As explained in detail in the Cassell declaration, it was this assertion that led counsel to examine the amicus brief filings in the CVRA case, triggering recollection of the fact that Ms. Vreeland

More important, the CVRA case and this case have the same nucleus of operative facts: Jeffrey Epstein's sex-trafficking, including specifically his trafficking of Courtney Wild. *See* Edwards Memo. at 15-17. This is not a situation where WilmerHale is just "arguing one position in one lawsuit and the opposite position in another lawsuit." WilmerHale Resp. at 5. WilmerHale is entirely free to support sex-trafficking victims in one lawsuit and oppose them in another. What it is not free to do is take competing positions about the same victim of the same sex-trafficking organization—using her confidential information against her. Indeed, as noted above, this case poses particularly thorny problems because it contains an obstruction-of-justice count. Defending against that count will require WilmerHale to now attempt to thwart Ms. Wild's efforts to hold accountable those responsible for trafficking her in 2006 to 2007—including WilmerHale's client JP Morgan. *See* Cassell Dec. ¶ 96 (if Ms. Wild is successful in setting aside the Epstein's NPA immunity provisions, she would seek to pursue ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).

### IV. To Preserve the Integrity of the Adversary Process, the Court Should Disqualify WilmerHale.

In light of WilmerHale's conflicted position, the Court should disqualify it. It may be true that no court in the Second Circuit has previously disqualified conflicted counsel based on confidential information obtained through a common interest agreement. WilmerHale Resp. at 13. But it is equally true that no court in this Circuit has ever previously allowed conflicted counsel to proceed with representation in such unfair circumstances. This Court faces an issue of first impression. And, as WilmerHale concedes, the two cases most on-point to this situation have both disqualified conflicted counsel. *See Roosevelt Irrigation Dist. v. Salt River Project Agric. & Power Dist.*, 810 F. Supp. 2d 929 (D. Ariz. 2011); *In re Gabapentin Patent Litig.*, 407 F. Supp. 2d 607

---

was an attorney at WilmerHale's Boston Office who had worked with Ms. Ellsworth on the case. Cassell Dec. ¶¶ 110-17. Two business days later, the conflict issue was presented to WilmerHale.

(D.N.J. 2005). WilmerHale does note that these two cases involved "written joint defense agreement[s]." WilmerHale Resp. at 13. But given this Court's previous ruling that the common interest doctrine applies regardless of whether there was an agreement "in writing," *Denney*, 362 F. Supp. 2d at 415 (S.D.N.Y. 2004), that fact is truly a distinction without a difference.

The well-settled principle that controls is that a "joint defense privilege cannot be waived without the consent of all parties to the privilege." *United States v. Weissman*, 1996 WL 737042, at *26 (S.D.N.Y. Dec. 26, 1996); *accord United States v. BDO Seidman, LLP,* 492 F.3d 806, 817 (7th Cir. 2007). While WilmerHale did not act in bad faith, the stark fact remains that the firm is "at least potentially in a position to use privileged information concerning the other side through prior representation"—the "most common[]" situation for a trial court to exercise its disqualification power "to preserve the integrity of the adversary process." *United States v. Quest Diagnostics Inc.,* 734 F.3d 154, 166 (2d Cir. 2013).

JP Morgan already has in place a second, well-regarded law firm and could rapidly hire any additional legal support as might be required. WilmerHale created the conflict when it abandoned Ms. Wild in the pursuit of more lucrative business. The Court should direct WilmerHale to suggest appropriate steps to transition the case to a legal team that does not labor under a conflict. Disqualification (or some other equally effective remedy) is required "to maintain the highest standard[s] of [the] profession." *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (affirming disqualification decision by Rakoff, J.).

## CONCLUSION

Mr. Edwards respectfully requests that the Court disqualify WilmerHale from representing JP Morgan in this case.

Dated: May 9, 2023

        Respectfully Submitted,

        */s/  Paul G. Cassell*
        Paul G. Cassell
        *Pro Hac Vice*

        S.J. Quinney College of Law at the University of Utah
        383 S. University St.
        Salt Lake City, UT 84112
        Telephone: 801-585-5202
        Facsimile: 801-585-6833
        Email: pgcassell.law@gmail.com
        (institutional address for identification purposes, not to imply institutional endorsement)

        *Counsel for Bradley J. Edwards*

## CERTIFICATE OF SERVICE

A sealed, ex parte copy of the foregoing reply memorandum of law in support of disqualification (along with two annexed declarations of Ms. Garvin and Mr. Marsh) has been provided to the Court via the Court's CM/ECF system. An unredacted copy of the memorandum and declarations have also been provided, via email, to Felicia J. Ellsworth at the WilmerHale law firm, at felicia.ellsworth@wilmerhale.com.

Redacted copies of the foregoing have been provided to all parties in this matter, via the Court's CM/ECF filing system.

May 9, 2023

By: */s/ Paul G. Cassell*
Paul G. Cassell
*Pro Hac Vice*