**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JANE DOE 1, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 22-cv-10019 (JSR) |
| JP MORGAN CHASE BANK, N.A., | |
| Defendant. | |

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF'S EXPERT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.      Khodarkovsky Is Not A Sex Trafficking Expert ............................................... 2

II.     Khodarkovsky's Analysis Is Unreliable .......................................................... 8

     A.     Khodarkovsky Seeks To Usurp Judge And Jury ................................. 9

     B.     Khodarkovsky Does Not Rely On Sufficient Facts Or Data .......................... 13

     C.     Khodarkovsky Substitutes Speculation For Analysis ..................................... 16

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. National Railroad Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)......................................................................................2, 8

*Bowling v. Johnson & Johnson*,
   2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019)..........................................................2

*Burkhart v. Washington Metropolitan Area Transit Authority*,
   112 F.3d 1207 (D.C. Cir. 1997)..............................................................................8

*Cayuga Indian Nation of New York v. Pataki*,
   83 F. Supp. 2d 318 (N.D.N.Y. 2000).......................................................................2

*Daubert v. Merrell Dow Pharmaceuticals Inc.*,
   509 U.S. 579 (1993)..............................................................................................1, 2

*Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014).............................................................................2

*Hayes v. MTD Products, Inc.*,
   518 F. Supp. 2d 898 (W.D. Ky. 2007)......................................................................3

*Highland Capital Management, L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005).....................................................................12

*Hygh v. Jacobs*,
   961 F.2d 359 (2d Cir. 1992)...................................................................................10

*In re Aluminum Warehousing Antitrust Litigation*,
   2020 WL 4218329 (S.D.N.Y. July 23, 2020)....................................................3, 12

*In re Namenda Indirect Purchaser Antitrust Litigation*,
   2021 WL 100489 (S.D.N.Y. Jan. 12, 2021) ............................................................2

*In re Rezulin Products Liability Litigation*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004)............................................................ *passim*

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)..................................................................................................3

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008)...................................................................................16

*Nieves-Villanueva v. Soto-Rivera*,
　133 F.3d 92 (1st Cir. 1997)............................................................................................10

*Nimely v. City of New York*,
　414 F.3d 381 (2d Cir. 2005)............................................................................................3

*Noel v. City of New York*,
　2023 WL 3170430 (S.D.N.Y. Apr. 28, 2023).................................................................12

*Pearlstein v. Blackberry Ltd.*,
　2021 WL 4131646 (S.D.N.Y. Sept. 10, 2021)..................................................................2

*Romero v. Allstate Insurance Co.*,
　52 F. Supp. 3d 715 (E.D. Pa. 2014)...............................................................................10

*Scott v. Chipotle Mexican Grill, Inc.*,
　315 F.R.D. 33 (S.D.N.Y. 2016) ........................................................................2, 8, 10, 18

*Sharkey v. J.P. Morgan Chase & Co.*,
　978 F. Supp. 2d 250 (S.D.N.Y. 2013).............................................................................12

*Skepnek v. Roper & Twardowsky, LLC*,
　2015 WL 4496301 (D. Kan. July 23, 2015) .....................................................................9

*Taylor v. Evans*,
　1997 WL 154010 (S.D.N.Y. Apr. 1, 1997).................................................................9, 18

*Veleron Holding, B.V. v. Morgan Stanley*,
　117 F. Supp. 3d 404 (S.D.N.Y. 2015).............................................................................13

*United States v. Williams*,
　506 F.3d 151 (2d Cir. 2007)............................................................................................2

**Codes**

18 U.S.C. § 1591 ...............................................................................................................13

**Rules**

Fed. R. Evid. 702 ........................................................................................................ *passim*

Fed. R. Evid. 702(b)......................................................................................................8, 13

Fed. R. Evid. 702(c)............................................................................................................16

**Other Authorities**

Wright & Miller, Bases for Qualifying an Expert, Fed. Prac. & Proc. Evid § 6264.1 (2d ed.).......4

Wright & Miller, Issues Concerning the Adequacy of Qualifications, Fed. Prac. & Proc. Evid
§ 6264.2 (2d ed.) ....................................................................................................................7

