# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 22-cv-10019 (JSR) |
| JP MORGAN CHASE BANK, N.A., | |
| Defendant. | |

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

    A.    Epstein's Crimes ................................................................................... 2

    B.    Doe's Experiences With Epstein Were Different ................................. 4

    C.    Extensive Prior Litigation Against Epstein And His Associates ...................... 5

    D.    Doe's Remaining Claims Against JPMC Require Individualized Inquiries ...... 5

    E.    Doe's Motion For Class Certification .................................................. 6

ARGUMENT ..................................................................................................................... 6

I.      The Proposed Class Does Not Satisfy The Requirements Of Rule 23(a) .................... 6

    A.    No Putative Class Is Sufficiently Ascertainable Or Numerous ........................ 7

    B.    No Issue Central To The Class Can Be Resolved Through Common Proof ..... 8

    C.    Doe's Claims Present Issues That Are Not Typical Of The Putative Class .... 12

    D.    Intra-Class Conflicts Render Doe An Inadequate Representative ................. 13

II.     The Proposed Class Does Not Satisfy The Requirements Of Rule 23(b)(3) ............... 14

    A.    Issues That May Be Proved By Common Evidence Do Not Predominate
           Over Those Requiring Individualized Proof ..................................................... 14

    B.    A Class Action Is Not A Superior Means Of Adjudicating The Unique,
           Personal, And High-Value Claims Of This Class ............................................ 22

III.    The Proposed Class Cannot Be Certified Under Rule 23(b)(1) .................................. 25

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997).......................................................................................14, 25

*Anwar v. Fairfield Greenwich Ltd.*,
  306 F.R.D. 134 (S.D.N.Y. 2015) ...................................................................17

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*,
  222 F.3d 52 (2d Cir. 2000)..............................................................................12

*Board of Trustees of Southern California IBEW-NECA Defined Contribution Plan v. Bank
  of N.Y. Mellon Corp.*,
  287 F.R.D. 216 (S.D.N.Y. 2012) ....................................................................23

*Bellin v. Zucker*,
  2022 WL 4592581 (S.D.N.Y. Sept. 30, 2022)..................................................7

*Beltran v. InterExchange, Inc.*,
  2018 WL 1948687 (D. Colo. Feb. 2, 2018) .....................................................10

*Boyle v. United States*,
  556 U.S. 938 (2009)..........................................................................................10

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)............................................................................................22

*DiDonato v. GC Services Ltd. Partnership*,
  2021 WL 4219504 (S.D.N.Y. Sept. 16, 2021).................................................25

*Fleites v. MindGeek S.A.R.L.*,
  2022 WL 1314035 (C.D. Cal. Feb. 10, 2022)..................................................14

*Franco v. Connecticut General Life Insurance Co.*,
  299 F.R.D. 417 (D.N.J. 2014), *aff'd*, 647 F. App'x 76 (3d Cir. 2016)............22

*Hain v. Jamison*,
  68 N.E.3d 1233 (N.Y. 2016)............................................................................18

*Haley v. Teachers Insurance & Annuity Association of America*,
  54 F.4th 115 (2d Cir. 2022) .............................................................................19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)..........................................................................................14

*Holloway v. Holy See*,
    537 F. Supp. 3d 502 (S.D.N.Y. 2021)................................................................20

*In re Agent Orange Product Liability Litigation MDL No. 381*,
    818 F.2d 145 (2d Cir. 1987)........................................................................18

*In re Aluminum Warehousing Antitrust Litigation*,
    336 F.R.D. 5 (S.D.N.Y. 2020) ......................................................................13

*In re Benedictin Products Liability Litigation*,
    749 F.2d 300 (6th Cir. 1984) .......................................................................25

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*,
    241 F.R.D. 185 (S.D.N.Y. 2007) .................................................................25

*In re Namenda Indirect Purchaser Antitrust Litigation*,
    338 F.R.D. 527 (S.D.N.Y. 2021) ...................................................................7

*In re Nassau County Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)........................................................................23

*In re Terrorist Attacks on Sept. 11, 2001*,
    2021 WL 640257 (S.D.N.Y. Jan. 22, 2021) ..........................................14, 18

*In re USC Student Health Center Litigation*,
    2019 WL 3315281 (C.D. Cal. June 12, 2019) .............................................10

*Jacob v. Duane Reade, Inc.*,
    293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015) .........22

*Johnson v. Nextel Communications Inc.*,
    780 F.3d 128 (2d Cir. 2015).........................................................................21

*K.A. v. City of New York*,
    413 F. Supp. 3d 282 (S.D.N.Y. 2019)............................................................9

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ..................................................................21

*Lauer v. City of New York*,
    733 N.E.2d 184 (N.Y. 2000)........................................................................17

*Leroy v. Paytel III Management Associates, Inc.*,
    1992 WL 367090 (S.D.N.Y. Nov. 24, 1992)................................................12

*M.K.B. v. Eggleston*,
    445 F. Supp. 2d 400 (S.D.N.Y. 2006)..........................................................16

iii

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016)...................................................................................7

*Menocal v. GEO Group, Inc.*,
    320 F.R.D. 258 (D. Colo. 2017), *aff'd*, 882 F.3d 905 (10th Cir. 2018)..............................9

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)...................................................................................13, 19

*Mullen v. GLV, Inc.*,
    330 F.R.D. 155 (N.D. Ill. 2019).....................................................................................10

*Nnebe v. Daus*,
    2022 WL 615039 (S.D.N.Y. Mar. 1, 2022) ..................................................................25

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018)..........................................................................14

*Owino v. CoreCivic, Inc.*,
    60 F.4th 437 (9th Cir. 2022), *petition for cert. filed*, No. 22-1019 (U.S. Apr. 20, 2023)....9

*Paguirigan v. Prompt Nursing Employment Agency LLC*,
    2018 WL 4347799 (E.D.N.Y. Sept. 12, 2018) ..............................................................9

*Pennsylvania Public School Employees' Retirement System v. Morgan Stanley & Co.*,
    772 F.3d 111 (2d Cir. 2014)..........................................................................................7

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    226 F.R.D. 456 (S.D.N.Y. 2005) ..............................................................................18, 19

*Ramsay v. Frontier, Inc.*,
    2021 WL 651021 (D. Colo. Feb. 19, 2021) ................................................................24

*Rosenbach v. Diversified Group, Inc.*,
    926 N.Y.S.2d 49 (App. Div. 2011).............................................................................21

