**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case Number: 1:22-cv-10019-JSR |
| JPMORGAN CHASE BANK, N.A. | |
| Defendant/Third-Party Plaintiff. | |
| | |
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, | |
| Plaintiff, | |
| v. | Case Number: 1:22-cv-10904-JSR |
| JPMORGAN CHASE BANK, N.A. | |
| Defendant/Third-Party Plaintiff. | |
| | |
| JPMORGAN CHASE BANK, N.A. | |
| Third-Party Plaintiff, | |
| v. | |
| JAMES EDWARD STALEY | |
| Third-Party Defendant. | |

**THIRD-PARTY DEFENDANT JAMES STALEY'S
<u>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

I.  The Indemnification and Contribution Claims Are Legally Deficient ..................................... 1

    A.    JPMorgan's Shotgun Pleading Warrants Dismissal of Counts I and II ...................... 1

    B.    The TVPA Does Not Permit Indemnification or Contribution Claims ....................... 1

    C.    The Indemnification Claim Has Additional Defects ..................................................... 4

        i.    Mr. Staley's Contractual Indemnity Bars this Claim ............................................... 4

        ii.    The Complaints Against the Bank Do Not Seek To Hold It Vicariously
            Liable for Mr. Staley's Actions ......................................................................... 5

        iii.  The Alleged Misconduct Was Outside the Scope of Mr. Staley's Employment.... 5

    D.    JPMorgan's Contribution Claim Fails ......................................................................... 6

II.  The Court Should Dismiss the Remaining Employment Claims Under Rule 14 ..................... 6

III. The Employment Claims (Count III and IV) Are Stale and Deficiently Pleaded ................... 7

    A.    The Opposition Cannot Resurrect the Time-Barred Claims ......................................... 7

    B.    The Employment Claims Do Not Satisfy Rule 9(b) ..................................................... 9

    C.    The Breach of Fiduciary Duty Claim is Deficient ....................................................... 9

    D.    The Faithless Servant Claim is Defective ................................................................... 10

CONCLUSION ........................................................................................................................... 10

## **TABLE OF AUTHORITIES**

### **CASES**

*A.B. v. Marriott International, Inc.*, 2020 WL 3642485 (E.D. Pa. July 6, 2020) .......................... 3

*Corley v. Country Squire Apartments, Inc.*, 80 N.Y.S.2d 900 (2d Dep't 2006) ........................... 6

*Ditullio v. Boehm*, 2010 WL 11534265 (D. Alaska Feb. 23, 2010) ................................................ 3

*Donahue v. Pendleton Woolen Mills*, *Inc.*, 633 F. Supp. 1423 (S.D.N.Y. 1986) .......................... 9

*Droney v. Vivint Solar*, 2020 WL 3425301 (D.N.J. June 23, 2020) ................................................ 5

*Ebel v. G/O Media, Inc.*, 2021 WL 2037867 (S.D.N.Y. May 21, 2021) ...................................... 10

*Epiphany Cmty. Nursery Sch. v. Levey*, 171 A.D.3d 1 (1st Dep't 2019)........................................ 8

*Fownes Bros. v. JPMorgan Chase & Co.*, 92 A.D.3d 582 (2012) ............................................... 10

*Greenspun v. Lindley*, 36 N.Y.2d 473 (N.Y. 1975) ........................................................................ 7

*Herman v. RSR Sec. Servs.*, 172 F.3d 132 (2d Cir. 1999)........................................................... 2, 4

*In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig.*,
   2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021) .............................................................................. 7

*In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54 (2d Cir. 2013) ........................................ 2, 3

*Jackson v. Odenat*, 9 F. Supp. 3d 342 (S.D.N.Y. 2014) ................................................................ 2

*KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335 (S.D.N.Y. 2009)........................................................ 2

*McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794 (N.Y. 2011).................................................... 5

*Morgan Stanley v. Skowron*, 989 F. Supp. 2d 356 (S.D.N.Y. 2013) ........................................... 10

