UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jane Doe 1, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>JPMorgan Chase Bank, N.A.,<br><br>    Defendant. | Case No. 1:22-CV-10019 (JSR) |

**PLAINTIFF JANE DOE 1'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.     Numerosity and Ascertainability Are Satisfied. ................................................................ 2

    II.    Common Issues Exist and Predominate Over Individualized Issues. ................................ 3

           A.     Common Questions Predominate for Plaintiff's TVPA Claims. ............................ 4

           B.     Common Questions Predominate for Plaintiff's Negligence Claims. .................... 6

           C.     JPMC's Purported Affirmative Defenses Do Not Raise Individualized Issues that Predominate Over Common Issues ......................................................................... 7

    III.   Doe's Claims Are Typical of the Class Members' Claims. ................................................ 8

    IV.   Doe is an Adequate Class Representative .......................................................................... 9

    V.    A Class Action is Superior to Individual Lawsuits ............................................................ 9

    VI.   In the Alternative, the Court Can Certify Under Rule 23(c)(4) or Rule 23(b)(1) ............. 10

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  269 F.R.D. 340 (S.D.N.Y. 2010) ................................................................................................ 7

*Chalmers v. City of New York*,
  2022 WL 4330119 (S.D.N.Y. Sept. 19, 2022) ........................................................................... 4

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
   2023 WL 3167633 (S.D.N.Y. May 1, 2023) (Rakoff, J.) ............................................. 3, 4, 6, 8

*Fleites v. MindGeek S.A.R.L.*,
  2022 WL 1314035 (C.D. Cal. Feb. 10, 2022) ........................................................................... 5

*Guadagna v. Zucker*,
  332 F.R.D. 86 (E.D.N.Y. 2019) ................................................................................................ 3

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
  241 F.R.D. 185 (S.D.N.Y. 2007) ............................................................................................ 10

*In re USC Student Health Ctr. Litig.*,
  2019 WL 3315281 (C.D. Cal. June 12, 2019) .......................................................................... 7

*Iowa Pub. Employees' Ret. Sys. v. Bank of Am. Corp.*,
  2022 WL 2829880 (S.D.N.Y. June 30, 2022) .......................................................................... 9

*Jacob v. Duane Reade, Inc.*,
  293 F.R.D. 578 (S.D.N.Y. 2013) ............................................................................................ 10

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015) ...................................................................................................... 8

*K.A. v. City of New York*,
  413 F. Supp. 3d 282 (S.D.N.Y. 2019) ....................................................................................... 7

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
  425 F. Supp. 3d 959 (S.D. Ohio 2019) ...................................................................................... 4

*Mullen v. GLV, Inc.*,
  330 F.R.D. 155 (N.D. Ill. 2019) ................................................................................................ 7

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
  2018 WL 4347799 (E.D.N.Y. Sept. 12, 2018) ...................................................................... 6, 9

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ............................................................................... 3, 8

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ....................................................................................... 9

*Sparks v. Seltzer*,
  2005 WL 3116635 (E.D.N.Y. Nov. 22, 2005) ........................................................... 3

*Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
  2011 WL 7095434 (C.D. Cal. Dec. 12, 2011) ........................................................... 6

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000) ...................................................................................... 7

**Statutes**

18 U.S.C. § 1591(e)(3) ...................................................................................................... 6

18 U.S.C.A. § 1595(a) ....................................................................................................... 5

**Rules**

Rule 23 ........................................................................................................... passim

**PRELIMINARY STATEMENT**

As Defendant JPMorgan Chase Bank, N.A. ("JPMC") admits, "Jeffrey Epstein abused dozens of individuals" during the 15 years he was a customer of JPMC. ECF No. 137 ("Opp.") at 1. This case, however, is not about Epstein's crimes or the specific ways in which he harmed Plaintiff and other victims. Rather, it concerns JPMC's *own* misconduct in providing Jeffrey Epstein the financial infrastructure for his sex-trafficking operation, including allowing Epstein to withdraw suspicious amounts of cash and structure cash withdrawals, failing to file suspicious activity reports, and deciding to deliberately ignore the harm Epstein caused countless women and girls for years because it was profitable to do so.

