IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. 22-cv-10019 (JSR) |

**JPMORGAN CHASE BANK, N.A.'S REPLY
IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF'S EXPERT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)..................................................................................................................3

*Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*,
    97 F. Supp. 3d 485 (S.D.N.Y. 2015)........................................................................................6

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................................................6

**Rules**

Fed. R. Evid.
    702(a) .......................................................................................................................................3
    702(b) .......................................................................................................................................3
    702(c) ....................................................................................................................................3, 4
    702(d) .......................................................................................................................................4

Four-and-a-half years ago, Jane Khodarkovsky joined the Money Laundering and Asset Recovery Section of the Department of Justice. Her position was "trial attorney," but she never entered an appearance in a case—and she is now back in private practice. That stint at DOJ was the "first and only time since … law school" that she had a "full-time job" in the field of her purported sex trafficking expertise. Ex. 1, Transcript of Khodarkovsky Dep., at 38:25-39:6.[1] And based solely on that experience, Khodarkovsky claims authority to repeat to this Court (and presumably a jury) what Doe's counsel thinks about the facts and documents in this case. JPMC has explained the various reasons why that is not permissible, and the opposition has no answer. Rather, the opposition lays bare that while Khodarkovsky is offered "as an expert in sex trafficking," Ex. 1 at 10:7-8, she is no such thing.

Doe's counsel first fails to rehabilitate Khodarkovsky's qualifications. The parties now agree that over the first seven years of Khodarkovsky's twelve-year career, she did no sex trafficking work as either a state prosecutor or during her one year as an associate in the "Employment Law and Litigation Group" of her civil law firm.[2] Nor does (or could) Khodarkovsky ground her expertise in her current role as "General Counsel and Head of Risk and Compliance for the Celo Foundation, a sustainability/financial-inclusion nonprofit." Plaintiff Jane Doe 1's Memorandum of Law in Opposition to Motion to Exclude ("Opp.") at 5. Rather, it is now

---

[1] Citations to "Ex." refer to the exhibits appended to the Declaration of Felicia H. Ellsworth filed in support of JPMC's Motion to Exclude Plaintiff's Expert. Dkt. No. 132.

[2] It was in Khodarkovsky's first and only year at this firm that she acquired the entirety of her experience with class actions. Doe's counsel protests that JPMC misrepresents Khodarkovsky's testimony on this front. Opp. 8 n.2. JPMC did not. For the avoidance of doubt, the transcript reads: A: "I worked on class actions, I think I had mentioned at Genova & Burns in the context of FLSA claims." Q: "And that was one year out of law school?" A: "After my clerkship, yes." Q: "For one year after your clerkship you worked in a law firm that sometimes did FLSA class actions?" A: "Yes, we represented management side that were defendants in FLSA class action lawsuits." Q: "Okay. And since then, over the entire course of your professional career, you have not worked on a class action, true?" A: "That's true." Ex. 1 at 286:5-21.

1

uncontested that the sole relevant experience she brings to this Court is three-and-a-half years at DOJ, where Khodarkovsky was hired with admittedly no prior professional sex trafficking experience.[3]  Ex. 1 at 38:25-39:6.  Doe's opposition does its best to wring from those three years as much credence as possible, but the adulation is exaggerated.  For example, Doe's counsel now claims that Khodarkovsky—in 2018, seven years out of law school and with no relevant prior experience—instantly became literally "*the* subject matter expert from the Department of Justice related to investigating sex trafficking."  Opp. 9 (emphasis in original).  Yet she was not even a member of DOJ's Human Trafficking Prosecution Unit.  Doe's counsel now doubles down (without citation) that Khodarkovsky did not just advise but in fact "*led* investigations and prosecutions of complex money laundering and financial crimes."  Opp. 5-6 (emphasis added).  But that is a strange claim since other attorneys entered their appearance and prosecuted those cases—something Doe's counsel now admits Khodarkovsky never did.[4]

Doe's counsel also claims (again without citation) that Khodarkovsky has worked on somewhere between "50 to 100 sex trafficking cases over the course of her professional career," Opp. 5, and assures this Court (yet again without citation) that "of course" Khodarkovsky had "the authority to make charging decisions" in those cases, Opp. 10 n.4.  But Doe's counsel also concedes that Khodarkovsky in fact made no such decision in any sex trafficking case identified

---

[3] Those three years and five months spanned from December 2018 to April 2022—and thus were largely dominated by the COVID-19 pandemic.  Khodarkovsky was a mere 16 months into the job when the pandemic struck in March 2020.  Our common memories from that time period include office and court closures, the halting of basic office functions, and the general pause of normal life.  Yet those were the months in which Khodarkovsky accrued the only experience she has in the field of her purported expertise.

