quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S TELEPHONE NO.
**(212) 849-7000**

WRITER'S EMAIL ADDRESS
andrewschapiro@quinnemanuel.com

July 21, 2023

Hon. Jed S. Rakoff
U.S. District Court
Southern District of New York
500 Pearl St., New York, NY 10007-1312

**By ECF**

Re:   *Jane Doe 1 v. JPMorgan Chase Bank, N.A.*, 22-CV-10019 (JSR*)*; *Jane Doe 1 v. Deutsche Bank*, 22-CV-10018 (JSR); *USVI v. JPMorgan Chase Bank, N.A.*, 22-CV-10904 (JSR)

Dear Judge Rakoff:

Non-Party Jordana H. Feldman, the former independent administrator ("Administrator") of the Epstein Victims' Compensation Program ("EVCP" or the "Program") respectfully requests that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Court award EVCP full reimbursement of all costs incurred by EVCP in responding to subpoenas issued by Defendants JPMorgan Chase Bank, N.A. ("JPMC"), and Deutsche Bank Aktiengesellschaft, Deutsche Bank AG New York Branch, and Deutsche Bank Trust Company Americas (collectively, "Deutsche Bank" and together, with JPMC, the "Banks").

The law permits cost-shifting whenever non-parties incur significant expenses in complying with a subpoena issued under Federal Rule of Civil Procedure 45. Fed. R. Civ. P. 45(d)(2)(B)(ii). Courts in this district have routinely held that such protection requires the reimbursement of significant expenses and attorneys' fees in association with subpoena compliance. *In re Novartis & Par Antitrust Litig.*, No. 18 Civ. 4361, 2020 WL 3317203, at *5–6 (S.D.N.Y. June 18, 2020); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15CIV7488CMJCF, 2017 WL 3822883, at *10 (S.D.N.Y. Aug. 30, 2017). Indeed, this Court recognized the burden of compliance on EVCP stating that the costs associated with EVCP's response may "need to be paid by JPMorgan." Hr'g Tr. 75:14, Mar. 16, 2023.

Full reimbursement here is clearly appropriate. In response to specific requests from JPMC, EVCP undertook a herculean effort to search for, collect, analyze, redact, and produce responsive documents and information to the Banks on a highly compressed timetable. JPMC relied heavily on EVCP's production, featuring it prominently in its class certification briefing. The Banks are more than able to bear the associated costs. In light of these factors, this Court should award EVCP the full cost of its compliance with the subpoenas.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

## BACKGROUND[1]

### A. Background on EVCP

As this Court is aware, EVCP was a court-approved, alternative dispute resolution program established to confidentially resolve sexual abuse claims against Jeffrey Epstein and others. Over 350 individuals submitted claims or registrations to the Program. EVCP completed claimant-facing operations in August 2021 and shut down all operations in April 2022. For EVCP's limited duration, the Administrator hired a small team of trusted staff to handle EVCP's highly sensitive material.

### B. Subpoenas & Related Motion to Compel

In February 2023, nearly a year after EVCP ceased operations, the Banks served subpoenas to produce documents and information upon EVCP.[2] The subpoenas sought an exceedingly broad scope of documents from EVCP, including the claims, allegations, and supporting evidence of each applicant. After negotiations and the production of certain information and documents, JPMC filed a motion to compel on certain requests for production on March 1, 2023 ("Motion to Compel"). ECF 55. EVCP filed its opposition on March 8, 2023. ECF 58. On March 16, 2023, the Court held oral argument on the Motion to Compel. On March 24, 2023, the Court issued an order, granting in part and denying in part the Motion to Compel (the "Order"). ECF 70.

### C. The Agreement

Upon receipt of the Order, EVCP informed JPMC that it was contemplating seeking reconsideration or clarification of the Court's ruling as to RFP 15. EVCP explained that the necessary redactions of personally identifiable information, pursuant to the Order, (i) would take a substantial amount of time to complete; and (ii) ultimately might render the produced documents useless to the Banks, as they would not be able to extract the information they sought in support of their class certification arguments. EVCP also explained it intended to seek clarification on costs, considering the Court's comments at the hearing regarding JPMC bearing costs.

