WILMERHALE

August 1, 2023

Felicia H. Ellsworth

+1 617 526 6687 (t)
+1 617 526 5000 (f)
felicia.ellsworth@wilmerhale.com

**BY ECF**
Hon. Jed S. Rakoff
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

   Re: *Gov't of the U.S. Virgin Islands v. JPMorgan Chase Bank, N.A.*, Case No. 1:22-cv-10904-JSR (S.D.N.Y.); *Jane Doe 1 v. JPMorgan Chase Bank, N.A.*, Case No. 1:22-cv-10019-JSR (S.D.N.Y.)

Dear Judge Rakoff:

  JPMC submits this letter brief in opposition to the Epstein Victims' Compensation Program's ("EVCP") extraordinary request for $1.56 million in fees (to be split between JPMC and Deutsche Bank). Under Federal Rule of Civil Procedure 45, a non-party may be reimbursed for the reasonable costs of complying with a subpoena, and JPMC has readily agreed to reimburse those reasonable expenses for third parties in this litigation. *Contant v. Bank of America Corp.*, 2020 WL 3260958 at *4-*5 (S.D.N.Y. June 17, 2020). But EVCP did not comply with JPMC's subpoena, it resisted at every turn, even after this Court compelled it to produce responsive documents. The costs it incurred are thus not the reasonable costs of compliance, but rather the result of a four-month effort to resist JPMC's subpoena: first, by forcing and fighting a motion to compel, and then (once EVCP had lost), by refusing to produce redacted documents as ordered and instead insisting upon using expensive billers to create a spreadsheet of responsive data. JPMC never agreed to bear these costs. Indeed, it made clear it would oppose a fee request. JPMC has offered and is willing to pay $170,000—one half of the actual costs of compiling the spreadsheet and roughly equivalent to JPMC's estimate of the amount that the EVCP would have incurred if it had simply complied with the Court's order by redacting documents and producing them. EVCP's request for nearly 10x that amount should be rejected.

**I. Background**

  EVCP's resistance to JPMC's subpoena began with its attempt to evade service by driving away from a process server, and its counsel refusing to accept service despite having been emailed the subpoena and engaging on it substantively. EVCP then refused to agree to a chambers call to seek relief from the Court in light of EVCP's intransigence, despite JPMC's request for availability for a call on February 10, 12, 14, 15, and 21. It was only when JPMC was forced to resort to the remedy this Court affords through individual Rule 2(c) that EVCP counsel finally agreed to join a call.

  On March 1, 2023, JPMC moved to compel RFPs 1, 7-9, and 12-19 of its subpoena. ECF 55. EVCP opposed, claiming the request was an improper attempt to "invade the EVCP's confidential files." ECF 58 at 2. On March 24, the Court issued an order (the "Order") compelling production of the majority of JPMC's RFPs, including, significantly, RFP 15, which was the focal point of the briefing on the motion to compel and sought documents sufficient to show the claims and allegations made by each EVCP applicant. ECF 70.

Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109

Beijing Berlin Boston Brussels Denver Frankfurt London Los Angeles New York Palo Alto San Francisco Washington

Despite the Order, EVCP continued to resist, this time through new counsel. Recognizing EVCP's concerns surrounding the sensitive nature of the requested documents, JPMC offered to pay for a third-party vendor who would work at EVCP's direction to make any redactions necessary prior to production. EVCP rejected that offer. Instead, it insisted on hiring expensive attorneys to produce a spreadsheet that extracted categories of information on the applicants from the underlying documents. EVCP stated that if the banks did not agree to its proposal then it would appeal this Court's Order or file for reconsideration, which would have extended the dispute past the class certification deadline.

Forced to choose between not getting the information in time and EVCP's insisted-upon work-around to the Order, on April 18, 2023, JPMC, Deutsche Bank, and EVCP entered into an agreement regarding the proposed spreadsheet.[1] EVCP reserved its right to seek costs, but at no point during or after the negotiations did it ever provide the banks with any estimate of the costs it expected to incur. JPMC never agreed to pay for any costs, and, like EVCP, reserved all rights to oppose any attempt to force the banks to pay for EVCP's self-imposed work-around of the Order.

## II.   EVCP's Costs Resisting Compliance Are Not Recoverable

EVCP's fee request ignores case law holding that legal fees incurred to challenge or resist a subpoena are not recoverable. *See In re World Trade Center Disaster Site Litig.*, 2010 WL 3582921, at *2-*3 (S.D.N.Y. Sept. 14, 2010); *Contant*, 2020 WL 3260958 at *5 (time spent seeking to avoid compliance with a subpoena by preparing documents to be used to quash the subpoena was not reimbursable). EVCP's fee claim runs afoul of this case law. For example, $271,333 of its claimed "costs of compliance" are the fees it spent opposing the subpoena and litigating the motion to compel, on which JPMC ultimately substantially prevailed.

