quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S EMAIL ADDRESS
andrewschapiro@quinnemanuel.com

August 3, 2023

Hon. Jed S. Rakoff
U.S. District Court, S.D.N.Y.
500 Pearl St., New York, NY 10007-1312

**By ECF**
Re:   22-CV-10019 (JSR*)*; 22-CV-10018 (JSR); 22-CV-10904 (JSR)

Dear Judge Rakoff:

Non-Party Jordana H. Feldman submits this letter in reply to the submissions of JPMC (ECF 191) and DB (22-CV-10018, ECF 96).

### A.   EVCP Complied with JPMC's Subpoena and Acted in Good Faith

EVCP fought the extraordinarily broad Subpoenas and Motion to Compel, which called for nearly all EVCP documents, in good faith to protect claimant privacy.[1]  EVCP was right to have done so: This Court ruled against JPMC on a number of its sweeping requests for production.[2]  JPMC's suggestion that the production of the anonymized Spreadsheet should not be considered work undertaken to comply with the Subpoena is not only inherently specious; it contradicts a carefully negotiated Agreement among the parties to address this precise issue.  *See* Exhibit A.

JPMC's claim that the Banks were "[f]orced to choose" the Agreement is ludicrous.  A defunct, non-party entity "forced" two of the world's largest financial institutions, who had a Court order in hand, to accept the anonymized Spreadsheet in lieu of the underlying files?  What actually happened is this:  The Banks wanted something that was not included in the Court's order—an extremely fast turnaround on the production, along with easily usable data, and access for JPMC's experts.  EVCP, too, wanted something not included in the Court's order—a level of enhanced protection for claimants' privacy and a production that was fully anonymized and stripped of any individual claimant information.  Either party was free to ask the Court to grant its wish.  But instead—laudably—the parties negotiated and reached an agreement on their own, without having to involve the Court.

### B.   A Third-Party Vendor Would Not Work Here & JPMC's Reimbursement Offer is Insufficient

JPMC's offer to pay for a third-party vendor was untenable.  The entire point of allowing EVCP to redact the raw files was to maintain confidentiality.  That is why the Court ordered that even the redacted

---

[1] EVCP never evaded service.  Former counsel for EVCP agreed to accept service; despite this, JPMC inexcusably sent a process-server who confronted Ms. Feldman without warning while she was in her car with her children.

[2] Recovering costs incurred opposing a subpoena is appropriate in certain circumstances, such as here where EVCP prevailed on a number of issues and opposed the subpoena to protect critical confidentiality interests.  *See, e.g.*, *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 2015 WL 10767718, at *2 (S.D.N.Y. Oct. 6, 2015) (awarding attorneys' fees incurred in connection with opposing motion to compel).  Here, the costs incurred in connection with opposing the subpoena totaled $271,333.62.

quinn emanuel urquhart & sullivan, llp
ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

documents were "to be produced on an attorneys-eyes-only basis." ECF 70.  Bringing in a crew of random reviewers would have defeated that purpose.  Further, a new vendor with no knowledge of the underlying files could not have produced the information as accurately, speedily, or efficiently as the EVCP team, nor could it have done so at a lower cost.[3]

JPMC offers to reimburse EVCP for "one half of the actual costs of compiling the spreadsheet" but arbitrarily identifies only those costs incurred by PwC.  JPMC provides no justification for ignoring the significant work of the rest of the EVCP team, without whose efforts the production could not have been completed in the expedited timetable and with the required care and precision.

### C. EVCP's Costs Were Reasonable

Contrary to JPMC's claims, EVCP did not "hir[e] expensive attorneys to produce [the Spreadsheet]."  To comply with the Banks' extensive and time-intensive demands and to safeguard the privacy of claimants, EVCP recalled the former team members who were previously authorized to look at this highly confidential information and were intimately familiar with the files and materials.[4]  PwC incurred $346,091.50; former EVCP staff incurred $588,750.51; and Ankura incurred $58,856.00.  Each of these figures is reasonable.  Among other things: (1) To prepare the fully anonymized Spreadsheet, the EVCP team had to undertake a painstaking review of each individual file and any collateral information to extract responsive information; (2) EVCP delivered this information in a user-friendly format that saved the Banks the significant expense of having experts and others review the underlying files, and identify, extract, and organize relevant information; (3) Ms. Feldman managed the efforts of her team and personally reviewed all produced materials to ensure accuracy; and (4) multiple quality-control checks were necessary to ensure appropriate PII redactions.

JPMC argues that EVCP never provided the banks with an estimate of costs it expected to incur.  But JPMC never requested any estimate, at any point of the negotiations, as it did with other subpoenaed parties.

Contrary to JPMC's suggestion otherwise and as explained in the Estate's letter dated August 1, 2023 (*see* Exhibit B), the Estate has not refused to reimburse EVCP's fees on the basis that the fees were unreasonable.  Instead, the Estate has taken the position that the Banks should be responsible for costs EVCP incurred in connection with the subpoenas.  If the Court does not grant EVCP's instant request in full, EVCP respectfully asks the Court to order the Estate to reimburse EVCP for any remaining costs.

For the foregoing reasons and those detailed in the July 21, 2023 letter (ECF 189), Ms. Feldman respectfully requests that the Court award EVCP full reimbursement of all costs incurred by EVCP in responding to subpoenas issued by the Banks,[5] or at the very least all costs minus $271,333.62, which represents costs incurred to oppose the Subpoenas.[6]

---

[3] Further, the application of redactions to 361 files spanning tens of thousands of pages would not have been a simple exercise.  The files are replete with highly sensitive, personal information beyond claimant names and addresses—hometowns, schools, family members, jobs.  Redaction would have required hundreds of hours of meticulous review to ensure that no disclosed information implicated PII.

[4] Only two of these individuals are attorneys, and outside counsel did not participate in the preparation of the Spreadsheet.

[5] Total costs are $1,562,145.33, which includes $993,698.01 in production fees for EVCP team members, $271,333.62 in fees in opposition to the Subpoenas, and $297,113.70 in legal fees not related to opposition to the Subpoenas.

[6] EVCP takes no position on how much of the costs should be apportioned to DB.  DB was an active participant in both the negotiations of the Agreement and deposition and should be responsible for some part of EVCP's incurred costs (despite any *prior* agreement with DB).

Respecfully submitted,

/s/ Andrew Schapiro

Andrew Schapiro