**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,<br><br>              Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>              Defendant/Third-Party Plaintiff,<br><br>v.<br><br>JAMES EDWARD STALEY,<br><br>              Third-Party Defendant. | Case No. 22-cv-10904 (JSR) |
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>              Defendant/Third-Party Plaintiff,<br><br>v.<br><br>JAMES EDWARD STALEY,<br><br>              Third-Party Defendant. | Case No. 22-cv-10019 (JSR) |

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW
IN OPPOSITION TO SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ...............................................................................................................................2

    I.       JPMC's *Doe* Indemnification Claim, *USVI* Claims, And Employment Claims Remain Legally Viable Post-Settlement ................................................................2

    II.      JPMC May Seek Indemnification Of Civil Penalties Paid To USVI And May Pursue Recovery Of Civil Penalties As Ordinary Damages For Staley's Breach Of Fiduciary Duty ...................................................................................................5

    III.     Disputed Material Facts Preclude Summary Judgment On JPMC's Indemnification Claims.................................................................................9

    IV.     JPMC's Employment Claims Are Timely ...........................................................14

CONCLUSION..........................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  175 F. Supp. 3d 44 (S.D.N.Y. 2016) ........................................................................22

*Allstate Ins. Co. v. Am. Transit Ins. Co.*,
  977 F. Supp. 197 (E.D.N.Y. 1997) ............................................................................3

*City of Pontiac General Employees' Ret. Sys. v. MBIA, Inc.*,
  637 F.3d 169 (2d Cir. 2011) ....................................................................................18

*Cohen v. S.A.C. Trading Corp.*,
  711 F.3d 353 (2d Cir. 2013) ....................................................................................18

*Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*,
  2012 WL 3930112 (S.D.N.Y. Sept. 10, 2012) ........................................................16

*Halpern v. Rosenbloom*,
  459 F. Supp. 1346 (S.D.N.Y. 1978) ..........................................................................3

*Leist v. Simplot*,
  638 F.2d 283 (2d Cir. 1980) ......................................................................................6

*Levitt v. Bear Stearns & Co.*,
  340 F.3d 94 (2d Cir. 2003) ......................................................................................22

*Levy v. Young Adult Inst., Inc.*,
  103 F. Supp. 3d 426 (S.D.N.Y. 2015) ................................................................15, 21

*Merchants Bank of New York v. Credit Suisse Bank*,
  585 F. Supp. 304 (S.D.N.Y. 1984) ............................................................................3

*In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr.
  20, 2010*,
  841 F. Supp. 2d 988 (E.D. La. 2012) ........................................................................7

*Orsini v. Kugel*,
  9 F.3d 1042 (2d Cir. 1993) ........................................................................................5

*Pfizer, Inc. v. Stryker Corp.*,
  348 F. Supp. 2d 131 (S.D.N.Y. 2004) ........................................................................8

*Matter of Poling Transp. Co.*,
  784 F. Supp. 1045 (S.D.N.Y. 1992) ........................................................................10

*Rolon v. U.S. Amada, Ltd.*,
    1997 WL 724798 (S.D.N.Y. Nov. 18, 1997) ..........................................................10

*Schmidt v. McKay*,
    555 F.2d 30 (2d Cir. 1977)......................................................................................18

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008).....................................................................................18

*Steinberg v. Sherman*,
    2008 WL 2156726 (S.D.N.Y. May 8, 2008) ...........................................................10

*In re Tops Holding II Corp.*,
    646 B.R. 617 (Bankr. S.D.N.Y. 2022)....................................................................15

*U.S. Bank Nat'l Ass'n as Tr. to Bank of Am., N.A. v. KeyBank, Nat'l Ass'n*,
    2023 WL 2745210 (S.D.N.Y. Mar. 31, 2023) ........................................................15

*United States v. Whitehill*,
    2018 WL 459300 (W.D.N.Y. Jan. 18, 2018) .............................................................8

*Willensky v. Lederman*,
    2015 WL 327843 (S.D.N.Y. Jan. 23, 2015) ...........................................................15

*Yukos Cap. S.A.R.L. v. Feldman*,
    977 F.3d 216 (2d Cir. 2020).....................................................................................16

**State Cases**

*17 Vista Fee Assocs. v. Tchrs. Ins. & Annuity Ass'n of Am.*,
    259 A.D.2d 75 (1st Dep't 1999) ..............................................................................10

*Bd. Of Managers of Olive Park Condo. v. Maspeth Properties, LLC*,
    170 A.D.3d 645 (2d Dep't 2019) .............................................................................10

*Cascade Builders Corp. v. Rugar*,
    147 N.Y.S.3d 739 (2021)............................................................................................3

*Cont'l Indus. Grp., Inc. v. Ustuntas*,
    181 N.Y.S.3d 527 (2022)..........................................................................................16

*Denton Leasing Corp. v. Breezy Point Surf Club, Inc.*,
    518 N.Y.S.2d 634 (1987)............................................................................................3

*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*,
    595 N.Y.S.2d 999 (Sup. Ct. 1993) .............................................................................7

*Epiphany Cmty. Nursery Sch. v. Levey*,
 94 N.Y.S.3d 1 (2019)..................................................................15, 18

*Gibbs v. Breed, Abbott & Morgan*,
 710 N.Y.S.2d 578 (2000).......................................................................8

*Hartshorne v. Roman Cath. Diocese of Albany*,
 161 N.Y.S.3d 384 (2021)......................................................................16

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
 12 N.Y.3d 132 (2009)...........................................................................18

*Laub v. Faessel*,
 745 N.Y.S.2d 534 (2002)....................................................................8, 9

*McCarthy v. Turner Const., Inc.*,
 17 N.Y.3d 369 (2011)............................................................................6

*McDermott v. City of New York*,
 406 N.E.2d 460 (N.Y. 1980).................................................................10

*N.Y. v. Mitchell/Giurgola Assocs.*,
 492 N.Y.S.2d 371 (1985)..................................................................7, 11

*Portfolio Recovery Assocs., LLC v. King*,
 14 N.Y.3d 410 (2010)..........................................................................15

*Riviello v. Waldron*,
 47 N.Y.2d 297 (1979) ............................................................................3

*Roman v. Radio Frequency Co.*,
 616 N.Y.S.2d 824 (1994)......................................................................15

*Rosado v. Proctor & Schwartz, Inc.*,
 66 N.Y.2d 21 (1985) .....................................................................2, 4, 5

