WILMERHALE

September 18, 2023

**By ECF**

Felicia H. Ellsworth

+1 617 526 6687 (t)
+1 617 526 5000 (f)
felicia.ellsworth@wilmerhale.com

Hon. Jed S. Rakoff
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Jane Doe 1 v. JPMorgan Chase Bank, N.A. v. James E. Staley*, 22-cv-10019 (S.D.N.Y.) – Letter in Support of JPMorgan Chase Bank, N.A.'s Assertion of the Mediation Privilege

Dear Judge Rakoff:

Mr. Staley's pursuit of privileged documents arising out of the successful mediation between JPMC and the *Doe* class should be denied. As explained below, privileged communications on which JPMC has no intention to rely have no relevance to assessing the objective reasonableness of the *Doe* settlement, or any other issue relating to JPMC's claims or Mr. Staley's defenses. And Mr. Staley's effort to pierce the privilege has no basis in either this Court's prior orders or applicable law.

Following JPMC's settlement with the *Doe* class, the Court allowed Mr. Staley to seek limited discovery into the "reasonableness" and "causation" of that settlement. *See* July 7, 2023 Minute Entry (22-cv-10904). Specifically, the Court ordered that:

> JPMorgan shall produce documents relevant to the reasonableness of its settlement (specifically, documents concerning settlement negotiations, any descriptions of those negotiations, and mediation submissions) as well as documents relating to causation of the settlement (specifically, going to JPMorgan's motive for settling) by no later than 7/14/23. It shall also designate a 30(b)(6) witness to testify as to the settlements reasonableness and negotiations as well as the motive behind it; the deposition should take place no later than 7/21/23.

*Id.*

JPMC has long since complied with that order. First, JPMC produced non-privileged materials and served two separate privilege logs on July 14, 2023, including one for documents withheld on the basis of the mediation/settlement privilege that reflected communications between JPMC's counsel, class counsel, and the mediator, Judge Layn Phillips (ret.)—each of whom

objected to those materials' production.[1] Second, JPMC designated a 30(b)(6) witness and offered two separate dates when that designee would be available to testify.

Mr. Staley sat on both categories of discovery. As to the privileged mediation communications, Mr. Staley's counsel chose not to pursue those, telling counsel for JPMC that he was "going to hold on the materials that Judge Phillips is objecting to right now." *See* Ex. 1. And as to the deposition, Mr. Staley chose not to pursue it during the time frame set by the Court either, preferring to wait for the resolution of his objections to JPMC's assertion of privilege. *See* Ex. 2.[2] Instead, Mr. Staley waited two months—until five weeks before trial—to bring this untimely application. On that basis alone, Mr. Staley's application should be denied. No litigant should be rewarded for such dilatory conduct, which appears designed solely to distract JPMC from trial preparation in the last five weeks before trial. The time for objections to JPMC's claim of privilege is long past.

Putting aside their untimeliness, Mr. Staley's arguments fail on the merits.

First, the Court's July 7, 2023 Order did not abrogate any applicable privilege. As discussed above, Mr. Staley sought discovery into the reasonableness and causation of JPMC's settlement with the *Doe* class. In first applying for this discovery months ago, Mr. Staley disclaimed seeking privileged communications. Thus, unsurprisingly, the Court did not address the question of Mr. Staley's entitlement to privileged materials in its order. It strains credulity to suggest, as Mr. Staley now does, that the Court granted Mr. Staley discovery that he specifically did not seek. And it belies reason to suggest the Court silently took the drastic and extraordinary step of piercing the privilege but used no language to that effect. Mr. Staley clearly understands this, as at no point in his letter briefing on the documents withheld on the basis of the attorney-client privilege did he argue that JPMC was barred from asserting privilege because of the language of the Court's Order. *See* Dkts. 248, 252 (22-cv-10904). The same is true of the mediation privilege.

Second, the mediation privilege is valid and applicable here. Federal and state law broadly shield confidential mediation communications from discovery. As the Second Circuit has explained, it "vigorously enforce[s] the confidentiality provisions of [its] own alternative dispute resolution" because "[c]onfidentiality is an important feature of [] mediation" and "essential" to the "vitality and effectiveness" of any alternative dispute resolution process. *In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011); *see also Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*,

---

[1] JPMC also produced a privilege log for documents withheld on the basis of the attorney-client privilege and work produce doctrine, which is the subject of separate letter briefing currently pending before the Court. *See* Dkts. 248, 250, 252 922-cv-10904). As to the mediation privilege, class counsel withdrew its objection during Mr. Staley's September 15, 2023 telephone application.

[2] JPMC agreed on August 1 that it would not argue that Mr. Staley had waived the opportunity to take a 30(b)(6) deposition under the Court's July 7 Order out of time.

608 F.2d 928, 930 (2d Cir. 1979) ("The guarantee of confidentiality permits and encourages counsel to discuss matters in an uninhibited fashion[.]"); *Fields-D'Arpino v. Rest. Assocs, Inc.*, 39 F. Supp. 2d 412, 417 (S.D.N.Y. 1999) ("Successful mediation … depends upon the perception and existence of mutual fairness throughout the mediation process.  In this regard, courts have implicitly recognized that maintaining expectations of confidentiality is critical.").  Rule 408 of the Federal Rules of Evidence likewise prohibits using "conduct or a statement made during compromise negotiations" to "prove or disprove the validity … of a disputed claim."  Fed. R. Evid. 408.  And, even beyond Rule 408, the parties in this case, including Mr. Staley's counsel, signed a mediation confidentiality agreement in which they agreed that "all statements of the parties" are inadmissible pursuant to Rule 408, and that "no statement made during the course of the mediation or any materials generated for the purpose of the mediation may be offered into evidence, disseminated, published in any way, or otherwise publicly disclosed."  Ex. 3.  Indeed, addressing this *exact same* confidentiality agreement in another mediation administered by Judge Phillips, another court noted the contract's "broad[]" reach and "direct, unequivocal" meaning that exceeds even Rule 408's protections.  Dkt. 354, at 8, *In re USA Gymnastics*, Adv. Pro. No. 19-50012 (Bankr. S.D. Ind. March 23, 2020).  That alone should end the inquiry.

