

305 Madison Avenue
New York, NY 10165
T: 212-922-1080
F: 212-949-8255

Brian D. Linder
Partner
linder@clayro.com

September 19, 2023

<u>By ECF</u>

Hon. Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *Jane Doe 1 v. JPMorgan Chase Bank, N.A. v. James E. Staley*, 22-cv-10019 (S.D.N.Y.)

Dear Judge Rakoff:

    We write on behalf of third-party defendant Jes Staley to request that the Court enforce its prior order requiring the production of documents relating to JPMorgan's settlement with the class. On July 7, 2023, this Court ruled that, because JPMorgan seeks to hold Mr. Staley liable for its $290 million settlement with the Jane Doe Class, JPMorgan has placed at issue the basis for and the reasonableness of its settlement with the class. Consequently, this Court directed JPMorgan to provide discovery on those issues, including:

> [D]ocuments relevant to the reasonableness of its settlement (specifically, documents concerning settlement negotiations, any descriptions of those negotiations, and mediation submissions) as well as documents relating to causation of the settlement (specifically going to JPMorgan's motive for settling).

(*See* July 7, 2023 Minute Entry (22-cv-10904).

    Despite the clear language in that order that JPMorgan must produce mediation documents—and the bank's *express agreement to do so during the July 7 conference—* JPMorgan has produced no mediation documents and instead has withheld 269 responsive documents based on the so-called mediation privilege.[1] The withheld documents are directly

---

[1] On July 14, 2023, JPMorgan informed counsel for Staley that it had withheld the documents at the behest of class counsel (who affirmatively declined to participate in the conference and has now withdrawn their objection) and the mediator (who has no authority to void this Court's order

called for by the Court's order and essential to Mr. Staley's defense, providing a unique window into JPMorgan's true motives for settling the class's claims.[2]

### The July 7 Conference and Order

JPMorgan first claims that this Court's July 7 Order "did not address the question of Mr. Staley's entitlement to privileged materials." (JPMC Letter at 2.) That is not true. What is true is that Mr. Staley sought mediation statements and other mediation materials because JPMC had placed at issue its subjective motives by bringing the third-party claim against him. And the Court agreed. During the July 7 conference, the parties extensively discussed Mr. Staley's need for the mediation documents to learn about the reasonableness of JPMorgan's $290 million settlement with the class and the bank's subjective motive for doing so. JPMorgan expressly agreed to produce the documents. This Court's order is a product of those discussions and JPMC's promise. As noted above, the Order requires JPMorgan to produce documents relevant to the reasonableness of the settlement and its motive for settling, including "mediation submissions."[3] For JPMC to now claim that this Court's order did not contemplate that JPMC would be producing confidential mediation documents is absurd.

---

or to direct JPMorgan to withhold production of JPMorgan's documents that it agreed to and was ordered to produce.). (*See* Ex. 1 to JPMorgan's September 18, 2023 letter (ECF No. 220-1) at 3.) On September 15, 2023, JPMorgan raised for the first time its own objection to producing the documents. JPMorgan has not explained why it should be relieved of its express agreement to produce the documents made during the conference or why it should be permitted to lodge an objection two months later.

[2] JPMorgan also claims that Mr. Staley waited too long to bring this application. Not so. After JPMorgan produced its privilege log based on the objections from the mediator, Mr. Staley's counsel had several discussions with the mediator in an attempt to address any concerns he had about the ordered production. When it became clear that the issue could not be resolved without further application to the court, Mr. Staley engaged counsel for that express purpose. After we familiarized ourselves with the relevant facts and law, we promptly made the application to the court.

[3] During the same conference, Mr. Staley indicated that it was premature to seek a ruling on attorney-client privilege issues while noting that that issue may be the subject of future litigation. That issue was later brought to the court and remains *sub judice.*

On this point, JPMC attempts sleight of hand by conflating discussions had with the Court about the *attorney-client* privilege and those had regarding the *mediation* privilege. *See* JPMC Letter at 2 ("In first applying for this discovery months ago, Mr. Staley disclaimed seeking privileged communications.") Notably, JPMC does not address the fact that they expressly agreed to produce the mediation documents during the July 7, 2023 teleconference. The entire purpose of the July 7 conference was to discuss the mediation documents, and this Court's order only makes sense if that was what occurred.

2

JPMorgan's communications with Mr. Staley's counsel about the privilege log also undermines their new position. After JPMorgan produced a privilege log for the 269 documents withheld on the mediation privilege, JPMorgan explained that they were withholding the documents based on the objections of class counsel and the mediator. (*See* JPMC Letter, Ex. 1 at 3.) If JPMorgan is right that this Court did not consider the confidentiality of mediation documents during the July 7 conference, then one would expect that JPMorgan would have informed Mr. Staley's counsel in that correspondence that (1) this Court never considered the mediation privilege regarding those documents and (2) that this Court did not order them to produce the documents at all. But they did not. Their silence on this topic speaks volumes.

At bottom, this Court's order means what it says—JPMorgan was directed to produce mediation documents and should be required to do so.

The "Mediation Privilege"

JPMorgan's invitation to this Court to detour through California and New York state choice of laws issues should be declined. The court has jurisdiction over the third-party complaint here under 28 U.S.C. § 1367(a) (supplemental jurisdiction) based on Doe's claims which arose under 1331 (federal question jurisdiction), not diversity jurisdiction. It is well-settled that the federal law of privileges applies with respect to pendent state law claims when they arise in a federal question case. *See Porter v. Dartmouth-Hitchcock Med. Ctr.*, 2019 U.S. Dist. LEXIS 251111, at * (D.Vermont Mar. 11, 2019) (citing *Von Bulow v. Von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987).

