

2101 East Coast Highway, Suite 250
Corona Del Mar, California 92625

**Hon. Layn R. Phillips (Fmr.)**
LPhillips@PhillipsADR.com

September 18, 2023

**BY ECF**

Hon. Jed S. Rakoff
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Jane Doe 1 v. JPMorgan Chase Bank, N.A. v. James E. Staley,* 22-cv-10019 (S.D.N.Y.) –
Letter from Mediator Layn R. Phillips in Support of JPMorgan Chase Bank, N.A.'s Assertion of
the Mediation Privilege

Dear Judge Rakoff,

I respectfully submit this letter brief to set forth my views on the implications of any order that
would result in the disclosure of mediator-eyes-only communications. Defendant Staley has
engaged separate counsel at Clayman Rosenberg Kirshner & Linder LLP ("Clayman
Rosenberg") to pursue the settlement communications JPMorgan Chase Bank, N.A. ("JPMC")
withheld as subject to the mediation privilege. For the reasons set forth below, I object to the
production of these communications.

I served as the mediator in connection with the proposed settlement of the above-referenced
action, entitled *Jane Doe 1 v. JPMorgan Chase Bank N.A.*, pending in the United States District
Court for the Southern District of New York.  I mediated the case with John Kiernan, a retired
partner of Debevoise & Plimpton LLP, and Michelle Yoshida, both of whom are affiliated with
my firm.

I am a former United States District Judge, and former United States Attorney. I am also a retired
partner from the law firm of Irell & Manella LLP, and a Fellow in the American College of Trial
Lawyers. I have mediated many cases before this Court over the years, including the *In re*

September 18, 2023
Page **2** of **5**

*Petrobras Securities Litigation*, and another matter, *In re Bankrate, Inc. Securities Litigation*, in which the Court asked the parties to make me available to the Court for a discussion prior to settlement approval, which occurred.

Over the past 25 years as a mediator, I have assisted parties in forging settlements of complex disputes involving tens of billions of dollars in the aggregate.

Here, I was engaged to mediate the case by all parties, with each constituency, including Staley, executing a mediation confidentiality agreement.[1]  That confidentiality agreement has been examined and upheld by other courts, including in another prominent sexual abuse case where mediation materials were sought involving the gymnast victims of Dr. Larry Nassar, which arose out of a related $500 million Michigan State University settlement I brokered through mediation. A copy of the opinion in the *In re USA Gymnastics* case, is attached as Exhibit A.

Where, as here, the parties to a mediation have engaged in confidential mediation communications in reliance on oral and written confidentiality undertakings and Federal Rule of Evidence 408, the confidentiality of such settlement-related communications must be honored absent a showing of manifest injustice.

Not surprisingly, although requests for discovery of mediation statements and communications surface from time to time, they are routinely denied.  Indeed, I have never been ordered to produce such communications.

This mediation was extraordinarily difficult. The parties included the Doe victims' putative class, the U.S. Virgin Islands, Staley, and JPMC. The parties did not all agree to exchange mediation statements, and I was left to handle the matter primarily through separate caucus sessions and shuttle diplomacy.  When a mediator cannot achieve a global resolution, a mediator will routinely attempt to achieve a partial resolution. Here, I was only able to achieve a partial settlement of the matter between the alleged victims and JPMC for $290 million by way of the issuance of a mediator recommendation.

While it is unfortunate that all of the parties did not exchange mediation statements, and unfortunate that Staley's portion of the case did not settle, this does not entitle Staley or his counsel to discover the separate caucus mediation communications of their opponents for the following reasons:

---

[1] The Staley confidentiality agreement, executed by Williams & Connolly LLP ("Williams & Connolly"), is attached as an exhibit to JPMC's letter brief.

*First*, as the Court is aware, mediation is built on the twin pillars of confidentiality and candor. If parties to a mediation thought their mediator-eyes-only communications and separate caucus communications with the mediator would be discoverable by their litigation opponents, it would undermine if not paralyze the mediation process. Indeed, Staley's own counsel, Williams & Connolly, currently has numerous mediation matters before me in which they have made multiple mediator-eyes-only submissions and thus would not and could not assert the arguments that Clayman Rosenberg has been retained to assert on Staley's behalf.

