**SO ORDERED: March 23, 2020.**



Robyn L. Moberly
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS,<br>          Debtor. | Chapter 11<br><br>Case No. 18-9108-RLM-11 |
| USA GYMNASTICS,<br>          Plaintiff,<br>v.<br>ACE AMERICAN INSURANCE COMPANY f/k/a CIGNA INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, LIBERTY INSURANCE UNDERWRITERS INC., NATIONAL CASUALTY COMPANY, RSUI INDEMNITY COMPANY, TIG INSURANCE COMPANY, VIRGINIA SURETY COMPANY, INC. f/k/a COMBINED SPECIALTY INSURANCE COMPANY, WESTERN WORLD INSURANCE COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, and DOE INSURERS,<br>          Defendants. | Adv. Pro. No. 19-50012<br>in 18-09108-RLM-11 |

## ORDER ON PLAINTIFF'S MOTION TO SEAL DOCUMENTS

This matter came before the Court on February 18, 2020 upon the *Motion To Maintain Documents Under Seal* (the "**Motion**") filed by Debtor and Plaintiff ("**USAG**"). USAG has filed a supporting brief and the following defendants have filed responses in opposition to the Motion: Virginia Surety Company, Inc.; National Casualty Company; Ace American Insurance Company; Great American Assurance Company; TIG Insurance Company; and American Home Assurance Company (collectively, the "Insurers"). The Court GRANTS the motion with respect to Exhibits and DENIES the motion with respect to Exhibits.

### *Background*

Larry Nassar was an employee of Michigan State University and a volunteer physician for USAG. Several gymnasts filed lawsuits and claims against MSU and USAG for abuse perpetrated by Nasser (the "Abuse Claims"). In April 2018, USAG and its insurers agreed to participate in mediation with the abuse claimants (the "Pre-Petition Mediation") and retired Judge Layn Phillips was chosen as the mediator.

Judge Phillips required all participants to sign a confidentiality agreement (the "Confidentiality Agreement") that provided:

### MEDIATION CONFIDENTIALITY AGREEMENT

The parties have agreed to mediate *Denhollander, et al. v. Michigan State University, et al.* No. 17-cv-0029 (W.D. Mich.) and all consolidated member and related cases, *In re Nassar Cases*, JCCP 4943 (Sup. Ct. Orange Cty. Cal.) and all related cases, and any other or future cases for claims arising from or related to the alleged sexual abuse, assault, exploitation, or harassment committed by Lawrence Nassar, and hereby enter into the following agreement with regard to confidentiality:

The parties hereby agree that all statements of the parties, counsel, and mediators, as well as the materials generated solely for purposes of the mediation shall constitute conduct or statements made in compromise negotiations and, shall therefore, not be admissible pursuant to Rule 408 of the Federal Rules of Evidence, and shall not be disseminated or published in any way. In short, no statement made during the course of the mediation or any materials generated for the purpose of the mediation may be offered into evidence, disseminated, published in any way, or otherwise publicly disclosed.

The mediation did not resolve the Abuse Claims against USAG and therefore USAG filed its chapter 11 case on December 5, 2018 (the "Petition Date") in part to provide a centralized forum in which to resolve those claims. This Court on

2

May 17, 2019 granted USAG's motion to refer the Abuse Claims and insurance coverage disputes to mediation (the "Post-Petition Mediation") and appointed Bankruptcy Judge Gregg W. Zive as the mediator.[1] At the request of Judge Zive, USAG and other parties, the Court on September 26, 2019 ordered that Paul J. Van Osselaer be appointed additional mediator to deal with the insurance coverage and related issues.[2] The Post-Petition Mediation is ongoing.

USAG filed this adversary proceeding against several of its insurers alleging breach of duties under their policies and asking for a declaratory judgment of insurance coverage. USAG anticipates filing in this adversary proceeding a motion for summary judgment against certain insurers arising out of their refusal to pay the cost of the bankruptcy proceeding. USAG wishes to offer as evidence in support of its to-be-filed motion certain exhibits that contain communications from the mediations.

Fed. R. Evid. 408[3] deems evidence of the conduct or statements made during mediation inadmissible. USAG acknowledges that the exhibits contain

---

[1] Paragraph 5 of that order provided:

> 5. All communications, information, and evidence exchanged within the mediation shall be treated confidentially by all parties and shall remain confidential following the mediation's conclusion. To the extent any information or evidence disclosed within the course of mediation is privileged, its disclosure amongst the parties to the mediation and Judge Zive does not waive or adversely affect the privileged nature of such information or evidence. Any party who improperly discloses communications, information, and evidence exchanged confidentially during the mediation may be subject to sanctions.

