# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Jane Doe 1, individually and on behalf of
all others similarly situated,

     Plaintiff,

       v.

JPMorgan Chase Bank, N.A.,

     Defendant.

Case No. 1:22-CV-10019 (JSR)

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF THE PLAN OF ALLOCATION

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350

EDWARDS HENDERSON LEHRMAN LLC
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820

*Counsel for Settlement Class Representative Jane Doe 1 and the Class*

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     HISTORY OF THE LITIGATION ...................................................................... 2

III.    FINAL APPROVAL IS WARRANTED............................................................... 3

    A.      The Settlement Satisfies the Requirements of Rule 23(e)(2)................................ 5

        1.      Class Representative and Class Representative's Counsel Have Adequately Represented the Class............................................................. 5

        2.      The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations. ..................................................................................... 7

        3.      The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation. .................................................. 8

            i.      The Settlement is Reasonable Given the Costs, Risks, and Delay of Trial and Possible Appeals............................................. 9

            ii.     The Proposed Method for Distributing Relief and Processing Class-Member Claims Is Effective. ................................ 10

        4.      Class Counsel's Fee and Expense Request Is Fair and Reasonable. ........ 14

    B.      The Settlement Satisfies the *Grinnell* Factors. ....................................... 14

IV.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE.................................. 18

V.      NOTICE TO THE CLASS COMPORTS WITH DUE PROCESS AND SATISFIES THE REQUIREMENTS OF RULE 23........................................................ 20

VI.     CONCLUSION ........................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ........................................................................... 6

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ............................................... 15

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...................................... 9, 22

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................... 2, 3, 5, 15

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x
  73 (2d Cir. 2015) ................................................................................... 9, 15

*Consol. Edison, Inc. v. Ne. Utilities*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004) ......................................................... 21

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ........................................................................... 6

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ........................................................................... 7

*Farruggio et al. v. 918 James Receiver, LLC et al.*,
  No. 3831/2017 (Sup. Ct. Onondaga Cty. Aug. 25, 2017) ......................... 19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................ 3, 6

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ................................. 18

*In re AOL Time Warner S'holder Derivative Litig.*,
  2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ............................................. 22

*In re Bear Stearns Cos. Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................ 16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................................. 5

*In re Facebook, Inc.*,

822 Fed. App'x 40 (2d Cir. 2020) .......................................................................... 15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ............................................................. 15, 18

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 5, 18

*In re GSE Bonds Antitrust Litig.*,
2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ....................................................... 7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .................................................... 18

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................................... 22

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................... 8, 16

*In re Merrill Lynch Tyco Rsrch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................................... 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................ 5, 16

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
2008 WL 1956267 (S.D.N.Y. May 1, 2008) .......................................................... 18

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ......................................................................... 16

*In re Top Tankers, Inc. Sec. Litig.*,
2008 WL 2944620 (S.D.N.Y. July 31, 2008) ....................................................... 19

*In re TWC Liquidation Tr., LLC*,
No. 18-10601 (MFW) (Bankr. D. Del.) ............................................................... 15

*In re USA Gymnastics*,
No. 18-09108 (Bankr. S.D. Ind. Dec. 5, 2018) .................................................... 19

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ....................................................... 15

*In re Vitamin C Antitrust Litig.*,
2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ...................................................... 17

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................. 18

*Jane Doe 1, et al, v. Deutsche Bank Aktiengesellschaft, et. al.*,
   Case No. 1:22-CV-10018 (JSR) ................................................................. 13

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ...................................................................... 3

*Latham, et al v. The 1953 Trust, et al*,
   No. 20-CV-07102-LLS (SDNY Sept. 24, 2020) ........................................ 15

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ............................................. 3

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ................................................................. 9, 18

*Nichols v. Noom, Inc.*,
   2022 WL 2705354 (S.D.N.Y. July 12, 2022) ......................................... 5, 18

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
   2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) ................................................. 19

*Pantelyat v. Bank of Am., N.A.*,
   2019 WL 402854 (S.D.N.Y. Jan 31, 2019) ............................................... 9

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,
   2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006) .......................................... 17

*Rodriguez v. CPI Aerostructures, Inc.*,
   2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021) .......................................... 22

*Sewell v. Bovis Lend Lease, Inc.*,
   2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ........................................... 16

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................... 21

*Soler v. Fresh Direct, LLC*,
   2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) ........................................... 16

*Thompson v. Metropolitan Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ................................................................. 5

*TWC Liquidation Trust, LLC (f/k/a The Weinstein Company Holdings LLC)*,
   No. 18-10601 (Bankr. D. Del. Mar 19, 2018) .......................................... 19

