UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jane Doe 1, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>JPMorgan Chase Bank, N.A.,<br><br>   Defendant. | Case No. 1:22-CV-10019 (JSR) |

**JOINT DECLARATION OF DAVID BOIES AND BRADLEY EDWARDS IN SUPPORT OF MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND (2) AN AWARD <u>OF ATTORNEYS' FEES AND EXPENSES</u>**

We, David Boies and Bradley J. Edwards, declare as follows:

     1.     I, David Boies, am a member in good standing of the bar of the State of New York and am admitted to practice before this Court. I am the Chairman and a Managing Partner of Boies Schiller Flexner LLP ("BSF"). I make this declaration on my own personal knowledge, and if called as a witness to testify, I could and would testify competently to the following facts.

     2.     I, Bradley J. Edwards, am a partner at Edwards Henderson Lehrman ("EHL"). I am an attorney at law duly licensed to practice before the courts of the state of New York. I make this declaration on my own personal knowledge, and if called as a witness to testify, I could and would testify competently to the following facts.

     3.     Our two law firms representing Settlement Class Representative Jane Doe 1 ("Class Representative" or "Plaintiff") and the Class have invested significant resources into investigating and litigating this case.

1

4.  We submit this declaration pursuant to Rule 23 of the Federal Rules of Civil Procedure in support of the motions for: (a) final approval of the $290 million Settlement between Class Representative, on behalf of herself and the Class, and Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "JPMC") and approval of the Plan of Allocation, and (b) an award of attorneys' fees and expenses.

I.  **PRELIMINARY STATEMENT**

5.  This case grew out of our firms' long representation of the survivors of Jeffrey Epstein's sex trafficking ring. EHL began representing Epstein survivors in 2008. BSF began representing Epstein survivors in the first half of 2014.

6.  By 2020, our firms had successfully brought lawsuits against Epstein himself during his life, his estate after his death, certain entities that he owned or controlled, certain collaborators like Ghislaine Maxwell, and certain associates like Prince Andrew. Although we had collectively recovered substantial amounts for our clients, we believed they had not been fully compensated, and that many who had made the scope, scale, and duration of Epstein's sex trafficking possible had not been held accountable.

7.  For many years, we had investigated Epstein's relationship with major banks. In early 2020, we decided to make a concerted effort to develop cases against JPMC and Deutsche Bank, the two primary banks on which Epstein had relied.

8.  We recognized the risks such cases entailed. We recognized that no such case had been previously brought. We also recognized the banks would argue that they did not have legal liability for the acts of their depositors, that they would argue that because the damages suffered by individual survivors varied greatly, a class would not be certified, prior releases would preclude such a lawsuit altogether, and that Class Members prior recoveries had to be applied to any

2

recovery.

9. Nevertheless, we believed that the intent of applicable legislation was to hold entities like these banks accountable for their role in facilitating sex trafficking, and we decided to proceed.

10. Beginning in 2020, we collected and analyzed thousands of documents and interviewed more than 100 witnesses who had knowledge of Epstein's sex trafficking and the role financial institutions had played in making its scope, scale, and duration possible. We contacted law enforcement personnel, prosecutors, and regulators to gather additional information and documents. We secured affidavits and other statements under oath from potential fact witnesses to help ensure that we could prove what we alleged. We traveled to different states and countries to conduct valuable interviews. We retained and began to work with experts both to establish liability and to develop proof of damages. We researched and analyzed cases and commentary, and legislative history -- and ultimately, we drafted, and redrafted a complaint.

11. This case has been intensely litigated from its commencement in November 2022 through Settlement. Class Representative, on behalf of herself individually and the Class, has diligently prosecuted this litigation, marshaling a substantial body of evidence as she pressed her claims toward trial. Likewise, throughout the Litigation, Defendant aggressively defended the claims against them and vigorously asserted that they had meritorious defenses. The Settlement was achieved through mediation only after Class Counsel (a) successfully opposed Defendant's motion to dismiss; (b) substantially completed fact discovery, including the review and analysis of hundreds of thousands of documents produced by Defendant and third parties, taking, defending, and assisting in 19 fact depositions, responding to and propounding additional discovery, and preparing to defend Class Representative's deposition; (c) engaged in expert discovery, in which

the parties exchanged expert and rebuttal reports and participated in four expert depositions; and (d) independently organized and analyzed the massive litigation record, prepared an exhaustive order of proof, and developed their own theories and strategies for establishing liability.

