UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Deutsche Bank Aktiengesellschaft, et. al,<br><br>Defendants<br><br>JPMorgan Chase Bank, N.A.,<br><br>Defendants. | **Case No.: 1:22-CV-10018 (JSR) &**<br>**Consolidated Case No.: 1:22-CV-10019 (JSR)**<br><br>**CLASS ACTION LAWSUIT** |

**DECLARATION OF OBJECTOR/CLASS MEMBER SARAH RANSOME**

I, Sarah Ransome declare as follows:

1. My name is Sarah Ransome, and I am a victim and survivor of not only Jeffrey Epstein's crimes but the criminal activities of countless others, many of whom have not been brought to justice and many of whom may never be brought to justice or held accountable for their rape, trafficking, and criminal activity against me and countless young girls and young women.

2. The defendant in this case, JP Morgan Chase Bank, is just one of the numerous enablers of Jeffrey Epstein's criminal enterprise. For me, a high-ranking JP Morgan Chase Bank employee, Adam Castellani, Vice President of Media Relations, was sent in January 2007 as my personal "minder." I was coerced and groomed into what I thought was a "typical" romantic relationship for eighteen months, during which Adam watched me while watching out for his employer, JP Morgan Chase Bank.

1

3.      Adam repeatedly advised me not to go to the police or reveal any information I had about Epstein and his illegal activities. He moved into my home in London, and Adam gaslit me into believing this was in my best interest.

4.      Adam also thought on approximately two occasions when I was virtually a millimetre away from reporting my rape and trafficking to the authorities that a lovely dose of therapy, he organised, would be what I needed to move on and forget everything that ever happened, like magic. Both occasions were when he was an employee at JP Morgan and had transferred to Citi Bank in London to pursue our "relationship" and undying "love" for one another.

5.      Perhaps if I had listened to my instincts and heart and questioned Adam's motives for me not reporting my rape and trafficking by Epstein and company, there would never have been a plea bargain in 2008. My conscious will always be ashamed and guilty for knowing I could have prevented more children and women from being raped and trafficked.

6.      Little did I know or realise until 15 years later that the man who repeatedly raped me and countless others, Epstein, was Adam's employer's most significant client during this time, a fact which was conclusively known to Adam as JPMorgan's Vice President of Media Relations. I now realize that Adam's sudden appearance in my life was more than a random coincidence.

7.      It is as if JP Morgan sex trafficked me again through its top media executive, Adam Castellani, whose first obligation was protecting his employer from me and the truth I knew and had shared with Castellani. He enabled Epstein and company to continue trafficking until Epstein's arrest in 2019 with his silence and complicity.

8.      Since I came forward in 2016, I have done many media appearances up till now to achieve just a slither of justice for myself and others, which no doubt Adam will have seen working

in public relations. To my knowledge, Adam still has not come forward with information regarding his past employer's best client, Epstein. Why is Adam protecting his past employer and Epstein?

9. JPMorgan is well aware that I was eager to testify about Adam Castellani and his role in Epstein trafficking me at the previously upcoming trial on 23 October. My email of 22 September revealed all of this, and then suddenly, although not surprisingly, everything got settled. Again.

10. The public record must reflect this previously unknown and unrealised nefarious "relationship" between me, Adam Castellani, and JP Morgan Chase Bank. There is much more about all of this than the public ever knew, and only after 15 years is this linkage explicit.

11. In addition, discovery in these cases has uncovered one email from 2004, which was still residing on JPMorgan Chase Bank's servers or backups, which conclusively confirms that Adam Castellani, Vice President of Media Relations, was provided with a media briefing mentioning Epstein.

12. This is confirmation that one of JPMorgan's biggest clients, Jeffrey Epstein, was flagged in ongoing media clipping files years before Adam met me (was sent to me?) in January 2007. He knew all about Epstein--and I told him everything I knew about Epstein--and yet there were no consequences or repercussions for JP Morgan until now, over 15 years later. I'm also aware that JP Morgan cleaned all of Adam's correspondence off their servers, bar the 2004 email.

13. I am also objecting to the involvement of class counsel David Boies, who has maintained a cosy relationship with Bill Clinton, a well-known associate of Jeffrey Epstein (as well as Harvey Weinstein). I also believe it is a conflict of interest representing a class where another survivor, Juliette Bryant, and I are involved.

14. Last year, I wrote a grievance to the US Bar Association detailing the class attorneys' corruption, exploitation, and greed to no avail.

15. Juliette, one of Boies's many clients, was trafficked with the aid of Bill Clinton, Boies's long-term close friend.

16. It concerns me that all these powerful men remain strangely connected. The New York Times reported in 2019, "soon after the sex criminal Jeffrey Epstein died in August, a mysterious man met with two prominent lawyers." Those two lawyers were "the famed litigator David Boies and his friend John Stanley Pottinger."

