October 19, 2023

<u>Hand Delivery</u>
Honorable Jed S. Rakoff
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
Room 1340
New York, NY 10007

        Re: *Doe v. JPMorgan Chase Bank, N.A.*, No. 1:22-CV-10019 (S.D.N.Y.)

Dear Judge Rakoff:

        The Attorneys General of New Mexico, Arizona, California, Connecticut, Delaware, the District of Columbia, Hawaii, Illinois, Maryland, Minnesota, Mississippi, New York, Oregon, Pennsylvania, Tennessee, Utah, and Vermont write concerning the proposed settlement in *Doe v. JPMorgan Chase Bank, N.A.*, No. 1:22-CV-10019 (S.D.N.Y.) because it contains language that purports to release state Attorney General *parens patriae* claims under Section 1595(d) of the Trafficking Victims Protection Act ("TVPA") for damages on behalf of trafficking victims.

        The Class Action Fairness Act of 2005 requires that settlement defendants in a class action serve notice of the settlement on the appropriate state officials, thereby giving them an opportunity to review and respond to the settlement prior to its approval. The legislative history of CAFA establishes "that notice of class action settlements be sent to appropriate state and federal officials ... so that they may voice concerns if they believe that the class action settlement is not in the best interests of their citizens." S. REP. 109-14, 2005 U.S.C.C.A.N. 3, 6. Case law also recognizes this role of state Attorneys General. *See, e.g., Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1301 n.9 (S.D. Fla. 2007) (noting role of Attorneys General in class settlement approval process); *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1082 (C.D. Cal. 2010) (discussing views of state Attorneys General with respect to class action settlement grounded in products liability claims). Since the passage of the Act, state Attorneys General have successfully objected to or brought about the modification of settlements which were unfair to its citizens.

        Section 1595(d) gives state Attorneys General authority, as *parens patriae*, to civilly prosecute persons who engage in sex-trafficking as set forth in Section 1591 of the TVPA and to obtain appropriate relief. The undersigned have reviewed the proposed settlement agreement in this case and have significant concerns about the potentially precedential scope of the release in Section 1.25, which the New Mexico Attorney General's Office raised with counsel for JPMorgan. While the issue is now mooted as to the U.S. Virgin Islands Attorney General by its parallel settlement with JPMorgan, allowing such a broad release of claims may have serious implications for future cases brought by state law enforcement against perpetrators of sex-trafficking under the TVPA.

        Section 1.25 releases claims

> that could be brought to recover damages from the Released Defendant Parties on behalf of a Member of the Class by any other party, including any ***sovereign or government***, relating to or arising from any Member of the Class's harm, injury, abuse, exploitation, or trafficking by Jeffrey Epstein or by any person who is in any way connected to or otherwise associated with Jeffrey Epstein, as well as any right to recovery on account thereof. (Emphasis added.)

The Doe settlement with Deutsche Bank, by contrast, does not contain the same language releasing "any sovereign or government" claims.[1]

In adding Section 1595(d) to the civil remedy section of the TVPA, which previously only explicitly recognized victim suits, Congress intended to "unleash" the power of state law enforcement to prosecute these heinous sex-trafficking crimes, recognizing that, in many circumstances, victims are unable or unwilling to come forward and "more prosecutors," "more investigators," and "more resources" are needed to "address this growing problem throughout our country." 164 Cong. Rec. S1849-08, 2018 WL 1415914, at *S1864. "This amendment is needed in order to give enhanced powers to State attorneys general that they can provide the extra litigation leverage for individuals who are impacted in a devastating manner." 164 Cong. Rec. H1290-02, 2018 WL 1073890, at *H1303. If broad releases of non-party state Attorneys General law enforcement actions under the TVPA seeking victim-specific relief were deemed permissible without their express consent, state Attorneys General may be deterred from bringing these important civil law enforcement actions in the future – upsetting Congress' very purpose in amending the TVPA to add state law enforcement.

