WilmerHale

November 6, 2023

**Felicia H. Ellsworth**

+1 617 526 6687 (t)
+1 617 526 5000 (f)
felicia.ellsworth@wilmerhale.com

**BY ECF**

Hon. Jed S. Rakoff
United State District Court
for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Jane Doe 1 v. JPMorgan Chase Bank, N.A.*, No. 1:22-cv-10019-JSR (S.D.N.Y.)

Judge Rakoff:

This was a hard-fought case that led to a fair and equitable resolution—one the Court has already praised. With nearly 200 victims having bravely come forward to participate in the settlement process, the Court has been asked to issue final approval to allow these victims to achieve some measure of compensation and finality. Standing between the victims and this compensation are the Attorneys General of New Mexico, Arizona, California, Connecticut, Delaware, the District of Columbia, Hawaii, Illinois, Maryland, Minnesota, Mississippi, New York, Oregon, Pennsylvania, Tennessee, Utah, and Vermont. These Attorneys General have no stake in this matter: they do not articulate any reason why the settlement would harm their states or their citizens. Just the opposite, their objection undermines the settlement and the victims they claim to support. For all the reasons set forth below, the Court should not hesitate in setting aside this procedurally barred and substantively meritless objection, and grant final approval to the settlement.

First, there is no procedural mechanism for the Attorneys General—who are neither parties to the case, nor members of the certified class—to object to the proposed settlement.

Second, the Attorneys General identify no legal or equitable flaw in the proposed settlement, whether to their respective States or to their citizens. With no stake in this case, the Court should decline the Attorneys General's invitation to issue an advisory opinion.

At bottom, the proposed settlement fairly resolves the only claims that matter in this case: those of the victims themselves. The Court should rule accordingly.

## I. The Attorneys General Have No Standing To Object To The Proposed Settlement

The Attorneys General's letter "concerning the proposed settlement" in *Doe* is procedurally improper. They argue that CAFA "requires settlement defendants in a class action serve notice of the settlement on the appropriate state officials, thereby giving them an opportunity to review and respond to the settlement prior to its approval." Ltr. 1. The first clause is correct; the second is not. CAFA entitles the Attorneys General to *notice* of settlements—presumably for their awareness of issues affecting their citizens. *See* 28 U.S.C. § 1715(b). But as recognized in this

District and elsewhere, CAFA's entitlement to *notice* is not a conferral of *standing* or opportunity to object. *In re Am. Int'l Grp., Inc. Sec. Litig*., 916 F. Supp. 2d 454, 462 (S.D.N.Y. 2013) ("CAFA's provisions create no new standing authority that would empower the NYAG to file its concerns to the Settlement Objector."); *see In re: Budeprion XL Mktg. & Sales Litig.,* 2012 WL 4322012, at *4 (E.D. Pa. Sept. 21, 2012) (CAFA "affords states a right to be notified of class action settlements[,]" but "says nothing" "of granting states a right to be heard on, or formally appeal, every class action settlement simply because residents of that state are class members"); *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 306 (6th Cir. 2019) (similar).[1]

The two out-of-circuit cases cited by the Attorneys General do not say otherwise. Indeed, both underscore their lack of standing. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007), simply repeats in a footnote the agreed-upon proposition that "Attorneys General are statutorily empowered … to receive and review all class action settlements"—not to formally object to them. *Id.* at 1301 n.9. And in *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010), the Court credited Texas' objection because it "objected as a class member." Neither case is a basis to justify the Attorneys General's objection here. *Id.* at 1082.

It is well established that only class members may object to a proposed class settlement. Fed. R. Civ. P. 23(e). It is equally well established that the Attorneys General are not members of the *Doe* class and are not parties to this case. Thus, they have no right to object.

## II. The Attorneys General's "Concerns" Are Unfounded

The Attorneys General also do not identify any meaningful concern with *Doe* settlement.