## PRELIMINARY STATEMENT

Jeffrey Epstein targeted individuals and visited individual harm on each of them in their own way.  Seeking class certification, Plaintiff's counsel would flatten those individual stories and paper over what makes each encounter uniquely terrible.  Of course, the complicated facts of each victim's personal experiences do not and will not yield to such a generalizing narrative.  And so Plaintiff's counsel substitutes for those facts the sweeping "opinion" of a former prosecutor, Jane Khodarkovsky, in an unsuccessful attempt to stamp her motion with the imprimatur of expert authority.  But Khodarkovsky is not the sex trafficking expert she claims to be.  She is a lawyer who prosecuted state cases unrelated to sex trafficking and then spent three years with the Department of Justice's Money Laundering and Asset Recovery Section.  And Khodarkovsky's "expert opinion" is no such thing.  It conforms the facts to its conclusion, rather than the other way around.  And it is purely legal argument that reads like a first draft of an argument a lawyer might hope someday to make to a jury—telling the reader about the law, then about the evidence, and finally what conclusions to draw by applying the former to the latter.  That is not the proper form or function of expert testimony under Rule 702, and will not aid this Court in determining the propriety of grouping all of Epstein's individual victims into a homogenized whole.  Khodarkovsky's opinion should be excluded in its entirety.

## ARGUMENT

Federal Rule of Evidence 702 permits expert testimony only by a "qualified" witness and only if a party can prove the testimony (i) will "help the trier of fact to understand the evidence or to determine a fact in issue," (ii) "is based on sufficient facts or data," (iii) "is the product of reliable principles and methods," and (iv) that the "expert has reliably applied the principles and methods to the facts of the case."  *See Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 590 (1993).  "[T]he proponent of expert testimony has the burden of establishing by a preponderance

of the evidence that the admissibility requirements of Rule 702 are satisfied[.]"  *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007); *Cayuga Indian Nation of N.Y. v. Pataki*, 83 F. Supp. 2d 318, 322 (N.D.N.Y. 2000) ("[I]t is the proponent's burden … to establish admissibility, rather than the opponent's burden to establish inadmissibility." (internal quotation marks omitted)).

Just like expert trial testimony, expert opinion in support of class certification is subject to "'*Daubert's* rigorous standards.'"  *Bowling v. Johnson & Johnson*, 2019 WL 1760162, at *7 (S.D.N.Y. Apr. 22, 2019) (quoting *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 55 (S.D.N.Y. 2016)); *see also In re Namenda Indirect Purchaser Antitrust Litig.*, 2021 WL 100489, at *8 (S.D.N.Y. Jan. 12, 2021) ("[T]he Court agrees with the heavy weight of authority militating towards a *Daubert* inquiry at class certification.").  "[O]nly expert reports that would otherwise be admissible at trial under *Daubert* can be considered in support of class certification."  *Id.* at *7.

The *Daubert* analysis proceeds in two steps.   "The first question the Court poses … is whether the expert has sufficient qualifications to testify."  *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 127 (S.D.N.Y. 2014) (internal quotation marks omitted).  "If so, the 'next question is whether the proffered testimony has a sufficiently reliable foundation.'"  *Id.* (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)).  Both criteria must be met before a Court may rely upon proffered expertise to determine class certification.  Khodarkovsky's purported expert testimony fails at each step.

## I.      Khodarkovsky Is Not A Sex Trafficking Expert

Khodarkovsky does not possess the "knowledge, skill, experience, training, or education" to qualify as the sex trafficking expert she claims to be.  Fed. R. Evid. 702.  The threshold *Daubert* inquiry is whether a purported expert "really qualifies as one."  *Pearlstein v. Blackberry Ltd.*, 2021 WL 4131646, at *1 (S.D.N.Y. Sept. 10, 2021).   That "initial question" precedes—and is a prerequisite for—any further inquiry into whether the purported testimony will "assist the trier of

fact" or otherwise satisfy Rule 702's reliability requirements.  *Nimely v. City of N.Y.*, 414 F.3d 381, 396 n.11 (2d Cir. 2005).  "[T]his basic gatekeeping obligation applies … to all expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  "To determine whether a proffered witness is qualified, a court must ascertain whether the proffered expert has the educational background or training in a relevant field by looking at the totality of the witness's background … and then compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *In re Aluminum Warehousing Antitrust Litig.*, 2020 WL 4218329 *27-28 (S.D.N.Y. July 23, 2020) (internal quotation marks and citations omitted).