*Royal Park Investments SA/NV v. U.S. Bank National Association*,
    324 F. Supp. 3d 387 (S.D.N.Y. 2018).........................................................................20

*Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*,
    2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) ................................................................23

*S.H. v. Diocese of Brooklyn*,
    167 N.Y.S.3d 171 (App. Div. 2022).............................................................................20

*Sykes v. Mel S. Harris & Associates LLC*,
    780 F.3d 70 (2d Cir. 2015)........................................................................................13, 22

iv

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008)............................................................................16

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010)............................................................................18

*United States v. Rivera*,
    799 F.3d 180 (2d Cir. 2015)......................................................................15, 24

*United States v. Tutstone*,
    525 F. App'x 298 (6th Cir. 2013) ....................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................. *passim*

*Waste Management Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000)............................................................................19

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .........................................................................23

**Statutes, Rules, and Regulations**

18 U.S.C.
    § 1591........................................................................................................1
    § 1591(a)..................................................................................................14
    § 1591(a)(2).............................................................................................16
    § 1591(e)(3).......................................................................................14, 16
    § 1591(e)(6).............................................................................................10
    § 1595........................................................................................................1
    § 1595(c)(1)..............................................................................................19
    § 1961(4)..................................................................................................10

Fed. R. Civ. P.
    23(a)(1)......................................................................................................7
    23(b)(1)(A)...............................................................................................25

N.Y. C.P.L.R.
    § 214-j....................................................................................................20
    § 1411......................................................................................................21

## PRELIMINARY STATEMENT

Over a roughly two-decade period, Jeffrey Epstein abused dozens of individuals.  The question Jane Doe's motion presents is not whether Epstein's behavior was monstrous.  It was.  The question before the Court is whether to certify a class in this lawsuit.  It should not.

From the immense complexity of dozens of victims' experiences over two decades across countries and continents, Doe tries to cobble together a narrative that conflates vast, material differences in victimization by Epstein by instead focusing on an oversimplified theory of JPMC's provision of banking services.  But this argument skips over important questions that must be asked as to each putative class member in ascertaining liability:  What did Epstein do?  When and how was each victim abused?  What did JPMC know at the time of the abuse?  What nexus was there between JPMC's banking services and the abuse?

Each putative class member must prove Epstein's abuse satisfies each of the elements of Doe's surviving claims.  For the TVPA claims, common proof must—and cannot—establish that each class member was "cause[d] to engage in a commercial sex act" by "means of force, threats of force, fraud, coercion," or was a minor at the time.  18 U.S.C. §§ 1591, 1595.  For the negligence claims, common proof must—and cannot—show that JPMC's conduct caused each class member a specified injury.  Even identifying class members will require determining these issues core to liability.  Some of Epstein's victims were assaulted once; others were abused for years.  Some claim they were trafficked to third parties; others do not.  Some procured other victims for Epstein, some participated in his abuse of other victims, and some did neither.  Epstein employed different tactics with different victims.  Even were it possible to analyze Epstein's varied tactics, understand each victim's intensely personal story, sift through claims with no legal basis, and assess damages, additional facts make a class action inappropriate here.  For instance, Doe offers no evidence that JPMC had any knowledge that Epstein had even been accused of any crimes related to sex until

1

mid-2006, after his indictment.  Removing the first eight years of the proposed class period dramatically reduces the size of a potential class, as do the scores of legal releases that putative class members have signed.  Similarly, a ten-year statute of limitations poses significant problems for a class period that purports to begin any earlier than November 2012.

Doe has failed to meet her burden of proof to establish Rule 23's requirements, relying instead on her allegations in the First Amended Complaint ("FAC") and a deeply flawed purported expert.  Indeed, these requirements cannot be met.  The motion should be denied.

## BACKGROUND

### A.  Epstein's Crimes

Epstein's conduct was not uniform across the two-decade period of Doe's allegations; it varied from victim to victim, and across time.  As demonstrated by ████████████████ ████████████ the Epstein Victim's Compensation Program ("EVCP"), ███████████ ████████████████████████████████████████████████████████ ████████.[1]  He facilitated the abuse of certain victims by his associates, but not of others.[2]  To the extent that only some of Epstein's adult victims allege that they were sex trafficked, the hallmark is proving force, fraud, or coercion, each of which requires evaluating the specific technique on an individual's particular circumstances.  *See infra* 14-16.  To the extent Epstein deployed any of these tactics against some victims, he used a different technique in a different way at any given

---

[1] ██████████████████████████████████████████████ The EVCP was established in 2020 to compensate victims and resolve their sexual abuse claims against Epstein and his Estate.  Ex. 1; Ex. 26 at 34:5-24.  ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████

[2] ████████████████████████████████████████

time to exploit the particular vulnerabilities of each individual.[3]  Epstein implicated certain victims

in his scheme by using them to recruit and injure other victims, while ███████████████

███████████ █ ████████████████████████████████████

██████████████████████████████████████████████████

██████████

Each target of Epstein's misconduct suffered in a different way, experiencing assault or

other crimes.  As Doe's counsel has explained, "[t]here was no one-size-fits-all perspective"

among victims.  Ex. 2 at 273.  Epstein's victims came from vastly different family structures,

socioeconomic backgrounds, and hometowns, and had different types and degrees of preexisting

trauma,[5] all of which affect their susceptibility to coercion.  Ex. 29 ¶¶ 10, 13-23.  That some victims

were minors throughout their abuse, others were abused as minors and as adults, and still others

were abused only as adults further complicates the legal analysis.

As to JPMC's alleged role in all this, Doe points not to one uniform course of conduct, but

rather to at least six different mechanisms that she concludes arise from some sort of common

policy that, as a matter of fact, does not exist.  Mot. 11.  The mechanisms Doe strings together are

different from one another and different across time.  For example, Doe alleges that the bank

---

[3] For example, for some victims, he made promises, which varied, and fulfilled those non-fraudulent promises in certain instances, but not in others. ████████████████
████████████████████████████████████████████████████
██████████████████████

[4] ██████████████████████████████████████████████████
████████████████████████████████████████████

[5] ████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████

facilitated Epstein's cash withdrawals, but his withdrawals were different each year and far lower for certain time periods. ██████████████████████████████████ And JPMC's alleged knowledge of victims varied, where most were alleged ████████████████ ███████████████████████████████████████████████████ ████████████████████ that would have appeared to JPMC as legitimate recipients of funds.[6] To prove the commercial sex act required for TVPA claims, each individual has to show that the thing of value received was on account of a particular sex act.[7] Doe also alleges that JPMC deliberately failed to file SARs, ████████████████████████████████████████████ ████████████████████████████ And what the bank knew from public reporting in 1998, versus 2006, after Epstein's first arrest; versus 2008, after he pleaded guilty; versus 2013, after he left the bank, was materially different—and positions victims differently in relation to JPMC ███████████████████████████████████████ ████████████████████████████████████████████ ; MTD Op. 5-6; *see also infra* at 10, 17-19.