*N.Y. State Electric & Gas Corp. v. FirstEnergy Corp.*,
   2007 WL 1434901 (N.D.N.Y. May 11, 2007) .............................................................................. 3

*Picard v. HSBC Bank PLC*, 454 B.R. 25 (S.D.N.Y. 2011) ............................................................ 2

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).......................................................................... 7

*Ross v. Bolton*, 904 F.2d 819 (2d Cir. 1990).................................................................................. 9

*Ross v. FSG PrivatAir, Inc.*, 2004 WL 1837366 (S.D.N.Y. Aug. 17, 2004)................................ 10

*Serv. Sign Erectors Co. v. Allied Outdoor Advert., Inc.*, 573 N.Y.S.2d 513 (1st Dep't 1991)....... 4

*Stewart Title Ins. Co. v. N.Y. Title Rsch. Corp.*, 117 N.Y.S.3d 175 (1st Dep't 2019) .................... 5

*Texas Indus. v. Radcliff Mats.*, 451 U.S. 630 (1981) ...................... 3

*Too, Inc. v. Kohl's Dep't Stores*, 213 F.R.D. 138 (S.D.N.Y. 2003) ................................ 2

*Tyco Int'l, Ltd. v. Kozlowski*, 756 F. Supp. 2d 553 (S.D.N.Y. 2010) ............................ 7

*United States v. Tutstone*, 525 F. App'x 298 (6th Cir. 2013) ........................................ 4

*United States v. Walls*, 784 F.3d 543 (9th Cir. 2015) ...................... 4

*Williams v. Affinion Grp.*, 889 F.3d 116 (2d Cir. 2018) ...................... 9

**STATUTES**

N.Y. C.P.L.R. § 1401 ............................................................ 2

**RULES**

Federal Rule of Civil Procedure  8 ............................................ 1

Federal Rule of Civil Procedure  9(b) ....................................... 6, 9

Federal Rule of Civil Procedure 10(b) ....................................... 1

Federal Rule of Civil Procedure 14 .......................................... 6, 7

JPMorgan's Opposition confirms the many flaws in its Third-Party Complaints ("Complaints" or "TPCs"), which require dismissal of this case.  The brief ignores governing case law and fails to respond to many of Mr. Staley's arguments.  Indeed, most of the brief is a study in distraction.  To avoid binding case law that forecloses its claims for contribution and indemnification under the TVPA, the bank cites inapposite authority on conflict preemption; to paper over its failure to properly plead indemnification for the remaining claims, it offers a straw-man argument on *Mr. Staley's* indemnification rights; to dodge the untimeliness of its Employment Claims, it invents an illusory choice-of-law conundrum—and that's just to name a few.  At bottom, the Opposition follows the same playbook that animated the bank's third-party practice from the start: when in trouble, pull in something (or someone) new to change the conversation, no matter the legal defects.  Each claim is defective and should be dismissed with prejudice.

### I.     The Indemnification and Contribution Claims Are Legally Deficient.

### A.  JPMorgan's Shotgun Pleading Warrants Dismissal of Counts I and II.

The TPCs improperly lump together plaintiffs' claims under *both* federal and state law into one omnibus claim for contribution (Count I) and another for indemnification (Count II). JPMorgan never disputes that these claims flunk Rules 8 and 10(b), instead asserting that the "hyper technical" (i.e., correct) argument does not establish prejudice to Mr. Staley.  *Id.*  Not so. Although, for the reasons explained in his Motion and below, the indemnification and contribution claims should be dismissed, the lumping together of separate federal and state claims into the same counts shields each claim from separate consideration (and the separate law that applies to each) at the motion to dismiss stage as is required (and appropriate).  The federal rules do not allow claims with such clear pleading errors to proceed.