As set forth in Plaintiff's opening brief, the proposed class easily meets each of the requirements for class certification under Rule 23(b)(3), (b)(1), or (c)(4). Mot. at 14-23. In opposition, JPMC asserts that "Epstein's conduct was not uniform" because "it varied from victim to victim, and across time." Opp. at 2. But regardless of whether a victim was 14 years old or 21 years old at the time of her abuse, and whether she was abused once or 100 times (or more), JPMC's conduct in facilitating that abuse was uniform as to each victim. JPMC may elect to advance at trial its tone deaf and victim-blaming assertions that some or all the women either (i) consented to sexual contact with Epstein and his cohorts; (ii) should have resisted their abuse harder; or (iii) should have escaped Epstein's control sooner. *See* ECF No. 138-23 at 29 n.99, 32. For the purposes of opposing class certification, however, these arguments are irrelevant.

Because the claims the Court deemed viable in its May 1 motion to dismiss opinion present common issues of liability that will rise or fall based on evidence common to the proposed class, class certification is required.

1

## ARGUMENT

### I. Numerosity and Ascertainability Are Satisfied.

Plaintiff's opening brief points to numerous sources to explain why there are "hundreds of potential victims during the class period," easily satisfying Rule 23(a)'s numerosity and ascertainability requirements. Mot. at 8-9, 22 (potential class members identifiable through publicly available information as well as documents produced in discovery "such as account ledgers reflecting payments from Epstein to victims"). JPMC all but concedes these elements by submitting a spreadsheet showing that more than 137 victims applied for compensation from the Epstein Victims' Compensation Program ("EVCP") alleging abuse by Epstein during the class period. ECF No. 138-26, JPMC Ex. 35 ("ECVP Spreadsheet"), Tab N; Opp. at 5; ECF No. 138-25. Because participation in the EVCP was voluntary and numerous victims have yet to come forward for various reasons, the number of potential class members is much higher.

JPMC claims that the class must be smaller, however, based on its legal assertions (1) that Doe cannot prove JPMC's knowledge during the earlier part of the class period and (2) that victims who received compensation through the EVCP somehow released their claims against JPMC. *See* Opp. at 8. Each of these arguments is baseless.[1] These merits arguments are also irrelevant to the numerosity determination, where "the relevant question is not how many proposed class members possess viable claims, but rather whether the number of potential plaintiffs with analogous claims

---

[1] JPMC's argument that it had "constructive knowledge" only as of 2006 is simply wrong. As JPMC admits in its filings, the bank ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as early as 2002. ECF Nos. 138-6–138-8; *see also* ECF No. 138-14 (showing nearly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in 2004 and 2005). Although JPMC has to date failed to produce documents from 2001 and earlier despite Doe's continued efforts to seek such evidence, discovery is still ongoing and JPMC has yet to complete its productions. *See* ECF No. 71 (granting motion to compel); Minute Entry for 5/5/2023. JPMC's own evidence also demonstrates that the numerosity requirement would still be satisfied, as 76 applicants alleged at least one incident of abuse in 2007 or later. EVCP Spreadsheet, Tab N.

is sufficiently large that it would be unduly burdensome to make each individually join the lawsuit." *Guadagna v. Zucker*, 332 F.R.D. 86, 93 (E.D.N.Y. 2019). Any questions as to when JPMC first participated in Epstein's sex trafficking or whether class members released JPMC in prior settlements can and should be decided "all at once, rather than dealing with the inefficiencies inherent in prosecuting each potential claim individually." *Id*.