[4] Doe's counsel waves away Khodarkovsky's failure to appear for the government a single time, pointing out that nothing should "diminish [the] undoubtedly important contributions" of JPMC's attorneys who have not noticed appearances into this case.  Opp. 10 n.3.  JPMC certainly does not diminish those contributions, but it also does not designate its attorneys as expert witnesses in litigation, as Doe's counsel is essentially doing here.

in her report. *E.g.*, Ex. 1 at 50:9-15 (Q: "And you were not involved in the charging decision about whether Mr. Bhimani should be indicted for sex traffick[ing]?" … A: "Correct, I was not."). Doe's counsel scoffs that "JPMC appears to assume that the sample of cases Ms. Khodarkovsky listed in her report were the only cases she worked on, which could not be further from the truth." Opp. 10 n.4. But what is JPMC to do but rely on what Khodarkovsky holds out to be the highlights of her expertise? Even in opposition, Khodarkovsky offers not one example of these "50 to 100 cases" not "listed in her report," and instead clings to *United States v. Backpage*—a case in which Khodarkovsky admits to having not made a charging decision—and, more fundamentally, a case that did not involve a single sex trafficking charge. Memorandum of Law In Support of Motion to Exclude ("Mem.") at 6 n.4. If Khodarkovsky (with no prior sex trafficking experience) in fact "led" sex trafficking cases as "the" subject matter expert in all of DOJ, she or Doe's counsel should be able to provide at least one example. They do not.

Just as Doe's counsel cannot rehabilitate Khodarkovsky's qualifications, they cannot rehabilitate Khodarkovsky's reliability. Expert testimony is supposed to abide certain fundamental principles. First, a person "qualified as an expert" in a particular field gathers "sufficient facts or data" in which to ground an analysis. Fed. R. Evid. 702(a). Using "reliable principles and methods," the expert draws conclusions from those facts. Fed. R. Evid. 702(c). And only then, if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact," will she be allowed to offer her opinion. Fed. R. Evid. 702(a). The Court, as gatekeeper, carefully guards these requirements before admitting testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Khodarkovsky fails at each step.

First, Khodarkovsky eschews "sufficient facts or data." Fed R. Evid. 702(b). Doe's counsel now admits that Khodarkovsky did not interview a single member of the putative class

3

despite opining on both her interviewing prowess and the critical nature of interviews when determining whether someone is a victim of sex trafficking. Doe's counsel also has no answer as to why Khodarkovsky failed to review information from the Epstein Victims Compensation Fund ("EVCP"), which contains a trove of information about the victims Khodarkovsky claims to expertly understand. No matter, Doe's counsel protests: Khodarkovsky explained "countless times" the other bases of her opinions. Opp. 19. But all Doe's counsel cites in support of this assurance is Khodarkovsky's tautological assertion that she "based [her] opinion based on what [she] reviewed." Opp. 20. Or that she "reviewed materials that were complete enough." Opp. 22. Or, as to why Khodarkovsky failed to interview Doe, any of Doe's counsels' other victim clients, or any other member of the putative class, that "since Ms. Khodarkovsky has such vast experience with witness interviews, she of all people would know when they are necessary and when they are not." Opp. 22 n.11. In other words, Doe's counsel argues that Khodarkovsky reviewed sufficient facts and data because Khodarkovsky said she did. That argument is self-woundingly circular. Courts charged with a rigorous gatekeeping function cannot accept it.[5]

Second, Khodarkovsky stakes no claim to "reliable principles and methods" "reliably applied." Fed. R. Evid. 702(c), (d). Doe's counsel does not justify Khodarkovsky's inability to explain why she simply assumed several young women or girls would be included in the putative class despite those girls and young women telling police they did not feel coerced. Mem. 14-15. Nor can Doe's counsel justify Khodarkovsky's concession that she came to her analysis with a

---

[5] Nor should the Court entertain Doe's counsel's excuse that discovery is ongoing. Opp. 19. Nothing about ongoing discovery prevented Khodarkovsky from conducting interviews or seeking data from the EVCP. And while it is true that the record is insufficient to certify the expansive class Doe and her counsel wish to represent, this is not due to a lack of discovery (which closes soon, after production of over 80,000 documents by JPMC alone). It is because the facts necessary for class certification do not exist. Khodarkovsky's inability to root her analysis in a factual record is grounds for denying class certification, not giving Khodarkovsky a pass.

predetermined conclusion that anyone who interacted with Epstein was necessarily a trafficking victim as defined by the TVPA and vis-à-vis JPMC's banking services. Mem. 17-18. Indeed, nowhere in her opposition does Doe's counsel describe, let alone justify, what "methodology" Khodarkovsky is supposed to have used in determining whether a particular victim is a class member or not. Khodarkovsky's report is equally silent on this front.