As a compromise, in lieu of seeking reconsideration or clarification of the Order at that time (which would have delayed any production) or producing heavily redacted claimants' files in response to RFP 15, which essentially requested all claimant files, EVCP offered to create and produce a summary chart of key categories of information relevant to the class certification briefing (*e.g.*, age, severity of harm suffered, the timing of abuse, frequency and duration of harm, location of abuse, and circumstances of meeting Mr. Epstein). The Banks were free to reject this proposal and demand the production of redacted documents, but they apparently recognized the benefits of the compromise and chose to engage in negotiations. Instead of rejecting the proposal, the Banks demanded much more information than EVCP had originally offered. They sent EVCP a list of more than *100 questions* that they wanted EVCP to answer as to *each claimant and registrant*. EVCP objected to some of these requests based on undue burden. After engaging in

---

[1] We do not believe that any factual statements presented in this submission would be disputed by any parties to this litigation, but if they are EVCP stands ready to support its factual assertions with declarations and exhibits if so instructed by the Court.

[2] EVCP and Deutsche Bank were able to resolve any objections and responses to the subpoena without the Court's intervention.

intensive, good-faith negotiations, EVCP and the Banks finalized their agreement on RFP 15 on April 18, 2023 ("Agreement").  Throughout negotiations, EVCP indicated its belief that it should be reimbursed for its costs, and under the Agreement, EVCP reserved all rights to seek costs, fees, and expenses in connection with its response to the subpoena.[3]

### D. EVCP's Production of the Spreadsheet, Other Materials & Deposition

In less than ten days after finalization of the Agreement, EVCP produced a massive, reader-friendly spreadsheet containing over 50,000 datapoints on 361 individuals (the "Spreadsheet"). This was in addition to EVCP's production of documents and information responsive to the other seven requests for production, which required a careful, multi-level redaction review.  Doing so was no easy feat.

*First*, because EVCP was no longer operating, the Administrator had to reassemble her small, trusted team to review and analyze the underlying files and information (which included thousands of pages of documents), create the Spreadsheet, and assist with multiple levels of quality control.  The team was comprised of people who were all previously authorized to look at this highly confidential information and were intimately familiar with the files and materials.  Without the team's familiarity with the materials, it would have been impossible to review, analyze, and compile the information as precisely and quickly as they did.

*Second*, answering the Banks' hundreds of questions on the demanded timetable required a tremendous amount of work, including over weekends and holidays.  As most of the information the Banks demanded was not regularly requested or captured by EVCP, EVCP had to carefully review all parts of claimants' files, including personal narratives, medical records, supporting affidavits, other claimants' files, and other materials, and then synthesize the information into the format requested by the Banks.

*Third*, EVCP provided the Banks with information that the Banks would not have received had EVCP produced the redacted claim files.  For example, the Spreadsheet included aggregate medical information, which the Court explicitly carved out of the Order, and consistent, anonymized pseudonyms for (i) associates of Mr. Epstein; (ii) individuals who introduced claimants to Mr. Epstein; and (iii) witnesses to the abuse.  Using pseudonyms to anonymize the data, which the Banks demanded, was particularly time consuming, as it required EVCP to cross-check and cross-reference information in all 361 claimants' files.

At the Banks' request, the Administrator also agreed to sit for what was supposed to be a short deposition to lay a foundation for the Spreadsheet, but which devolved (over EVCP's objection) into a full day of testimony about EVCP and its files.  On the record during the deposition, as they had done repeatedly in emails and on calls, counsel for the Banks acknowledged the immense amount of time and effort that had gone into creation of the Spreadsheet.

---

[3] During negotiations, JPMC offered to cover the costs of a third-party vendor to review and redact the documents, which was not a feasible solution as it wholly ignored EVCP's confidentiality concerns and obligations—EVCP could not disclose the unredacted files to a third-party vendor.

### E. JPMC's Use of the Spreadsheet

JPMC relied heavily on the Spreadsheet and other materials and information EVCP produced in opposition to class certification briefing. ECF 135. Because EVCP had analyzed and organized the data in precise accordance with JPMC's specifications, doing work that otherwise would have taken JPMC's experts and counsel significantly longer to perform, JMPC did not have to aggregate or assess or format the data for its briefing. JPMC received a dense and valuable ready-made, plug-and-play exhibit for its brief. Unsurprisingly, given the parties' reliance on the Spreadsheet and the tremendous amount of information it contained, the Court, too, cited it multiple times in its opinion and order on class certification. ECF 171.

### F. EVCP's Costs

EVCP requested reimbursement of the costs it incurred in responding to subpoenas, as detailed in the invoices previously submitted to the Court. Specifically, EVCP seeks $1,562,145.63 in reimbursement, which includes its costs in responding to the subpoenas, the Motion to Compel, costs in connection with the preparation and production of the Spreadsheet, review, redaction, and production of other documents and information, the deposition, and related attorneys' fees.[4] This amount includes costs for services by: (1) Ms. Feldman; (2) her chief legal counsel, Elena Vournas; (4) Malisa Haley, another key member of the former EVCP team; (4) PricewaterhouseCoopers LLP ("PwC"), the analysts who were involved in the original claim program; (5) Ankura Consulting LLC, an e-discovery firm who assisted with document assembly and redaction that was also involved in the original program; and (6) legal counsel.