## III.   EVCP's Costs Are Not Reasonable

Even assuming that JPMC should pay half of any amount of EVCP's costs, that amount is not $1.56 million. EVCP engaged a vendor, PwC, to compile the spreadsheet, and has furnished invoices indicating that PwC incurred $348,117 in so doing. This amount is reasonable as it roughly approximates JPMC's estimate of the costs that a third-party vendor would have incurred to use contract review attorneys to redact the underlying files. This is what the Order contemplated, and JPMC has offered to reimburse its share of this expense (with Deutsche Bank bearing its proportionate share). ECF 59 (ordering that PII must be "redacted" from EVCP documents). While EVCP contends that these redactions would have taken too much time to complete or would have yielded information that would not have been helpful, it has never adequately explained why. Indeed, the Court provided clear guidance on how to approach redactions. March 16, 2023 Tr. 80-81 ("[A]nything that on its face would identify who the person was will be redacted. But that's not the same as saying, oh, if you wanted to do a lot of homework after you've got this, you might be able to figure out who that is. That would be too burdensome

---

[1] The banks' engagement with the EVCP on its proposal was born of necessity, not agreement to its approach. EVCP argues that JPMC requested over 100 questions, which mistakenly counts answers to questions such as "yes," "no," or "unknown." In any event, with the few exceptions that EVCP notes, the answers to those questions were precisely the information that the Court ordered EVCP to provide via production of the redacted files.

… [and] impossible to carry out."). Had EVCP followed these straightforward directions and used the independent contract review attorneys JPMC was prepared to pay for, it would have easily avoided the high costs of its insistent work-around.

EVCP's use of high-priced attorneys and personnel in lieu of using contract reviewers to apply redactions and produce documents is not reasonable. The fees incurred by EVCP's most senior personnel following the Court's Order—those of its Chief Legal Counsel ($98,817), Chief of Staff ($4,845), and Administrator ($485,088)—are nearly double PwC's fees for actually creating the spreadsheet. The costs of using these expensive billers to address EVCP's own independent interests in responding to the subpoena are not "compliance costs" and are not reimbursable. *See In re World Trade Center Disaster Site Litig.*, 2010 WL 3582921, at *2 ("Mount Sinai evidenced a view that its reputation was at issue and sought to defend it by resisting the subpoena. Hiring outside counsel is appropriate when a nonparty wishes to resist a *subpoena duces tecum* for its own independent reasons, but that is not a sufficient reason to charge legal costs to the issuing party."); *Contant*, 2020 WL 3260958, at *5 (fees for strategy not reimbursable).

Nor does Ms. Feldman's seven-hour deposition on May 2, 2023, explain her high fees. First, EVCP has not apportioned the fees that were attributable to the deposition (though JPMC presumes that her May fee, or $36,588 out of her total fee of $485,088 from March through May, is the outer limit on such costs). Second, EVCP wrongly contends that the deposition was merely to lay the foundation for the spreadsheet. JPMC issued a deposition subpoena to Ms. Feldman in February 2023, before the Order, and the agreement between the parties acknowledges that the deposition would "include, but [would] not be limited to, discussion of Mrs. Feldman's authentication of the chart."

The unreasonableness of EVCP's fees is confirmed by the fact that the Epstein Estate has also refused to bear them despite having an agreement in place to do so. In February 2022, the Estate agreed to reimburse the reasonable legal fees and expenses incurred by EVCP with respect to matters that required involvement of EVCP and/or Ms. Feldman. On the July 20, 2023 chambers call, the Estate, like the banks, stated it would not bear the costs and expressed disappointment that EVCP had not provided estimates of the costs of their unilateral approach before embarking on it.

If ordered to pay some part of EVCP's fees, those costs should be split equally among the two banks. While Deutsche Bank did not move to compel, it sought access to the information. It was invited to and participated in every meet and confer with EVCP and JPMC after the motion to compel, identified the categories to include in the spreadsheet, and signed onto the agreement memorializing the understanding between the parties. It requested that EVCP include certain categories that were important to its case, that JPMC would have forgone. All of the arguments that EVCP makes in its letter — if in fact they are meritorious, which JPMC disputes — are equally persuasive with respect to Deutsche Bank (as EVCP recognizes). *See* ECF 189 at 5 (requesting that the Court "split" the costs between the bank).

\* \* \*

For the foregoing reasons, the relief requested by EVCP should be denied.

Respectfully submitted,

Hon. Jed S. Rakoff
August 1, 2023
Page 4

WILMERHALE

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth

cc: Counsel of record