*Saphir Int'l, SA v. UBS PaineWebber Inc.*,
 807 N.Y.S.2d 58 (2006)........................................................................18

*Vestal v. Pontillo*,
 72 N.Y.S.3d 610 (2018).................................................................16, 17

## State Statutes

N.Y. Gen. Obl. Law § 15-108.............................................................3, 4, 5

N.Y. Gen. Obl. Law § 15-108(c) ............................................................2, 3

N.Y. C.P.L.R. § 1401 ...................................................................................................3, 6

N.Y. C.P.L.R. § 213(8) ....................................................................................................15

N.Y. C.P.L.R. § 213(8)'s ..................................................................................................23

**PRELIMINARY STATEMENT**

In November 2022, Jane Doe filed a lawsuit against JPMC on behalf of herself and Epstein's victims that contained allegations pointed directly at one single individual: former JPMC senior executive James ("Jes") Staley.   Approximately one month later, USVI filed a largely identical lawsuit that pointed again to one individual, Staley.   Staley, it turns out, was not merely Epstein's banker.   He was tantamount to Epstein's family and vice-versa.   According to Doe, he was also Epstein's accomplice.   While vouching for Epstein and protecting him from inside JPMC, Doe alleges that Staley personally observed and participated in Epstein's sex crimes and raped her. Staley disputes the truth of these allegations and their veracity will ultimately be decided by the jury.   But whether for the harm JPMC has suffered from Doe's lawsuit, or any potential future liability JPMC may incur from USVI's claims, the responsibility rests on Staley—the man Doe and USVI singled out in their complaints over *ninety-seven* and *forty-one* times, respectively.

To avoid responsibility, Staley argues that JPMC's settlement with Doe absolves him, that JPMC shares any possible culpability Staley holds for Epstein's alleged sex-trafficking, and that JPMC should have been aware of Staley's conduct all along.   Neither the law nor record supports any of these attempts.

While it is true that JPMC's settlement with Doe, upon approval, will extinguish JPMC's specific claim of contribution in that lawsuit, it will have no legal effect on the remaining claims. While indemnification depends on Staley's complete culpability, the jury will hear more than sufficient evidence to support that conclusion (demanding denial of summary judgment).   And while it is true that JPMC may have had reason to question certain of Staley's conduct with regard to his relationship with Epstein before Doe sued, JPMC neither sustained damages, nor had knowledge of the breadth of Doe's allegations—including the accusation that Staley personally

1

participated in Epstein's crimes—until Doe filed her complaint and later identified Staley as the man who raped her.  In short, no statute of limitations defense applies to the requisite damages and facts that did not come to light until just last November.

## ARGUMENT

Staley advances four arguments, each meritless.  First, Staley argues that the Doe settlement bars claims beyond just contribution in that case—contrary to statutory language, uniform case law, and common sense.  Second, he argues that JPMC cannot recover from Staley the civil penalties caused by him—but overlooks that JPMC may indeed seek indemnification for any civil penalties paid to USVI and may pursue recovery of any civil penalties as the ordinary damages of Staley's breach of fiduciary duty.  Third, Staley argues that no reasonable juror could find JPMC to be non-culpable, precluding indemnification—ignoring this Court's prior rulings and a disputed record that precludes summary judgment.  Finally, Staley attempts to avail himself of a statute of limitations—ignoring both disputed facts and the accrual of JPMC's claims.  All four arguments fail.

## I.      JPMC'S *DOE* INDEMNIFICATION CLAIM, *USVI* CLAIMS, AND EMPLOYMENT CLAIMS REMAIN LEGALLY VIABLE POST-SETTLEMENT

The parties agree that final approval of the *Doe* settlement would extinguish JPMC's associated contribution claim in that case.[1]  N.Y. Gen. Obl. Law § 15-108(c) ("A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.").  Consistent with this plain language, they also agree that the settlement has no legal impact on JPMC's (1) indemnification claim in *Doe*, (2) contribution and indemnification claims

---

[1] Extinguishment of JPMC's contribution action in the *Doe* case would occur only upon final approval of the settlement.  If the settlement is not finally approved, JPMC's contribution claim in the *Doe* case would not be extinguished.

in *USVI*, and (3) faithless servant claim.  *See, e.g.*, *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24-25 (1985); *Merchants Bank of New York v. Credit Suisse Bank*, 585 F. Supp. 304, 311 (S.D.N.Y. 1984); *Denton Leasing Corp. v. Breezy Point Surf Club, Inc.*, 518 N.Y.S.2d 634, 635 (1987).  That much is undisputed.

But Staley does not stop there.  He seeks to extend New York's statutory bar to contribution beyond its text and stated purpose to preclude recovery of the *Doe* settlement as *damages* for JPMC's *independent* breach of fiduciary duty claim.  That argument contradicts law and reason.

The governing New York statute applies only to "contribution," nothing more.  N.Y. Gen. Obl. Law § 15-108.  And because it abrogates a common law remedy, Section 15-108 must be given a "strict construction."  *Halpern v. Rosenbloom*, 459 F. Supp. 1346, 1352 (S.D.N.Y. 1978). Thus, courts have uniformly held that the "contribution" bar does not encompass independent causes of action (such as breach of fiduciary duty), including where the damages for those separate claims include the amount paid by the defendant as part of a settlement.  *See, e.g.*, *Merchants Bank of New York v. Credit Suisse Bank*, 585 F. Supp. 304, 310 (S.D.N.Y. 1984) (dismissing contribution claim under § 15-108(c) but allowing fraud claim which included as damages "payment of the settlement"); *Cascade Builders Corp. v. Rugar*, 147 N.Y.S.3d 739, 743 (2021) (bar on contribution after settlement does not preclude breach of contract claim); *Allstate Ins. Co. v. Am. Transit Ins. Co.*, 977 F. Supp. 197, 200 (E.D.N.Y. 1997) (bar on contribution after settlement does not preclude fiduciary duty claim).

Nor is the fiduciary duty claim somehow a disguised contribution claim, as Staley asserts. The contribution bar of "section 15-108 is meant to be read in conjunction with the contribution rights set forth in article 14."  *Riviello v. Waldron*, 47 N.Y.2d 297, 306 (1979).  And Article 14 defines contribution as the ability to seek "liability for damages for the *same* personal injury, injury

to property or wrongful death."  *See* N.Y. C.P.L.R. § 1401 (emphasis added); *see, e.g.*, *Halpern*, 459 F. Supp. at 1353 ("Although this section does not require that the defendants be liable on the same theory, it is essential that they be liable for the *same* injury.") (emphasis added).