Looking to state law, the result is the same, regardless of whether California (where Judge Phillips is located) or New York law applies.  *See Lego v. Stratos Lightwave, Inc.*, 224 F.R.D. 576, 578 (S.D.N.Y. 2004) (under New York's choice of law principles, "the governing law is that 'of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation").

California law could not be clearer in protecting the communications at issue.  Under § 1119(a) of the California Evidence Code, "[n]o evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, *and the disclosure of the evidence shall not be compelled, in any ... civil action …*."  Cal. Evid. Code § 1119(a) (emphasis added).  Section 1119(c) further states that "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."  Cal. Evid. Code § 1119(c).  California courts have held that these confidentiality provisions "are clear and absolute," and "[e]xcept in rare circumstances, they must be strictly applied and do not permit judicially crafted exceptions or limitations, even where competing public policies may be affected."  *Cassel v. Superior Court*, 244 P.3d 1080, 1083 (Cal. 2011).  Thus, under California law, the only statement or writing made in connection with mediation which can be disclosed without the express consent of both parties is the agreement reached during the mediation itself, which Mr. Staley of course already has.

Although New York does not have a specific statutory provision governing the mediation privilege, New York courts have also routinely recognized the need to maintain confidentiality over mediation materials.  *See, e.g.*, *NYP Holdings, Inc. v. McClier Corp.*, 836 N.Y.S.2d 494, 2007 WL 519272, at *4-5 (Sup. Ct Jan 10, 2007) (refusing to direct disclosure, or even production for in camera review, of documents created in connection with mediation); *see also Irizarry v. Hayes*, 66 Misc.3d 1223(A), 2020 WL 809380, slip op. at n.14 (N.Y. Sup. Ct. Feb. 5, 2020) ("If the mediation process … were subject to an invasion through disclosure, depositions and other devices, the entire purpose of mediation—as the alternative to litigation—would be

extinguished."). And federal courts sitting in diversity in New York have applied the mediation privilege to deny access to mediation materials when the party seeking the documents has failed to establish a heightened standard of need entitling them to such information. *Accent Delight Int'l Ltd. v. Sotheby's*, 505 F. Supp. 3d 281, 289 (S.D.N.Y. 2020); *accord In re Teligent*, 640 F.3d at 58 ("A party seeking disclosure of confidential mediation communications must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality.").[3]

Mr. Staley cannot make any such showing. In the two months since Mr. Staley's counsel indicated he was going to "hold on" seeking production of documents protected by the mediation privilege, the parties have completed expert discovery specifically about the reasonableness of the *Doe* settlement, and Mr. Staley has moved for summary judgment. Underscoring their irrelevance, the documents Mr. Staley forewent but now demands had no bearing on either effort. And for good reason. The subjective views of JPMC's counsel, or Judge Phillips, have no application to the inquiry into whether JPMC can prove it is entitled to indemnification or whether the settlement with the *Doe* class was objectively reasonable. *See Waltz v. MRC Mgmt., LLC*, 378 F. Supp. 2d 440, 444 (S.D.N.Y. 2005) (finding settlement to be reasonable and in good faith, and ordering trial on whether third-party plaintiff was entitled to indemnification); *Tokio Marine & Fire Ins. Co. v. Rosner*, 206 F. App'x 90, 95 (2d Cir. 2006) ("To procure indemnification for an underlying claim that was voluntarily settled … the settlement amount [must be] reasonable.") (cleaned up). Both questions can and will be resolved without resort to the confidential mediation communications.[4] Further, JPMC has already provided Mr. Staley with expert testimony and any non-privileged materials in demonstrating the reasonable of the *Doe* settlement, and JPMC has no intention of relying on any of the documents over which it has maintained any claim of privilege. Nothing justifies disregarding the strong policy in favor confidentiality for mediation and settlement, particularly when Mr. Staley's out of time request for materials have no bearing on the merits.

For these reasons, Mr. Staley's requested relief should be denied.

Sincerely,

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth

---

[3] The result would be the same under the law of other states whose laws could potentially apply here. For example, other jurisdictions that potentially have an interest in the application of their laws to this dispute include Massachusetts and Florida. Like California, these states have statutory privileges that hold mediation communications confidential. *See* M.G.L.A. 233 § 23C; Fla. Stat., § 44.401-44.406. Such confidentiality protections are the norm in the United States—twelve other states and Washington D.C. have enacted the Uniform Mediation Act which similarly protects mediation communications from disclosure. U.L.A. MED §§ 2, 4 (2003). No matter the jurisdiction, the discovery Mr. Staley seeks is simply unavailable to him.

[4] In any event, "relevance is not the standard for jettisoning the mediation privilege." *In re Residential Capital, LLC*, 536 B.R. 132, 148 (Bankr. S.D.N.Y. 2015).