No court in this Circuit has explicitly recognized the existence of a federal mediation privilege. Instead, a party seeking disclosure of confidential communications made during the course of a mediation need only demonstrate three things: "(1) a special need for the confidential material it sought; (2) resulting unfairness from a lack of discovery; and (3) that the need for the evidence outweighed the interest in maintaining confidentiality." *Savage & Assocs. P.C. v. K&L Gates LLP (In re Teligent, Inc.* 640 F.3d 53, 55 (2d Cir. 2011). Each requirement is met here, as this Court's prior order recognizes.

To establish the "special need" for the documents, a movant must show that the sought-after documents are more than "merely relevant." *In re Teligent, Inc.*, 417 B.R. 197, 208 (Bankr. S.D.N.Y. 2009). The "special need" for the documents is obvious. JPMorgan seeks indemnification by Mr. Staley for its $290 million settlement. Thus, as this Court has *already ruled*, Mr. Staley is entitled to test both the reasonableness of JPMorgan's settlement and its motives for entering into that settlement. Those topics will be revealed through the disclosure of the mediation documents, which include: (1) the submission of "extensive mediation briefs" and evidence supporting the positions taken therein; (2) documents memorializing telephonic conferences that allowed JPMorgan's counsel to "develop a fuller understanding of the range of disputes to be settled"; (3) "vigorous and substantive presentations regarding their clients' positions on key contested issues and damages"; and (4) a mediator's recommendation that was ultimately accepted by the parties. (*See* Declaration of Layn Phillips, ECF No. 181-4 (22-cv-10019).) No other material exists that would provide Mr. Staley with this critical, relevant, and unique evidence of JPMorgan's motive in settling the class claims in the amount of $290 million.

And no other material exists that would provide Mr. Staley the evidence necessary to fully assess the reasonableness of the settlement and to ensure, for example, that the $290 million he is being asked to pay was, as JPMorgan now claims, solely attributable to Mr. Staley rather than JPMorgan's own AML and compliance failures and JPMorgan's concerns about further exposure and adverse publicity in continuing the litigation.

The resulting unfairness from non-disclosure is also apparent. JPMorgan cannot bring an indemnification action against Mr. Staley and have its litigation strategy boil down to "trust us, the settlement is reasonable and was caused by Mr. Staley." That would completely upend their burden of proof and undermine Mr. Staley's ability to defend himself. JPMorgan cannot use the settlement obtained as a result of the confidential mediation process as a sword in its litigation against Mr. Staley and then claim mediation confidentiality to shield evidence relating to the reasonableness and the cause of that very settlement. But that is precisely what they seek to do by withholding the documents. Mr. Staley is entitled to test the strength and validity of JPMorgan's claims and these are the only documents available to do so.

Lastly, the need for the evidence clearly outweighs the interest in maintaining confidentiality. JPMorgan, not Mr. Staley, placed these documents at issue when it filed an indemnification action against Mr. Staley. If it wishes to proceed with its claims against Mr. Staley, then the confidentiality of the mediation process must give way. To the extent any confidentiality concerns remain, these concerns are easily addressed with a protective order. Mr. Staley has no interest in publishing or publicly disclosing the documents—he merely wants to use them to defend against JPMorgan's indemnification claims, which this Court has already ruled he may do.

<u>Judge Layn Phillips' Letter</u>

Former Judge Phillips provides no authority for this Court to even consider his objection to the production of the documents, nor does he explain why JPMorgan should have ignored this Court's July 7 order on his say so. Mr. Staley has not requested documents from the mediator; he requested and obtained a court order directing production from JPMorgan's own files.

Substantively, the mediator's letter provides no basis to disregard or reconsider this court's ruling. For example, he opines that Mr. Staley has no special need for the mediation documents but does not explain why that is the case, nor does he grapple with this Court's order which specifically requires JPMC to produce documents relating to the reasonableness and cause of the settlement and to obtain mediation submissions.

Judge Phillips' focus on FRE 408 is also misplaced. FRE has nothing to do with discovery. The Rule prohibits a party from introducing into evidence any offer or acceptance of a settlement to "prove or disprove the validity or amount of a disputed claim." FRE 408(a)(1). But even if the Rule applies, Rule 408(b) provides exceptions to that rule and allows the court to admit evidence from settlement negotiations for "another purpose." Mr. Staley has no intention of using JPMorgan's documents in a manner precluded by Rule 408 (such as trying to attack the validity or amount of the class's claim against JPMorgan). Instead, he will use it for "another

purpose"—*i.e.,* to establish JPMorgan's subjective motive as it relates to the bank's wholly separate claim against Mr. Staley.[4]

Conclusion

Any assertion of the mediation privilege, even if applicable (it is not), has come far too late as this Court has already ruled that Mr. Staley is entitled to these documents. Given that class counsel has withdrawn any objection to JPMC's production of mediation materials, and that the mediator has no authority to tell the litigants in this action what to do with their own documents (or void this Court's order), this Court should summarily reject JPMC's belated objections.

Sincerely,

Brian D. Linder

---

[4] Judge Phillips refers to *In re USA Gymnastics* for the proposition that the confidentiality agreement provides broader protections about admissibility than Rule 408. His argument (and *In re USA Gymnastics*) have nothing to do with *discoverability*, which is the issue now before the court. Furthermore, that court's decision was premised on its conclusion that the matter for which the mediation materials were sought was not a "new" dispute but rather among the disputed claims at mediation. Mr. Staley seeks to obtain these materials to defend a new claim interposed by a party to the mediation after the mediation. And unlike *In re USA Gymnastics*, here all of the parties to the mediation at one point have agreed to JPMC's production of the materials in compliance with this Court's order.