Like Williams & Connolly, counsel for both plaintiffs and defendants in countless commercial lawsuits rely on the confidentiality of mediation communications.  Without such confidentiality, mediations would be no different from a formal adversary hearing in which neither side typically gives an inch and little progress toward settlement can be made.  I begin all my mediations with a joint session in which I set forth my "ground rules" for mediation, known as the "Three C's," the first C being "confidentiality" and the second C being "candor."  As I explain in every case to all parties and counsel mediating before me, the candor fostered by confidentiality is an essential feature of a successful mediation.

*Second*, as Your Honor doubtlessly knows, among the U.S. Courts of Appeals, probably the strongest and clearest endorsement of a federal mediation privilege is the Second Circuit's decision in *In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. 2011).

In *Teligent*, a debtor filed an action against its former CEO to recover the $12 million balance on an unpaid loan. The parties voluntarily agreed to mediate the dispute under a written confidentiality agreement.  The mediation resulted in a settlement that obligated the CEO, *inter alia*, to assert a malpractice claim against the law firm that had negotiated his severance agreement with the debtor. In defending against that claim, the law firm sought all documents relating to "the negotiations leading up to the Settlement Agreement, including all mediation and settlement communications." To that end, the law firm moved to lift the confidentiality provisions governing the mediation. The bankruptcy court denied the motion, and the law firm appealed.

On appeal, the Second Circuit observed that confidentiality is an important feature of mediation that "promotes the free flow of information" necessary to help settle disputes.  Citing mediation confidentiality standards applicable under the Uniform Mediation Act, and federal alternative dispute resolution statutes, the Second Circuit adopted a 3-part test requiring a party seeking disclosure of confidential mediation communications to demonstrate:

(1) a special need for the confidential material,

(2) resulting unfairness from a lack of discovery, and

(3) that the need for the evidence outweighs the interest in maintaining confidentiality.

*In re Teligent,* 640 F.3d at 58.

Based on that standard, the Second Circuit affirmed the denial of the law firm's request for disclosure of all mediation-related communications. None of those requirements are met here.

In the instant case, Staley has no special need for confidential settlement communications that are in any event inadmissible under FRE 408 and pursuant to the PADRE Confidentiality Agreement executed by his counsel as part of the mediation process. No unfairness will result if he is denied access to such inadmissible confidences. And the public interest in maintaining the confidentiality (indeed, viability) of the mediation process outweighs any litigant's need for intruding upon it.

Indeed, the Second Circuit itself goes to great lengths to vouchsafe the confidentiality of its own mandatory mediation process. It is careful to ensure that nothing discussed in such mediation sessions is shared with the judges who will be deciding the case or with third parties. The same logic applies to voluntary private mediation conducted pursuant to mutual written promises of strict confidentiality.

Moreover, a challenge to the confidentiality agreement at issue in a previous case was rejected for the same reasons. In the *In re USA Gymnastics* case, the Bankruptcy Court for the Southern District of Indiana reviewed the Phillips ADR Enterprises, P.C. ("PADRE") Confidentiality Agreement in connection with an Insured's Motion to Maintain Documents Under Seal from its Insurers related to the Nassar and USAG abuse allegations. The Insurers objected to certain documents being filed under seal because they related to the pre-bankruptcy mediation sessions.

In denying the USAG's request to file the exhibits, the Court found that the PADRE Confidentiality Agreement reached further than Rule 408. The Court recognized that "Mediation requires confidentiality to promote the candor critical to its success … [and] [t]he success of mediation depends in part, on the ability of the parties to freely and openly discuss the relevant issues. Accordingly, confidentiality is a critical component of this process. … [Moreover,] courts have implicitly recognized that maintaining expectations of confidentiality is critical." Dkt. 354, at 4, *In re USA Gymnastics,* Adv. Pro. No. 19-50012 (Bankr. S.D. Ind. March 23, 2020) (c*itations omitted).*

In closing, the Court stated,

> "Oral and written statements and exhibits prepared for the mediation carry on equal expectation of confidentiality. To allow the disclosure, in any form, of confidential statements made in mediation will inevitably retard the mediation process … " Dkt. 354, at 9-10, *In re USA Gymnastics,* Adv. Pro No. 19-50012 (Bankr. S.D. Ind. March 23, 2020).

September 18, 2023
Page **5** of **5**

I respectfully submit that few rulings would interfere more profoundly with the efficacy of private mediation than a ruling that a non-party to a settlement (here, Staley) can obtain through discovery mediator-eyes-only communications that the parties reasonably expected would remain confidential and that FRE 408 deems inadmissible.

Sincerely,

Hon. Layn R. Phillips (Fmr.)

John Kiernan, Esq.