[2] Paragraph 4 of that order provided:

> 4. All other provisions of the May 17, 2019 Order Approving Judge Zive as Mediator shall remain in full force and effect including, without limitation, paragraph 5 thereof regarding confidentiality.

[3] That rule provides:
Rule 408. Compromise Offers and Negotiation
(a) **Prohibited Uses.** Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
(1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

3

confidential information and proposes to file them under seal. But it asserts that they are nonetheless admissible to support its motion because they either pertain to disputed claims that were not part of the mediations or can be offered to prove estoppel under the exceptions in Rule 408(b).[4] The issue here is whether the Confidentiality Agreement provides a broader mediation privilege to the Insurers than Rule 408.

### Discussion

Mediation plays a critical role in the resolution of lawsuits by fostering settlement and preserving personal and judicial resources. See *Fields–D'Arpino v. Rest. Assocs., Inc.*, 39 F.Supp.2d 412, 417 (S.D.N.Y.1999) ("[M]ediation provides a vital alternative to litigation," whose benefits "include its cost-effectiveness, speed and adaptability."); see generally Unif. Mediation Act ("UMA"), 7A U.L.A. 93 (2006) (Prefatory Note). Mediation requires confidentiality to promote the candor critical to its success. *Bradley v. Fontaine Trailer Co. Inc.*, No. 3:06CV62 (WWE), 2007 WL 2028115, at *5 (D.Conn. July 10, 2007) ("The parties must trust that their disclosures, both oral and written, during mediation will remain confidential and that their candor will be protected."); *Concerned Citizens of Belle Haven v. Belle Haven Club*, 3:99CV1467 (AHN), 2002 WL 32124959, at *5 (D.Conn. Oct. 25, 2002) ("Mediation provides a vital alternative to litigation. The success of mediation

---

(2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

**(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

[4] See, *Bankcard America v. Universal Bancard Systems*, 203 F.2d 477, 484 (7th Cir. 2000("It would be an abuse of Rule 408 to allow one party during compromise negotiations to lead his opponent to believe that he will not enforce applicable time limitations and then object when the opponent attempts to prove the waiver of time limitations.); *PRL USA Holdings, Inc. v. United States Polo Assn, Inc.*, 520 F.3d 109, 116 (2nd Cir. 2008)(evidence of plaintiff's consent to defendant's use of double horsemen mark admissible to prove defendant's estoppel defense in trademark infringement case.)

4

depends, in part, on the ability of the parties to freely and openly discuss the relevant issues. Accordingly, confidentiality is a critical component of this process."); *Fields–D'Arpino*, 39 F.Supp.2d at 417 ("Successful mediation ... depends upon the perception and existence of mutual fairness throughout the mediation process. In this regard, courts have implicitly recognized that maintaining expectations of confidentiality is critical."); see generally UMA, 7A U.L.A. 94 (Prefatory Note) ("Candor during mediation is encouraged by maintaining the parties' and mediators' expectations regarding confidentiality of mediation communications.").

Addressing an analogous program, the Second Circuit explained the importance of confidentiality to its Civil Appeals Management Plan ("CAMP"):

> It is essential to the proper functioning of the Civil Appeals Management Plan that all matters discussed at these conferences remain confidential. The guarantee of confidentiality permits and encourages counsel to discuss matters in an uninhibited fashion often leading to "settlement, the simplification of the issues and (the resolution of) any other matters which the staff counsel determines may aid in the handling or the disposition of the proceeding." Civil Appeals Management Plan Rule (5)(a). If participants cannot rely on the confidential treatment of everything that transpires during these sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements and withdrawals of some appeals and to the simplification of issues in other appeals, thereby expediting cases at a time when the judicial resources of this Court are sorely taxed.

*Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir.1979); accord *Calka v. Kucker Kraus & Bruh*, 167 F.3d 144, 146 (2d Cir.1999); *Bernard v. Galen Group, Inc.*, 901 F.Supp. 778, 784 (S.D.N.Y.1995).*In re Teligent, Inc.*, 417 B.R. 197, 205–06 (Bankr. S.D.N.Y. 2009). Moreover, the need for confidentiality does not terminate automatically when the litigation has concluded. The codified mediation rules discussed above implicitly recognize this because they do not provide for the termination of confidentiality when the case is over. *Id.* USAG and the insurers agreed that the Exhibits contain confidential information

5

that should not be publicly disclosed. The issue is whether it can be disclosed to the Court.