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ................................................................ 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

396 F.3d 96 (2d Cir. 2005) ................................................................................ 3, 20

Weber v. Gov't Emps. Ins. Co.,
   262 F.R.D. 431 (D.N.J. 2009) ........................................................................ 17

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) .......................................................................... 7, 20

*Wright v. Stern*,
   553 F.Supp.2d 337 (S.D.N.Y.2008) ............................................................. 16

**Statutes**

28 U.S.C. § 1715 ............................................................................................. 21

**Rules**

Fed. R. Civ. P. 23 (c) ................................................................................. 16, 20

Fed. R. Civ. P. 23(e) .............................................................................. passim

Class Representative Jane Doe 1 ("Class Representative"), on behalf of a certified Class of similarly situated individuals, respectfully submits this memorandum of law in support of her motion for (i) final approval of the $290 million Settlement between Class Representative, on behalf of herself and the Class, and Defendant JPMorgan Chase Bank, N.A. ("Defendant," and together with Class Representative, the "Parties"); and (ii) approval of the Plan of Allocation.  The terms of the Settlement are set forth in the Stipulation of Settlement dated June 22, 2023 (ECF No. 181-1) (the "Stipulation").[1]  The Court preliminarily approved the Settlement on June 27, 2023 (ECF No. 182) (the "Preliminary Approval Order") and provided an amended preliminary approval of the Settlement on June 29, 2023 (ECF No. 183) (the "Amended Preliminary Approval Order"). *See* Preliminary Fairness Hearing Transcript (June 26, 2023) at 6:6–7 (The Court: "I have to say I am impressed by the settlement."), 11:8–9 (The Court: "So I do want to say I really do think, thanks to counsel for both sides, that this is a really fine settlement, . . .").

## I.    INTRODUCTION

Many cases do good, but it is very rare to have a case that is life changing for over 150 sex trafficking survivors and that is this case that is presently before the Court for Final Approval.  The Parties reached a historic $290 million settlement that represents the largest ever settlement for victims of sex trafficking.  From the moment of filing, this case has been characterized as hotly contested litigation on a fast-paced trial schedule.   The Parties completed robust fact and expert discovery including the deposition of Defendant's CEO, and intense motion practice including

---

[1]      Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation or the accompanying Declaration of David Boies and Bradley Edwards in Support of Motion for Final Approval of Plan of Allocation and an Award of Attorneys' Fees and Expenses ("Boies & Edwards Decl."), and in the Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses, submitted concurrently herewith.

motions to dismiss, to certify the class, and to exclude an expert witness. The Settlement was reached for the survivors of Jeffrey Epstein following arm's-length negotiations by experienced and knowledgeable counsel and overseen by a nationally recognized mediator. This Settlement will provide rapid, life-changing relief to sex-trafficking victims whose lives were destroyed by Epstein. The Settlement is an excellent result for the Class given the likely amount of individual recovery, the defenses to liability and damages that Defendant advanced, the nature of the class being comprised of victims of sex trafficking and sexual abuse, and the design of a claim process with an experienced Claims Administrator who put in place best practice procedures to make the gathering of information as trauma informed as possible. As such, the Settlement satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Given the risks of proceeding to trial, Class Representative respectfully submits that the $290 million Settlement and the Plan of Allocation are fair and reasonable in all respects. Accordingly, Class Representative respectfully requests that the Court grant final approval of the Settlement and the Plan of Allocation under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.    HISTORY OF THE LITIGATION

After years of research and planning, Class Counsel, who were already highly experienced in the inner workings of Jeffrey Epstein's multi-decade sex trafficking enterprise, brought this case against Defendant, alleging that Epstein's sex trafficking venture was facilitated and enabled by Defendant helping Epstein avoid regulators' scrutiny and providing Epstein with withdrawal and wire services, all so Defendant could profit from Epstein and his associates. Once commenced, the litigation moved forward at a very fast pace against a large, global financial institution. For a full recitation of the case history, Class Representative respectfully refers the Court to her Memorandum of Law in

Support of Unopposed Amended Motion for Preliminary Approval of Class Action Settlement and

Approval of Notice to the Class for a discussion of the factual background and procedural history

of the Litigation, the significant efforts undertaken by Class Representative and Class Counsel

during the Litigation, the risks of continued litigation, and the negotiations leading to the

Settlement.  *See generally* ECF No. 180 at 4–5.