12. This Settlement is the product of hard-fought litigation and takes into consideration the significant risks specific to the case. In particular, the Settlement is the result of arm's-length negotiations between the parties facilitated by Layn R. Phillips, a former United States Attorney, former United States District Judge, and nationally recognized mediator. These negotiations were conducted by experienced counsel with a full understanding of both the strengths and weaknesses of their respective cases.

13. Class Representative believes that this Settlement is an excellent result. While the time for objecting to the Settlement or counsel's fees has not yet expired, no Class Members opted out and only one individual has filed an objection. Any objections will be addressed in Class Counsel's reply brief (which, in accordance with the schedule set by the Court, will be filed no later than November 2, 2023).

II.     SUMMARY OF CLASS REPRESENTATIVE'S ALLEGATIONS

14. Class Representative alleges that Jeffrey Epstein's sex trafficking venture was facilitated and enabled by Defendant helping Epstein avoid regulators' scrutiny and providing Epstein with cash and wire services, all so Defendant could profit from Epstein and his associates. *See* ECF No. 36 (Amended Complaint). She alleges that Defendant's assistance to Epstein's sex trafficking enterprise prevented the authorities from discovering his illegal scheme and increased the size and scale Epstein's access to and control of victims, causing damage to members of the Class.

III.    THE REASONS FOR THE SETTLEMENT

15. In opting to settle the Litigation, Class Representative and Class Counsel were informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on motions to dismiss and for class certification, and discovery issues; and participation in extensive settlement negotiations, which included a two-day mediation. Class Representative and Class Counsel therefore had an adequate basis for assessing the strength of the Class's claims and Defendant's defenses when they agreed to the Settlement. The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of victims of Jeffrey Epstein.

16. On balance, considering all the circumstances and risks both sides faced were the case to continue to trial, both Class Representative (for herself and the Class) and Defendant concluded that settlement on the terms agreed upon was in their respective best interests.

17. Class Counsel have prosecuted the Litigation on a wholly contingent basis and has advanced and incurred substantial litigation expenses. In doing so, Class Counsel shouldered the substantial risk of an unfavorable result. Class Counsel have not yet received any compensation for their efforts.

18. Class Counsel's fee application for 30% of the Settlement Amount is fair, reasonable, and within the range of fee awards in this District in similar class actions. *See* Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses ("Fee Motion"). Particularly under the facts of this case, this percentage is justified in light of the substantial benefits conferred on the Class, the risks undertaken, the quality of representation, and the nature and extent of legal services performed.

19. Class Counsel also seek payment for expenses totaling $1,137,849.36 that were reasonably and necessarily incurred by BSF and EHL in the prosecution of the Litigation. *See*

Declaration of Sigrid McCawley in Support of Motion for An Award of Attorneys' Fees and Expenses ¶ 7 ("BSF Decl."); Declaration of Bradley Edwards in Support of Motion for an Award of Attorneys' Fees and Expenses ¶ 8 ("EHL Decl."). These expenses include: (a) the fees and expenses of consultants and experts whose services Class Counsel required in the successful prosecution and resolution of this case; (b) the costs associated with investigations, and conducting fact and expert witness depositions, which included court reporter and videographer fees as well as travel expenses; (c) photocopying, imaging, shipping and managing a database of hundreds of thousands of pages of documents; (d) online factual and legal research; and (e) mediation fees. These expenses were reasonable and necessary to obtain a successful result.

**IV.   THE LITIGATION**

20.  The following is a summary of the principal events that occurred during the course of the Litigation.

21.  Class Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class. BSF and EHL are both primarily trial firms and prepare their case strategy based on anticipating the requirements for trial and working back from there in implementing strategy for discovery, experts, and motion practice. Class Counsel took that approach here and respectfully submits that doing so led directly to the successful Settlement.

   **A.  Preparation for and Commencement of the Action**

22.  As described above, Class Counsel began investigating this complex matter in early 2020 and interviewed dozens of witnesses and potential class members. That investigation involved investigating Epstein's worldwide trafficking scheme during the timeframe he banked with Defendant, interviewing survivors, and investigating Defendant's relationship with Epstein.

23.  On November 24, 2022, Plaintiff filed her putative class action complaint on behalf

of herself and on behalf of "[a]ll women who were sexually trafficked by Jeffrey Epstein during the time when JPMorgan maintained bank accounts for Epstein and/or Epstein related-entities, which was in or about 2000 through in or about August 2013, both dates inclusive." *See* ECF No. 1 at ¶ 227.