17. Pottinger is or was class counsel Brad Edwards's law partner (although he was recently quietly and mysteriously dropped from the Edwards-Pottinger website). No word on what happened to Mr. Pottinger, although the New York Times story provides some details: "Mr. Pottinger saw a chance to supercharge his law practice. For Mr. Boies, there was a shot at redemption after years of criticism for his work on behalf of Theranos and Harvey Weinstein." I guess Edwards saw a chance to "supercharge his law practice" with Pottinger, who has now mysteriously disappeared from both Boies, Edwards and I pray the victim's lives too.

18. Interestingly, all these influential attorneys have sought and continue to profit off Jeffrey Epstein's victims. According to the New York Times, "the man who called himself Kessler first contacted a Florida lawyer, Bradley J. Edwards, who was in the news for representing women with claims against Mr. Epstein."

19. I am asking the Court to investigate these extremely curious relationships between class counsel, Pottinger, and Kessler. Four years later, the New York Times article was never retracted or challenged. For the Court's convenience, I have provided a link to the subject New

4

York Times article: https://www.nytimes.com/2019/11/30/business/david-boies-pottinger-jeffrey-epstein-videos.html.

20. In addition, class counsel made a big deal about advertising in countries like Russia and Ukraine for more survivors to come forward. The Court should inquire about these efforts or lack thereof and how class counsel could have presented to anyone, let alone the Court, that survivors in two countries at war or could ever be compensated in this class action without political bias and prejudice.

21. This is especially true given the very short time between the settlement and the deadline to submit claims. Why would they want to advertise in countries for victims to come forward with all their evidence if there was never any intention of compensating victims equally or by international humanitarian law standards? One must wonder if Boies and company have political agendas, especially during war and upcoming elections on both sides of the ocean.

22. As a result of this unilateral involuntary class action, all known and unknown survivors have lost the right to contest or reject their settlement offer and still file legal claims against the banks that provided the financial machinery that enabled Jeffrey Epstein's crimes.

23. There are no good options, and I once again feel entrapped and silenced by a class action process more suited to defective products than mass rape and worldwide human trafficking. Although my lawyers have explained that this is not permitted, the Court should allow survivors to reject their settlement offer and proceed to litigate against JP Morgan.

24. I am also very concerned that none of the survivors will receive any settlement offers until after this Court's final hearing **on 9 November**. Why has everyone yet to notify the survivors about these critical deadlines?

25. It has also come to my attention that Simone Lelchuk, the administrator that the class attorneys and the defendants chose, also has multiple conflicts of interest; she recently served as an "independent" Claims Examiner to allocate funds to compensate the sex abuse victims of Harvey Weinstein.

26. Simone had previous employment with Weinstein, a close friend and former client of the class attorney, Boies, who personally went out of their way to silence sexual assault victims from coming forward and engaged in witness intimidation and media intimidation.

27. Simone must be removed and investigated immediately. All prior claims she administered should also be investigated.

28. I ask the Court to leave the entire case open until every last survivor is compensated with complete transparency and accountability to this Court and the public. Why should any of this be done in secret?

29. Finally, I am also concerned by the involvement of class counsel with Virginia Roberts Giuffre's non-profit SOAR. Again, this would be another conflict of interest and favourable bias towards other survivors. These firms, including Edwards-Pottinger, are prominently listed on SOAR's website.

30. SOAR should not be permitted to receive any award from any residual funds based on this conflict of interest. Once again, Mr. Pottinger remains ever-present yet invisible in the Epstein scandal, and this all needs to be thoroughly investigated by the Court, under oath if necessary, so these secrets can once and for all be exposed to everyone, especially the survivors who want the truth on why they were raped and trafficked.

31. Everyone must treat the Epstein victims with dignity, respect, compassion, and humility. **All** survivors of rape and trafficking **deserve** to be treated with dignity, humility, and

respect; this is **non-negotiable**, as rape is not dependent on race, class, gender, and faith. The Court and justice system must hold those accountable for the devastating impact our rape and trafficking had on all of us.

32. I remain angry and hurt for the burning hell that Epstein and others threw me and other innocents into the day we were all enslaved by and for Epstein. The unimaginable suffering Epstein and his many accomplices and enablers have caused me, my family, and my loved ones since 2006, never mind all the other rape victims and their families affected, is irreparable.

33. I am infertile and have no children. I am damaged and broken because I was raped hundreds of times by Epstein while his enablers stood by and watched. My mother witnessed me die three times. Over the last seven years, I have fought tooth and nail for justice and truth; however, we will never get justice.

34. Epstein and the enablers have stolen our bodies and, worse, one of life's most precious commodities: time. No compensation will ever make up for the time stolen from our lives and futures.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed on October 19, 2023, in an undisclosed location outside of the United States of America.**

*Sarah Ransome*
Sarah Ransome (Oct 19, 2023 20:39 GMT+2)

Sarah Ransome

Attorneys for Objector Sarah Ransome:
MARSH LAW FIRM PLLC
James Marsh
31 Hudson Yards, 11th Floor
New York, NY 10001
Tel: (212) 372-3030
Email: jamesmarsh@marsh.law