States have frequently been allowed to sue in *parens patriae* to enforce federal statutes, both at common law, *see, e.g., Snapp*, 458 U.S. 592 (Puerto Rico had standing to sue in *parens patriae* under the Wagner-Peyser Act and the Immigration and Nationality Act on behalf of its migrant farm workers); *New York v. 11 Cornwell Co.*, 695 F.2d 34 (2d Cir. 1982) (New York had standing to sue in *parens patriae* for violations of 42 U.S.C. § 1985 on behalf of individuals with mental disabilities); *New York by Vacco v. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. 143, 146 (S.D.N.Y. 1995) (collecting cases), and by statute, *see, e.g.*, 15 U.S.C. § 6504(a)(1); 15 U.S.C. § 7706(f)(1); 18 U.S.C. § 248(c)(3).

States may seek damages for residents within their authority as *parens patriae*. *See New York by Abrams v. General Motors Corp.*, 547 F Supp at 706-07 (S.D.N.Y. 1983) ("The State's goal of securing an honest marketplace in which to transact business is a quasi-sovereign interest … This conclusion is not altered by the State's decision to seek … damages on behalf of those who allegedly have been defrauded by GM."); *New York by Underwood v. Larose Indus.*, 386 F. Supp. 3d 214, 218 n.3 (N.D.N.Y. 2019) (even if the state seeks victim-specific relief as one aspect of its case, "such damages would not strip the State of its quasi-sovereign interests") (citing cases); *Purdue Pharma v. Kentucky*, 704 F.3d 208, 220 (2d Cir. 2013) ("Even assuming consumers are

---

[1] To the extent "any right to recovery on account thereof" means something other than "damages from the Released Defendant Parties on behalf of a Member of the Class," the State Attorneys General further object to that language as well to the extent it seeks to release any other claims by States, including for civil penalties, fines, and/or injunctive relief.

the real parties for certain discrete claims asserted by the Attorney General ... does not necessarily negate the parens patriae nature of the action.").[2]

Courts outside the Second Circuit agree. *See Illinois v. AU Optronics Corp.*, 794 F. Supp. 2d 845, 853 (N.D. Ill. 2011) ("As many courts have held, a State is not automatically rendered a nominal party when it seeks *both* broad injunctive relief *and* monetary damages for injured residents") (emphasis in original); *id.* at 858 (Attorney General enforcement action against violators, including "to pursue relief on behalf of aggrieved individuals ...is more analogous to the role of the EEOC or other regulator when it brings an action on behalf of a large group of employees or a segment of the public"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 560693, at *5 (N.D. Cal. Feb. 15, 2011) ("The damages that California seeks, while on behalf of its consumers, would first be paid to the State and distributed on an equitable basis. The fact that private parties may benefit from the States' actions does not negate the State's substantial interests in these cases."); *New Mexico by Balderas v. Real Estate Law Ctr., P.C.*, 430 F. Supp. 3d 761, 875 (D.N.M. 2019) ("New Mexico has authority to bring the suit parens patriae and to seek restitution for [aggrieved individuals]"); *West Virginia by McGraw v. JPMorgan Chase & Co.*, 842 F. Supp. 2d 984, 989 (S.D. W.Va. 2012) ("A state may have a quasi-sovereign interest in bringing an action to enforce its laws, disgorge the proceeds of ill-gotten gains, and refund them to its citizens.").

Federal appeals courts have consistently held that private parties lack the authority to release a government's claims for relief to vindicate sovereign or quasi-sovereign interests belonging to the state or government. *See Sec'y United States Dep't Lab. v. Kwasny*, 853 F.3d 87, 90, 95-96 (3d Cir. 2017) (private judgment does not preclude subsequent enforcement action by the Secretary of Labor for recovery of damages implicated in the prior judgment; the government's "interest in maintaining the integrity of, and public confidence in, the pension system" is "broader than the interests of private litigations"); *U.S. Commodity Future Trading Comm'n v. Kratville*, 796 F.3d 873, 889 (8th Cir. 2015) ("quite apart from whether the individual victims are satisfied with their private settlements, full and ample restitution [and] disgorgement of profits, serve distinct deterrence functions that are vital to the national public interest ... [and] those settlements cannot preclude [the government] from later seeking additional or more full restitution or any other remedy); *Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1424 (11th Cir. 1998) (private class settlement did not bar government's restitution claims because the government's enforcement