### A. The *Doe* Settlement Release Is Appropriately Bounded By All Applicable Law

The Attorneys General's "concern" that Section 1.25 is an illegal release of sovereign claims is unfounded. The scope of the release is expressly (and implicitly) bounded by law:

> This release is intended to release, *to the maximum extent allowable under law*, any claims … that could be brought to recover damages from the Released Defendant Parties on behalf of a Member of the Class by any other party, including any sovereign or government, relating to or arising from any Member of the Class's harm, injury, abuse, exploitation, or trafficking by Jeffrey Epstein or by any person

[1] The Attorneys General cite CAFA's legislative history rather than its text. But courts "do not resort to legislative history to cloud a statutory text that is clear." *Chapman*, 940 F.3d at 306. "Notwithstanding what [the Attorneys General] attempt[] to glean from the legislative history … [CAFA's] plain text clearly forecloses [the Attorneys General's] argument." *Id.* at 307.

> who is in any way connected to or otherwise associated with Jeffrey Epstein, as well as any right to recovery on account thereof.

22-cv-10019 (S.D.N.Y.), Dkt. 181-1 § 1.25 (emphasis added). Thus, to any extent that the Attorneys General are lawfully permitted to seek (duplicative) "damages for residents" or other compensation (*e.g.* civil penalties, restitution, disgorgement), those claims would be "allowable under law" and not subject to release. That alone assuages any "concern."

What is more, the *Doe* settlement provides no occasion for this Court to offer an advisory opinion about the Attorneys General's authority under 18 U.S.C. § 1595(d) in a hypothetical *future* action in a *different* jurisdiction. *Abele v. Markle*, 452 F.2d 1121, 1124 (2d. Cir. 1971) ("It is settled that advisory opinions may not be given by federal courts[.]"). Rather, a court hearing any future claim by one of the Attorneys General will determine the scope of their authority as *parens patriae* and the legal contours of the *Doe* release as it relates to the actual claims before that court. In other words, the Attorneys General's "concern" is premature and misdirected.

**B. The Attorneys General Cannot Recover Damages Duplicative Of The *Doe* Settlement**

If, however, this Court is to consider whether the Attorneys General can collect "damages for residents," the answer is no—irrespective of the language in the release. First, the *parens patriae* cause of action conferred by 18 U.S.C. § 1595(d) does not allow for any such thing. Second, the bedrock prohibition against double recovery would prohibit such damages in any event.

As to a *parens patriae* suit, no quantity of insistence or repetition can evade the Supreme Court's unambiguous declaration that "interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 602 (1982). *Parens patriae* "does not involve the State stepping in to represent the interests of particular citizens," and "if nothing more than this is involved," "then [a state] will not have standing under the *parens patriae* doctrine." *Id.* at 600. This Court previously acknowledged this reality. MTD Order 16-17 ("Article III of the Constitution has been interpreted to impose distinct requirements for standing to sue in federal court," which for *parens patriae* plaintiffs entail "an injury to a quasi-sovereign interest" and "relief to [a state's] injury that would be unavailable to individual plaintiffs."). So has the Second Circuit. *New York by Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 71 (2d Cir. 1996); *New York by Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987). And separately the Second Circuit has confirmed that "*parens patriae* standing [] requires a finding that individuals could not obtain complete relief through a private suit." *People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 40 (2d Cir. 1982). The irony here, of course, is that the irrefutable proof of victim "relief through a private suit" is the very settlement to which the Attorneys General now object.

As to duplicative recovery, it is black letter law that a defendant cannot be forced to pay twice, and a plaintiff may not recover twice, on account of the same harm. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296-297 (2002) ("It goes without saying that the courts can and should preclude double recovery by an individual." (cleaned up)).

Here, upon final approval, members of the *Doe* class will have been fully and completely compensated for the harms they have suffered by the $290 million settlement agreed to by the parties and preliminarily approved by this Court. Dkt. 182 (preliminarily approving *Doe* class-wide settlement for "all persons who were harmed, injured, exploited, or abused by Jeffrey Epstein, or by any person who is connected to or otherwise associated with Jeffrey Epstein or any Jeffrey Epstein sex trafficking venture"); *see also* June 26, 2023 Hr'g Tr. at 11:11. Upon final approval and entry of judgment, "[a]ll Class Members shall be bound by all determinations and judgments in the Litigation concerning the Settlement … regardless of whether such Persons seek or obtain by any means … any distribution from the Net Settlement Fund." Dkt. 182, at ¶ 12; *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) ("A valid adverse judgment [in a class action] may extinguish any of the plaintiff's claims which were litigated."). Upon final approval of the *Doe* settlement and entry of a final judgment, no class member may recover, and JPMC cannot be required to pay, for those same injuries a second time.