Khodarkovsky does not meet those standards.  First, her credentials are not those of a subject-matter expert, "but those of a lawyer." *Hayes v. MTD Prods., Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. 2007).  She graduated law school in 2011 and has never been qualified by any court as an expert in any capacity, let alone as a sex trafficking expert.  Ex. 1, Transcript of Khodarkovsky Dep., at 10:11-18; 24:16-18; 38:25-39:6.[1]  Her deposition in this case was her first.  Ex. 1 at 7:21-23.  She is a former prosecutor who does not hold, and has never held, any academic position, nor does she hold any academic credential other than her law degree.[2]  Ex. 1 at 20:14-21:9.  While she purports to offer this Court guidance with respect to certifying a class, this case is the second time she has ever worked on a class action in any capacity.  Ex. 1 at 285:23-286:21.  The first was in her first job after her clerkship, over ten years ago, in the FLSA context.  Ex. 1 at

---

[1] Citations to "Ex." refer to the exhibits appended to the Declaration of Felicia H. Ellsworth filed herewith.

[2] For her bachelor's degree, Khodarkovsky majored in Political Science and History.  Ex. 2, Expert Report of Jane Khodarkovsky, Ex. 1 at 2.

286:11-16.  Despite that inexperience, she spent a mere "███████" drafting her initial report. Ex. 1 at 84:10-14.

Further, "[c]ommon indicia of expertise include membership in learned professional societies and authorship of books and articles in the field."  Wright & Miller, Bases for Qualifying an Expert, Fed. Prac. & Proc. Evid § 6264.1 (2d ed.).  Yet Khodarkovsky has not authored any book, whether about sex trafficking or otherwise.  Ex. 1 at 10:15-11:11.  She has not authored any work in any peer-reviewed scholarly journal or publication.  Ex. 1 at 20:14-18.  Nor is she apprised of the scholarly work of others.  For example, the distinction between voluntary commercial sex work and sex trafficking lies at the heart of Doe's motion for class certification—if some members of the putative class were trafficked and others were engaged in voluntary commercial sex work, certification of that class for purposes of TVPA liability would be inappropriate.  Mem. in Opp. to Pl.'s Mot. for Class Certification ("Opp.") at 14-16.  Yet Khodarkovsky is unaware of any research regarding the comparative prevalence between commercial sex work and sex trafficking, and indeed has no opinion as to that critical question.  Ex. 1 at 119:13-120:21.

Instead, Khodarkovsky's resume lists six publications in total.  Ex. 2, Expert Report of Jane Khodarkovsky; Ex. 1 at 3.  Four of those "publications" stem from Khodarkovsky's time as a law student, Ex. 1 at 12:7-14, and none of those is a "publication" authored by Khodarkovsky. One "is a brief interview … from the law school alumni magazine."  Ex. 1 at 12:15-21.  It is authored by Alice Rhein, not Khodarkovsky.  Ex. 2, Ex. 1 at 3.  Another is a law review article by a professor for whom Khodarkovsky was "one of two research assistants."  Ex. 1 at 13:8-21.  A third is a report from the U.S. State Department (where Khodarkovsky was a student extern), to which Khodarkovsky was one of over 50 contributors.  Ex. 1 at 14:8-22.  And the fourth student "publication" is, in fact, a database hosted by the University of Michigan that Khodarkovsky,

among other students, helped maintain.  Ex. 1 at 15:9-18:17.  As far as the post-law-school publications Khodarkovsky claims, one is a book authored by someone else that merely acknowledges Khodarkovsky's volunteer assistance, among twenty-eight other contributors.  Ex. 1 at 18:12-17.  The other is a non-peer-reviewed article co-authored by Khodarkovsky, published not in a scholarly journal but by the Department of Justice (Khodarkovsky's then-employer) in its in-house journal.  Ex. 1 at 20:8-12; Ex. 2, Ex. 1 at 1, 3.