**B.    Doe's Experiences With Epstein Were Different**

Unlike other putative class members, Doe met Epstein when she was ██—not as a minor, which imposes a different and higher burden of proof for her TVPA claims. Doe alleges that Epstein exploited her unique ██████████████████████████████████ ; *see also* Ex. 32 at 19-29, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

---

[6] ██████████████████████████████

[7] *See* Ex. 27 at 74:11-75:5.

Doe alleges that she was abused by James Staley; ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████,

which is not the case for most other alleged victims. *See infra* at 12-13, 21, 24.

### C.   Extensive Prior Litigation Against Epstein And His Associates

Epstein and his associates have been sued civilly by alleged victims in approximately 40

lawsuits (███████████████████████)—approximately 35 of which involved victims

who alleged sexual misconduct, *not* that they were trafficked by Epstein.  Ex. 11.  Many have since

settled (*see* Ex. 11),[8] raising individual issues of release and waiver.[9]  In addition, many putative

class members submitted claims to the EVCP, ██████████████████████

████████████████████████████████████████████████

███████  Of those members, ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████  But the EVCP did not adjudicate liability.  ██████████

EVCP finding a claimant eligible was not equivalent to finding she was a victim of a crime, let

alone of sex trafficking, which requires an even more exhaustive inquiry.  ██████████████

### D.   Doe's Remaining Claims Against JPMC Require Individualized Inquiries

---

[8] *See, e.g.*, Ex. 11; ██████████████████████; Ex. 3 (Virginia Giuffre settlement).

[9] Epstein and Ghislaine Maxwell, a potential class member, were prosecuted criminally for sex trafficking for conduct spanning only part of the class period.  Ex. 5 (Epstein, 2002-2005); Ex. 4 (Maxwell, 1994-2004).  Underscoring the individualized sex trafficking inquiry, Maxwell was convicted of, and Epstein was indicted for, trafficking only one of multiple victims.  Exs. 6-7.

In denying in part JPMC's motion to dismiss, the Court clarified the multiple individualized inquiries that render infeasible class certification on Doe's claims. Doe's TVPA participation claim could proceed based only on inferences drawn from the totality of JPMC's alleged acts and omissions, which Doe attributed to a variety of individuals at different points in time. MTD Op. 24-25, 28, 31. Doe plausibly alleged in her TVPA obstruction claim that she "suffered harm" because JPMC hindered government enforcement efforts. *Id.* at 34. And Doe pleaded negligence not because JPMC breached a duty it owed as Epstein's bank, but because Doe alleged JPMC helped "set in motion" forces that foreseeably harmed her. *See id.* at 46-48.

### E.     Doe's Motion For Class Certification

Doe rests the entire weight of her class certification motion, Dkt. 99 ("Mot."), on the report of her purported expert, Jane Khodarkovsky. But Khodarkovsky is not an expert in sex trafficking, nor has she applied any consistent methodology to reach the baseless opinions cited in Doe's brief. Khodarkovsky cannot opine on what is "typical" of sex-trafficking enterprises or offer legal conclusions about a purported common JPMC policy—the only evidence Doe cites of commonality, typicality, and predominance. Mot. 10-17. Doe's profligate citations to allegations in the FAC—the *only* cites offered to establish predominance on the negligence claims, *id.* at 17-18—cannot remedy this deficiency, particularly where allegations are refuted by evidence in discovery.[10] The same deficiencies undermine Doe's reliance on Khodarkovsky's "opinions" on numerosity, superiority, and ascertainability. *Id.* at 9, 20-21.

## ARGUMENT

## I.     THE PROPOSED CLASS DOES NOT SATISFY THE REQUIREMENTS OF RULE 23(A)

---

[10] For example, compare FAC ¶¶ ███████████████████████████████████ ██████████████████ with ███████████████████████████ ██████████████████████████████████████████████

Rule 23 does not set forth a "mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Rather, a party seeking class certification "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.," *id.*, by a preponderance of the evidence, *Mazzei v. Money Store*, 829 F.3d 260, 268 & n.8 (2d Cir. 2016). Establishing class certification thus "requires the submission of evidence." *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 544 (S.D.N.Y. 2021).

### A.  No Putative Class Is Sufficiently Ascertainable Or Numerous

Doe's proposed class definition—anyone who was "sexually abused or trafficked" by Epstein while he maintained bank accounts at JPMC—provides no articulable basis for determining who is in the class, let alone that it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).  Doe's purported expert asserts ██████████████████████ ████████████████████████████████████████████████████ Ex. 30 ¶ 69. But account records offer no objective criteria to determine who was "sexually abused or trafficked" by Epstein.  *See* Ex. 32 at 51-54.[11]  Because determining who is in the class would require mini-trials on the merits for each, Doe's class is not ascertainable.  *See Bellin v. Zucker*, 2022 WL 4592581, at *5 (S.D.N.Y. Sept. 30, 2022).

There are more defects.  First, Doe's class definition is broader than her actual legal claims, making it impossible to determine whether there are sufficiently numerous class members on

---

[11] Khodarkovsky admitted as much when she conceded that ███████████████████ ████████████████████████████████████████████████████ And Doe contradicts her own theory that EVCP eligibility can identify class members because ██████████ ███████████████████████████████████████████████████

whose behalf to litigate.[12]   Second, while Doe attempts to broaden the class period to Epstein's

entire banking history, her TVPA and negligence claims allege JPMC's constructive knowledge

or reckless disregard for Epstein's sex trafficking activities at best as of *2008*, when Epstein pled

guilty to soliciting a minor for prostitution, or at the very earliest, *2006*, when public reports

"revealed" Epstein's alleged abuse of girls in Florida.   MTD Op. 5.   Doe's heavy reliance on pre-

2006 cites is telling, Mot. 8-9:  A class of Epstein victims who were abused in or after 2007 consists

of only ███████████, not 100-150, and a class of Epstein victims abused in or after 2008 consists

of only ███████████, not 100-150.   ████████████.   Defining the class period based on Doe's

actual claims shows that Doe cannot meet Rule 23(a)'s numerosity requirement.