### B.  The TVPA Does Not Permit Indemnification or Contribution Claims.

JPMorgan does not seriously dispute that the TVPA provides no federal causes of action

for indemnification or contribution.  Instead, the bank argues that it can pursue such claims under C.P.L.R. § 1401.  But the Second Circuit has repeatedly held that "federal courts recognize a right to contribution under state law only in cases in which state law supplies the appropriate rule of decision." *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 144 (2d Cir. 1999) (cleaned up); *see In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 65 (2d Cir. 2013) ("[I]t is settled in this Circuit that there is no claim for contribution unless the operative federal statute provides one." (affirming dismissal of claim under § 1401)).  Courts in this circuit have thus overwhelmingly held that "[w]hether contribution is available in connection with a federal statutory scheme is a question governed solely by federal law," and a party "cannot use New York State common law [or C.P.L.R. § 1401] as an end-around to make a claim . . . that it could not make under the federal statutory scheme." *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 341 (S.D.N.Y. 2009) (collecting cases); *see Picard v. HSBC Bank PLC*, 454 B.R. 25, 37-38 (S.D.N.Y. 2011) (Rakoff, J.) (dismissing § 1401 contribution claim for federal statutory liability).

JPMorgan (at 7) cites several cases in an attempt to argue that state contribution statutes do apply "when the source of the underlying liability is a federal statute."  But these cases are unavailing.  In *Jackson v. Odenat,* the court actually *dismissed* a contribution claim under the federal Copyright Act, allowing only a contribution claim to proceed for the state-law claim vindicating the plaintiff's "right of publicity."  9 F. Supp. 3d 342, 366 (S.D.N.Y. 2014).  In *Too, Inc. v. Kohl's Dep't Stores*, 213 F.R.D. 138 (S.D.N.Y. 2003), as other courts have noted, the parties there did not even contest "that state law could *not* be used to support a claim for contribution in connection with a [federal] copyright action," *KBL*, 646 F. Supp. at 341 (emphasis added).  Moreover, *Too* has received unfavorable treatment in this district, as it is "contrary to the numerous well-reasoned decisions" coming out the other way.  *Id.*  The bank also cites *N.Y. State Electric &*

2

*Gas Corp. v. FirstEnergy Corp.*, 2007 WL 1434901, at *6-7 (N.D.N.Y. May 11, 2007).  But there the court rejected the New York law contribution claim seeking to reapportion federal liability, ruling that CERCLA preempted state law.  *Id.* at *11.  While the court posited that state contribution law could, theoretically, apply to federal liability in the absence of preemption, *id.* at *7, that dicta cannot survive the Second Circuit's later holding that the "source of a right of contribution under state law must be an *obligation imposed by state law*."  *Madoff*, 721 F.3d at 65.

The same is true of *A.B. v. Marriott International, Inc.*, 2020 WL 3642485 (E.D. Pa. July 6, 2020), an out-of-circuit case that permitted impleader for state-law contribution claims under the TVPA.  To start, the case addressed only whether the proposed third-party complaint satisfied Rule 14(a)'s lenient standard that the nonparty "may be liable."  *Id.* at *5.  Even more significantly, the parties *did not brief* whether state-law contribution claims can reapportion federal liability, and the court's ruling contravenes the only case to have addressed the issue under the TVPA.  *Ditullio v. Boehm*, 2010 WL 11534265, at *2 (D. Alaska Feb. 23, 2010).  In any event, JPMorgan's reading of this case is foreclosed by the binding Second Circuit authority discussed above.

JPMorgan (at 8-11) tries to turn decades of Supreme Court precedent on its head by recasting the question here as one of traditional conflict preemption.  That neglects the binding Second Circuit case law and the Supreme Court's directive that contribution and indemnification for federally created liability arise only "through the affirmative creation of a right of action by Congress, either expressly or by clear implication" or "through the power of federal courts to fashion a federal common law of contribution."  *Texas Indus. v. Radcliff Mats.*, 451 U.S. 630, 638 (1981).  The Court has carefully protected Congress's prerogative, and implied indemnity and contribution are highly disfavored.  But under JPMorgan's view, Congress's decision is beside the point—any general state-law contribution statute engrafts a right onto the federal scheme unless

Congress specifically *preempts* it.  That cannot be correct, and it would make the Supreme Court's implied-contribution case law nonsensical.  The Supreme Court and Second Circuit have been clear: when Congress chooses not to create contribution or indemnification, none exists.