## II.   Common Issues Exist and Predominate Over Individualized Issues.

As this Court has held, "[e]ven a single common question of law or fact may suffice to satisfy the commonality requirement." *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) (Rakoff, J.). The question of knowledge for TVPA beneficiary liability—when JPMC first knew or should have known about the venture—satisfies that requirement. This Court has already refused to construe the TVPA as permitting JPMC to be "held liable only if [it] knew that force, fraud, or coercion was used with respect to the plaintiff herself." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 2023 WL 3167633, at *10 (S.D.N.Y. May 1, 2023) (Rakoff, J.). Instead, this Court explained that JPMC's knowledge "is required with respect to *the venture*, not with respect to any *particular person*." *Id.* (emphases added).[2]

As to whether common issues predominate, "predominance does not require a plaintiff to show that there are no individual issues." *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at

---

[2] JPMC's assertion that Doe failed to "meet her burden of proof," Opp. at 2, ignores the extensive evidence submitted with Doe's motion, including direct communications between JPMC employees about Epstein's venture (ECF Nos. 123-26–123-37); information regarding wire transfers and withdrawals (ECF Nos. 123-38, 123-39); publicly available information about Epstein's venture from as early as 2006 to which JPMC had access (ECF Nos. 96-6–96-9, 96-13, 96-20, 96-24); and excerpts from Doe's deposition testimony and allegations of numerous other victims showing that the class members' claims and experiences are similar and numerous (ECF Nos. 96-3, 96-4, 96-5, 96-14, 96-19, 96-21, 96-23). Doe's submissions easily complied with Rule 23. *See, e.g.*, *Sparks v. Seltzer*, 2005 WL 3116635, at *4 (E.D.N.Y. Nov. 22, 2005) (explaining that "[t]he allegations of the complaint, coupled with the affidavits submitted by plaintiffs" were sufficient to demonstrate commonality and typicality).

3

111. This requirement calls "only for predominance, not exclusivity, of common questions." *Chalmers v. City of New York*, 2022 WL 4330119, at *17 (S.D.N.Y. Sept. 19, 2022).

    A. <u>Common Questions Predominate for Plaintiff's TVPA Claims.</u>

***Participation***. JPMC contends that the participation element of Doe's beneficiary liability claim is individualized because there was no uniform policy or practice. Opp. at 9. But this argument misconstrues the commonality of JPMC's knowing participation in Epstein's venture in order to gain profits. The same actions (and inaction) by the same JPMC employees allowed the abuse of each class member to take place during Epstein's banking relationship with JPMC. Each class member only needs to prove that JPMC participated in the *venture* to satisfy the participation element. *See, e.g.*, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019); *see Doe 1*, 2023 WL 3167633, at *9 ("[T]he defendant must have participated in a commercial sex trafficking venture."). This element will be established through common evidence, such as JPMC's records of wires and withdrawals. *See, e.g.*, ECF Nos. 123-38, 123-39.

***Knowledge***. The Court will not need to conduct individualized inquiries as to "what JPMC knew at the time [each] particular class member was trafficked." Opp. at 10. Once Doe proves the first date that JPMC had constructive knowledge of the venture, that element will be proven as to all class members who were trafficked during the remainder of the class period. On these facts, the bank's institutional knowledge did not somehow disappear over time. *See Doe 1*, 2023 WL 3167633, at *10 (awareness of Epstein's convictions and ignoring red flags support that JPMC "knew or recklessly disregarded that Epstein operated" sex-trafficking venture). At its core, then, this case will involve a single answer to the question of when JPMC first acquired constructive knowledge, especially because JPMC's employees' knowledge is attributable to it. *Id.*[3]

---

[3] Common proof would also include the email communications about Epstein's venture submitted with Doe's opening brief and the thousands of others that JPMC has produced to date.