Instead, Doe's counsel pounds the table and irresponsibly accuses JPMC of arguing that "underage girls could properly and lawfully be manipulated by Epstein into performing commercial sex acts." Opp. 23-24. JPMC obviously makes no such argument. To the contrary, JPMC acknowledges that Epstein was singularly atrocious—but also understands that his victims are nonetheless individuals, with individual stories and experiences. It is of course improper and unlawful for Epstein to have manipulated a minor (or anyone) into having sex. That isn't the question. The question is whether Doe's counsel or her expert have proven it permissible and advisable to collapse hundreds of stories into a single oversimplified narrative which Doe alone can tell. JPMC's attention to the individuals involved, to their actual words and experiences, shows that Doe's homogenizing arguments cannot be sustained without flattening reality. Doe's counsel maligns (here and elsewhere) JPMC's attention to these individuals as "victim blaming." It isn't; it's the analysis that Khodarkovsky should have done (but did not) were she actually concerned with determining whether each member of the putative class had a "common" experience vis-à-vis Epstein (let alone JPMC). The Court should not countenance this failure of analysis nor credit Doe's attempt to cover it up with bombast.

Finally, Khodarkovsky's proffered opinion is not "helpful." To be clear, Khodarkovsky is currently offered as an expert *to this Court*. To that end, Doe's counsel lists thirteen bullets containing "highlights" of Khodarkovsky's report—including snippets like "[v]ictims of

5

trafficking may also feel coerced or threatened" by a trafficker's power, or that Epstein targeted "vulnerable victims," or that cash is "fungib[le]" and "hard[] to trace"—and then argues that such insights are simply "impossible to understand" without Khodarkovsky's assistance. Opp. 13-15; *see* Opp. 18 (claiming that this Court can "hardly … be expected to assess" the meaning of Suspicious Activity Reports). But this Court can surely understand routine banking terms and that trafficking victims may feel threatened by their traffickers. Doe's counsel next claims that Khodarkovsky alone can decode the "alphabet soup of acronyms" in this case, but then proves that all one needs is a Westlaw password—Doe's counsel goes on to crack each allegedly indecipherable code with simple citations to federal statutes and regulations (whose meaning only the Court is authorized to interpret). Opp. 16 & n.5. Doe's primary example of "helpful" expert opinion pertains to Epstein's alleged *modus operandi*. Opp. 17. But Doe's counsel have been perfectly able to advance to this Court and to the public their theory as to Epstein's *modus operandi* without the help of an expert.

At bottom, Doe's counsel protests that Khodarkovsky is not "interpreting the evidence, but rather surveying it." She cites two cases, *Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, 97 F. Supp. 3d 485, 504 (S.D.N.Y. 2015), and *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016). In *Sunny Merchandise*, an economist built custom Excel spreadsheets summarizing "at least 100 pages of sales reports," which the court found helpful; in *Chipotle*, the court merely quoted the legal proposition in *Sunny Merchandise*. The contrast with this case is stark. Khodarkovsky is not an accountant or economist offering to take incomprehensible data and render it comprehensible to a layperson. Rather, she gathers all-too-comprehensible facts about what Epstein did to his victims and narrates those facts in service of Doe's baseless legal theory that JPMC violated the TVPA as to each of Epstein's victims in an identical way. To the

extent she is offered as an expert on "grooming," Opp. 17, she is not qualified to perform that role, *see supra* at 1-3; Mem. 2-7. And in any event, the vast bulk of her report consists not of opinions about grooming but of an inculpatory interpretation of the facts. That may be helpful to Doe's attorneys. It isn't helpful to the Court.

Finally, perhaps sensing the shaky ground on which their expert stands, Doe's counsel stresses that Khodarkovsky's infirmities ought go only to the weight of her opinions, not their admissibility. Opp. 11. That is only true to a point. The totality of the facts here—Khodarkovsky's scant expertise, the empty foundation of her conclusion, the impropriety of her lawyerly arguments, the basic fallacies of her reasoning—demonstrate there is simply no weight to be given to this expert's opinion. The proper course is to disregard Khodarkovsky's reports in their entirety, and decide class certification based on the facts alone, which this Court is more than capable of interpreting itself.

Dated: May 25, 2023

Respectfully submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

*/s/ Felicia Ellsworth*
Felicia H. Ellsworth
John J. Butts
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Hillary Chutter-Ames
7 World Trade Center
250 Greenwich Street

New York, NY 10007  
(t) (212) 230-8800  
(f) (212) 230-8888  
boyd.johnson@wilmerhale.com  
robert.boone@wilmerhale.com  
hillary.chutter-ames@wilmerhale.com  

*Attorneys for JPMorgan Chase Bank, N.A.*