The rates charged by all of the above-referenced parties were reasonable and appropriate. This is not a case where a party was free to shop around for the cheapest vendor or select analysts based on costs. Ms. Feldman and her team all participated in the original Program, had authorization to access these highly confidential materials, and had institutional knowledge that was imperative to the review and production completed here. Without their expertise and familiarity with these files, it would have been impossible to provide the Banks with the demanded information. The rates of EVCP's legal counsel were also standard, reasonable, and on par with the rates charged by counsel for the Banks.

## ARGUMENT

Under Federal Rule of Civil Procedure 45 and well-settled law in this district, non-parties must be "protect[ed]" from "significant expense resulting from compliance" with subpoenas. Fed. R. Civ. P. 45(d)(2)(B)(ii); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 3822883, at *10; *In re Novartis & Par Antitrust Litig.*, No. 18 CIV. 436, 2020 WL 3317203, at *6 (S.D.N.Y. June 18, 2020) (awarding costs for "reasonable expenses and attorneys' fees").

As detailed above, EVCP undertook significant efforts to respond to the subpoenas. Instead of spending many weeks to review and ultimately produce heavily redacted documents,

---

[4] While the Banks continued to expand the list of datapoints sought for weeks, EVCP also spent considerable time compiling, reviewing and redacting documents in the event that an agreement on the Spreadsheet was not reached. The fees and costs incurred reflect efforts undertaken on both tracks.

which would have been essentially useless to the Banks and which would have been produced after class certification briefing was concluded, EVCP, meeting the Banks' specific demands, reassembled its staff and created and produced the Spreadsheet, which included over 50,000 datapoints and required the careful review and analysis of over 350 claimant and registrant files and other materials—all in a period of less than four weeks.

Any argument that EVCP's work in connection with the Spreadsheet was simply EVCP's "choice" is wrong. After this Court's Order on the Motion to Compel, EVCP promptly informed JPMC that it was contemplating seeking reconsideration or clarification of the Court's ruling as to RFP 15, because, among other things, the process of reviewing and redacting more than 300 individuals' files to purge them of potentially identifying information would be a massive project that in the end still might not fully protect the claimants' identities. EVCP noted that the Order contained no specific deadline and that EVCP would take the time permitted under the applicable rules to decide whether to seek reconsideration. EVCP also explained that if it determined not to seek reconsideration, the process of preparing the files would not be quick, as EVCP would have to reassemble teams of former employees, set up a process and quality controls, and take into account the upcoming Passover and Easter holidays.

In response JPMC expressed its strong desire to receive the requested information on a highly expedited basis, in time to be used in its soon-to-be submitted class-certification opposition. JPMC also wanted EVCP to provide certain data that was not called for by the Court's Order, such as aggregated or pseudonymized information about claimants' medical histories and anonymized pseudonyms for witnesses to the abuse.

So a written agreement was reached, and EVCP worked nonstop, including through the holidays, to provide the Banks with the requested material on the requested timetable. This was no unilateral "choice" by EVCP. EVCP was caught in the crosshairs of this litigation and managed to execute a comprehensive, user-friendly document that captured all of the information requested while preserving the anonymity of the claimants. And when the Spreadsheet was provided, JPMC found it satisfactory pursuant to the Agreement, which acknowledged that the Spreadsheet would satisfy EVCP's obligations to produce documents and information in response to RFP 15.

While the costs incurred undoubtedly were significant, they were reasonable and proportionate considering the immense, valuable work that went into the productions and the highly sensitive materials at issue. It is indisputable that the Spreadsheet (and other documents and materials produced) required a huge amount of work to prepare and were prepared to the Banks' specifications and satisfaction. EVCP should not be left to try to pay the people who did that important work out of its own (non-existent) pockets.

Other factors courts consider when assessing whether to award costs under Rule 45 also support the award of costs here. For example, courts assess whether "the nonparty has an interest in the outcome of the case" and "whether the nonparty can more readily bear the costs." *Namenda*, 2017 WL 38228833, at *10 (citations omitted). *First*, EVCP has no stake in this litigation and is a disinterested non-party. *Second*, it is indisputable that the Banks are in better position to bear the costs of compliance than EVCP; $1.56 million split between two large financial institutions is not an undue burden.

For the foregoing reasons, EVCP respectfully requests that the Court award EVCP full reimbursement of all costs incurred by EVCP in responding to subpoenas issued by the Banks.

Respecfully submitted,

/s/ Andrew Schapiro
Andrew Schapiro