Here, JPMC's breach of fiduciary duty claim involves different elements and seeks compensation for a different type of injury than the Doe and USVI complaints.  Whereas Doe sought damages for the physical and emotional harm suffered by Epstein's victims, and USVI seeks an amorphous (and still to be adjudicated) range of remedies, JPMC's fiduciary duty claim seeks to recover for the harm done by continuing to do business with Epstein—harm that JPMC would have avoided had Staley fulfilled, rather than breached, his fiduciary duties.  The fiduciary duty claim does not ask Staley to compensate the Doe class so JPMC does not have to; it seeks damages to JPMC in the form of litigation costs and any associated payments or awards.

In his motion to dismiss, Staley repeatedly highlighted the "independent" nature of JPMC's fiduciary duty claim.  *See* Dkt. 126 at 18.[2]  He acknowledged that "[n]either Employment Claim depends on the outcome of the plaintiffs' claims against JPMorgan," and that JPMC could be found not liable to Doe and USVI, "yet still prevail against Mr. Staley on the Employment Claims and secure disgorgement of his salary or compensatory damages independent of what it could have owed the plaintiffs."  *Id.*  Those admissions make clear that the breach of fiduciary duty claim is nothing like a contribution claim subject to section 15-108 and cannot be barred by it.

Staley's contention that the independent breach of fiduciary duty claim is somehow a "disguised contribution claim" (Mem. at 8) is specious.  The cases he invokes all address third-

---

[2] Staley filed his motion for summary judgment and supporting materials in both Case No. 22-cv-10904 (JSR) and Case No. 22-cv-10019 (JSR).  All docket entry numbers herein refer to Case No. 22-cv-10904 (JSR).

party plaintiffs seeking recovery from the third-party defendants for the same injury. *See Rosado*, 66 N.Y.2d at 24-25; *Anderson*, 2011 WL 3480945, at *5. Those courts found only that the "indemnity" claims there at issue were better understood as contribution claims because those third-party plaintiffs could not hope to show at trial that they were "not responsible to any degree." *Rosado*, 66 N.Y.2d at 24-25.[3] That is not the case here. Staley cites no case (and JPMC is aware of none) adopting his novel and self-serving hypothesis that an independent claim becomes a disguised contribution claim barred by section 15-108a merely because it is subject to a comparative fault defense.

## II.    JPMC MAY SEEK INDEMNIFICATION OF CIVIL PENALTIES PAID TO USVI AND MAY PURSUE RECOVERY OF CIVIL PENALTIES AS ORDINARY DAMAGES FOR STALEY'S BREACH OF FIDUCIARY DUTY

Staley next asserts that "JPMorgan cannot offload the costs of equitable relief, disgorgement, or civil penalties" through "*any* of JPMorgan's four causes of action." Mem. at 10-11. As JPMC has explained at length, USVI is itself not entitled to disgorgement or civil penalties, *see* Dkt. 228 at 10-13, and this Court's recent opinion denying Staley's motion to dismiss underscores the point. The Court held that the TVPA "does not contain a comprehensive remedial scheme" and "[n]owhere does the TVPA specify how [] damages are to be calculated or how they are to be allocated." Dkt. 293 at 12. And while USVI seeks to transform § 1595(d)'s reference to "appropriate relief" into an express grant of authority to seek civil penalties and disgorgement, the

---

[3] In *Rosado*, the court found that the third-party plaintiff was not free from fault because it breached a duty to the plaintiff to provide a product that was not defective. 66 N.Y.2d at 27. In *Anderson*, the court found that the indemnification clause in the contract had not been triggered, and that that nature of the relationship between the parties was not one that would give rise to common law indemnification. 2011 WL 3480945 at *4-5. And *Orsini v. Kugel*, 9 F.3d 1042 (2d Cir. 1993), also cited by Staley, does not address whether a particular claim is a disguised contribution claim. The court merely held that section 15-108 does not bar a contribution claim when the settlement occurs after a jury verdict. *See id.* at 1047-49.

Court explained § 1595(d) does nothing more than "grant the State attorneys general standing to bring *parens patriae* actions"—not to enforce federal law.  *Id.*  The Court thus need not reach the question of Staley's liability for any alleged penalties or disgorgement.[4]

If the Court nonetheless permits USVI to seek civil penalties or disgorgement, JPMC agrees that it cannot seek *contribution* from Staley for that relief.  But Staley is flat wrong that JPMC cannot recover for civil penalties through "*any* of [JPMC's] four causes of action."  Mem. at 10-11.

*First*, JPMC may seek indemnification for penalties under New York common law.  "Common-law indemnification is generally available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer."  *McCarthy v. Turner Const., Inc.*, 17 N.Y.3d 369, 375 (2011).  Here, as this Court has explained, "it is possible that, at trial, the jury could decline to find that JPMorgan purposely engaged as a company in any misconduct but nevertheless reach the opposite conclusion as to Staley and hold JPMorgan vicariously liable on that basis" alone.  Dkt. 293 at 19; *see infra* III.  "Were this to happen, JPMorgan would be entitled to indemnification" for civil penalties, no less than other forms of relief.  *Id.*

Staley fails to address this principle.  Rather, he focuses on two issues JPMC does not contest: that "penalties and damages … are quite different in nature," *Leist v. Simplot*, 638 F.2d 283, 313 n.35 (2d Cir. 1980), and that *contribution* for civil penalties is unavailable under C.P.L.R. §1401 (defining claim of contribution for "damages").  Staley's sole argument as to *indemnification* rests on a misreading of two cases and New York public policy.

---

[4] In addition, Staley and JPMC agree that USVI's "lingering claims for damages on behalf of Epstein's victims" is "plainly not recoverable by the USVI."  Mem. at 9 n.5.  Should the Court disagree, however, Staley does not dispute that any such damages would be eligible for contribution under N.Y. C.P.L.R. § 1401.