A challenge to disclosure of statements made in and materials prepared for mediation can come before the Court procedurally in the form of motion to strike, a motion to compel, a motion for protective order, or, as here, a motion to seal. The parties' briefing has focused on the mediation privilege and the Confidentiality Agreement and therefore the Court will treat the motion as a request to seal but, more accurately, a motion to waive the mediation privilege. Whether it is a 3rd party attempting to secure confidential documents versus one's immediate opponent should not influence the privilege.

### *The Exhibits*

USAG has moved to file under seal Exhibits 2 through 17 and 19. USAG tendered some of these exhibits to the Insurers who in turn made their own redactions to some of them. The Insurers have no objection to exhibits #17 (document authored by Kevin Kamraczewski, counsel for Virginia Surety Company, Inc. sent to USAG's counsel on November 26, 2018)[5] and #19 (letter from TIG to USAG dated January 13, 2020)[6] being filed under seal.

The Insurers have reviewed and redacted portions of Exhibits 1 (Declaration of Greg Gotwald, attorney for USAG, dated January 29, 2020), 2 and 3 (descriptions unknown), 4 (portion of this exhibit is a letter dated December 10, 2018 from Thomas M. Jones and Jonathan Toren, attorneys for Ace American Insurance Company to USAG) [7], and 8 (Declaration of Dean N. Panos dated January 29, 2020) and have no objection to these exhibits filed under seal as redacted.

The Insurers object to Exhibits 5, 6, 7, 10, 13, 14, 15 and 16 (all emails from Michael M. Marick, counsel for Great American Assurance Company dated from April 27, 2018 to October 22, 2019)[8], 9 and 11 (descriptions unknown), and 12 (July

---

[5] ECF #323, Declaration of Kevin P. Kamraczewski dec., ¶8
[6] ECF #323, Kamraczewski dec., ¶8; .ECF #328-1, Simpson dec., ¶4
[7] ECF #326, Jones dec., ¶5
[8] ECF #327-1, Marick dec., ¶12 and ¶13

6

27, 2018 email from Thomas Jones, attorney for Ace American Insurance Company to USAG)[9] being filed under seal because they allege those exhibits relate entirely to the mediations.[10] While USAG contends that Exhibit #10 is the only "mediation" document[11], the descriptions of Exhibits 5, 6, 7, 10, 12, 13, 14, 15 and 16 make it clear that most, if not all, of them contain communications made during the course of the Pre-Petition Mediation.

### *The Confidentiality Agreement*

USAG asserts that all communications set out in the Exhibits (except Exhibit 8) took place pre-petition and the last communication took place post-petition but before the Post Petition Mediation began. ECF #330, *USAG's Verified Reply in Support of Motion to Seal,* p. 4. Resolution of the Abuse Claims and insurance coverage available to pay those claims were and continue to be the subject of both the Pre-Petition and Post-Petition Mediation. USAG asserts that the Confidentiality Agreement does not prohibit it from offering the Exhibits under seal as evidence.

The second paragraph of the Confidentiality Agreement is the pertinent section and it consists only of two sentences. The first sentence provides that "all statements…generated solely for the purposes of the mediation shall constitute conduct or statements made in compromise negotiations and, shall therefore, not be admissible pursuant to Rule 408 of the Federal Rules of Evidence." From this first sentence, the admissibility of statements made in and materials prepared for the Pre-Petition Mediation is governed by FRE 408. The second sentence provides, "in short, no statement made during the course of mediation or any materials generated for the purpose of mediation may be offered into evidence…" USAG argues that the beginning phrase "in short" renders the second sentence a summary

---

[9] ECF #326, Jones dec., ¶5
[10] Exhibit 18 is not being filed under seal and does not relate to the issues presented in USAG's motion to seal. See, ECF #322, *Brief in Opposition to USAG's Motion to Submit Mediation Documents Under Seal,* fn 2, filed by Virginia Surety Company.
[11] ECF #330, *USAG's Verified Reply in Support of Motion to Seal,* p. 4-5.

of the first and that the admissibility of the Exhibits continues to be governed by Fed. R. Evid. 408.