## III.    FINAL APPROVAL IS WARRANTED.

The Court should grant final approval of the settlement pursuant to Rule 23(e).  To become

final and binding, the Settlement requires this Court's approval.  *See* Fed. R. Civ. P. 23(e) ("The

claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only

with the court's approval.").  Courts should approve a "class action settlement if it is 'fair, adequate,

and reasonable, and not a product of collusion.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396

F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  In

evaluating proposed settlements, courts consider "both the settlement's terms and the negotiating

process leading to settlement." *Id.*  This assessment is conducted "in light of the 'strong judicial

policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng Catering & Events,*

*LLC*, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) (quoting *Wal-Mart*, 396 F.3d at 116); *see*

*In re Adv. Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors

settlement, particularly in class actions and other complex cases where substantial resources can

be conserved by avoiding the time, cost, and rigor of prolonged litigation.").  Thus, the Second

Circuit has instructed that, although proposed settlements should not be "rubber stamp[ed]," courts

should "stop short of the detailed and thorough investigation that it would undertake if it were

actually trying the case." *Grinnell*, 495 F.2d at 462.

The Parties' $290 million Settlement is reasonable, fair, and adequate under all of the relevant factors, particularly in light of the litigation risks Class Representative and the Class faced. The Settlement therefore warrants final approval from this Court.

In considering whether to grant final approval, there are two steps.  First, the Court conducts an inquiry pursuant to Rule 23(e)(2), which identifies factors that must be considered in determining whether a class settlement is "fair, reasonable, and adequate."  These are whether:

    a)  the class representatives and class counsel have adequately represented the class;

    b)  the proposed settlement was negotiated at arm's length;

    c)  the relief obtained for the class is adequate, taking into account:

        (i)  the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    d)  the proposed settlement treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Second, the Court considers the nine so-called *Grinnell* factors, which overlap with the Rule 23(e)(2) factors:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement amount in light of the best possible

recovery; and (9) the reasonableness of the settlement amount compared to a possible recovery in light of all of the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. "[T]he new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

Not every factor need be satisfied for a settlement to be deemed substantively and procedurally fair, reasonable, and adequate. "[R]ather, the court should consider the totality of these factors in light of the particular circumstances." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *7 (S.D.N.Y. July 12, 2022) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)); *see Glob. Crossing*, 225 F.R.D. at 455 (explaining that courts should not substitute their "business judgment for that of counsel, absent evidence of fraud or overreaching").

In this case, evaluation of these factors strongly supports final approval of the Settlement.

### A. The Settlement Satisfies the Requirements of Rule 23(e)(2).

As the Court held in granting Preliminary Approval, the Rule 23(e)(2) factors weigh heavily in favor of approval. *See* ECF No. 182 at 2; ECF No. 183 at 2.

### 1. Class Representative and Class Representative's Counsel Have Adequately Represented the Class.

The determination of adequacy under Rule 23(e)(2)(A) "typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and

2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  Both factors favor approval here.

As set forth in support of her motion for class certification, *see* ECF No. 95, and motion for preliminary approval of the Settlement, *see* ECF No. 179, Class Representative's interests in this case are directly aligned with those of the other Class Members.  *See Wal-Mart*, 396 F.3d at 106–07 ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members.").  Class Representative has demonstrated her ability and willingness to pursue the Litigation on the Class's behalf through her active involvement in the Litigation, including by responding to written discovery, searching for and producing documents in response to numerous requests and follow-up requests, constantly communicating with counsel during the development of the case, scheduling a deposition, traveling across the country in preparation for a deposition, preparing for a deposition, undergoing an intensive Rule 35 medical exam, sitting for deposition over two days and preparing for a third day of deposition that was canceled at the last minute upon Defendant's settlements with the USVI and Staley, reviewing numerous filings, staying apprised of developments in the case, participating in settlement negotiations, and approving the Settlement. *See Adv. Battery Techs., Inc.*, 298 F.R.D. at 184 (finding that Class Representative had adequately represented the class where, similar to here, Class Representative spent time "reviewing pleadings, motions, and other documents; searching for and producing documents; traveling to New York to appear for a deposition; and communicating with counsel concerning the status of the case, and staying apprised of all developments in the case, including discussions about the [s]ettlement."). Class Representative and Class Counsel zealously advocated for the interests of victims of Jeffrey

Epstein and have obtained an excellent result on the Class's claims.  Class Representative's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on motions to dismiss and for class certification, *Daubert* and discovery issues; and participation in extensive settlement negotiations, which included a two-day mediation.  Since preliminary approval, Class Counsel have worked diligently with dozens of Class Members and the Claims Administrator to facilitate the claims process.   The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of victims of Jeffrey Epstein.  Accordingly, this factor weighs in favor of approval of the Settlement.