24. On December 30, 2022, Defendant moved to dismiss the complaint. *See* ECF Nos. 31.

25. On January 13, 2023, Plaintiff filed an amended complaint. *See* ECF No. 36. Defendant moved to dismiss the amended complaint on February 7, 2023. *See* ECF Nos. 44. Plaintiff filed a response on February 21, 2023, *see* ECF Nos. 49, and Defendant filed a reply on February 28, 2023, *see* ECF Nos. 54.

26. The Court entered a "bottom-line" order granting in part and denying in part Defendant's motion to dismiss on March 20, 2023. *See* ECF No. 66. The Court's written opinion followed on May 1, 2023, reconfirming its rulings and explaining the reasoning behind them. *See* ECF No. 102.

27. Defendant answered the Amended Complaint on April 10, 2023. *See* ECF No. 83.

**B. Fact Discovery**

28. After the matter was filed, the Court held the parties to a fast and efficient discovery schedule. In the span of just five months, Class Counsel served three sets of document requests on Defendant, met and conferred at least once a week with Defendant about their requests, and analyzed the 107,785 documents Defendant produced.

29. During the fact-discovery period, Class Counsel took 7 depositions of key current or former employees of Defendant with relevant information: (1) the Chief Executive Officer of JPMorgan Chase; (2) the Chief Executive Officer of JPMorgan Chase's Asset & Wealth

Management; (3) Epstein's former relationship manager from the Asset & Wealth Management group; (4) the Managing Director and Head of the Asset Management and Financial Principals Coverage Team; (5) a Risk Management professional; (6) the former head of Private Banking; and (7) a former AML Compliance professional. In addition, Class Counsel took the deposition of a 30(b)(6) witness. These witnesses gave testimony on a wide variety of topics, including JPMC's Know Your Customer (KYC), anti-money laundering (AML), and risk management policies; JPMC's onboarding and offboarding of Jeffrey Epstein; JPMC's banking relationship with Jeffrey Epstein; JPMC's knowledge concerning allegations of Epstein's sex-trafficking venture; and JPMC accounts for Epstein and Epstein's co-conspirators. Further, Class Counsel negotiated with Defendant's Counsel extensively regarding various deposition topics for Defendant's Rule 30(b)(6) deposition and took that deposition on May 30, 2023.

30. During the same compressed timeframe, Defendant served three sets of document requests on Plaintiff. Class Counsel spent significant time preparing responses and objections, meeting and conferring with Defendant's Counsel about the scope of their requests at least weekly and producing responsive documents. Class Counsel also prepared Plaintiff for her deposition, which involved extensively preparing her to testify about an extremely traumatic and complex period of her life. Class Counsel defended Plaintiff for two separate depositions. Plaintiff also sought documents from numerous other non-parties over the course of the Litigation.

**C. Motion Practice**

31. At the time of settlement, Class Counsel had devoted time and resources to two major motions. As just mentioned, Defendant first filed a motion to dismiss all of Plaintiff's claims on December 30, 2022. In response, Class Counsel closely analyzed the motion and submitted a First Amended Complaint on behalf of Plaintiff to address the issues raised in the motion. Then,

8

on February 7, 2023, Defendant filed a motion to dismiss all of the claims in Plaintiff's First Amended Complaint. Defendant's motion involved complex legal theories and responding to Defendant's motion required substantial resources. The Court also held oral argument on Defendant's motion, which required significant preparation by Class Counsel. Finally, on April 28, 2023, Class Counsel filed a motion to certify the class, which was accompanied by a declaration and nearly 50 exhibits.

### D. Expert Discovery

32. Class Counsel worked extensively with the following retained experts and their teams and utilized their services throughout the Litigation:

   a. <u>Jane Khodarkovsky</u>—Ms. Khodarkovsky is a former prosecutor and sex-trafficking expert who provides consulting services related to anti-money laundering, human trafficking, and child exploitation. Ms. Khodarkovsky prepared expert reports in connection with class certification in this matter, reviewed many documents produced by Defendant, provided deposition testimony in May 2023, and provided valuable consulting services to Class Counsel in connection with this case.

   b. <u>Ross Delston</u>—Mr. Delston is a Certified Anti-Money Laundering Specialist who provides expert testimony and consulting on Bank Secrecy Act and Anti-Money Laundering compliance issues. Mr. Delston acted as a consultant in this matter, opining on whether Defendant facilitated Jeffrey Epstein's criminal activities by failing to meet industry standards relating to anti-money laundering, and reviewed many documents produced by Defendant in doing so.