---

[2] "If the State is *only* a nominal party without a real interest of its own then it will not have standing under the *parens patriae* doctrine." *Purdue Pharma*, 704 F.3d at 215 (quoting *Snapp*, 458 U.S. at 600); *Snapp*, 458 U.S. at 602 (distinguishing quasi-sovereign interest from where a State attempts to "pursue the interests of a private party, and pursue those interests *only* for the sake of the real party in interest") (emphasis added); *New York by Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987) ("[w]here the complaint *only* seeks to recover money damages for injuries suffered by individuals" the state lacks parens patriae standing) (emphasis added); *In re Baldwin-United Corp.*, 770 F.2d 328, 341 (2d Cir. 1985) ("when the state *merely* asserts the personal claims of its citizens, it is not the real party in interest and cannot claim parens patriae standing") (emphasis added). Even if the State lacks common law parens patriae capacity to prosecute a suit "*only* ... to recover money damages for injuries suffered by individuals," *Seneci*, 817 F.2d at 1017 (emphasis added), *California v. Frito-Lay, Inc.*, on which *Seneci* relies, concludes a state can be "empowered to act" to seek damages on behalf of individuals, but "that authority must come through ... legislation," 474 F.2d 774, 776077 (9th Cir. 1972).

action was pursuing "public interests separate and distinct from those of the private litigants"); *Kerr-McGee Chem. Corp. v. Hartigan*, 816 F.2d 1177, 1181 n.4 (7th Cir. 1989) (state attorney general was not bound by private litigation, "to assume that private individuals can be properly viewed as representative of a particular government is a ... daring analytical leap"); *see also Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991) (*res judicata* does not prohibit Secretary of Labor "from recovering monetary relief that duplicates the relief granted in the prior action").

In *New York by Cuomo v. Coventry First LLC*, the court held that the arbitration agreement between defendants and their alleged victims "does not bar the [New York] Attorney General from pursuing victim-specific judicial relief [including damages] in his enforcement action." 13 N.Y. 3d 108, 112, 114 (2009). "Like the EEOC, the Attorney General should not be limited, in his duty to protect the public interest, by an [] agreement he did not join. Such an arrangement between private parties cannot alter the Attorney General's statutory role or the remedies that he is empowered to seek." *Id.* at 14.[3]

The undersigned do not object to any other aspect of the *Doe* settlement and believe that Jeffrey Epstein's surviving victims should be fully compensated for the profound harm they have suffered. However, as it now stands, the settlement agreement improperly seeks to release States' *parens patriae* claims for victim-specific relief and should be amended to make clear that such claims are not released.

Respectfully submitted,

Raúl Torrez
New Mexico Attorney General

---

[3] Any damages recovered in a state law enforcement case under the TVPA would only add to, not undo, any victims' recovery, and would protect absent non-responding class members whose claims may otherwise be released by a settlement. Further, to the extent that the state Attorneys General obtain victim-specific relief, including damages or restitution, courts can set off the amounts paid to class members against any recovery by the state attorneys general. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295-96 (2002) (EEOC could not obtain double recovery based on prior settlement and acknowledging prior private settlement amounts would be offset from government recovery); *Beck*, 947 F.2d at 642 (same). The possibility of a post-judgment setoff of damages in a state's case does not support a wholesale release of the state's claim for that relief.

Kris Mayes
Arizona Attorney General

Rob Bonta
California Attorney General

William Tong
Attorney General of Connecticut

Kathleen Jennings
Attorney General of the State of Delaware

Brian Schwalb
District of Columbia Attorney General

Anne E. Lopez
Attorney General, State of Hawai'i

Kwame Raoul
Illinois Attorney General

Lynn Fitch
Attorney General, State of Mississippi

Anthony G. Brown
Maryland Attorney General

Keith Ellison
Minnesota Attorney General

Letitia James
Attorney General State of New York

Ellen R. Rosenblum
Oregon Attorney General

Michelle A. Henry
Pennsylvania Attorney General

Jonathan Skrmetti
Tennessee Attorney General & Reporter

Sean D. Reyes
Utah Attorney General

Charity R. Clark
Attorney General State of Vermont