This fundamental concept is no less applicable when governments purport to seek damages for the harm suffered by individuals who have already been separately and fully compensated. *See Waffle House*, 534 U.S. at 296-297.[2] Indeed, it is well-settled that "prior private litigation by a person the government seeks to protect may preclude" the government from seeking recoveries on behalf of that person's "private interests." 18A Fed. Prac. & Proc. Juris. § 4458.1 (3d ed.) ("Wright and Miller"). Class action proceedings, in particular, have preclusive effect over a government's attempt to pursue independent proceedings that seek "to win advantages for the same class." *Id.*

The Second Circuit has long adhered to this basic principle. In *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985), the court held that a class settlement regarding violations of the securities laws would preclude subsequent state enforcement actions seeking monetary recoveries for class members based on the same underlying injuries. *Id.* at 336-337. In so holding, the court emphasized that when a state attempts to use its "representative capacities to seek restitution and monetary recovery from the [class] defendants to be paid over to [its] citizens who are plaintiffs in the consolidated class actions," it makes "no difference" whether the state characterizes its suit as proceeding on behalf of a "sovereign" or seeking a "penalty," *id.* at 332-333 & n.1, 337; if the "recovery sought by the state [is] to be paid over to the [class] plaintiffs," res judicata would bar the state's suit, *id.* at 336-337. *See also* Wright and Miller § 4458.1 n.31 (explaining that "[o]ne premise of [*Baldwin*] was that a judgment in the federal [class] action would preclude any

[2] That is why the Attorneys General concede any recovery for "victim damages" would be offset by the *Doe* settlement Ltr. at 4, n.3.

subsequent state government action brought for a recovery that would be paid over to the [class] plaintiffs").

Cases adopting this same rationale are legion, whether or not the governmental entity stylized its action as an "enforcement proceeding." *See, e.g.*, *California v. IntelliGender*, *LLC*, 771 F.3d 1169, 1178-1180 (9th Cir. 2014) (government precluded from seeking equitable compensation for plaintiff class that had already settled claims against defendant because the settlement compensation was "res judicata"); *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 698-699 (5th Cir. 2007) (EEOC could pursue "injunctive relief" but not "damages and any other make-whole relief" on behalf of individuals who had already litigated similar claims to final judgment in state court); *Leon v. IDX Sys. Corp*., 464 F.3d 951, 962-963 (9th Cir. 2006) (Labor Department could not pursue "individual compensatory remedies" for matters that the individual had already litigated to dismissal in federal court); *EEOC v. U.S. Steel Corp*., 921 F.2d 489, 496-497 (3d Cir. 1990) (EEOC could seek to "enjoin discrimination" but could not purse "individual relief" for individuals who had already "fully litigated their own claims" in a federal class action); *New Mexico ex rel. King v. Cap. One Bank (USA) N.A*., 980 F. Supp. 2d 1346, 1356 (D.N.M. 2013) (class settlement precluded state attorney general from bringing a "claim for compensation on behalf of the consumers who were class members"); *Esslinger v. HSBC Bank Nevada, N.A*., 2012 WL 5866074, at *7 n.2 (E.D. Pa. Nov. 20, 2012) ("[T]he AGs are precluded from bringing claims 'in a de facto or de jure representative capacity on behalf of the plaintiffs' in this class action, because doing so would allow Class members to double recover" (quoting *In re Baldwin-United Corp*., 770 F.2d at 341)); *FTC v. AMREP Corp*., 705 F. Supp. 119, 123 & n.9 (S.D.N.Y. 1988) (FTC could not pursue "claims which seek compensation (or other redress) in favor of individuals who ha[d] previously settled").