Nothing in Khodarkovsky's time practicing law compensates for her lack of relevant training or scholarly background.  Her sole experience "representing" trafficking victims was as a student in a clinic in law school over a decade ago.  Ex. 2 ¶¶ 27-30.  After law school, Khodarkovsky joined an employment law firm, but did no work on sex trafficking cases while there.  Ex. 1 at 38:16-19.  She then spent three years at the New Jersey Attorney General's Official Corruption Bureau, where again she was not involved in sex trafficking cases.  Ex. 1 at 35:25-36:7.  Next was a two-year stint in the Manhattan DA's office, where again she did no sex trafficking work.[3]  Ex. 1 at 26:15-27:3.  Khodarkovsky then joined the Department of Justice—in the "money laundering section," not its human trafficking prosecution unit.  Ex. 1 at 42:14-19.  Consistent with that assignment, Khodarkovsky's work did not focus on sex trafficking, but rather spanned a wide swath of crimes including "bank, wire, and mortgage fraud cases."  Ex. 1 at 40:13-20.  Khodarkovsky grounds her claim of expertise in the cases prosecuted by DOJ during her three-year tenure.  But of the cases her report identifies as giving rise to sex-trafficking expertise, only two were charged during her time at DOJ, and neither of those involved the Trafficking Victims Protection Act ("TVPA").  All the others were charged prior to Khodarkovsky's brief tenure and

---

[3] Khodarkovsky's resume lists one case from her time as an Assistant District Attorney, *People v. Elvis Moreno*—a drug case with multiple acquittals and a guilty verdict that was later overturned on appeal on insufficiency of evidence grounds.  Ex. 1 at 32:24-33:7.

Khodarkovsky thus played no role in the charging or targeting decisions (and several were not sex trafficking cases in any event). Ex. 1 at 74:9-11.[4]  Indeed, she never filed a notice of appearance in *any* case on behalf of the government.  Thus, *in total*, Khodarkovsky spent three years and five months in an advisory role in the Department of Justice's Money Laundering and Asset Recovery Section, during which time she cannot identify a single case she personally prosecuted or where she made a charging or targeting decision with respect to sex trafficking—and that was the " ███ ███████████████ " that Khodarkovsky had a " █████████ " in the field of her purported expertise. Ex. 1 at 38:25-39:6.

It is not that sex trafficking expertise is elusive or impossible to obtain.  For example, JPMC has retained Dr. Kimberly Mehlman-Orozco.  *See* Ex. 4.  Dr. Mehlman-Orozco possesses both a masters and doctoral degree (in Justice, Law, and Crime Policy and Criminology, Law and Society, respectively) and has assisted courts as a trafficking expert in dozens of litigations—including for civil defendants and plaintiffs, and in criminal cases. Ex. 4, App'x A, at 59; 68-70.  She has been retained as an expert in dozens more.   She is the author of scholarly, peer-reviewed articles concerning sex trafficking and of a full-length book that involved extensive primary and secondary

---

[4] For example, Khodarkovsky cannot claim credit for prosecution in *United States v. Bhimani* (at Ex. 2 ¶ 21), when she was "not involved in the original indictment to bring sex trafficking charges." Ex. 1 at 57:6-8. Nor can she claim credit for *United States v. Backpage* and *United States v. Wilham Martono*. Ex. 2 ¶ 13. Again, she was not involved in the charging decision in either case, and neither was a sex trafficking case.  Ex. 1 at 59:1-11; 61:24-25 (" ███████ ████ "); 64:3-6 (Q: ███████████ " A: " █████████████ "); 65:25-66:7.  Khodarkovsky also touts (Ex. 2 ¶ 16) the prosecution in *United States v. Kyong Burgos*, but once again she was not involved in the charging decision, and once again that was not a sex trafficking case.  Ex. 1 at 67:13-19; 68:7-9.  Finally, Khodarkovsky cites *United States v. Michael Morris* and *United States v. Sumalee Intarathong*.  Ex. 2 ¶ 19.  But as with the others, the charging and targeting decisions in both cases predated Khodarkovsky's tenure in the Department.  Ex. 1 at 68:17-69:14 (Q: " ██████ █████████████████████████████████████████████ A: " ███████████████████████ ").

research into hundreds of trafficking cases across the country.  Ex. 4 at 5.  That book is now integrated in the Advanced Human Trafficking Law Enforcement Class used to train law enforcement across the United States.  Ex. 4 at 5.  She has served as the Human Trafficking Subject Matter Expert at the RAND Corporation and has developed sex trafficking course material for doctoral programs at George Mason University and University of Maryland, College Park.  Ex. 4 at 6.

JPMC has also retained Dr. Matthew Norman, MD.  *See* Ex. 5.  Dr. Norman is a board-certified psychiatrist and holds professorships at both Emory University School of Medicine and Emory University School of Law, teaching abut trauma and trauma-related issues.  Ex. 5 ¶¶ 1-2. He has deep experience diagnosing and treating PTSD.  Ex. 5 ¶ 1.  And he has an extensive bibliography that includes numerous scholarly, peer-reviewed publications.  Drs. Mehlman-Orozco and Norman typify the kind of expertise that courts endorse under Rule 702 (and each disagree with Khodarkovsky's analyses and conclusions).  Khodarkovsky, whose credentials stand in stark contrast, does not.

Lack of expertise demands exclusion: "where a witness lacks sufficient background to qualify as an expert … it is error for a trial court to rule that the witness' lack of qualifications go only to weight and not admissibility."  Wright & Miller, Issues Concerning the Adequacy of Qualifications, Fed. Prac. & Proc. Evid § 6264.2 (2d ed.).  Khodarkovsky is not a sex trafficking expert, and her opinion should carry no weight.  *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 559-560 (S.D.N.Y. 2004) (excluding multiple proffered expert physicians who lacked both formal training and specialized knowledge of the specific subject matter of their proposed testimony).

## II.   KHODARKOVSKY'S ANALYSIS IS UNRELIABLE

Even were the Court to qualify Khodarkovsky as a sex trafficking expert, still it "must 'undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand.'" *Chipotle Mexican Grill*, 315 F.R.D. at 43 (quoting *Amorgianos*, 303 F.3d at 267). That analysis is fatal to Khodarkovsky's opinions.   JPMC's opposition to class certification (filed herewith) already demonstrates that Khodarkovsky's analysis is contradicted throughout by the record unearthed in discovery. *E.g.*, Opp. 6 n.10.   So too does Dr. Mehlman-Orozco meticulously document the factual errors and mischaracterizations replete in Khodarkovsky's report.   Ex. 4 at 38-54.   But the flaws in Khodarkovsky's methodologies and analyses run deeper.

*First*, Khodarkovsky's report consists in equal parts of legal analysis and conclusions (usurping the judge) and factual narratives with commentary (usurping the factfinder).   Both types of opinion are inadmissible.   "Each courtroom comes equipped with a 'legal expert,' called a judge[.]"   *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997). This Court needs no expert assistance interpreting the TVPA or the class certification requirements of Rule 23.   And "factual narratives" are routinely "excluded" when they opine on "matters which a jury is capable of understanding and deciding without the expert's help."   *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 541 (citations omitted).

*Second*, Khodarkovsky's opinions are not "based on sufficient facts or data," Fed. R. Evid. 702(b)—indeed, she failed to interview a *single* potential classmember to ascertain their experience and the existence of the force, fraud, or coercion necessary for a TVPA claim. ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

*Finally*, Khodarkovsky's report is rife with speculation and conjecture.  Her analysis amounts to a bald conclusion that every victim who encountered Epstein over more than a two-decade period was necessarily and specifically sex trafficked as defined by the TVPA vis-à-vis one of nine different aspects of JPMC's banking services—and an analysis of the evidence in service of that conclusion.  Such "reasoning" inverts the process of honest inquiry and is inadmissible.

### A.      Khodarkovsky Seeks To Usurp Judge And Jury

A court must exclude an expert report when "[v]irtually all" of it "falls into one of these categories, either setting forth opinions on whether defendants violated a legal standard or presenting a narrative of the case which the lay juror is equally capable of constructing."  *Taylor v. Evans*, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997).  That admonition squarely precludes Khodarkovsky's opinion.

First, Khodarkovsky—a lawyer with no other training—dedicates large swaths of her report to legal briefing.  ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████  ████████████████████████ *with Skepnek v. Roper & Twardowsky, LLC*, 2015 WL 4496301, at *4 (D. Kan. July 23, 2015) (excluding report that "is replete with legal citations and discussions of case law, and … reads more like a brief than an expert opinion").  ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

██████████████████████████████████████████ █.[5] *See Chipotle Mexican Grill*, 315 F.R.D. at 49 ("It is particularly inappropriate for a witness to track the exact language of statutes and regulations." (internal quotation marks omitted)). ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ *compare, e.g.*, Mem. In Support of Class Certification, Dkt. 99 at 17 (positing allegedly common elements of proof for putative classmembers), *with* Ex. 2 ¶¶ 78-97 (repeating those elements). ████████████████

██████████████████████████████████████████ The rule against conclusory legal analysis masquerading as expert opinion is well established. *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) ("At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule."); *Chipotle Mexican Grill*, 315 F.R.D. at 48 ("[H]is expert opinion on what [the evidence] means for plaintiffs' case is impermissible."). Khodarkovsky flouts this principle; her opinions as to what the law is, or what legal conclusions this Court should draw under Rule 23, have no place in the class certification analysis. *See Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d 715, 723 (E.D. Pa. 2014)

---

[5] Khodarkovsky's Reply doubles down on the tactic, ████████████████████████████████
████████████████████████████████████████████████████

(excluding a law professor's declaration that "is nothing more than a legal opinion" and offers "legal analysis" based on "his experience as a legal scholar" and "case law and citation of law reviews and treatises.").

Also pernicious is Khodarkovsky's (one-sided) regurgitation of evidence under the guise of expert opinion—impermissibly taking on "the role of the jury in interpreting the evidence." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 541 (citations omitted). ██████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████     ██████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████.[6]  ███████████████   Nothing in those documents or testimony requires specialized knowledge, expertise, or skill to interpret, nor do Plaintiff's counsel or Khodarkovsky argue otherwise.  Yet Khodarkovsky seeks to tell a factfinder—either the judge at class certification or a jury at trial—exactly what conclusions to draw from that evidence.[7]

---

[6] Again, Khodarkovsky's Reply compounds the error.  Unable to squarely address the flaws revealed in Drs. Mehlman-Orozco's and Norman's rebuttal reports, Doe's lawyers have simply re-briefed their theory of the evidence, █████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████

[7] It is no answer that Khodarkovsky has experience prosecuting financial crimes and as such may be more familiar with banking practices and documents.  She is not offered as a banking or financial services expert.  She is offered as a sex trafficking expert.  It is in *that* capacity that

In *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d at 551, the court warned against proffered expert testimony that would merely be a "narrative of the case which a juror is equally capable of construction." The Court explained that "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence." *Id.* "Likewise, the glosses [the purported expert] interpolates into his narrative are simple inferences drawn from uncomplicated facts that serve only to buttress [the plaintiff's] theory of the case." *Id.* As such, the expert would do "no more than counsel for plaintiff will do in argument, *i.e.*, propound a particular interpretation of [defendant's conduct]. Accordingly, [the expert's] testimony … is inadmissible." *Id.*; *see also Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (excluding "factual narratives and interpretations of conduct or views as to the motivation of [the] parties" (citations omitted)); *Sharkey v. J.P. Morgan Chase & Co.*, 978 F. Supp. 2d 250, 252 (S.D.N.Y. 2013) ("Simply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702." (internal quotation marks omitted)); *Noel v. City of N.Y.*, 2023 WL 3170430, at *4, *5 (S.D.N.Y. Apr. 28, 2023) (excluding a "one-sided narrative of the evidence in this case, which embodies the perspective of Plaintiff's attorneys[.] … [The expert] improperly assumes the role of the jury … and also the role of counsel in constructing legal argument that proffers a particular interpretation of the evidence in this case"). So too with Khodarkovsky's narrative and interpretation of the straightforward and non-technical evidence cited in her report. Ex. 2 ¶¶ 50-66.

---

her interpretation of the evidence should be judged; the court must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *In re Aluminum Warehousing Antitrust Litig.*, 2020 WL 4218329, at *27 (S.D.N.Y. July 23, 2020).

### B.      Khodarkovsky Does Not Rely On Sufficient Facts Or Data

A basis in "sufficient facts or data" is the *sine qua non* of reliable expertise.  Fed. R. Evid.

702(b).  "[A] proffered expert who relied solely on his or her experience in arriving at his or her

expert opinion must have based that opinion on sufficient facts or data."  *Veleron Holding, B.V. v.*

*Morgan Stanley*, 117 F. Supp. 3d 404, 444 (S.D.N.Y. 2015) (internal quotation marks omitted).

Khodarkovsky's analysis fails by this measure too: she failed to speak to *any* victim, and thus

offers only her own "subjective views in the guise of expert opinion[]."  *In re Rezulin Prods. Liab.*

*Litig.*, 309 F. Supp. 2d at 544.

The precise psychological effect of any event is a highly individualized inquiry: what

offends one may not offend another; behavior that could be "coercive" (18 U.S.C. § 1591) to a

young, vulnerable person could be merely vexatious to an older, more secure person.  Ex. 1 at

134:8-12 (Q: "████████████████████████████████████████████████████████

████████████████████████████████████████" A: "█████████████");  ████████████

It is thus impossible to properly assess the nuance of a potential victim's experience without at

least speaking to them.

Khodarkovsky admits this.  ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████      ████████████████████████████████████████

████████████████████████████████████████████████████████,

██████████████████████████████████████████████████████

████████████      ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

This is all commonsensically true.  It is also opposite of the analysis Khodarkovsky

undertook in this case.  ████████████████████████      ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████      ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████      ████████████████████████████████

████████████████████████████[8]

---

[8] ████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████ That answer is a telling
indication that Khodarkovsky's conclusions cannot be bothered with potentially adverse facts.
Regardless, it is Doe's burden to prove that certification is proper.  ████████████████████████
████████████████████████████████████████████      ████████████████
██████████████

Indeed, she concedes as much. ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████   ███████████████   ██████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████.[9] ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████   ██

---

[9] To be clear, avoiding re-traumatization is important.  But Khodarkovsky's failure to interview putative classmembers does not insulate them from having to tell their stories.  Doe has sat for a deposition, and will seek to testify at trial.  And should Doe's certification succeed (and she prevail at trial), classmembers would *still* need to be interviewed to determine membership in the class, damages, etc.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████ It is

exactly this kind of free-floating opinion—untethered to facts, untethered to data—that Rule 702

forbids.

**C.    Khodarkovsky Substitutes Speculation For Analysis**

Khodarkovsky's failure to ground her conclusions in facts or data leads necessarily to

impermissible speculation.  *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290,

311 (2d Cir. 2008) ("An expert's opinions that are without factual basis and are based on

speculation or conjecture are [] inappropriate[.]").  Fundamentally, the "core requirement of Rule

702" is that "expert testimony rest on 'knowledge,' a term that connotes more than subjective

belief or unsupported speculation."  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 543

(citation omitted).  Further, Rule 702 commands use of "reliable principles and methods."  Fed. R.

Evid. 702(c).

██████████████████████████████████████

████████████████████████████     ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████  ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at

566 ("By no stretch of the imagination [] could one say that [an expert's] assumption as to what

[someone else] meant be regarded as an appropriate basis upon which to ground expert testimony.

[Such] proposes to give an expert opinion based on a guess, not facts.").

    This is not an isolated example. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  ██████████████████

████████████████████████████████████████████████████

███████████████████████████  ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████ After all, that was

going to be Khodarkovsky's conclusion no matter what.

It always inappropriate for an expert to opine on an individual's subjective intentions or motivations. *See Chipotle Mexican Grill*, 315 F.R.D. at 45 ("[E]xperts may not offer opinions regarding [] intent or motive … as part of their analysis."); *Taylor*, 1997 WL 154010, at *2 ("[M]using as to [] motivations would not be admissible if given by any witness—lay or expert."). That admonition carries particular force when an expert assumes individuals mean the opposite of what they say, *only if* what they say is contradictory to the expert's predetermined conclusions. That is what Khodarkovsky has done. She has said so herself. ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

That is a stunning answer. It concedes an *a priori* assumption of commonality across the putative class. It admits that assumption is immune from contrary evidence. And it acknowledges that such an assumption would be inappropriate in any other context. Whatever one might call such reasoning, it is not admissible expert testimony under Rule 702.

## CONCLUSION

For the foregoing reasons, the Court should exclude Jane Khodarkovsky's opinion.  At the least, the Court should conduct an evidentiary hearing to ascertain whether Jane Khodarkovsky's qualifications and analyses satisfy Rule 702.

Dated: May 12, 2023

Respectfully submitted,

**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**

*/s/ Felicia Ellsworth*
Felicia H. Ellsworth
John J. Butts
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Hillary Chutter-Ames
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
hillary.chutter-ames@wilmerhale.com

*Attorneys for JPMorgan Chase Bank, N.A.*