Third, and as discussed below, *see infra* at 20-21, the number of individuals with

*unreleased* claims against JPMC, amenable to class treatment, is yet smaller.   Though ████████



found dispositive in the Estate release of Jane Doe in the Deutsche Bank case, Ex. 23; MTD Op.

12-16.  If JPMC prevails in showing that the EVCP releases—intended as full and final resolutions

of Epstein-related claims—cover claims against JPMC, Doe's class would be a class of two.

**B.      No Issue Central To The Class Can Be Resolved Through Common Proof**

---

[12] "Sexual abuse" is broader than Doe's legal claims.  *See infra* at 8-11.  And the class definition must—and does not—articulate the sex-trafficking venture in which JPMC purportedly knowingly participated and from which it purportedly knowingly benefitted.  *See infra* at 10-11.

Doe cannot certify a class because putative class members' claims share no "common contention … capable of classwide resolution" that, once decided, "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

***TVPA Participation***.  Doe formulaically recites the elements as issues common to the class: whether JPMC knew about, benefitted from, and participated in Epstein's sex-trafficking venture.  Mot. 11.  None is susceptible to common, class-wide proof.

*First*, despite acknowledging that courts assessing commonality look for "a uniform policy or practice that affected all class members," Mot. 10, Doe offers no evidence that one exists. Instead, Doe lists *five* different "example[s]" of JPMC's supposed participation in an Epstein venture, including facilitating cash withdrawals used to pay class members, paying funds to co-conspirators, deliberately failing to file reports, structuring cash withdrawals, and "failing to file SARs." Mot. 11.  Doe's purported expert similarly describes not one common course of conduct, but how JPMC's purported "non-routine" banking services resulted from different individuals committing different acts at different times.  *See* Ex. 30 ¶¶ 78-95.  Where, as here, the record is clear that "███████████████████████████████" as a whole, Ex. 32 at 38, the class's allegations cannot be resolved "in one stroke," *Dukes*, 564 U.S. at 350.

Doe cannot point to even a single sex-trafficking case that has been resolved as a class action.  The closest analogues she finds are *labor*-trafficking cases.  But those cases lent themselves to class resolution specifically *because* they featured a common policy that affected an identifiable universe of class members in a uniform way.  Unlike here, all *Menocal* class members "share[d] the experience of having been detained" in the same facility and "subjected to uniform policies that purposefully eliminate nonconformity." *Menocal v. GEO Grp., Inc.*, 320 F.R.D. 258, 261 (D. Colo. 2017), *aff'd*, 882 F.3d 905 (10th Cir. 2018).  Likewise, in *Owino v. CoreCivic, Inc.*,

the "text of CoreCivic's corporate policies … require[d] detainees" to perform cleaning tasks, and so commonality was "necessarily established where there [was] a class-wide policy to which all class members [we]re subjected."  60 F.4th 437, 444 (9th Cir. 2022), *petition for cert. filed*, No. 22-1019 (U.S. Apr. 20, 2023).  And in *Paguirigan v. Prompt Nursing Employment Agency LLC*, the defendant employed a uniform fee that was "standard in all of the [defendant's] contracts." 2018 WL 4347799, at *2 (E.D.N.Y. Sept. 12, 2018).[13]

*Second*, and relatedly, a putative class member only has a claim against JPMC under § 1595(a) if JPMC had at that time knowingly benefitted from participation in the venture—but the putative class spans from 1998 to 2019, during which time JPMC's alleged knowledge and conduct varied.  As this Court has made clear, evidence sufficient to establish that JPMC's alleged knowledge, participation, and benefit arises, if at all, from the accumulation of various acts and omissions by different individuals over time.  MTD Op. 23-31.  Some putative class members were allegedly victimized by Epstein before JPMC's alleged participation plausibly began, or after JPMC exited Epstein as a customer.  ███████████  In order to adjudicate any class member's TVPA claim, the Court will have to conduct an individualized inquiry to determine what JPMC knew at the time that particular class member was trafficked and what purported non-routine banking actions JPMC had taken as of that moment.

---

[13]  Doe's other authorities, Mot. 8 n.2, do not involve sex trafficking and are all distinguishable. *K.A. v. City of New York* featured an "official policy of denying inmates requests to be seen by women medical professionals." 413 F. Supp. 3d 282, 299 (S.D.N.Y. 2019). *In re USC Student Health Center Litigation* involved a settlement class that did not need to establish suitability for trial through common proof.  2019 WL 3315281, at *1 (C.D. Cal. June 12, 2019).  The class certified in *Mullen v. GLV, Inc.* was based not on whether a class member was abused, but instead on membership in the club that allegedly failed to disclose a coach's abuse. 330 F.R.D. 155, 160-161 (N.D. Ill. 2019).  Finally, *Beltran v. InterExchange, Inc.* addressed a "uniform policy" to artificially suppress wages.  2018 WL 1948687, at *1 (D. Colo. Feb. 2, 2018).

*Third*, even putting the temporal difficulties aside, the allegedly common issues Doe identifies are only capable of resolution through "common *answers*" if all putative class members were victims of a *single sex-trafficking venture* that JPMC allegedly knew of, participated in, and benefitted from. *Dukes*, 564 U.S. at 350; MTD Op. 26-27. The TVPA defines "venture" the same way that RICO defines an "enterprise," 18 U.S.C. § 1591(e)(6); 18 U.S.C. § 1961(4), which the Supreme Court has explained encompasses a "'group of persons associated together for a common purpose of engaging in a course of conduct,'" *Boyle v. United States*, 556 U.S. 938, 944 (2009). But this Court has explained that JPMC did not "share[] the purpose of trafficking or abusing Epstein's victims"; instead, any association was purportedly about profit. MTD Op. 44. JPMC's purported "common purpose" with Epstein—and therefore, the venture—is delineated by the use of funds from JPMC in Epstein's sex trafficking and, with it, profit to JPMC. And there is no way to resolve which putative class members were victims of *that* venture (i.e., were trafficked using funds from JPMC accounts, not another bank's) without class-member-specific mini-trials.

*TVPA Obstruction*. Doe acknowledges that "each class member would have to prove that JPMC obstructed a prosecution or investigation." Mot. 11. But putative class members were abused by different individuals, in different places, at different times. ████████████████ ██████████████ There is no reason to think that each was a victim of efforts to obstruct the *same* prosecution or investigation. Moreover, fact-intensive, individualized inquiries would be necessary to determine that each class member factually and proximately "suffered harm because the government's enforcement efforts were hindered," MTD Op. 34.

*Negligence*. The inquiry is even more particularized for the putative class's negligence claims. Each class member will have to prove that JPMC negligently breached a duty it owed *each class member* as an individual by setting in motion the forces that foreseeably injured *her*.

11

Contrary to Doe's insistence, this cannot be done on a class-wide basis through evidence that the bank allegedly insufficiently responded to any particular news report about Epstein's conduct. *Cf.* Ex. 31 ¶ 56. Such evidence could not resolve any issue central to the negligence claims, as the putative class members were allegedly harmed at different times, by different people, in different locations, under different circumstances. ███████████████████████; Ex. 32 at 47; Ex. 29 ¶¶ 11-12; *cf. Dukes*, 564 U.S. at 350 (commonality not established where discrimination was by different supervisors).

### C.   Doe's Claims Present Issues That Are Not Typical Of The Putative Class

Doe is not typical because she faces "'unique defenses which threaten to become the focus of the litigation.'" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). For one, Doe's TVPA claims are barred by the ten-year statute of limitations because—unlike many other class members—she does not allege any act or omission by JPMC that injured her on or after November 24, 2012. *See infra* at 19-20; *Leroy v. Paytel III Mgmt. Assocs., Inc.*, 1992 WL 367090, at *3 (S.D.N.Y. Nov. 24, 1992) (factual dispute subjecting named plaintiff to statute of limitations defenses made claims atypical for purposes of class certification). Moreover, Doe's ███████████████████████████ triggers a unique *in pari delicto* defense that most class members will not face because ███████████████████████████████ *See infra* n.15; *supra* n.4. Absent class members will suffer from Doe's focus on combatting defenses applicable to her and, should she lose, class members with timely claims or who did not ████████████████████████ will be bound by the adverse judgment against her.

Similar issues blight Doe's affirmative case and tie class members with differing experiences to unique facts that may defeat Doe's—and if certified, the class's—claims. Doe alleges that Epstein exploited her unique ████████████████████████████
████████████████████████████████████████████████████████

██████████████████████████████████████████ If the finder of fact concludes that

Doe's unique vulnerabilities or ███████████████ prevents recovery, her unique situation will

effectively destroy the claims of adult class members with stronger evidence of force, fraud, or

coercion, and more critically, of the ████████ minor class members who need not prove force, fraud,

or coercion at all, *see* ████████████████ ; *infra* at 14.  Doe elides all of this, relying on nothing

but her purported expert to establish her claims as typical, *see supra* at 6.  But the weaknesses in

Doe's claims will bind the fates of putative class members with stronger claims, rendering her

claims atypical so as to prevent class certification.

### D.    Intra-Class Conflicts Render Doe An Inadequate Representative

The putative class is beset by intra-group antagonisms and conflicts that prevent Doe from

fairly and adequately representing the interests of all Epstein victims.  *See Sykes v. Mel S. Harris*

*& Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015).  Some putative class members participated in the

sexual abuse of other class members.[14]  And some putative class members, ████████████████,

recruited other class members into Epstein's scheme, and some were compensated and benefited

from it.[15]  Doe cannot adequately represent a class beset by intra-group conflicts that involves

some class members being implicated in causing the very injuries for which other members are

seeking to recover.  *See In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 39 (S.D.N.Y.

2020) (adequacy inquiry serves to "'uncover[ ] conflicts of interest between named parties and the

class they seek to represent'").  Trafficking or abuse victims who facilitate the trafficking or abuse

---

[14] *See* ██████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████

[15] *See* ██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████

of others may also be victims and deserve their day in court—but the complexity of the intra-class conflicts in this case render Doe an inadequate representative of a class of all Epstein victims.

## II.   THE PROPOSED CLASS DOES NOT SATISFY THE REQUIREMENTS OF RULE 23(B)(3)

### A.   Issues That May Be Proved By Common Evidence Do Not Predominate Over Those Requiring Individualized Proof

Numerous material issues "subject only to individualized proof," *see Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002), predominate in this litigation.  Issues surrounding each putative class member's abuse and JPMC's alleged role require evidence specific to each class member's claim, rendering the class not "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

#### 1.   The proof required to establish sex trafficking under the TVPA is highly individualized and fact-specific

The TVPA does not apply to all sexual crimes, no matter how abhorrent—only to the specific conduct that it defines as sex trafficking, which requires causing a minor, or the use of force, fraud, or coercion to cause an adult, to engage in a commercial sex act.  18 U.S.C. §§ 1591(a), (e)(3); *United States v. Tutstone*, 525 F. App'x 298, 302 (6th Cir. 2013).  Each putative class member "will have to show that they were trafficked within the meaning of the sex trafficking statute," which is a "fact-specific and plaintiff-specific inquiry." *Fleites v. MindGeek S.A.R.L.*, 2022 WL 1314035, at *7 (C.D. Cal. Feb. 10, 2022) (undertaking analogous commonality inquiry under Rule 20(a)).  This critical and fact-intensive issue alone "overwhelm[s] any common issues" presented by the putative class, defeating predominance. *In re Terrorist Attacks on Sept. 11, 2001*, 2021 WL 640257, at *5 (S.D.N.Y. Jan. 22, 2021).

***Use of Force & Fraud***.  Doe does not allege any single use of force against the entire putative class, nor could she. *See* ██████████████████████████

██████  Fraud, meanwhile, requires proof of material misstatements upon which the victim

reasonably relies such that the statements "cause" the victim to engage in a commercial sex act. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 519 (S.D.N.Y. 2018).  But when "every plaintiff" has to prove "direct reliance on the defendant's misrepresentation," individual issues "overwhelm" the common ones, making class certification inappropriate.  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014).  Differences in the sorts of promises made to putative class members demonstrate just that variation here.  *See* ████████████████████████████ ████████████████████████████████████

**Use of Coercion**.  That leaves coercion, which invokes a hybrid objective/subjective test asking whether "a reasonable person of the same background and circumstances would have also felt coerced," which—contrary to Doe's claim that the TVPA employs a purely objective "reasonable person standard," Mot. 16-17—requires the jury to consider the "particular vulnerabilities of a person in the victim's position."  *United States v. Rivera*, 799 F.3d 180, 186-187 (2d Cir. 2015).  But the "particular vulnerabilities" of any given putative class member are certain to vary.  *See* Ex. 32 at 22-25 (varied vulnerabilities of trafficking victims); Ex. 29 ¶¶ 14-22 (impact of personality differences on trafficking victims).  As Doe's purported expert recognized, "████████████████████████████████████ ████████████████" Ex. 30 ¶ 48.[16]  For example, Epstein allegedly identified individuals who were "struggl[ing] financially" and promised them "hundreds of dollars."  Ex. 8.  Other victims were offered opportunities and connections.  ██████████, for example, hoped to attend New York's Fashion Institute of Technology; Epstein was proposed as able to help her.  Ex. 9 at 69:23-70:2.

---

[16] *See also* ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████

████████ required surgeries for a serious medical condition and alleged that Epstein "seize[d on

this] vulnerability" and promised to arrange and pay for these surgeries.  Ex. 10 ¶¶ 79-80.  These

few examples show that the facts surrounding Epstein's manipulation of each victim is unique to

each victim and her own personal circumstances.  *See* ████████████████████████████

████████████████████████████████████████████.[17]

Finally, individual adjudications are also required as to whether each person was "cause[d]

[] to engage in a commercial sex act," 18 U.S.C. § 1591(a)(2), a sex act "on account of which

anything of value is given or received by any person," 18 U.S.C. § 1591(e)(3).  There is simply no

way for a court to determine "in one stroke" whether each putative class member was engaged in

a commercial sex act, *see supra* n.7, and thus no way to determine "in one stroke" whether each

class member is entitled to relief of any sort, *Dukes*, 564 U.S. at 350.

### 2. The putative class members' negligence claims raise individualized issues that overwhelm any purported common questions

Doe makes no attempt to meet her burden of establishing that common issues predominate

with respect to the putative class's negligence claims.  *See Teamsters Loc. 445 Freight Div.*

*Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  She instead relies (at 17-18)

exclusively on conclusory allegations in the FAC that cannot serve as competent evidence at this

stage of the litigation.  The evidentiary record that Doe ignores makes clear that individualized

issues would predominate in any negligence claims brought by the putative class members, as

"███████████████████████████████████████████████████████████████

██████████████████████████████████████"  Ex. 32 at 45; *see also* ████████████

---

[17] These differences are far more fact-intensive and consequential than the "slightly different reasons" individuals were denied public benefits in Doe's principal authority, *M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 441-442 (S.D.N.Y. 2006) (slightly different errors all originated from same "systemic deficiencies" in defendants' administration of statutes governing immigrant benefit eligibility, thereby warranting universal injunctive relief).

████████████████████   The putative class therefore cannot draw on class-wide evidence to establish the duty, breach, or causation elements of negligence.

*Duty and Breach*. Individualized issues will preclude a class-wide finding of duty or breach.  Even if Doe could put forward proof that JPMC facilitated an Epstein sex-trafficking venture—and she cannot—such evidence could not establish that JPMC owed or breached a "specific" duty "running directly" to each putative class member.  *See Lauer v. City of N.Y.*, 733 N.E.2d 184, 187-188 (N.Y. 2000).  Instead, each putative class member will have to adduce evidence that JPMC "set in motion" the forces that injured *her*.  MTD Op. 45-46.  This cannot be done on a class-wide basis.  Doe's purported expert hypothesizes ████████████████████ ████████████████████; *see also* Ex. 32 at 46, 49-50, and thus concedes that no single category of evidence links each class member to JPMC, let alone establishes that JPMC breached a duty owed to each, *cf. Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 134, 142-144 (S.D.N.Y. 2015) (common evidence could establish auditors' duty to each investor class member where auditors had internal procedures for verifying identities of investors who would receive deficient audit reports).  Each putative class member must thus make individualized showings of duty and breach, swamping any purported common issues.

*Causation*. Nor can the putative class put forward common evidence of causation.  Bare allegations that JPMC banking services facilitated an Epstein sex-trafficking venture are not evidence, and in any case do not establish a causal link between JPMC and any putative class member.  Here is what the evidence does show:  Putative class members reported vastly different experiences of abuse.  ████████████████████; Ex. 32 at 41-50 & tbls. 1-2.  Doe's own purported expert asserts that ████████████████████ ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Doe's purported expert,

moreover, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ These individualized issues preclude any class-wide proof

of factual or proximate causation.

First, individual issues of factual causation predominate because "no single incident"

injured each putative class member at the same time, in the same place, or in the same way.  *See*

████████████████ The causation inquiry is "highly individualistic" because it depends not on whether

JPMC's alleged negligence had "the capacity to cause harm," but on "whether it *did* cause harm

and to whom."  *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 165 (2d Cir.

1987).  Any evidence class members offer as to harm and how JPMC was allegedly involved will

be "'diverse and personal,'" not grounded in "a shared experience that is confined in time and

place and produces similar effects," *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226

F.R.D. 456, 477 (S.D.N.Y. 2005); *see* Ex. 32 at 49-50; Ex. 29 ¶ 45.  The putative class cannot

adduce "common facts … [to] allow causation to be reasonably derived from those facts and

applied to the class generally."  *In re Terrorist Attacks*, 2021 WL 640257, at *5.

Second, individualized issues will dominate the proximate cause inquiry because Doe's

theory of liability—Epstein's use of JPMC services to facilitate sex trafficking, *see* Ex. 30 ¶ 93—

"does not permit proximate cause to be shown by generalized proof," *UFCW Loc. 1776 v. Eli Lilly

& Co.*, 620 F.3d 121, 134 (2d Cir. 2010).  Instead, each putative class member must establish that

*her* abuse by Epstein, as "the event resulting in injury," was a "natural and foreseeable

consequence" of JPMC's alleged negligence—a "uniquely fact-specific determination."  *Hain v.*

*Jamison*, 68 N.E.3d 1233, 1237-1238 (N.Y. 2016).   This means evidence of JPMC's alleged provision of "non-routine" banking services to Epstein " ███████████████████████████ ███████████████████████████████████████████████ " Ex. 32 at 39. Instead, the evidence required to connect each class member to the use of JPMC services by Epstein will vary from victim to victim.  *See* Ex. 30 ¶¶ 65, 89, 91, 104; █████████████████ ██████████████████  These individualized issues defeat predominance.  *See Moore*, 306 F.3d at 1255; *Presbyterian Church of Sudan*, 226 F.R.D. at 482 (no predominance where "only way to prove proximate causation is through individualized proof" linking injuries to tortious scheme).

### 3.   JPMC will have a range of affirmative defenses that apply to each putative class member in a different way

Each affirmative defense requires individualized proof that overwhelms any purportedly common questions.  *See Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 121-122 (2d Cir. 2022) (court must consider affirmative defenses to assess predominance and classify each "as either subject to common or individual proof").

***Statute of Limitations***:  Because of the TVPA's 10-year statute of limitations, 18 U.S.C. § 1595(c)(1), each adult putative class member would have to establish that she was trafficked after November 24, 2012.  The putative class Doe seeks to certify, however, contains *all* women sexually abused or trafficked by Epstein since 1998—well beyond the limitations period.  FAC ¶ 276; ███████████████████████████████████.  The Court would therefore have to conduct mini-trials to determine whether a given class member falls within the limitations period.  *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) ("[A] necessity for individualized statute-of-limitations determinations invariably weighs against class certification.").  And the Court would have to re-evaluate whether Doe could show that the class—without those with pre-November 2012 claims—still satisfies numerosity.

Assessing the timeliness of the negligence claims will be an even thornier task, as the Court will "need to determine, for each class member, his or her residence, where and when the claims accrued, and the applicable statute of limitations in each of the relevant jurisdictions." *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 399 (S.D.N.Y. 2018).  Here, Doe relies on the New York Adult Survivors Act to revive her own claims, but many class members cannot because the Act does not revive the claims of those abused as minors.  *See* N.Y. C.P.L.R. § 214-j; ██████████████████  Only adults who were abused in New York or who were New York residents when abused out of state could have a timely claim under the Act.  *See S.H. v. Diocese of Brooklyn*, 167 N.Y.S.3d 171, 178 (App. Div. 2022) (analogous Child Victims Act did not apply "to a nonresident whose injury occurred outside of New York").[18]

*Release*:  Many putative class members received compensation from the EVCP for the injuries at issue here in exchange for agreeing to a release or waiver of claims.  Though ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████, thus releasing claims alleging that JPMC provided the services Epstein used to facilitate sex trafficking and abuse.[19]  Further, ████████████████████████ ████████████████████.  All told, the EVCP paid out about ██████████████████████ ████████████████████████████████████████████████████████  There is thus

<hr/>

[18] For nonresidents, the Court applies "New York's borrowing statute," *Holloway v. Holy See*, 537 F. Supp. 3d 502, 507 n.4 (S.D.N.Y. 2021), which borrows the statute of limitations of the place the abuse occurred for each class member, *see Diocese of Brooklyn*, 167 N.Y.S.3d at 180; ██████████████████████.  Individualized timeliness issues therefore abound.

[19] The Court rejected the argument that Jane Doe in the Deutsche Bank case had released her claims against Deutsche Bank through settlement with Epstein's Estate, MTD Op. 12-16, based on specific carveout language that ██████████████████████████.  The EVCP releases unambiguously apply to JPMC or, at minimum, depend on class-member-specific extrinsic evidence to resolve their scope.

great variety amongst the putative class as to which claims were waived through the EVCP and which remain viable—yet another individualized determination.

*Shared Responsibility*:   The affirmative defenses of *in pari delicto* and comparative negligence may further bar or reduce JPMC's liability to particular putative class members.  *See Rosenbach v. Diversified Grp., Inc.*, 926 N.Y.S.2d 49, 51 (App. Div. 2011); N.Y. C.P.L.R. § 1411; *see supra* n.4.  The Court would have to determine which class members served as recruiters and, if so, the proportion of culpability attributable to their conduct—a fact-intensive inquiry.

### 4.   Damages for each putative class member must also be proved entirely based on individualized evidence

Lastly, calculating damages suffered by each putative class member will require highly fact-intensive and individualized inquiries—factors the Court "'must consider'" in evaluating predominance, *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138-139 (2d Cir. 2015).  Where, as here, "'there are significant individualized questions going to liability,'" the need to engage in individualized damages assessments as well is "'enough to preclude 23(b)(3) certification.'" *Id.* (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1260 (11th Cir. 2004)).

No common method of measuring damages can obviate the need to engage in multidimensional damages assessments tailored to each putative class member's experience and the particular conduct that allegedly renders JPMC liable for her injuries.  Both sides' experts explain that the nature, severity, and manifestations of psychological trauma differ markedly across individual victims, *see* Ex. 29 ¶¶ 15, 24, 41; Ex. 30 ¶ 53, which shows that measuring the damages suffered by each class member as a result of Epstein's actions will be a hopelessly individualized exercise.  Yet the inquiry is even more complex, as each class member will have to establish that the harm she suffered resulted from *JPMC*'s alleged conduct—which hinges on questions of knowledge, duty, breach, and causation specific to each.

The predominance requirement cannot be satisfied here because any classwide application of a common method of measuring damages would be "arbitrary." *See Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013). This litigation is thus nothing like cases in which information about each class member's damages is "stored by defendants themselves" and predominance can be shown by a "liability model [that] is uniquely tied to the damages" class members suffered. *Cf. Sykes*, 780 F.3d at 88. Because "individualized issues of proof overwhelm damages calculations," any "'trial by formula' approach" would trammel JPMC's due process rights. *See Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 588 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015).

**5.     Certification of issue classes would not promote judicial economy**

Sensing that the putative class she seeks to certify is far too broad, Doe alternatively proposes certification of issue classes for a laundry list of allegedly "common issues" as to every element of her legal claims. Mot. 23. None is susceptible to common resolution. *See supra* at 8-12. Regardless, allowing certification of any possible common issue would erase Rule 23(b)(3)'s requirement that those common issues predominate over individualized ones. *See Dukes*, 564 U.S. at 350. Here, even if an issue were susceptible of common resolution, "substantial liability questions would remain unanswered without a member by member and claim by claim analysis" of whether the putative class member was trafficked, whether JPMC proximately caused her injuries, and her damages. *Franco v. Conn. Gen. Life Ins. Co.*, 299 F.R.D. 417, 433 (D.N.J. 2014), *aff'd*, 647 F. App'x 76 (3d Cir. 2016).

**B.     A Class Action Is Not A Superior Means Of Adjudicating The Unique, Personal, And High-Value Claims Of This Class**

In assessing superiority, courts look to four factors: (1) the interest of class members in separate actions; (2) the extent of litigation concerning the controversy already commenced; (3) the desirability of concentrating litigation in the particular forum; and (4) the difficulties in managing

the class action.  *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006).

Here, it is plain that the multiplicity of individual issues should be litigated by demonstrably

motivated individual plaintiffs, rather than before this Court in years-long mini-trials.

*First*, courts deny certification where class members "'have a strong interest in individually

controlling the prosecution of their own actions.'"  *E.g.*, *Royal Park Invs. SA/NV v. Wells Fargo

Bank, N.A.*, 2018 WL 739580, at *17 (S.D.N.Y. Jan. 10, 2018) (no superiority where "'several

[plaintiffs] have already commenced their own lawsuits'").  Each class member here has a strong

interest in pursuing individual redress given the personal nature of her claims, particularly those

who did not recruit other women for Epstein to abuse.  *See, e.g.*, Ex. 32 at 50 (grouping recruiters

with individuals whose victimization they facilitated is not trauma-informed method); Ex. 29 ¶ 44

(similar).  Moreover, class members have significant individual monetary claims and have pursued

individual claims against Epstein and his associates without issue, and have been compensated for

complete finality, even for known and unknown claims against third parties.  *See Zinser v. Accufix

Rsch. Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001) (class action not appropriate where "'parties

have decided that individual actions are an acceptable way to proceed'").  Doe offers no principled

reason why an action against JPMC based on the same facts can only proceed as a class,[20] and, as

laid out herein, there are numerous reasons why it should not.

A class action would also be unmanageable.  The key manageability issue is whether proof

at trial would require "'mini-trials' to resolve individual issues."  *See, e.g.*, *Bd. of Trs. of S. Cal.

IBEW-NECA Defined Contrib. Plan v. Bank of N.Y. Mellon Corp.*, 287 F.R.D. 216, 230 (S.D.N.Y.

2012).  And here mini-trials would be unavoidable given the myriad individualized issues of

---

[20] Indeed, Doe's superiority authority is threadbare: She cites only a flawed expert report, her counsel's self-serving declaration, and unadorned allegations from the FAC.

liability, defenses, and damages. *See supra* at 13-21. As to liability, the court must first examine whether each victim was, in fact, trafficked. *E.g.*, Ex. 25 at 125:2-6; *see also* Ex. 32 at 16-18; *see supra* at 14-16. The trier of fact must then assess the harm to each class member based on the "particular vulnerabilities of a person in the victim's position," *Rivera*, 799 F.3d at 186-187, which is impossible on a class-wide basis, *see* Ex. 29 ¶¶ 13-23; Ex. 32 at 19-25; Ex. 30 ¶ 116. Even ████████████████████████████████████████, Ex. 30 ¶ 95, is not susceptible to class treatment because Epstein used various accounts, entities, and non-monetary compensation to disguise his activities, *see supra* at 16-18. And those wishing to pursue redress anonymously, *see* Ex. 30 ¶ 115, can—and have done so—outside of a class action, *see* Ex. 11; ████████

As to defenses, some class members were both victims of Epstein's abuse and facilitated his victimization of others, *see supra* n.4, and may be liable for the injuries of other class members. *See* Ex. 32 at 12, 14, 30; *see also Ramsay v. Frontier, Inc.*, 2021 WL 651021, at *7 (D. Colo. Feb. 19, 2021) (class treatment inappropriate where "proposed class of plaintiffs includes not only sexual assault victims … but also sexual assault perpetrators"). Settlements by many prior class members create yet more individualized issues about enforcement of releases. *See supra* at 20-21. Even proof of damages resists class-wide treatment: victims' reactions to trauma and the professional treatment of it are highly individualized. Ex. 29 ¶¶ 11-12, 15-16, 18, 26-28.

Doe leans on caselaw (at 20) involving claims too small for individual adjudication, barriers to individual access to legal process, and a risk of conflicting results on factually uniform claims; in contrast, putative class members here hold substantial individual claims for which they have retained capable counsel. *See* Ex. 11. Because each class member's allegations involve different facts, chains of liability, and defenses, a "scattering" (at 20) of lawsuits and outcomes is

indicative of careful and just adjudication.  Doe's reliance on the legal conclusions of a non-expert in sex trafficking fatally undermines her arguments.  *See supra* at 6.

### III.     THE PROPOSED CLASS CANNOT BE CERTIFIED UNDER RULE 23(B)(1)

Doe's cursory argument for certification under Rule 23(b)(1)(A)—inappropriately raised for the first time in her motion, *see Nnebe v. Daus*, 2022 WL 615039, at *12 n.11 (S.D.N.Y. Mar. 1, 2022)—should be rejected.  A (b)(1)(A) class cannot be certified here because Doe has not shown that separate actions by individual class members "would risk establishing 'incompatible standards of conduct for the party opposing the class.'"  *Amchem*, 521 U.S. at 614.

First, Doe "seeks only individualized monetary damages" for the putative class, and certification under (b)(1)(A) must be denied on that basis alone.  *DiDonato v. GC Servs. Ltd. P'ship*, 2021 WL 4219504, at *6 (S.D.N.Y. Sept. 16, 2021) (citing *Dukes*, 564 U.S. at 362).  Because a (b)(1)(A) class member could not opt out and choose to litigate her damages claim individually, certification would "raise[] due process concerns."  *Id.*  Second, because the putative class members' claims against JPMC are replete with individualized issues, the application of consistent standards could lead to different results in suits by different class members.  JPMC is not an ERISA fiduciary, utility operator, or neighboring landowner that is "'obliged by law to treat the members of the class alike.'"  *Amchem*, 521 U.S. at 614.  *Cf. In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 241 F.R.D. 185, 200 (S.D.N.Y. 2007) (certifying (b)(1)(A) class of neighboring homeowners under Fourth Circuit law).  A judgment that JPMC is liable to one class member could be wholly compatible with a judgment that JPMC is not liable to another.  *See In re Benedictin Prods. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984).

### CONCLUSION

For the foregoing reasons, Doe's Motion for Class Certification should be denied.

Dated: May 12, 2023                    Respectfully submitted,

                                       **WILMER CUTLER PICKERING
                                          HALE AND DORR LLP**

                                       */s/ Felicia Ellsworth*
                                       Felicia H. Ellsworth
                                       John J. Butts
                                       60 State Street
                                       Boston, MA 02109
                                       (t) (617) 526-6000
                                       (f) (617) 526-5000
                                       felicia.ellsworth@wilmerhale.com
                                       john.butts@wilmerhale.com

                                       Boyd M. Johnson III
                                       Robert L. Boone
                                       Hillary Chutter-Ames
                                       7 World Trade Center
                                       250 Greenwich Street
                                       New York, NY 10007
                                       (t) (212) 230-8800
                                       (f) (212) 230-8888
                                       boyd.johnson@wilmerhale.com
                                       robert.boone@wilmerhale.com
                                       hillary.chutter-ames@wilmerhale.com

                                       *Attorneys for JPMorgan Chase Bank, N.A.*