Moreover, as Mr. Staley explained, Mot. 9-11, JPMorgan's proposed state-law indemnity and contribution rights would directly undercut the TVPA's goal to protect victims.  The TVPA provides a comprehensive civil and criminal scheme with various remedies.[1]  Such "express provision[s] for private enforcement in certain carefully defined circumstances . . . strongly counsels against judicially engrafting additional remedies."  *Herman*, 172 F.3d at 144.  So even under the bank's analysis, indemnification and contribution are inappropriate here.[2]

### C.  The Indemnification Claim Has Additional Defects.

#### i.    Mr. Staley's Contractual Indemnity Bars this Claim.

JPMorgan never disputes that it agreed to indemnify Mr. Staley without any reciprocal indemnity for itself.  The bank instead argues that Mr. Staley acted in bad faith and therefore could not receive indemnification under Delaware law.  Opp'n 11-13.  That misses the point.  Mr. Staley is not seeking (at least right now) indemnification.  Rather, the presence of this one-way indemnification provision shows that "indemnification [was] clearly contemplated and expressly addressed by" the parties.  *Serv. Sign Erectors Co. v. Allied Outdoor Advert., Inc.*, 573 N.Y.S.2d 513, 514 (1st Dep't 1991).  Since the parties did <u>not</u> contract for Mr. Staley to indemnify the bank, any common-law indemnification benefitting the bank is "extinguished" as a matter of law.  *Id.*

---

[1] *United States v. Walls*, 784 F.3d 543, 548 (9th Cir. 2015) ("The TVPA is part of a comprehensive regulatory scheme . . . ."); *United States v. Tutstone*, 525 F. App'x 298, 302 (6th Cir. 2013) (same).

[2] The bank concedes Congress's silence but asserts that implying rights is required to prevent saddling "passive intermediaries" with liability in lieu of frontline traffickers.  Opp'n 9.  But traffickers are not *immunized* by the lack of indemnity and contribution; they can *still be sued directly by victims*.  That Congress prioritized empowering victims to choose whom to sue, rather than letting alleged perpetrators control litigation is not surprising given the law's goals.  Mot. 10.

### ii.   The Complaints Against the Bank Do Not Seek To Hold It Vicariously Liable for Mr. Staley's Actions.

JPMorgan does not dispute that under New York law a "party cannot obtain common-law indemnification unless it has been held to be *vicariously* liable without proof of *any* negligence . . . on its own part." *McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794, 801 (N.Y. 2011) (emphases added). Here, the bank concedes that the plaintiffs seek to hold it directly liable at least in part for *its own* misconduct, not for Mr. Staley's. Opp'n 13. This forecloses any indemnification claim. Indeed, the plaintiffs' claims could not be pleaded on a theory of *vicarious* liability. As outlined in the Motion (at 13-14), and conceded in the Opposition (at 14), Mr. Staley had no decisionmaking authority over Epstein's accounts, no knowledge of specific transactions, and no hand in ensuring BSA compliance relating to the same.[3] That vicarious liability is missing is particularly apparent for the plaintiffs' claims for obstruction and negligent banking, which stem from the bank's failure to follow federal banking regulations. Without vicarious liability, indemnification cannot succeed. *See Stewart Title Ins. Co. v. N.Y. Title Rsch. Corp.*, 117 N.Y.S.3d 175, 177 (1st Dep't 2019) (dismissing indemnification at pleading stage). The bank fails to cite a single case to the contrary.

### iii.   The Alleged Misconduct Was Outside the Scope of Mr. Staley's Employment.

As Mr. Staley's opening brief showed, indemnification is available only (1) for acts falling within the scope of employment and (2) where plaintiff's "injury was due solely to the [agent's] negligent performance or nonperformance of an act solely within [his] province." *Corley v. Country Squire Apartments, Inc.*, 820 N.Y.S.2d 900 (2d Dep't 2006). On the first element, JPMorgan never disputes that the claim applies only to injuries caused by an agent acting within his agency. Opp'n 14-15. Rather than plead that Mr. Staley's actions were within the scope of

---

[3] At most, the plaintiffs merely allege that Mr. Staley's *knowledge* of Epstein's misconduct can be imputed to the bank. *See, e.g.*, Doe FAC ¶¶ 228-29. But the imputation of knowledge is distinct from vicarious liability. *Droney v. Vivint Solar*, 2020 WL 3425301, at *6 (D.N.J. June 23, 2020).

employment—or just say nothing—the bank chose to plead that he acted *outside* that scope.  TPC ¶ 42.  So the indemnification claim fails.  The bank argues that dismissal is premature because there is a factual dispute over whether Mr. Staley acted within the scope of employment, Opp'n 14, but it cannot cite allegations in the plaintiffs' complaints (allegations it disclaimed repeatedly) to try to fix what is plainly missing from its own complaints.  And the claim still fails the second element:  the bank does not and cannot allege that the injuries were "solely" caused by Mr. Staley or arose from actions that fell solely within his responsibilities at the bank.

### D.  JPMorgan's Contribution Claim Fails.

JPMorgan concedes that it did not allege that Mr. Staley owed a duty to Doe or the USVI.  Opp'n 15.  As to a duty to the bank, JPMorgan has failed to adequately plead that such a duty was breached, Mot. 21-23, especially under Rule 9(b)'s pleading standard.

The contribution claim also fails the same-injury requirement.  First, the Complaints simply do not allege the specific harm that Mr. Staley inflicted on the plaintiffs, much less say that it is the "same" as the one the bank allegedly caused.  The claim is defective without that.  Second, faced with this clear pleading failure, JPMorgan asserts that both Mr. Staley and the bank in some way allegedly helped caused "Epstein's continued retention as a JPMC client."  Opp'n 16.  But that is not the injury that the plaintiffs complain of; they allege that JPMorgan provided the "financial lifeblood" for Epstein's enterprise—which is of course not something that any single bank employee could provide.  JPMorgan's stray comment about being able to pursue "different grounds" of liability than the plaintiffs is beside the point; what matters is that under no theory could Mr. Staley, as an individual, have provided the "financial lifeblood" to Epstein's enterprise.

## II.    The Court Should Dismiss the Remaining Employment Claims Under Rule 14.

JPMorgan insists that if this Court dismisses Counts I and II, then it can still retain supplemental jurisdiction over the Employment Claims.  Opp'n 16-18.  Mr. Staley never argued

otherwise.  He instead asserted that the Court should reject the Employment Claims *under Rule 14* if only they remain.  The bank entirely failed to address the argument.

## III.     The Employment Claims (Count III and IV) Are Stale and Deficiently Pleaded.

### A.  The Opposition Cannot Resurrect the Time-Barred Claims.

JPMorgan sat on its Employment Claims against Mr. Staley, who left the bank over a decade ago.  The bank declares that Delaware law governs the claims and provides the statute of limitations.  Opp'n 18.  This assertion is bizarre given that Count III explicitly pleads the claim "[u]nder New York law."  TPC ¶ 57.  It is also wrong.  This Court applies New York's choice of law principles, *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989), and under the interest-analysis test, for breach of fiduciary duty "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  *In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig.*, 2021 WL 4481215, at *10 (S.D.N.Y. Sept. 30, 2021).  Mr. Staley worked in New York, the bank's worldwide headquarters is in New York, and the TPCs' allegations concern alleged misconduct in New York.[4]

Regardless, choice of law is a sideshow: the Employment Claims fail under either a two- or three-year limitations period.  JPMorgan nowhere denies that its only hope to preserve these dated claims is the discovery rule, under which it must "plead and establish that the alleged fraud could not have been discovered prior to the" limitations period.  Mot. 19.  JPMorgan argues that it "did not discover" any misconduct until it was sued.  Opp'n 19.  But that misses the point.  The standard does not require the bank to have discovered all the factual allegations, including those underlying *the plaintiffs'* claims, before the clock started on its Employment Claims.  It merely

---

[4] Unlike some other states, New York rejects any automatic application of the so-called internal affairs choice-of-law rule, that looks merely to the state of incorporation.  *Tyco Int'l, Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 560-61 (S.D.N.Y. 2010).  Regardless, JPMorgan is not incorporated in Delaware; it is a "national bank" with its main office in Ohio.  TPC ¶ 4.

needed to know enough to be on notice to *investigate* Mr. Staley's *possible* disloyalty—that is, that he might have lied about "Epstein's character and conduct." TPC ¶ 61. And JPMorgan, in touting the "public scrutiny" from news reports in 2018 and Epstein's 2019 arrest that "exposed shocking details about" Epstein's trafficking enterprise, *Doe* Dkt. 46 at 1-2, has conceded it was on notice of a potential need to investigate well over three years ago.[5]

In the face of this barrier, JPMorgan's chief response is to punt—claiming that the statute of limitations presents a factual issue. Opp'n 19-20. But to create a factual dispute, JPMorgan had to plead relevant contested facts. It has not and cannot do so. Even JPMorgan's favored authority notes that once a defendant makes a prima facie case of inquiry notice—as Mr. Staley has done—the "burden then shifts to the plaintiff to establish that even if it had exercised reasonable diligence, it could not have discovered the basis for its claims before that date." *Epiphany Cmty. Nursery Sch. v. Levey*, 171 A.D.3d 1, 7 (1st Dep't 2019) (affirming dismissal of fraud claim because plaintiff "could have discovered" allegations). Neither the Complaints nor the Opposition explains why JPMorgan *could not* have discovered Mr. Staley's alleged disloyalty with reasonable diligence. Indeed, in addition to the abundant press on Epstein and Mr. Staley, the bank possessed decades' worth of Mr. Staley's records and emails with Epstein.[6]

JPMorgan also tosses in a bid for equitable tolling. Opp'n 20. But to qualify, a plaintiff must "plead and prove (1) the wrongful concealment by the defendant of its actions, (2) the failure

---

[5] The result would be no different under Delaware law. JPMorgan did not plead how Mr. Staley's alleged misconduct was "inherently unknowable," Opp'n 18, especially given that Doe and the USVI uncovered it, even without all Mr. Staley's emails and records, which JPMorgan possesses.

[6] JPMorgan questions how it could've thought to investigate Mr. Staley when Barclay's was telling reporters that it still had "full confidence" in him, despite the UK authorities' public investigation. Opp'n 20, n.6. But in its Answer in this case, the bank concedes that it knew that Mr. Staley's conduct was still in question; indeed, it "admits" that in 2019 it produced to the UK authorities more than 1,200 emails between Staley and Epstein. Answer ¶ 233, 22-cv-10019, ECF No. 83.

by the plaintiff to discover the operative facts underlying the action within the limitations period, and (3) the plaintiff's due diligence to discover the facts." *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423, 1443 (S.D.N.Y. 1986). JPMorgan pleaded literally zero about any due diligence undertaken. Courts also "require particularity in pleading fraudulent concealment." *Id.* The bank's conclusory statements come nowhere close, as discussed below.

### B. The Employment Claims Do Not Satisfy Rule 9(b).

JPMorgan does not contest that the Employment Claims' factual allegations must satisfy Rule 9(b). Opp'n 21. Courts must "rigorously enforce" this standard, which "safeguards" parties' "reputation and goodwill from improvident charges of wrongdoing." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990). The TPCs, however, never identify any date or event or even a single person Mr. Staley supposedly fooled, and thus lack the mandatory "who, what, when, where and how of" the alleged fraud. *Williams v. Affinion Grp.*, 889 F.3d 116, 124-25 (2d Cir. 2018). The Opposition barely offers any fix. It notes that Mr. Staley (like every employee) allegedly signed a Code of Conduct—here again, without any dates or allegations that anyone at the bank relied on this—and then points outside the TPCs to the *plaintiffs' pleadings* (which, notably, the bank never expressly incorporated and often disclaimed). But the conduct underlying the Employment Claims is Mr. Staley's alleged deception of the bank's employees in their managing of Epstein's accounts. TPC ¶¶ 59-62, 70-77. And the TPCs plainly lack particularized pleading on the alleged deception.

### C. The Breach of Fiduciary Duty Claim is Deficient.

The breach claim requires pleading (1) that Mr. Staley actually had a duty to share the information he supposedly concealed, and (2) that the bank suffered damages directly caused by his alleged acts or omissions. That the Opposition points to scattered allegations from *the plaintiffs'* complaints underscores what is missing from JPMorgan's complaints: any allegations that sharing personal details about Epstein fell within Mr. Staley's job purview. "A fiduciary

obligation . . . is limited to matters relevant to affairs entrusted." *Ross v. FSG PrivatAir, Inc.*, 2004 WL 1837366, at *7 (S.D.N.Y. Aug. 17, 2004).  The Complaints, however, plead that Mr. Staley's "alleged knowledge, participation, and observations were not in connection with the performance of his duties for" JPMorgan.  TPC ¶ 42.  Nor does the Opposition shore up the deficient damages allegations.  A breach claim requires non-conclusory factual allegations explaining how the breach was a direct and proximate cause of a nonspeculative injury.  *See Fownes Bros. v. JPMorgan Chase & Co.*, 92 A.D.3d 582, 583 (2012).  JPMorgan claims damages for its litigation costs and reputational harm incurred over a decade after Mr. Staley left the bank.  Mr. Staley's alleged actions, even if true, could not be the direct and proximate cause of those harms.

### D.  The Faithless Servant Claim is Defective.

The Opposition merely repeats inflammatory (and baseless) accusations of sexual misconduct by Mr. Staley and then casually labels them "disloyal" activities because Mr. Staley purportedly served "his own interest" by not reporting himself and Epstein to the bank.  Opp'n at 23-24.  But JPMorgan's capacious reading of this cause of action departs from the case law.  It would sweep in literally any activity that benefitted an employee to his employer's detriment.  Faithless servant claims are "limited [to] circumstances" that put a company and its employee at *financial* odds.  *Ebel v. G/O Media, Inc.*, 2021 WL 2037867, at *7 (S.D.N.Y. May 21, 2021).  The Opposition tries to fight the standard, but it unsurprisingly cites *no cases* supporting its reading.  *Compare id.* at *6 (rejecting suit for employee retaining "confidential and privileged documents" and trying to trigger favorable severance package) *with Morgan Stanley v. Skowron*, 989 F. Supp. 2d 356, 362 (S.D.N.Y. 2013) (permitting suit over "insider trading" off employer's information).  Hiding alleged malfeasance is not akin to competing with the bank to its financial detriment.

### CONCLUSION

The Complaints should be dismissed with prejudice.

Date: May 15, 2023                           Respectfully submitted,


                                             By: */s/ Brendan V. Sullivan, Jr.*

                                             Brendan V. Sullivan, Jr.
                                             Zachary K. Warren
                                             Stephen L. Wohlgemuth
                                             WILLIAMS & CONNOLLY LLP
                                             680 Maine Avenue SW
                                             Washington, DC 20024
                                             Tel: (202) 434-5252
                                             Fax: (202) 434-5029
                                             zwarren@wc.com


                                             *Counsel for Third-Party Defendant*
                                             *James Edward Staley*