4

*Venture*.  JPMC argues that the class members were not all victims of a single sex-trafficking venture because some class members may have been "trafficked using funds from . . . another bank's" accounts.  Opp. at 11.  As a factual matter, the discovery conducted to date has confirmed that Epstein's sex-trafficking venture during the class period was financed through his JPMC accounts.  But even if another bank's accounts were *also* used to finance Epstein's sex-trafficking venture in part, that in no way absolves JPMC of its participation.  The TVPA requires only that JPMC knew or should have known a sex-trafficking venture existed, and that it participated in it.  18 U.S.C.A. § 1595(a); *S.J. v. Choice Hotels Int'l, Inc*., 473 F. Supp. 3d 147, 152–53 (E.D.N.Y. 2020) (elements of claim include that entity participated in venture).

*Sex-Trafficking.*  JPMC's assertion that determining whether each class member was trafficked is an individualized inquiry is incorrect.  Opp. at 14.[4]  Epstein's *modus operandi* was the same, and he repeated it over and over again as to each victim:  Epstein used prior victims to lure young, vulnerable victims, brought the victim to his home, sexually abused the victim during a massage, and then provided the victim with cash or something else of value.  *See* Mot. at 3.  JPMC's expert herself admitted that these similarities existed in the allegations against Epstein.  Ex. 46 at 131–35 (testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).[5]  JPMC also ignores case law in other TVPA cases finding that this does not preclude class certification.  *See, e.g.*, *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 2018 WL 4347799, at *8 (E.D.N.Y. Sept.

---

[4] The sole legal authority JPMC cites for this proposition is an unreported decision on a motion for joinder from a different district.  *See Fleites v. MindGeek S.A.R.L.*, 2022 WL 1314035, at *7 (C.D. Cal. Feb. 10, 2022).

[5] Citations to "Ex." are citations to the Reply Declaration of David Boies, filed concurrently hereto.

5

12, 2018); *Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 2011 WL 7095434, at *6 (C.D. Cal. Dec. 12, 2011). JPMC's focus on insignificant variations in the forms of force, fraud, or coercion used on each victim ignores the vast commonality in each class member's claims about JPMC's own misconduct, which predominate over any questions affecting only individual members.[6]

**TVPA Obstruction.** JPMC argues that Doe's TVPA obstruction claim involves individualized issues because JPMC may have obstructed multiple different investigations. Opp. at 11. But if JPMC obstructed *any* investigation into Epstein's sex-trafficking venture that could have ended the venture, any class member injured after that obstruction was harmed by that obstruction—a fact susceptible to common proof. *See Doe 1*, 2023 WL 3167633, at *12.

B. <u>Common Questions Predominate for Plaintiff's Negligence Claims.</u>

As to Doe's negligence claims, JPMC argues that each class member must prove that JPMC owed a separate duty to her "as an individual by setting in motion the forces that foreseeably injured her." Opp. at 11–12, 17. But this mischaracterizes the Court's earlier ruling, which held that Doe alleged the existence of a duty because JPMC "helped 'set in motion' Jeffrey Epstein's *sex-trafficking venture* – by providing the cash that fueled it." *Doe 1*, 2023 WL 3167633, at *16 (emphasis added). JPMC cites no authority requiring any other duty beyond what the Court held.

JPMC also asserts that causation is an individualized inquiry. Opp. at 18.[7] This is wrong, however, as class members only need to show that JPMC's participation in the venture was

---

[6] The *only* other element of sex trafficking—a commercial sex act—requires that the victim engaged in a sex act, and "on account of which anything of value is given or received *by any person*." 18 U.S.C. § 1591(e)(3) (emphasis added). As JPMC's expert conceded, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, demonstrating that proving this element on a class-wide basis will be simple and straightforward. Ex. 46 at 148:12–21.

[7] Under JPMC's theory, a negligence action, including mass tort actions, could never be certified due to the causation element. But mass tort actions are routinely certified under Rule 23(b)(3), including in the case JPMC cites on this issue. *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 167 (2d Cir. 1987) (affirming certification of Rule 23(b)(3) class).

necessary to the venture's existence, and that the venture's existence harmed each class member. Other courts on similar facts in sex abuse cases have allowed collective class proof of causation.[8]

### C. JPMC's Purported Affirmative Defenses Do Not Raise Individualized Issues that Predominate Over Common Issues.

JPMC also asserts that it "will have a range of affirmative defenses" that require "individualized proof." Opp. at 19. None of the affirmative defenses JPMC raises poses individualized issues that predominate over the common issues relating to JPMC's misconduct.

***Statute of Limitations***. Regarding the TVPA claims, JPMC asserts that class membership would require trafficking after November 24, 2012. Opp. at 19. Doe disputes JPMC's timeliness argument, which the Court already rejected in declining to dismiss Doe's claims. *See* Mar. 13 Hr'g Tr. at 52. Even assuming, however, that at a later stage the Court were to entertain a motion to shorten the class period (despite the clear availability of equitable tolling), that decision is one that the Court would be able to make in a single, class-wide, determination and is no barrier to class certification now. The same holds true for Doe's negligence claims. Indeed, the case JPMC cites for this proposition *affirmed* a class certification order over an objection that limitations defenses defeated predominance. That case explains that so long as "a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3)." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000); *see also Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 353 (S.D.N.Y. 2010).

***Release***. Despite the Court's rejection of a similar argument in its motion to dismiss

---

[8] *See, e.g., K.A. v. City of New* York, 413 F. Supp. 3d 282, 302 (S.D.N.Y. 2019) (denying motion to dismiss class action for claims regarding improper intimate examinations); *In re USC Student Health Ctr. Litig.*, 2019 WL 3315281 (C.D. Cal. June 12, 2019) (preliminarily approving settlement class in sexual misconduct case); *Mullen v. GLV, Inc.*, 330 F.R.D. 155, 168 (N.D. Ill. 2019) (granting class certification in case involving coach sexually abusing underage players).

7

opinion, *Doe 1*, 2023 WL 3167633, at *6, JPMC asserts that there is "great variety amongst the putative class as to which claims were waived" through settlements through the EVCP, and which were not. Opp. 20–21. Even if the Court would reach a contradictory conclusion as to other similar releases (it should not), that decision would *not* take place on an individualized basis given that releases under the EVCP used a common form. ECF No. 138-5 (standard EVCP release form).

***"Shared Responsibility."*** JPMC asserts that whether certain class members introduced other victims to Epstein is an individualized issue relevant to *in pari delicto* and comparative negligence. Opp. at 21. JPMC is free to argue these audacious blame-the-victim defenses at trial if its counsel are brazen enough to present them to a jury. JPMC is also incorrect that this presents an individualized issue. As Doe specifically alleged, forcing victims to introduce him to other victims was part of Epstein's *modus operandi*, creating a pyramid scheme of trafficking. *See, e.g.*, ECF No. 96-8 at 47, 49, 56, 61; ECF No. 96-3 at 55; ECF No. 96-25 ¶ 2; Ex. 47 at 120:18–124:6. Epstein pressured all of his victims to introduce him to other victims. Ex. 46 at 148:22–149:21 (JPMC expert testifying that only ███████████████████████████████); *see also* ECF No. 96-42 at 3 (victims allowed to participate in EVCP despite forced recruitment).

***Damages.*** JPMC also argues that individualized damages preclude certification. Opp. at 21. But "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 119. JPMC ignores this settled law and cherry picks quotes from cases, leaving out clear statements that individualized damages "standing alone" are not "sufficient to defeat class certification." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).

### III. Doe's Claims Are Typical of the Class Members' Claims.

Doe claims are typical because "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."

8

*Paguirigan*, 2018 WL 4347799, at *5; *see also Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993) (the typicality requirement is usually met "irrespective of minor variations in the fact patterns underlying individual claims"). JPMC argues that Doe is not typical because she faces unique defenses as to the statute of limitation and *in pari delicto*. Opp. at 12. The Court should reject those arguments for the reasons above discussing the predominance of common issues.

JPMC also suggests that Doe's "financial vulnerabilities" and receipt of money from Epstein could somehow prevent recovery but offers no explanation why that renders her atypical of the class. *Id*. By definition, Epstein used force, fraud, or coercion against all class members to get them to engage in commercial sex acts under the TVPA and they all received something of financial value from Epstein. *See* Ex. 46 at 148:12–21.

### IV.   Doe is an Adequate Class Representative.

In arguing that Doe is not an adequate class representative, JPMC claims that certain class members may be "implicated in causing the very injuries for which other members are seeking to recover." Opp. at 13. Leaving aside the unfortunate victim blaming in this argument, Doe remains an adequate representative because all victims were harmed by JPMC's participation in Epstein's sex-trafficking venture and have a unified interest in holding JPMC liable for its participation in it. *See Iowa Pub. Employees' Ret. Sys. v. Bank of Am. Corp.*, 2022 WL 2829880, at *19 (S.D.N.Y. June 30, 2022) (conflict exists only when "interests of the class representative can be pursued only at the expense of the interests of all of the class members").

### V.   A Class Action is Superior to Individual Lawsuits.

The Court should reject JPMC's argument that a class action is not a superior method to resolve this case. Opp. at 22–25. Because this case concerns JPMC's violations of the law (and not Epstein's), JPMC's references to past individual actions victims have brought against "Epstein and his associates" are irrelevant to the superiority inquiry. As stated in Doe's opening brief,

9

forcing individual victims to litigate against America's largest bank would be inefficient and unjust. JPMC's opposition does not dispute this and fails to acknowledge its no-holds-barred litigation conduct in this very case, which includes (but is not limited to) subjecting the named Plaintiff and her family to numerous invasive proceedings that have retraumatized them repeatedly since Plaintiff courageously filed suit. No other victim should be forced to endure such attacks when proving issues about JPMC's own conduct can easily be resolved on a class-wide basis.

### VI. In the Alternative, the Court Can Certify Under Rule 23(c)(4) or Rule 23(b)(1).

Although the Court should certify the class under Rule 23(b)(3), JPMC offers no real explanation why the Court could not certify issue classes under Rule 23(c)(4) as an alternative. Whether JPMC participated in a sex-trafficking venture and when it first knew about Epstein's illegal conduct are core liability issues, the resolution of which on a class-wide basis "would materially advance the disposition of the litigation as a whole." *See Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013).

JPMC's arguments against certifying a Rule 23(b)(1) class are equally meritless. A class under Rule 23(b)(1) is appropriate here because individual adjudications would risk establishing incompatible standards. JPMC's opposition merely asserts that this could not be true because the class's claims are purportedly "replete with individualized issues." As explained above, however, JPMC's conduct does not vary on a victim-by-victim basis, and should be adjudicated consistently. JPMC's argument that the Court cannot certify such a class because a 23(b)(1)(A) class is not available when the plaintiff seeks money damages, Opp. at 25, is equally meritless. *See, e.g., In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 241 F.R.D. 185, 200 (S.D.N.Y. 2007).

### CONCLUSION

For the foregoing reasons, the Court should certify the proposed class.

Dated: May 19, 2023                                                         Respectfully Submitted,

/s/ *David Boies*
David Boies
Andrew Villacastin
Sabina Mariella
Boies Schiller Flexner LLP
55 Hudson Yards
New York, New York
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: smariella@bsfllp.com

Sigrid McCawley (*pro hac vice*)
Daniel Crispino (*pro hac vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com

Bradley J. Edwards
Edwards Pottinger LLP
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954)-524-2822
Email: brad@epllc.com

Brittany N. Henderson
Edwards Pottinger LLP
1501 Broadway
Floor 12
New York, NY
Telephone: (954) 524-2820
Fax: (954) 524-2820
Email: brittany@epllc.com

*Counsel for Jane Doe 1*

11