Staley first invokes *Elican Holdings, Inc. v. Hudson Oil Refining Corp.*, which noted in passing that "public policy considerations preclude either indemnification or contribution for the consequences of the illegal acts."  466 N.Y.S.2d 22, 23 (1983).  But *Elican Holdings* relied upon the Supreme Court's decision in *Texas Indus., Inc. v. Radcliff Materials, Inc.*, which refused to find an implied right of contribution under the Sherman Act in part because its provision of treble damages "reveals an intent to punish past, and to deter future, unlawful conduct."  451 U.S. 630, 639 (1981).  That principle is inapposite here, where Staley acknowledges JPMC would only prevail upon its New York common-law indemnification claim *if it is entirely blameless.  See, e.g.*, *Trustees of Columbia Univ. in the City f N.Y. v. Mitchell/Giurgola Assocs.*, 492 N.Y.S.2d 371, 375 (1985) ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.").  Thus, were a jury to "hold JPMorgan vicariously liable," Dkt. 293 at 19, it would have found no culpable conduct by JPMC to punish or deter.  Rather, the party in need of punishment and deterrence would be the culpable agent, Staley.  Allowing for indemnification against Staley would thus serve the aims of civil penalties.  *See id.* at 14 ("Shifting liability to a culpable party in this manner is perfectly consistent with the statutory scheme.").[5]

---

[5] To be sure, indemnification of civil penalties is sometimes found void for public policy in the contractual context where a non-culpable insurer would shoulder the financial burden for a bad actor.  *See, e.g.*, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 841 F. Supp. 2d 988, 1003-1006 (E.D. La. 2012) (prohibiting a party from shifting liability for civil penalties through contractual indemnification as a matter of "public policy" because the "primary objectives" of civil penalties "are to punish and deter"); *Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 595 N.Y.S.2d 999, 1010 (Sup. Ct. 1993).  That is the very inverse of the circumstance contemplated here—where the *indemnitor* (Staley) would be the culpable actor and the *indemnitee* (JPMC) would be non-culpable.

Staley also invokes *United States v. Whitehill*, 2018 WL 459300 (W.D.N.Y. Jan. 18, 2018), noting that "the court rejected the third-party claims [for civil penalties] under New York law." Mem. at 10. But *Whitehill* did not hold that indemnification for civil penalties is categorically unavailable as a matter of law, as it did for contribution. Rather, the indemnification claim there failed because the principal defendants were at least "partially at fault" or "responsible in [some] degree." *Whitehall*, 2018 WL 459300, at *4. On the record in this case, that question is one for the jury to decide, rendering summary judgment improper. *See infra* III.[6]

*Second*, any civil penalties that JPMC pays to USVI may be recoverable from Staley as ordinary damages for the breach of fiduciary claim, for which JPMC will be entitled to any damages that are the "direct and proximate" result of Staley's conduct. *Laub v. Faessel*, 745 N.Y.S.2d 534, 536 (2002). Staley's conduct must only be "a substantial factor in causing an identifiable loss." *Gibbs v. Breed, Abbott & Morgan*, 710 N.Y.S.2d 578 (2000).

Nothing about these principles excludes civil penalties. While Staley treats JPMC's breach of fiduciary duty claim as an attempt to "offload the costs of … civil penalties," no different than JPMC's contribution and indemnification claims, it plainly is not the same. Mem. at 11. Again, as Staley himself recognized at the motion to dismiss stage, the fiduciary duty claim alleges the breach of an "independent" legal duty that JPMC could have brought in a standalone damages action. Dkt. 126 at 18; *see supra* I. JPMC is entitled to any damages factually and proximately

---

[6] For these same reasons, JPMC may recover any punitive damages awarded from Staley through indemnification if (and only if) the jury agrees that its liability is solely vicarious through Staley. While Staley passingly suggests otherwise, Mem. at 10 n.6, he again invokes only an inapposite contractual indemnification case. *See Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 142 (S.D.N.Y. 2004). And, JPMC again reiterates that USVI may not seek punitive damages in the absence of compensatory damages, which USVI has not demonstrated. Dkt. 228 at 8-10.

caused by Staley's breach of duty, including civil penalties that JPMC suffers in the same or a different case.

Staley fails to show anything to the contrary. The sole authority he mentions is *Stanley v. Skowron*, where the court refused to award the amount of an SEC settlement for a breach of fiduciary duty claim brought by Morgan Stanley. 958 F. Supp. 2d 417, 427 (S.D.N.Y. 2013). But that settlement only comprised *disgorgement*, and Morgan Stanley "was not damaged by the disgorgement of the Settlement Amount to the SEC" because it was "not money that Morgan Stanley was ever entitled to retain." *Id.* Here, JPMC agrees that it may not recover from Staley any amount of disgorgement awarded to the USVI (and, again the TVPA authorizes no such remedy, *see* Dkt. 228 at 11 n.4). But any civil penalties awarded to USVI would be discrete pecuniary harm suffered by JPMC and thus cognizable damages in a breach of fiduciary duty action against Staley so long as the jury finds "some reasonable connection" between Staley's conduct and the civil penalties. *Laub*, 745 N.Y.S.2d at 536. Summary judgment on JPMC's ability to recover any civil penalties as damages for its fiduciary claim against Staley should therefore be denied.

## III. DISPUTED MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT ON JPMC'S INDEMNIFICATION CLAIMS

Unable to argue that the *Doe* settlement bars JPMC's indemnity claims, Staley ignores a hotly disputed factual record and covertly resurrects an argument already rejected by this Court: that indemnification is unavailable because USVI (and Doe) premised their claims on conduct that was not "delegated exclusively" to Staley by JPMC. This argument fails.

First, summary judgment is not proper on Staley's so called "exclusive delegation" theory because Staley extracts that theory from a narrow line of cases that do not govern here. The cases Staley invokes have nothing to do with indemnification claims for an employer's vicarious liability

incurred as a result of an executive officer's conduct; indeed, they do not involve employer-employee indemnification at all.  The cases instead arise in the unique context of indemnification between contractors or owners and subcontractors.  *See, e.g.*, *Bd. Of Managers of Olive Park Condo. v. Maspeth Properties, LLC*, 170 A.D.3d 645, 646-47 (2d Dep't 2019) (citing *17 Vista Fee Assocs. v. Tchrs. Ins. & Annuity Ass'n of Am.*, 259 A.D.2d 75, 80 (1st Dep't 1999)).[7]  And they rest on authority indicating that *only* such indemnification is subject to any "exclusive delegation" rule.  *See 17 Vista Fee Assocs.*, 259 A.D.2d at 80 (citing *Rogers v. Dorchester Assocs.*, 32 N.Y.2d 553, 566 (1973) ("basic and satisfactory principles of common-law indemnification" require indemnification of "those who are only vicariously liable, as the employer of a negligent employee … *or* … the owner of a building who contracts with an independent contractor *exclusively responsible* for maintenance of the building or parts of it" (emphasis added))).  The cases thus do not disturb well-settled New York law holding that indemnification is appropriate in the context of an employer/employee relationship where an employer is vicariously liable for its employees.  *See McDermott v. City of New York*, 406 N.E.2d 460, 463 n.4 (N.Y. 1980).  Indeed, as the cases acknowledge, indemnification remains available notwithstanding any "exclusive delegation" rule when a defendant is held liable for tortious conduct that is "solely the result of" a third party's misconduct.  *Bd. Of Managers*, 170 A.D.3d at 647.  The question, then, is not whether there was an "exclusive delegation," but whether the jury could find JPMC liable solely because of Staley's knowledge or actions.  *See Rolon v. U.S. Amada, Ltd.*, 1997 WL 724798, at *8 (S.D.N.Y. Nov. 18, 1997).

---

[7] Likewise, the notion that no right of implied indemnification exists "when the proposed indemnitee retains a duty it owes directly to the plaintiff," *Steinberg v. Sherman*, 2008 WL 2156726, at *6 (S.D.N.Y. May 8, 2008), was also developed in the context of implied contractual indemnification.  *See Matter of Poling Transp. Corp.*, 784 F. Supp. 1045, 1048–49 (S.D.N.Y. 1992), *as amended* (Mar. 11, 1992).

*Second*, when the appropriate standard is applied, it is clear that summary judgment is not warranted.  Rather than endorsing any "exclusive delegation" standard, this Court has already held that "JPMorgan *would be entitled to indemnification*" if the jury "hold[s] JPMorgan vicariously liable" for Staley's misconduct while "declin[ing] to find that JPMorgan purposely engaged as a company in any misconduct."  Dkt. 293 at 19 (emphasis added); *accord, e.g. Trustees of Columbia Univ.*, 492 N.Y.S.2d at 375.  And, drawing all reasonable inferences in JPMC's favor, the record is replete with evidence from which a reasonable jury could so conclude.

As to Staley's knowledge, *if* the jury were to conclude Staley had knowledge of Epstein's alleged misconduct and that such knowledge should be imputed to JPMC, that same jury will hear evidence that JPMC otherwise (setting Staley apart) lacked the requisite knowledge.  For example, the jury will hear evidence that JPMC could not determine whether Epstein was actually under federal investigation for alleged sex trafficking despite its efforts to speak to Epstein, his lawyers, and the federal government to ascertain the veracity of news articles regarding Epstein's conduct.  CSMF ¶¶ 106, 109-12, 148-52.  The jury will hear that JPMC reviewed Epstein's account activity but found no "smoking guns" or evidence tying it to unlawful conduct.  CSMF ¶ 136; *see also* CSMF ¶¶ 122-41.  The jury will also hear that the concerns of other JPMC employees related to the reputational risk that Epstein posed to the Bank and not because they believed he was engaged in ongoing unlawful activity.  CSMF ¶¶ 142-47, 153-60.  Indeed, the jury will hear that innumerable JPMC employees would have insisted on exiting Epstein had they known he was engaged in ongoing illegal activity.  CSMF ¶¶ 146-47, 153; *see also* CSMF ¶ 121 ("There are terrible allegations, which, if true, meant that he knew a lot of things sometimes during that period that we didn't.  And I would include in that Steve Cutler and Mary Erdoes.").  That alone is reason enough to deny Staley's motion.

As to Staley's actions, there is substantial evidence in the record of Staley's central role in the management of Epstein's banking relationship with JPMC from which the jury could hold JPMC liable.  For example, the jury will hear evidence that JPMC employees and senior executives, across multiple functions, all viewed Staley as the senior and primary JPMC employee responsible for the Epstein relationship.  CSMF ¶¶ 56-62.  The jury will also hear how Staley regularly "vouched" for Epstein to others at the Bank, including how he advertised that he would trust his own daughters with Epstein.  CSMF ¶¶ 63-69.  And the jury will hear how others at JPMC relied on Staley's views as a senior bank executive and saw him as the "final court of appeal" on Epstein matters.  CSMF ¶ 71; *see also* CSMF ¶¶ 70-73.

That same jury will further hear that, as the employee primarily responsible for the Epstein relationship and who regularly vouched for him, Staley was "involved every step of the way" and was routinely "putting his stamp on the question of whether" the Bank should continue to interact with Epstein.  CSMF ¶ 74; *see also* CSMF ¶¶ 86-90.  For example, the jury will hear how Staley exercised control over who was assigned to work on Epstein's accounts, even *after* Staley had transitioned to JPMC's Investment Bank.  CSMF ¶¶ 75-80.  And Staley was the person to whom Epstein complained when he had an issue with his accounts.  CSMF ¶¶ 81-85.

The jury will also see the substantial and important evidence of how Staley injected himself into and interfered with the plans and recommendations of others at JPMC to exit Epstein. Following Epstein's arrest in 2006, Staley took it upon himself to inform one of his then-subordinates that Epstein had "adamantly [sic] denie[d] the ages," CSMF ¶ 91, and was involved in the decision to keep Epstein as a client but to make him a "reactive" customer, CSMF ¶¶ 92-93. In 2007, Staley himself requested meetings to discuss Epstein's pending guilty plea.  CSMF ¶ 94. And in 2008, even though "no one want[ed]" Epstein to remain a client, *see* CSMF ¶ 95, Staley

told others he wanted to keep Epstein's accounts despite his guilty plea, CSMF ¶¶ 97-98.  Indeed, even though other employees and executives within the Private Bank did not even want to bother seeking approval under the Bank's felon policy to retain Epstein following his felony conviction, CSMF ¶¶ 100-01, Staley took it upon himself to "confer" with the Bank's then-general counsel, Stephen Cutler, and to secure that approval, *see* CSMF ¶ 102.

The jury will further hear how Staley's interference in these decisions only grew after he became CEO of the Investment Bank.  For example, at the January 7, 2011, rapid response meeting, then-CEO of the U.S. Private Bank, Catherine Keating, made clear that nobody involved in the meeting wanted to retain Epstein *but* that the reason he remained a client was "all due to Jes's personal relationship."  *See* CSMF ¶ 104.  When Keating and JPMC's then-Global Head of Compliance William Langford met with Staley shortly thereafter to discuss the allegations against Epstein and the reputational risk he posed to the Bank, Staley assured them that Epstein was actually innocent of any unlawful conduct and that his original conviction in 2008 was going to get "thrown out," CSMF ¶¶ 105-06, 108-09, told Langford to speak to Epstein's lawyers, CSMF ¶ 109, and had his assistant send Stephen Cutler the contact information for Ken Starr, Epstein's senior attorney, CSMF ¶ 110.  Staley later even provided Cutler and then-General Counsel of the Investment Bank Jonathan Schwartz contact information for another of Epstein's lawyers, Jay Lefkowitz, whom they contacted as part of their effort to determine whether Epstein was under investigation for sex trafficking.  CSMF ¶¶ 112, 150.  And while Cutler and Schwartz were trying to make that assessment, CSMF ¶¶ 111-12, 148-51, Staley was calling Epstein "family," CSMF ¶¶ 16-23, and scheming with Epstein for ways to "get[] steve cutler the comfort he needs," CSMF ¶ 113.  Indeed, Staley was the one who reported to others at the Bank that Epstein had denied the allegations of human trafficking reported in the press.  CSMF ¶¶ 86, 106.  By August 2011, when

the new CEO of the U.S. Private Bank, John Duffy, recommended exiting Epstein to Staley, CSMF ¶¶ 115-17, Staley "rebuffed" that recommendation, made it "very clear" that he wanted Epstein to remain a client, and continued to be the only reason why Epstein was not exited, CSMF ¶¶ 67, 117-18, 120.  Staley's interference continued through the end of 2011, when he asked Cutler to meet with Epstein twice to reconsider his advice that the Bank should not do business with Epstein. CSMF ¶ 119.

Lastly, the jury will hear how, upon Staley's departure from JPMC in early 2013, JPMC employees nearly immediately sought yet again to exit Epstein as a client.  CSMF ¶ 161.  Indeed, the jury will hear how, without Staley there to advocate or vouch for Epstein, the Bank exited him in August 2013.  CSMF ¶ 162-63.

As the Court noted in denying Staley's motion to dismiss, both Doe and USVI "predicate their claims heavily on allegations of misconduct by Staley."  Dkt. 293 at 19.  That obviously remains true, and there is ample evidence in the record from which a jury could conclude that JPMC is liable solely because of Staley.  As such, Staley's motion for summary judgment on JPMC's indemnification claims should be denied.[8]

## IV.   JPMC'S EMPLOYMENT CLAIMS ARE TIMELY

Finally, Staley attempts but fails to invoke a statute of limitations defense.

---

[8]  Staley's argument that the *Doe* settlement precludes indemnification because it encompasses class members who were harmed by Epstein or any Epstein sex-trafficking venture in 1998, shortly before Staley became head of JPMC's Private Bank in 1999, is misplaced.  The *Doe* settlement that has already been preliminarily approved by the Court is clear that it is not in any way an admission of "any liability, negligence, fault, or wrongdoing of any kind," *Doe 1 v. JPMorgan Chase Bank, N.A.*, 22-cv-10019-JSR (June 22, 2023), ECF No. 181-1, and a jury may still conclude that Staley is solely responsible for any injury to members of the settlement class even if the injury occurred outside of Staley's tenure at JPMC.

Where, as here, a corporation brings a breach of fiduciary duty claim against a former officer, New York law[9] provides that the claim must be brought within six years, or (for actions based upon fraud) "two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8); *see id.* §§ 213(1), (7); *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 434-35 (S.D.N.Y. 2015). Staley contends that JPMC's breach of fiduciary duty and faithless servant claims are untimely because he left JPMC in 2013, and JPMC had "all of the information it needed to pursue" them when it investigated its relationship with Epstein in 2019. Mem. at 17.

But as this Court has recognized, whether a party knew or was on inquiry notice of potential claims is a "mixed question of law and fact." *Epiphany Cmty. Nursery Sch. v. Levey*, 94 N.Y.S.3d 1, 5 (2019). Thus, "[w]here it does not conclusively appear that a plaintiff had knowledge of facts from which the injury could reasonably be inferred, … the question should be left to the trier of fact." *Roman v. Radio Frequency Co.*, 616 N.Y.S.2d 824, 824 (1994) (reversing grant of summary judgment on notice inquiry).

Staley's timeliness argument fails on several grounds. First, JPMC's fiduciary duty claims did not accrue until it was injured by Staley's breach in November 2022, when the *Doe* lawsuit was filed. Second, the undisputed facts do not "conclusively" demonstrate that JPMC could have discovered Staley's breaches of duty in 2019. While it knew *some* things about *some* aspects of

---

[9] While Delaware law applies to the *merits* of JPMC's breach of fiduciary duty claim, Staley correctly identifies New York law as governing the statute of limitations issue. *See In re Tops Holding II Corp.*, 646 B.R. 617, 693 n.365 (Bankr. S.D.N.Y. 2022) (collecting cases); *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 415 (2010); *Willensky v. Lederman*, 2015 WL 327843, at *5 n.8 (S.D.N.Y. Jan. 23, 2015); *U.S. Bank Nat'l Ass'n as Tr. to Bank of Am., N.A. v. KeyBank, Nat'l Ass'n*, 2023 WL 2745210, at *12 (S.D.N.Y. Mar. 31, 2023) (New York law governs limitations and also "determines the related questions of what events serve to commence an action and to toll the statute of limitations").

Staley's relationship with Epstein at that time, JPMC did not know and could not have discovered the extent of the Staley/Epstein relationship and Staley's alleged conduct with regard to the claimed victims of Jeffrey Epstein until much later.  Finally, a reasonable jury could find that Staley actively concealed the extent of his relationship with Epstein, and that JPMC only learned of key allegations and facts from Doe herself in addition to third parties in the *Doe* and *USVI* cases.

### A.      The Fiduciary Duty Claim Did Not Accrue Until The *Doe* Lawsuit

Staley's argument that JPMC's breach of fiduciary duty claim is untimely overlooks that JPMC's claim did not "accrue"—and therefore, the statute of limitations did not begin to run— until JPMC suffered damages from that breach in November 2022 when the *Doe* lawsuit was filed. A breach of fiduciary duty claim consists of: (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages directly caused by the defendant's misconduct. *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020).  Because damages are an essential element, a claim accrues only after the injured party incurs damages from the breach. *See, e.g.*, *Hartshorne v. Roman Cath. Diocese of Albany*, 161 N.Y.S.3d 384, 387 (2021) (claim accrued "only [] when the damages from the alleged breach were sustained"); *Cont'l Indus. Grp., Inc. v. Ustuntas*, 181 N.Y.S.3d 527, 531 (2022) (claim accrued when plaintiff "first suffered damages"); *Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, 2012 WL 3930112, at \*8 (S.D.N.Y. Sept. 10, 2012) (finding that claim accrued after breach of duty when shares dropped below par value).

In *Vestal v. Pontillo*, 72 N.Y.S.3d 610 (2018), for instance, the beneficiary of a life insurance policy brought a breach of fiduciary duty claim against an agent who submitted a "fatally inaccurate" insurance application.  Even though the breach occurred when the application was submitted years earlier, the court held the claim did not accrue until the insurance company denied

the beneficiary's claim.  According to the court: "The claim accrues as soon as it 'becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint' and, because damages are an element of a breach of fiduciary duty claim, that occurs when actual damage has been sustained."  *Id*. at 616 (quoting *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993)).

So too here.  JPMC's fiduciary duty claim did not accrue at the time of Staley's conduct, when he left the firm, or even when JPMC ██████████████████████████████ ████████████████  Even if JPMC may have had reason to know of Staley's conduct (a disputed issue to be sure, *see infra*), there are no facts, let alone undisputed facts, showing that JPMC suffered damages prior to the *Doe* lawsuit.  Before then, JPMC had not yet expended resources or incurred fees in defending the *Doe* and *USVI* lawsuits—precisely the damages JPMC seeks here. *See* Dkt. 70 at 13-14 (prayer for relief).

Because damages are an essential element of its claim, and because JPMC did not suffer damages until the *Doe* action in November 2022, it could not have sued Staley for breach of fiduciary duty before that time.[10]

### B.    Disputed Material Facts Preclude A Finding That JPMC Was Adequately On Notice Of Its Claims Against Staley Before The *Doe* Action Was Filed

Aware he has no limitations defense to a claim that accrued in November 2022, Staley tries to shoulder the heavy burden to prove that *undisputed* facts compel a finding that JPMC was already legally on notice of its claims against Staley.  But determining whether a party had

---

[10] Nor can Staley reasonably contend that JPMC suffered legally cognizable reputational damages prior to the *Doe* lawsuit.  JPMC's Third Party Complaint alleged that as a result of Staley's breach of fiduciary duty, "JPMC suffered adverse publicity from press coverage *of the lawsuits from Doe and the USVI*." *See* Dkt. 70, ¶ 64 (emphasis added).  No facts in the record (let alone undisputed facts) show that JPMC suffered reputational damage attributable to Staley's breach prior to the *Doe* action.

sufficient knowledge to discover a fraud[11] "necessarily involves a dispute concerning state of mind and conflicting interpretations of perceived events, [and] summary judgment is ordinarily not a proper vehicle for the resolution of such a dispute." *Schmidt v. McKay*, 555 F.2d 30, 37 (2d Cir. 1977).

Moreover, Staley must show that undisputed facts *conclusively* demonstrate that JPMC had sufficient knowledge from which to infer that it had a claim against him. *Epiphany*, 94 N.Y.S.3d at 5. Put another way, the evidence must do far more than merely raise suspicion. "[A]lthough a plaintiff may not shut his eyes to facts which call for investigation, *mere suspicion will not suffice* as a ground for imputing knowledge of the fraud." *Saphir Int'l, SA v. UBS PaineWebber Inc.*, 807 N.Y.S.2d 58, 59-60 (2006) (emphasis added); *see also Schmidt*, 555 F.2d at 37. So-called "inquiry notice" does not alone start the clock; it must be undisputed on summary judgment that the "inquiry" would have actually uncovered the fraud. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 362 (2d Cir. 2013) ("[I]f some inquiry is made, the court will impute knowledge of what a plaintiff in the exercise of reasonable diligence should have discovered concerning the fraud, and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud.") (cleaned up); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir. 2008). As Staley acknowledges (Mem. at 20), JPMC must have had sufficient knowledge to allege all of the elements of its claim in a complaint. *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (2009). "[A] fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint." *City of Pontiac General Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011).

---

[11] It is undisputed that JPMC's breach of fiduciary duty and faithless servant claims sound in fraud. *See* Mem. at 14.

Staley cannot meet this burden.  At best, and operating with 20/20 hindsight, he can point only to evidence that might give rise to suspicion of inappropriate conduct—not evidence that Staley knew of or participated in Epstein's alleged sex trafficking, and certainly not evidence showing that (1) Staley violated his fiduciary duty to JPMC; and that (2) Staley acted as a faithless servant in a material and substantial fashion by working against JPMC's interests in favor of his own and Epstein's interests.  Staley completely ignores the substantial evidence that JPMC did not know—and could not have known until this litigation began—the allegations, testimony, and documents revealed in the complaints and discovery that converted JPMC's suspicions into actionable knowledge that Staley violated his duties to JPMC and that Epstein had damaging information about Staley that ensured Staley would act in Epstein's interest.



Staley points to JPMC's ████████████████████████. Mem. at 17.  ████████████████████████████████████. Mem. at 16-17 (quoting SUF ¶¶ 60, Staley Ex. 4). ████████████████████████████████████████████████. *Id*. at 17.

But the jury hearing this evidence could also reasonably conclude JPMC was correct in only *suspecting* that Staley may have acted inappropriately.  Back at the time, JPMC could only speculate about the import of the emails it had. ████████████████████████████████

The reality is that, in 2019, JPMC did not know of Staley's knowledge of or participation in Epstein's alleged scheme, or of Staley's abandonment of JPMC's interests in favor of his own

and Epstein's.  Further investigation back at the time would not have turned JPMC's suspicions

into actual knowledge because the facts of Staley's breaches of duty were simply beyond JPMC's

reach.  For example, JPMC did *not* know, and had no way of finding out, the information alleged

by Doe and otherwise obtained through discovery in this litigation, including:

- Doe's allegation that Staley "personally spent time with young girls whom he met through Epstein on several occasions" (*Doe 1 v. JPMorgan Chase Bank, N.A.*, 22-cv-10019-JSR (Jan. 13, 2023), ECF No. 36 ("*Doe* FAC"), ¶ 227);

- Doe's allegation that Staley "personally visited young girls at Epstein's apartments located at 301 East 66th Street" (*id.*);

- Doe's allegation that Staley "personally observed Epstein around young girls" (*id.*);

- Doe's allegation that Staley personally observed "Epstein sexually grab young women in front of him." (*id.*; *see also id.* ¶ 226);

- Doe's allegation that a "powerful financial executive" (later confirmed to be Staley) sexually assaulted her with Epstein's permission (*id.* ¶ 107);

- ██████████████████████████████████████████████ (CSMF ¶ 1);

- ██████████████████████████████████████████████ (CSMF ¶ 1);

- █████████████████ (CSMF ¶ 1);

- ██████████████████████████████████████████████ (CSMF ¶¶ 13-28);

- Settlements between the Epstein estate and multiple women expressly excluding Staley by name from releases (CSMF ¶ 5); and

- ██████████████████████████████████████████████ (CSMF ¶ 3).

A reasonable jury could find that this unavailable evidence was necessary to put JPMC on notice that it had actual claims against Staley. Only after the *Doe* action was filed was JPMC privy to the additional information it needed to connect the dots.

JPMC sought and received from this Court leave for additional time to determine whether to implead Staley until after Doe was deposed. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ Moreover, when JPMC learned in discovery that several women (██████████ explicitly excluded Staley by name from their releases in settlements with Epstein's estate, JPMC had a still stronger basis to conclude that Staley was personally involved in Epstein's crimes.

Had JPMC filed a complaint against Staley in 2019, without the benefit of the above information, it would not have survived dismissal. As Staley has argued (Dkt. 126 at 20-21), the heightened pleading standard of Fed. R. Civ. P. 9(b) applies to a breach of fiduciary duty claim. *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 443 (S.D.N.Y. 2015). And, while JPMC had information suggesting that Staley was closer to Epstein than previously believed, it was not until it learned of the information from the *Doe* litigation that it was able to plead sufficient facts to state a claim. As the Second Circuit has observed, "[i]t makes little sense from a policy perspective to require specific factual allegations—on pain of dismissal in cases of this sort—and then to punish the pleader for waiting until the appropriate factual information can be gathered by dismissing the

complaint as time barred." *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 104 (2d Cir. 2003), *overruled on other grounds Merck & Co. v. Reynolds*, 559 U.S. 633 (2010).

To reiterate, summary judgment is appropriate only if the undisputed facts show *conclusively* that JPMC had knowledge of its fiduciary duty and faithless servant claims or could have discovered them. Because a reasonable jury could conclude that JPMC did not have such knowledge, and where JPMC could not have discovered critical facts prior to the *Doe* lawsuit in November 2022, summary judgment should be denied.[12]

### C.   Staley's Active Concealment Tolled The Limitations Period

Staley's active concealment of his activities also independently tolls the limitations period. *See, e.g.*, *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 66 (S.D.N.Y. 2016) (under federal and New York law, "the statute of limitations is tolled where a plaintiff shows that a defendant committed fraudulent acts intended to conceal its misconduct and that the plaintiff's ignorance of the concealed misconduct was not a product of its own lack of reasonable diligence"). JPMC alleges, and its witnesses have confirmed in depositions, that Staley hid his activities and the extent of his relationship with Epstein from his JPMC colleagues. That he did so should come as no surprise, as both Doe and USVI allege that Staley knew of Epstein's alleged sex trafficking operation, including by engaging in sexual activity with young women Epstein procured and engaging in sexual assault.

---

[12] Staley's assertion that information in JPMC's possession was enough for USVI to allege Staley's knowledge or participation is inaccurate and in any event does not provide a basis for summary judgment.   USVI plainly had more information at its disposal in December 2022 than JPMC did in 2019.  For instance, ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████.   *See* CSMF ¶ 2. And even armed with that information, in its 2022 complaint, USVI merely alleged that there is evidence to "suggest" that Staley "may have been" involved in Epstein's activities. Dkt. 119, ¶ 53.

Staley's concealment continued for years. ███████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ CSMF ¶ 51.  Staley subsequently asserted to Barclays that

"he has had no contact whatsoever with Mr. Epstein at any time since taking up his role as Barclays

Group CEO in December 2015," despite emails showing that ████████████ acted as an

intermediary for messages between Staley and Epstein thereafter.  CSMF ¶¶ 50-55.  And even

after Epstein's arrest in 2019, Staley continued to conceal his relationship with Epstein and his

inappropriate activity.  His insistence in the U.K. press that he had nothing more than a

"professional relationship" with Epstein and that "I thought I knew him well and I didn't" was

designed to (and did) throw ████████ Barclays, and JPMC off the scent.  CSMF ¶ 55.

But Staley more than concealed what he knew and did; he affirmatively—and falsely—

stated in his separation agreement that he had reported all code of conduct violations.  Dkt. 70,

¶ 21.  There is no genuine dispute, of course, that Staley's failure to report to JPMC his own bad

acts, his familial relationship with Epstein constituting a conflict of interest, and his distribution

of confidential information to Epstein, including while he dispositively weighed in on JPMC's exit

decision at several points in time, constituted a code of conduct violation.

In light of Staley's deceptions, a reasonable jury could conclude that Staley engaged in

active concealment, thereby tolling the limitations period even in the absence of N.Y. C.P.L.R.

§ 213(8)'s application.

## CONCLUSION

For these reasons, Staley's motion for summary judgment should be denied.

23

Dated: September 8, 2023

Respectfully submitted,

**MASSEY & GAIL LLP**

Leonard A. Gail (*pro hac vice*)
Rachel Morse (*pro hac vice*)
50 East Washington Street, Suite 400
Chicago, IL 60602
(t) (312) 283-1590
lgail@masseygail.com
rmorse@masseygail.com

**JONES DAY**

Bethany K. Biesenthal (*pro hac vice*)
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(t) (312) 269-4303
(f) (312) 782-8585
bbiesenthal@jonesday.com

Charlotte Taylor
51 Louisiana Ave. NW
Washington, DC 20001
(t) (202) 879-3872
(f) (202) 626-1700
ctaylor@jonesday.com

**WILMER CUTLER PICKERING
   HALE AND DORR LLP**

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth (*pro hac vice*)
John J. Butts (*pro hac vice*)
Andrés O'Laughlin (*pro hac vice*)
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com
andy.olaughlin@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Alan E. Schoenfeld
Christopher Bouchoux
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
alan.schoenfeld@wilmerhale.com
christopher.bouchoux@wilmerhale.com

*Attorneys for JPMorgan Chase Bank,
N.A.*

24