The court disagrees. The second sentence here has a broader meaning than the first and is a direct, unequivocal statement. While both the first and second sentences prohibit admission of statements made in or documents prepared for the purpose of mediation, the first sentence does so within the confines of Fed. R. Evid. 408. The second sentence contains no such boundaries. The first sentence says that the privileged statement and materials "shall, therefore, not be admissible…". The second sentence goes a step further and excludes them from even being *offered* as evidence. A party presumably could at least offer the alleged-privileged communication into evidence under the language of the first sentence, which is precisely what USAG suggests: it may at least offer the exhibits under seal with the court making the determination of their admissibility when it considers the summary judgment motion on the merits. However, the second sentence forecloses that option by prohibiting even that offer. The only way a communication could even be offered into evidence under the second sentence is if it (1) was not made during the course of mediation or (2) was not generated for the purpose of mediation. The Confidentiality Agreement leaves no room for the exceptions set out in Rule 408(b).

USAG would still be prohibited from offering the Exhibits even if the Confidentiality Agreement were construed as it suggests. The current dispute involves whether the insurers' duties to defend included a duty to pay for USAG's professional fees incurred in this chapter 11 case. The insurers participated in both the pre and post pet mediations. Both mediations were with respect to resolution of the Abuse Claims and insurance coverage. Part and parcel of insurance coverage would involve an insurer's duty to defend USAG against Abuse Claims. Whether payment of USAG's professional fees incurred in the bankruptcy is a subset of that duty is a question of insurance coverage and is not a "new" dispute. The current dispute here was among the disputed claims at mediation and are inadmissible and

cannot be offered as evidence. Nor can the Exhibits be offered to bolster USAG's estoppel argument under Rule 408(b) exceptions.

Confidentiality agreements providing that "no aspect of the mediation shall be relied upon or introduced as evidence in any arbitral, judicial, or other proceeding" have been upheld to exclude the offer of evidence. See, *Facebook, Inc. v. Pacific Northwest Software, Inc.,* 640 F.3d 1034, 1040-1041 (9th Cir. 2011) (value of shares disclosed in settlement negotiations excluded as evidence in action to enforce settlement agreement); *Cook v. United Ins. Co. of America,* NO. C-11-1179-MMC, 2011 WL 2940713 at *2 (N.D. Cal. July 20, 2011) (survey of amount of class action claims shown to insurer in mediation not admissible in hearing on motion to remand case that had been removed to federal court by insurer). Compare, *Craftwood Lumber Co. v. Interline Brands, Inc.,* No. 11 C 4462, 2014 WL 1389041 at *3 (N.D. Ill. April 9, 2014) (term sheet written after settlement reached was admissible in breach of settlement agreement action as it was not "an aspect of mediation"); *Sonii v. General Electric,* No. 95 C 5370, 2001 WL 1422136 at *2 (N. D. Ill. September 21, 2001) (statements in response brief that generally described opposing counsel's refusal to engage in rational discussions about fees and costs arising from Title VII and Civil Rights Act actions and how attempted negotiations to resolve attorney fees proved fruitless did not breach confidentiality agreement that provided "communications, negotiations or settlement discussions by and between the participants in the mediation shall be and remain confidential , not to be disclosed to any third party specifically including the court, administrative agency or arbitrator before which the controversy comes".)

USAG acknowledges the confidential nature of the Exhibits by asking that the Exhibits be filed under seal. That tacitly implies that the Exhibits are communications made in the course of the mediation and thus are subject to the mediation privilege. The Confidentiality Agreement provides a mediation privilege that reaches farther than Rule 408 and does not provide for an estoppel exception.

The claims that were mediated in the Pre-Petition Mediation continue to be mediated in the Post-Petition Mediation. Oral and written statements and exhibits

9

prepared for the mediation carry an equal expectation of confidentiality. To allow the disclosure, in any form, of confidential statements made in mediation will inevitably retard the mediation process going forward as the mediation of the Abuse Claims and insurance coverage remains ongoing. USAG claims that *not* allowing disclosure, even under seal, will slow or deter the mediation process. I find this unpersuasive since the party requesting relief from the privilege has the alternative remedy to merely take the representations outside of the confidentiality by agreement. If USAG was going to rely on statements made in mediation, they should have reduced them to writing and taken the statements outside the privilege.

Accordingly, the Court ORDERS that:
(1) USAG may file Exhibits 17 and 19 under seal and its Motion is GRANTED with respect to Exhibits ;
(2) USAG may file exhibits 1, 2, 3, 4 and 8 under seal as redacted;
And
(3) USAG shall NOT file under seal Exhibits 5, 6, 7, 9, 10, 11, 12, 13, 14, 15 and 16 and its Motion is DENIED as to those Exhibits.

# # #

11