**2.  The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations.**

"The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate."  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983).  A proposed settlement is presumed fair and reasonable when it is the result of arm's-length negotiations between counsel.  *See EVCI Career Colleges Holding Corp.*, 2007 WL 2230177, at *4 ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws.").  This is particularly true when, as here, a mediator assisted the parties in reaching a settlement.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019) (Rakoff, J.) ("[T]he parties engaged in mediation and the mediator's declaration confirms that the settlement agreement was 'a product of extensive and informed negotiations conducted at arm's length' by 'sophisticated and capable

counsel.'"). The Settlement was reached only after extensive, arm's-length negotiations before Layne R. Phillips, a nationally recognized mediator experienced in class actions. Judge Phillips has mediated similar, large settlements on behalf of sexual abuse victims. In advance of mediation, the Parties submitted detailed mediation statements and supporting evidence. The Parties then participated in a mediation and reached the Settlement.

Additionally, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle. Class Representative agreed to settle after extensive pre- and post- Complaint investigation, and after a significant portion of fact and expert discovery was completed. Class Representative and Class Counsel therefore had an adequate basis for assessing the strength of the Class's claims and Defendant's defenses when they agreed to the Settlement. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) (granting final approval of settlement and concluding that "[t]he advanced stage of the litigation and extensive amount of discovery completed weigh heavily in favor of [settlement] approval" because "[t]he parties' counsel were clearly in a position to realistically evaluate the strengths and weaknesses of the claims, and to evaluate the fairness of the proposed [s]ettlement."). Thus, this factor weighs in favor of granting final approval.

### 3. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation.

Under Rule 23(e)(2)(C), the Court must also consider whether the relief provided for the class is "adequate" in light of "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of

payment"; and "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv).  These factors support approving the Settlement.[2]

### i.   The Settlement is Reasonable Given the Costs, Risks, and Delay of Trial and Possible Appeals.

Courts consider both the best possible recovery and litigation risks in deciding "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case."  *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  A court thus need only determine whether the settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan 31, 2019) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

If approved, the Settlement will provide Class Members with $290 million in cash less reasonable attorneys' fees, litigation expenses, Notice and Administration Expenses, Taxes, and Tax Expenses.  The recovery obtained represents an outstanding result for the Class, where a class member will receive an uncapped Allocated Amount without deduction for any amounts previously received from Epstein's estate or others.  Additionally, although Class Representative and Class Counsel believe their case against Defendant is strong, they acknowledge that Defendant has presented substantial arguments and evidence, including expert testimony, that would have created

---

[2]   As to the fourth factor under Rule 23(e)(2)(C)(iv), while the Parties entered into a Confidential Settlement Term Sheet that established certain conditions under which Defendant could terminate the Settlement, those conditions were not met and the deadline for Defendant to terminate has since lapsed.  In any event, these types of agreements are "standard" in class action settlements and should have "no negative impact on the fairness of the Settlement."  *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

significant risks for Class Representative at summary judgment and/or at trial, and that could have led to dismissal of some or all of Class Representative's claims, and thus, to a substantially smaller recovery or no recovery at all.  Finally, Class Representative and Class Counsel considered the significant risks that are presented by the uncertainty that arises in any jury trial, and that even a favorable verdict could be reduced or reversed in its entirety upon consideration of inevitable post-trial motions or on appeal.  Moreover, even if ultimately successful, the trial and appellate process would likely consume a minimum of two years, if not longer, thereby delaying further the recovery by Class Members of damages they suffered beginning, in some cases, more than a decade ago.

The Settlement therefore balances the risks, costs, and delays inherent in complex class action cases such as this one.  When viewed in the context of these risks and the uncertainty of any future recovery from Defendant, the Settlement is extremely beneficial to the Class.

### ii. The Proposed Method for Distributing Relief and Processing Class-Member Claims Is Effective.

The method for effectuating notice and processing class-member claims is, and has been, highly effective.  It includes well-established, effective procedures for giving notice to potential Class Members, processing claims submitted by Class Members, and efficiently distributing the Global Settlement Amount.  This factor supports final approval as well.

As preliminarily approved by the Court, the notice plan included direct emailing of the Notice to all Class Members who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *USA Today*.  After combing through hundreds of thousands of documents including banking records produced by Defendant, flight logs, message pads, police reports from multiple states, news articles, and multiple third-party productions including emails from the Estate of Jeffrey Epstein, Class Counsel hired investigators to locate and obtain addresses for potential Class Members.  Furthermore, Class Counsel contacted attorneys

known to have represented survivors in previous Epstein-related litigation to obtain contact information and ensure that all known or suspected Class Members received proper notice. Subsequently, third-party claims administrator, Omni Agent Solutions ("Omni"), effectuated direct Notice to all identified Class Members.

Additionally, Class Counsel and the investigative team hired by Class Counsel located and corresponded with dozens of potential Class Members on social media platforms including Facebook, Instagram, and LinkedIn, and via email, to provide notice of the underlying action and information relating thereto.  With respect to potential Class Members who were not located through the aforementioned means, Class Counsel called and emailed all potential survivors using all known contact information and through former counsel.  Class Counsel further asked each known Class Member to provide the identity and contact information for any additional potential Class Member that they were familiar with and then underwent the same investigative measures to locate and contact those individuals.  In total, Class Counsel caused at least 160 potential Class Members to receive notification of the Settlement by mail, email, or both.

A dedicated website was also created for the Settlement and has been updated regularly with information and key documents concerning the Settlement, including the Stipulation, Notice, Proof of Claim form, Preliminary Approval Order, all briefs and declarations in support of the Settlement and an award of attorneys' fees and expenses, and an informational video with the Claims Administrator addressing Frequently Asked Questions.  *See* Epstein Survivors' Settlement Fund JPM, www.epsteinSSFJPM.com.



The proposed claims process is also effective and includes a Questionnaire and Release that requests the information necessary to allow the Claims Administrator to evaluate the claim. The Plan of Allocation governs how Class Members' claims will be calculated and how money will be distributed to Authorized Claimants.

In determining an Allocated Amount, the Claims Administrator and/or her designees shall consider the following: the circumstances, severity, type, and extent of the alleged harm, injury, exploitation, abuse or trafficking, the nature and duration of the relationship with Epstein, any cooperation with government investigations or refusal to cooperate with government investigations or refusal to cooperate with this civil litigation including any convictions relating to Epstein's sex

trafficking venture, and the impact of the alleged conduct on the Participating Claimant, and the extent of recovery, if any, in *Jane Doe 1, et al, v. Deutsche Bank Aktiengesellschaft, et. al.*, Case No. 1:22-CV-10018 (JSR).

Class Counsel has gone to great lengths to ensure that this is the most trauma-informed settlement fund to date.  In addition to making privacy concerns a primary focus of the settlement fund, Class Counsel traveled extensively to California, New York, and Florida to meet with Class Members to answer questions and assist in person with the completion of the Questionnaire and Release.  Class Counsel also met with various attorneys representing Class Members in their offices in person and assisted those attorneys in reviewing the claims of Class Members and gathering supporting documentation prior to submission.  In addition to in-person meetings, Class Counsel participated in a number of Zoom meetings and telephone calls with Class Members all over the globe at various hours of the night to ensure that Class Members were fully informed about the settlement and the settlement fund process.

Class Counsel take great pride in the trauma-informed nature of the administration of this fund.  In fact, many Class Members have expressed meaningful gratitude to Class Counsel for the approach that has been taken to ensure confidentiality and to treat survivors with dignity and respect. One class member thanked Class Counsel for never giving up on trying to hold enablers accountable because she never thought that Epstein would be brought to justice, much less a corporation. A number of survivors expressed appreciation for the way in which this Fund was designed in a way that would not make them be revictimized or retraumatized.  Many survivors were appreciative of the endless hours that Class Counsel spent walking through this process with them and counseling them in all areas.  Some have even requested that they be permitted to attend the Final Approval Hearing to express these same sentiments to the Court.  Perhaps more meaningfully, the result of

this trauma-informed process has included many Class Members expressing this process as having provided the very first step in their emotional and psychological healing, which some had resigned themselves to never obtaining.

Finally, Simone K. Lelchuk, the Claims Administrator selected by the Parties and appointed by the Court, has been processing claims diligently, meeting with claimants and providing them an opportunity to cure any procedural deficiencies in their claims as necessary (such as failing to provide a signature or social security number), and will distribute the Settlement proceeds pursuant to the Court-approved Plan of Allocation. Class Counsel have also joined dozens of Class Members who wish to speak with the Claims Administrator during their in-person or Zoom meetings.

### 4. Class Counsel's Fee and Expense Request Is Fair and Reasonable.

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Class Representative or any other Class Member preferentially. The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Eligible Class Members and Participating Claimants. Each Eligible Class Member and Participating Claimant, including Class Representative, will receive distribution pursuant to the Plan of Allocation. This factor supports final approval as well. *See also* § V., *infra*.

### B. The Settlement Satisfies the *Grinnell* Factors.

***The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement.*** The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. Fed. R. Civ. P. 23(e)(2)(C)(i); *see* § III.A.3.i., *supra*. This case is reflective of the complexity, expense, and duration of class actions.

Absent a settlement, further litigation through summary judgment, trial, and appeals is likely to be costly and take several years, with a material risk that there will be no recovery whatsoever.

    ***The Reaction of the Class to the Settlement.***  The Class's reaction to the Settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'"  *City of Providence*, 2014 WL 1883494, at \*5 (quoting *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at \*7 (S.D.N.Y. Nov. 7, 2007)).  Not a single class member, many of whom have counsel representing them individually, has chosen to opt out of the settlement. "A favorable reception by the class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval." *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at \*3 (S.D.N.Y. Aug. 6, 2010) (quoting *Grinnell*, 495 F.2d at 462).

    While the deadline to submit objections (October 19, 2023) has not yet passed, virtually all Class Members have signaled their support for the Claims Administration process, and only one objection[3] has been filed.  *See* ECF No. 219.  Additionally, no Class Members opted out.  ECF No. 231-1 at ¶ 12.  This positive reaction of the Class supports approval of the Settlement.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) ("The overwhelmingly positive reaction–or absence of a negative reaction–weighs strongly in favor" of final approval.), *aff'd sub nom.*, *In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020).  "The fact

---

[3]     Charlene Y. Latham has previously filed suit in at least two other matters claiming that she and her family members are legitimate survivors of Jeffrey Epstein despite offering no evidence for her claims.  First, when she attempted to bring her own suit against the Epstein estate in *Latham, et al v. The 1953 Trust, et al*, No. 20-CV-07102-LLS (SDNY Sept. 24, 2020), Judge Stanton dismissed her complaint ruling her claims "rise to the level of the irrational, and there is no legal theory on which she can rely.*" Id*. at ECF No. 3 at 3.  Second, in *Latham et. al., v. Trump, et al*, Ms. Latham made similar claims, again without any evidence, and the Southern District of Florida dismissed her complaint in just two days, citing to Judge Stanton's opinion in *1953 Trust*. *See* No. 20-CV-82157 (S.D. Fla), ECF No. 5 at 4.  Additionally, Ms. Latham attempted to intervene in the administration of the Harvey Weinstein abuse victim's settlement despite having no evidence to support her claims. *See In re TWC Liquidation Tr., LLC*, No. 18-10601 (MFW) (Bankr. D. Del.). Class Counsel will fully address Ms. Latham's improper objection in a forthcoming filing.

that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344–45 (S.D.N.Y.2008).

**The Stage of the Proceedings.**  The extent and substance of Class Representative's and Class Counsel's knowledge of the merits and potential weaknesses of the claims alleged are more than adequate to support the Settlement.  *See* § III.A.2., *supra*.  The voluminous discovery record of over 107,000 pages of documents and 22 depositions, as well as the extensive expert reports, depositions, *Daubert* briefing and related evidence submitted, permitted Class Representative and Class Counsel to intelligently weigh the strengths and weaknesses of the case and to engage in effective settlement negotiations.  *See, e.g.*, *Marsh*, 265 F.R.D. at 139; *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281–82 (S.D.N.Y. 1999); *Soler v. Fresh Direct, LLC*, 2023 WL 2492977, at *4 (S.D.N.Y. Mar. 14, 2023); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).

**The Risk of Establishing Liability and Damages.**  The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  As demonstrated above, Class Representative has satisfied the fourth *Grinnell* factor.  *See* § III.A.3.i., *supra*.

**The Risks of Maintaining the Class Action Through Trial.**  Although the risk of maintaining a class through trial is present in every class action, this factor nevertheless weighs in favor of settlement where it is "likely that defendants would oppose class certification if the case were to be litigated."  *Payment Card*, 330 F.R.D. at 39–40; *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268–69 (S.D.N.Y. 2012) ("The risk that Defendants could in fact succeed in their efforts to decertify the class militates in favor of settlement approval.").  Such is the case here.  If the case were to proceed to trial, Defendant could—and likely would—move for decertification of the class.  *See* Fed. R. Civ. P. 23 (c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.");  Amended

Stipulation ¶ 1.4 (noting that Defendant will not oppose certification of the class for Settlement Purposes only). Although the Court certified the Class, there is no guarantee that the Class would remain certified if the Parties proceeded with the litigation, and Defendant has indicated that it is only consenting to class certification for the purposes of settlement. *See, e.g., Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 WL 3681138, at *6 (E.D.N.Y. Dec. 11, 2006) ("The parties stipulated to class certification for settlement purposes only. If the class action were litigated, however, it is likely that defendants would oppose certification." (citation omitted)); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476–77 (S.D.N.Y. 1998) (noting that "there is no guarantee that this class would not be decertified before or during trial" and stating that "if the Class were to be decertified at trial, or if class certification were to be reversed on appeal, the class members (other than a few dozen plaintiffs) would recover nothing at all"). Thus, Class Representative has satisfied the fifth *Grinnell* factor.

> ***Defendant's Ability to Withstand a Greater Judgment.*** As explained in the Motion for Preliminary Approval, a defendant's ability to withstand a greater judgment is not dispositive when other factors favor approval. *See* ECF No. 180 at 26. Courts generally do not find this factor to be an impediment to settlement when the other *Grinnell* and Rule 23 factors favor settlement. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *(quoting Weber v. Gov't Emps. Ins. Co.,* 262 F.R.D. 431, 447 (D.N.J. 2009)). The law does not require a defendant to "empty its coffers before a settlement can be found adequate." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *9 (S.D.N.Y. Dec. 19, 2014) (quoting *In re Sony SXRD Rear Projection*

*Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)).  Accordingly, this *Grinnell* factor is neutral.  *See Nichols*, 2022 WL 2705354, at *10.

        ***The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.***  The adequacy of the amount recovered in a settlement is assessed "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman*, 464 F.2d at 693; *see also Glob. Crossing*, 225 F.R.D. at 461 ("The certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3–4 (S.D.N.Y. Sept. 29, 2003) ("Few cases tried before a jury result in a verdict awarding the full amount of damages claimed.").  Here, given the alleged facts and circumstances, including the nature of Defendant's alleged conduct and knowledge, the time period involved, and the size and complexity of the case, the Settlement amount is reasonable.

*    *    *

        In sum, all of the Rule 23 and *Grinnell* factors weigh in favor of final approval of the Settlement, except possibly one neutral factor.

**IV.**    **THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE.**

        The Plan of Allocation—the method by which the Settlement Fund is distributed to the Class— "must be fair and adequate." *Facebook*, 343 F. Supp. 3d at 414 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)); *see* Fed. R. Civ. P. 23(e)(2).  Where, as in this case, a Plan of Allocation is "formulated by competent and experienced class counsel,"

it "need only have a reasonable, rational basis." *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at *3 (S.D.N.Y. Jan. 7, 2021) (quoting *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *11 (S.D.N.Y. July 31, 2008)). The Plan of Allocation here is appropriate.

The Plan of Allocation was included in the Notice of Proposed Settlement of Class Action, which was submitted to the Court in connection with the motion for Preliminary Approval of the Settlement. *See* ECF No. 181-2 at 5–6. It is based on a similar approach which the Class Administrator used in other cases. *See* ECF No. 231-1 at ¶ 5; *TWC Liquidation Trust, LLC (f/k/a The Weinstein Company Holdings LLC)*, No. 18-10601 (Bankr. D. Del. Mar 19, 2018); *Farruggio et al. v. 918 James Receiver, LLC et al.*, No. 3831/2017 (Sup. Ct. Onondaga Cty. Aug. 25, 2017); *In re USA Gymnastics*, No. 18-09108 (Bankr. S.D. Ind. Dec. 5, 2018).

The Plan also treats all Class Members equitably. Any Class Members who submits a valid and timely Questionnaire and Release, does not otherwise exclude themselves from the Class, and is not otherwise deemed ineligible by the Claims Administrator will receive an Allocated Amount. The Plan describes the various factors and criteria the Claims Administrator will take into consideration in determining an Allocated Amount.

As such, the Plan of Allocation equitably distributes the Settlement Fund to all Authorized Claimants who follow these procedures as specified in the Notice and Proof of Claim Form. This process is fair, reasonable, and consistent with the plans of allocation in other class action settlements. There has been only one objection to the Plan of Allocation, which supports approval. *See Veeco*, 2007 WL 4115809, at *14 ("This favorable reaction of the Class supports approval of the Plan of Allocation."). The Plan of Allocation is appropriate and warrants approval.

## V.   NOTICE TO THE CLASS COMPORTS WITH DUE PROCESS AND SATISFIES THE REQUIREMENTS OF RULE 23.

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner," Fed. R. Civ. P. 23(e)(1)(B). Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Merrill Lynch Tyco Rsrch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008).

The form and manner of notice in this case satisfied these requirements. Based on this Court's guidance at the Preliminary Fairness Hearing, and in accordance with the Amended Preliminary Approval Order, *see* ECF No. 183, the parties crafted a Notice that advised the Members of the Class of the essential terms of the Settlement and provided information regarding Class Counsel's application for an award of attorneys' fees and expenses. The Notice also provided specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for both submitting valid and timely Proofs of Claim and Release pursuant to the proposed Plan of Allocation and objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses. Further, the Notice provided contact information for the Claims Administrator and Class Counsel and advised Class Members on how to obtain further information regarding the Settlement.

Pursuant to the Court's Amended Preliminary Approval Order, the Claims Administrator timely (1) caused a copy of the Notice and the Questionnaire and Release to be emailed to all identifiable Class Members; (2) posted the same on the case-designated website; and (3) caused publication of the

Summary Notice in *USA Today*. *See* ECF No. 231-1 at ¶¶ 8–10. Defendant also caused Rust Consulting to serve notice of the proposed Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq*. *See* ECF No. 232.

The form and manner of providing notice to the Class satisfy the requirements of Due Process and Federal Rule of Civil Procedure 23. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id*. at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014). The requirements of Due Process impose similar requirements. *See Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options . . . in connection with [the] proceedings.'").

Both the substance and method of distributing the Notice comport with Rule 23, the dictates of Due Process, and are consistent with the notices in other, similar actions. The combination of (i) individual notice by email to all Members of the Class who can be reasonably identified, and supplemental mailings and email notice for Members of the Class who could not be reached by email on the first attempt, (ii) the creation of a dedicated Settlement website, (iii) publication in *USA Today*, (iv) notices concerning the rights of the Class Members, including the manner in which objections can be lodged, (v) notices concerning the nature, history and progress of the litigation, (vi) detailed instructions on how to file the Questionnaire and Release, or opt out of the Settlement, (vii) a detailed description of the Plan of Allocation, and (viii) notice concerning the fees and litigation expenses to be

sought by Class Counsel, represent the best notice practicable under the circumstances.  For example, in *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021), the court found that the notice plan—similar to that proposed here—was "reasonable and adequate" because the proposed notice was "detailed enough to inform the class members of their rights and obligations, and the proposed methods of notice, including publishing the summary notice in the *Wall Street Journal* and sending it once over a national newswire, are practical and likely to be effective in reaching the affected individuals."  *Id.* at *13; *see Christine Asia*, 2019 WL 5257534, at *16 (concluding that direct First-class mail combined with print and Internet-based publication of settlement documents was "the best notice practicable under the circumstances"); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 119–20 (S.D.N.Y. 2009) (same); *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *2 (S.D.N.Y. Sept. 6, 2006) (granting final approval of settlement where, similar to here, "[t]he [p]laintiffs proceeded to publish a summary notice in the *Wall Street Journal* and *New York Times*," "sent out over a million notices to shareholders," and "set up a website and toll-free telephone number to provide shareholders with information about the [s]ettlement").

In short, the Notice and Summary Notice satisfy all requirements of Due Process and Rule 23 because they "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger,* 698 F.2d at 70).

## VI.    CONCLUSION

The $290 million Settlement is an excellent recovery for the Class, particularly in light of the certain delay and significant risks of lesser or no recovery posed by continuing the Litigation. For the foregoing reasons, Class Representative respectfully requests that the Court approve the Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: October 5, 2023

Respectfully submitted,

/s/ *David Boies*

David Boies
Andrew Villacastin
Sabina Mariella
Alexander Law
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: smariella@bsfllp.com
Email: alaw@bsfllp.com

Sigrid McCawley (*pro hac vice*)
Daniel Crispino (*pro hac vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com

Bradley J. Edwards
Edwards Henderson Lehrman
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954)-524-2822
Email: brad@cvlf.com

Brittany N. Henderson
Edwards Henderson Lehrman
1501 Broadway
Floor 12
New York, NY
Telephone: (954) 524-2820
Fax: (954) 524-2820
Email: brittany@cvlf.com

*Counsel for Jane Doe 1*