   c. <u>Jonathan Rusch</u>—Mr. Rusch is an Anti-Money Laundering and Corruption Expert specializing in Global Risk and Compliance. He is a former federal prosecutor,

regulator, and anti-bribery and corruption compliance head at a global financial institution. He performed significant analysis of all financial data produced by Defendant and prepared an extensive expert report regarding the actions and inactions of Defendant with respect to Jeffrey Epstein.

d. <u>Marianne DeMario</u>—Ms. DeMario is a Certified Public Accountant who specializes in forensic accounting investigations, damages analyses, and business valuations. Ms. DeMario began preparing an expert report in this matter, providing an analysis of the amount of economic damages Class Representative suffered due to Defendant's conduct.

e. <u>Chitra Raghavan</u>—Ms. Raghavan is a practicing psychologist and an expert in sex trafficking. She is the Director of the Forensic Mental Health Counseling Program at CUNY's John Jay College of Criminal Justice and has authored over fifty scientific articles and authored two books on the subject. Ms. Raghavan spent significant time with Class Counsel and with Class Representative to prepare an expert report regarding the psychological damages inherent in sex trafficking survivors.

f. <u>Jorge Amador</u>—Mr. Amador is a Lawyer and a Certified Public Accountant, and Certified in Financial Forensics with over 25 years of corporate and public accounting experience, including disputes, litigation, forensic investigations, discovery and regulatory compliance. He performed forensic accounting services with respect to review and analysis of Defendant's documents.

g. <u>Prism Investigations</u>—Prism is a litigation consultancy firm that performed deposition strategy consultation, document review, and research support.

33. Ms. Khodorkovsky also submitted a 34-page report in support of class certification and a 35-page class certification reply report. In addition to reviewing Ms. Khodorkovsky's report, Class Counsel prepared her for her deposition and defended her deposition. Ms. Khodarkovsky also prepared a draft report for disclosure on the merits of Plaintiff's claims, as had Mr. Delston and Ms. DeMario. Class Counsel also briefed opposition to Defendant's *Daubert* motion regarding Ms. Khodorkovsky. Class Counsel prepared Ms. Khodorkovsky for her *Daubert* hearing.

34. Additionally, Defendant disclosed two experts relating to class certification. Class Counsel reviewed and analyzed Defendant's expert reports and deposed both experts prior to Settlement.

## V. SETTLEMENT NEGOTIATIONS AND TERMS

35. On May 30 and June 6, 2023, the Parties engaged in a confidential mediation before Layne R. Phillips, an experienced mediator in large and complex civil sexual abuse matters and class actions.

36. Prior to the mediation, the parties submitted confidential mediation statements and exhibits that outlined each side's critical facts and legal arguments. Class Counsel prepared and submitted to the mediators a confidential, detailed mediation statement accompanied by hundreds of pages of exhibits.

37. Class Representative conducted arm's-length negotiations with Defendant with a view to achieving the best relief possible consistent with the interests of the Class. The settlement discussions were led by David Boies, Sigrid McCawley, and Bradley Edwards, who have extensive experience in litigating and resolving complex cases in federal courts. Defendant's counsel had similar experience in resolving complex litigation.

38. Following the mediation, the parties reached an agreement-in-principle to resolve the Litigation for $290 million. The Parties negotiated a Term Sheet, memorializing their agreement to settle Class Representative's claims against Defendant and to end the Litigation. The Parties executed the Term Sheet on June 11, 2023. The Term Sheet included, among other things, the Parties' agreement to settle and dismiss the Litigation with prejudice and to grant full mutual releases in return for a cash payment of $290 million by and/or on behalf of Defendant for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.

39. The parties then negotiated, drafted, finalized, and signed the formal settlement agreement detailing the terms of the proposed Settlement, which was filed with the Court on June 22, 2023, along with Class Representative's Unopposed Motion for (I) Preliminary Approval of Class Action Settlement; and (II) Approval of Notice to the Class. *See* ECF Nos. 179, 180, 181.

40. On June 27, 2023, the Court granted preliminary approval of the Settlement, including the form and manner of notice of the Settlement to the Class. *See* ECF No. 182; *see also* ECF No. 183 (Amended Order Granting Preliminary Approval, entered June 29, 2023).

41. The Settlement set forth in the Stipulation resolves the claims of the Class against all Defendant for $290 million in cash, inclusive of attorneys' fees and costs, notice and administration costs, and taxes and tax expenses. The recovery to individual Class Members will depend on factors including the circumstances, severity, type, and extent of the alleged abuse or trafficking, the nature and duration of the relationship with Epstein, and the impact of the alleged conduct on the Participating Claimant. Significantly, the average recovery per Class Member will be substantially greater than the average recovery received from Epstein and his estate.

42. Since the date of the settlement, Class Counsel have spent a tremendous amount of

time and energy, along with the help of investigators, locating class members, obtaining current contact information, and providing same with adequate notice pursuant to the terms of the Amended Order Granting Preliminary Approval.

43. Class Counsel further communicated with last known counsel for Class Members, again to ensure that each identifiable Class Member received adequate notice of the Settlement.

44. In total, Class Counsel caused at least 160 potential Class Members to receive notification of the Settlement by mail, email, or both.

45. Following identification and initial contact, Class Counsel traveled around the United States meeting with Class Members, explaining the terms of the Settlement, and assisting in the preparation of Settlement Forms to ensure that this Fund would be administered in the most effective and trauma informed manner possible.

46. It is the informed judgment of Class Counsel, based upon all proceedings to date and its extensive experience in litigating class actions, that the proposed Settlement of this matter before the Court is fair, reasonable and adequate and in the best interest of the Class.

## VI. CLASS REPRESENTATIVE'S ROLE

47. Class Representative played an active role throughout the Litigation in furthering the interests of the Class. She has demonstrated her ability and willingness to pursue the Litigation on the Class's behalf through her active involvement in the Litigation, including by searching for and producing documents, sitting for depositions, reviewing numerous filings, staying apprised of developments in the case, participating in settlement negotiations, and approving the Settlement. Class Representative's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on motions to dismiss and for class certification, and discovery issues; and participation in extensive settlement negotiations,

which included a two-day mediation.  Class Representative zealously advocated for the interests of victims of Jeffrey Epstein and obtained an excellent result on the Class's claims.

## VII. THE RISKS OF LITIGATION

48. The Class vigorously litigated this case, and the Settlement in this Litigation was reached only after Class Counsel had a thorough understanding of the claims alleged in the Complaint.  At the time of Settlement, discovery was substantially complete.  Documents had been produced, expert reports had been exchanged, and depositions had been taken.  Accordingly, Class Counsel firmly understood the strengths of their claims, the strengths of Defendant's defenses, and the potential damages suffered by the Class.

49. The $290 million Settlement here represents an excellent, historic result for the Class, especially given the likely amount of recovery, the defenses to liability and damages that Defendant advanced, and the design of a claim process that allowed survivors to decide the extent to which they want to participate given the significant potential for re-traumatization.  The Settlement provides the Class with an immediate and certain recovery in a case that faced significant risks at summary judgment, trial, and on appeal.

50. While Class Counsel believe that substantial evidence exists to support a jury verdict in favor of the Class, it recognizes that there were considerable risks and uncertainties if the case had proceeded to trial.  The Settlement exceeds what the Class might have recovered even if Class Representative had prevailed at trial.  There remained critical questions of fact to be determined at trial as to whether Class Representative would be able to prove Defendant's liability under the TVPA or Defendant's negligence.  Each Class Member would also have to prove the amount of damages to which she is entitled based on recounting personal and intimate information.  And because there have been no prior actions against banking institutions under a TVPA

beneficiary liability claim, the quantity of damages a jury would award is far from certain. Class Counsel carefully considered these risks throughout the Litigation and in recommending that Class Representative settle this matter.

51. The Settlement eliminates the possibility that the Litigation would not be finally decided and damages collected for many more years. The trial and appellate process would have added years to the Litigation, further delaying the Class's recovery for harm that began more than a decade ago.

## VIII. THE PLAN OF ALLOCATION

52. The Plan of Allocation was included in the Notice of Proposed Settlement of Class Action, which was submitted to the Court in connection with the motion for Preliminary Approval of the Settlement. *See* ECF No. 181-2.

53. Under the Plan of Allocation, any Class Members who submits a valid and timely Questionnaire and Release to the Claims Administrator, does not otherwise exclude themselves from the Class, and who is not otherwise deemed ineligible by the Claims Administrator, will receive an Allocated Amount. The Plan describes the various factors and criteria the Claims Administrator will take into consideration in determining an Allocated Amount.

54. As such, the Plan of Allocation equitably distributes the Settlement Fund to all Authorized Claimants who follow these procedures as specified in the Notice and Proof of Claim Form.

## IX. CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

### A. The Requested Fee Is Reasonable

55. We are conscious of the fact that the fee requested is large. However, considering the risk and uncertainty of the case during the extensive pre-complaint investigation as well as at

15

the time the case was filed; the extraordinary result achieved; the nature and extent of the Litigation; the rigorous prosecution of the action, the complexity of the factual and legal issues presented; and the other factors described above and in the accompanying Fee Motion, Class Counsel believe that the requested fee of 30% of the Settlement Amount, plus expenses, including interest on both at the rate earned by the Settlement Fund, is fair and reasonable.

56.     A 30% fee award is also entirely consistent with percentages awarded by courts in comparable class actions in the Second Circuit and this District, as well as around the country, particularly for a case involving the risks, uncertainties, effort, and results present here. *See generally* Fee Motion.

**B. The Requested Fee Is Supported by the Effort Expended and Results Achieved**

57.     As discussed in greater detail above, the Litigation entailed significant risks with respect to Class Representative's ability to prove both liability and damages. Success was by no means assured. Defendant disputed both liability and damages. Were this Settlement not achieved, and even if Class Representative prevailed at trial, Class Representative (and the Class) potentially faced years of costly and risky appellate litigation, with ultimate success far from certain. And, it is also possible that a jury could have found no liability, lesser damages, or no damages.

58.     As a result of this Settlement, Class Members will benefit and receive compensation for their losses and avoid the significant risk of no recovery in the absence of a settlement. These factors also support Class Counsel's request for an award of attorneys' fees of 30% of the Settlement Amount, plus interest.

**C. The Risk of Contingent Class Action Litigation Supports the Requested Fee Award**

59.     As set forth in the accompanying Fee Motion, a determination of a fair and

reasonable fee should include consideration of the contingent nature of the fee, the financial burden and attendant risk carried by Class Counsel, and the litigation challenges that were overcome in obtaining the Settlement.

60.     This action was prosecuted by Class Counsel on a contingent fee basis. Class Counsel committed 15,849.00 hours of attorney and professional time and incurred $1,137,849.36 in expenses in the prosecution of the Litigation. *See* BSF Decl. ¶ 7; EHL Decl. ¶ 8.

61.     BSF and EHL fully assumed the risk of an unsuccessful result. Neither BSF nor EHL has received any compensation for its services during the course of this Litigation and they have incurred significant expenses in litigating for the benefit of the Class. Because the fee to be awarded in this matter is entirely contingent, the only certainty from the outset was that there would be no fee without a successful result, and that such a result would be realized only after a lengthy and difficult effort.

62.     Class Counsel's efforts were performed on a wholly contingent basis despite significant risk and in the face of determined opposition. Under these circumstances, it is appropriate to award counsel a reasonable percentage fee based on the benefit conferred and the common fund obtained for the Class. A 30% fee, plus expenses and interest, is fair and reasonable under the circumstances present here.

## X.     CONCLUSION

63.     For all of the foregoing reasons, Class Counsel respectfully request that the Court approve the Settlement and Plan of Allocation, and award Class Counsel 30% of the Settlement Amount and $1,137,849.36 in expenses, plus interest on both amounts at the same rate as earned on the Settlement Fund until paid.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 5, 2023

                Respectfully submitted,

                /s/ *David Boies*

                David Boies
                Andrew Villacastin
                Sabina Mariella
                Alexander Law
                Boies Schiller Flexner LLP
                55 Hudson Yards
                New York, NY
                Telephone: (212) 446-2300
                Fax: (212) 446-2350
                Email: dboies@bsfllp.com
                Email: avillacastin@bsfllp.com
                Email: smariella@bsfllp.com
                Email: alaw@bsfllp.com

                Sigrid McCawley (*pro hac vice*)
                Daniel Crispino (*pro hac vice*)
                Boies Schiller Flexner LLP
                401 E. Las Olas Blvd. Suite 1200
                Fort Lauderdale, FL 33316
                Telephone: (954) 356-0011
                Fax: (954) 356-0022
                Email: smccawley@bsfllp.com
                Email: dcrispino@bsfllp.com

                Bradley J. Edwards
                Edwards Henderson Lehrman
                425 N. Andrews Ave., Suite 2
                Fort Lauderdale, FL 33301
                Telephone: (954) 524-2820
                Fax: (954)-524-2822
                Email: brad@cvlf.com

                Brittany N. Henderson
                Edwards Henderson Lehrman
                1501 Broadway
                Floor 12

New York, NY
Telephone: (954) 524-2820
Fax: (954) 524-2820
Email: brittany@cvlf.com

*Counsel for Jane Doe 1*