The cases compiled by the Attorneys General (at 2-4) do not contradict this basic principle. Rather, those cases stand for the unremarkable proposition that when States enforce their own law and properly pursue unique governmental remedies (specifically allowed under different statutory schemes), *those* actions and remedies cannot be released or barred by individual settlements. *E.g.*, *Sec'y United States Dept. of Labor v. Kwasny*, 853 F.3d 87, 95 (3d Cir. 2017) (noting Labor Secretary's statutory duty to enforce ERISA, and that a "private litigant cannot represent these interests"). That may be true. It is also irrelevant. If the Attorneys General are entitled to "enforce" the TVPA and seek government-specific remedies like penalties, disgorgement, restitution and the like—a question that is no longer before the Court—then the complained-of release will have no effect, as it applies only "to the maximum extent allowable under law."[3] If, on the other hand, the Attorneys General *cannot* "enforce" the TVPA, then the release takes

---

[3] To be clear, the Attorneys General have no such authority under § 1595(d) or otherwise, as explained fully in JPMC's summary judgment briefing in the now-settled case involving USVI. Dkts. 228, 262, *Government of the United States Virgin Islands v. JPMorgan Chase Bank, N.A.*, Civ. No. 10904 (S.D.N.Y.).

nothing from Attorneys General: the Attorneys General cannot complain about losing rights that never existed.

The bottom line is simple: regardless of other remedies the Attorneys General may or may not have under § 1595(d), they cannot recover victim-specific damages for victim-specific harms after those very same victims have already been compensated. A bevy of caselaw makes that clear. The central premise of their objection has no merit.[4]

### C. The Attorneys General Cannot Upset The Federal Class Settlement Structure

Setting aside legal deficiencies in the Attorneys General's "concerns" and claims to victim-specific damages, the letter's implications make no practical sense. Despite a footnote (at 4 n. 3) suggesting the contrary, the Attorneys General nowhere justify or explain why a *parens patriae* claim is a more appropriate vehicle to provide recovery to any victim than the claims of the nationwide class certified by this Court. In certifying the *Doe* class, this Court determined that Jane Doe 1 was an adequate class representative who was "committed to pursuing this case zealously on behalf of the class" and that the class counsel she retained was "qualified, experienced and generally able to conduct the litigation." Dkt. 171, at 187-18. And in preliminarily approving the settlement, this Court approved notice and opt-out procedures and provided class members with an opportunity to be heard. *See generally* Dkt. 182. None of those procedural protections applies to any *parens patriae* claim, which offer no conceivable advantages to any victim, even in the case of those who may reside in certain of the signatory states. The Attorneys General and their private counsel are not subject to any adequacy determinations. They need not provide any notice of their claims or any recovery on account thereof to victims. Indeed, the Attorneys General would not be required to actually distribute any money they recover to victims—the victims could get nothing. There is simply no reason to countenance objections to the classwide settlement brokered by the victims,

[4] Although the Attorneys General do not mention punitive damages, the same principle applies. The complaint in *Doe* expressly sought punitive damages, FAC ¶¶ 300, 309, 321, 346, 389, 404, 424, 451, 467, 490, and the settlement clearly and unambiguously fully and finally settles (and releases) all of the claims asserted and remedies sought in the *Doe* action, Dkt. 181-1 at §§ 1.25, 2.2; *see also IntelliGender*, 771 F.3d. 1180 ("[T]he appropriate inquiry is not what relief was ultimately granted, but whether the government is suing for the same relief already pursued by the plaintiff." (emphasis in original)). But even if that were not the case, res judicata "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Neither the members of the *Doe* class, nor the Attorneys General "on their behalf," may circumvent longstanding preclusion doctrine through successive actions for separate remedies for the same injuries based on the same nucleus of operative facts. *See* Restatement (Second) of Judgments § 25 cmt. f (1982).

and that serves the victims' interests, for the benefit of hypothetical *parens patriae* state actions that very well might not.

The Attorneys General's procedurally-barred and substantively flawed objection should be overruled.

Respectfully submitted,

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth