

March 12, 2024

**VIA ECF**

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1340
New York, New York 10007

Re:   *Jane Doe 1 v. JPMorgan Chase Bank, N.A.*, Case No.: 22-CV-10019 (JSR);
      *Gov't of the U.S. Virgin Islands v. JPMorgan Chase Bank*, No. 22-cv-10904 (JSR)

Dear Judge Rakoff:

We represent Jane Doe 1 and write in response to the letter motion of The New York Times Company (the "Times") to unseal excerpts of Jane Doe 1's deposition testimony that were attached to motions in this case and a related case brought by the U.S. Virgin Islands. *Doe*, ECF No. 291; *USVI*, ECF No. 352. The Times has made clear that it does not seek to unseal the name of Jane Doe 1 or any other victim, but otherwise proposes that the excerpts—which include substantial details about Jane Doe 1's family and a horrific rape she endured—be fully unsealed for public consumption.

## Jane Doe 1's Anonymity and the Excerpts at Issue

Since she first filed this action on November 24, 2022, Jane Doe 1 has proceeded as the lead plaintiff in this action in reliance on the Court's order granting her leave to proceed anonymously. *Doe*, ECF No. 22. And throughout the course of this litigation, the Court and the parties have gone to great lengths to enforce the protections the Court granted Jane Doe 1.

The Times—which has extensively reported on this case—essentially seeks to revoke the protections the Court granted Jane Doe 1 so that it can publish more stories about Epstein and expose "famous people linked with Mr. Epstein," all at Jane Doe 1's expense.[1] Specifically, the Times requests to unseal to following excerpts of Jane Doe 1's deposition (the "Excerpts").

1. Excerpts from Jane Doe 1's March 3, 2023, deposition in which she discusses the other victims with whom she has discussed this lawsuit; her introduction to Jeffrey Epstein, including information about where she lived at the time, who she lived with, where she was working, where her family lived, and her family's socioeconomic conditions; who she spoke with about Epstein's sexual abuse; where she and other victims lived during

---

[1]   *See* Matthew Goldstein & Benjamin Weiser, *Unsealed Documents Shed Light on Epstein's Misdeeds, and Little Else*, N.Y. Times (Jan. 3, 2024), https://www.nytimes.com/2024/01/03/nyregion/jeffrey-epstein-court-documents.html.

Case 1:22-cv-10019-JSR   Document 292   Filed 03/12/24   Page 2 of 5



Epstein's abuse, described by both street and neighborhood; the nature of the sexual massages she was forced to give Epstein; and the ways in which Epstein compensated her. *Doe*, ECF 123-40 (slipsheet), ECF No. 97-16 (sealed version).

2. Excerpts from Jane Doe 1's March 3, 2023, deposition in which she discussed the ways in which Epstein's request that she recruit other victims deeply affected her psychologically; the manipulation Epstein employed to try to force her to do so; her dire economic situation at the time; and the identity of other victims and her roommates at the time. *Doe*, ECF 142-2 (slipsheet), ECF No. 144-2 (sealed version).

3. Excerpts from Jane Doe 1's March 3, 2023, deposition in which she testified in great detail about a horrific rape she endured as part of Epstein's sex-trafficking operation. *Doe*, ECF 212-57 (slipsheet), ECF No. 209-26 (sealed version); *USVI*, ECF 265-4 (slipsheet), ECF No. 256-45 (sealed version); *USVI*, ECF No. 326-57 (slipsheet), ECF No. 323-26 (sealed version).

The Court should deny The Times's request and continue to protect Jane Doe 1's identity, as it has for more than a year.

### **The Standard for Sealing**

There is a common law and constitutional presumption of public access to judicial documents. *See United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). "Once the Court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "Once the weight of the presumption is determined, a court must balance competing considerations against it," including "the privacy interests of those resisting disclosure." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) "In determining the weight to be accorded an assertion of a right of privacy" the Court should consider "the degree to which the subject matter is traditionally considered private rather than public," and "[t]he nature and degree of injury," including "the sensitivity of the information and the subject" and "how the person seeking access intends to use the information." *Id*. at 1050.

### **Jane Doe 1's Privacy Interests Outweigh the Presumption of Public Access**

Jane Doe 1 does not dispute that the documents at issue are judicial documents to which a presumption of public access applies. As the Court recognized in protecting her identity, however, Jane Doe 1's privacy interests strongly outweigh that presumption.

As the victim of rampant, horrific sexual abuse that has changed the course of her life, Jane Doe 1 is entitled to the protection of her identity despite the presumption of public access. *See, e.g.*, *Kemp v. Noeth*, No. 20-CV-9121 (RA)(SN), 2021 WL 1512712, at *2 (S.D.N.Y. Apr. 15, 2021) ("the privacy interest the Court must consider here—the identity of a sexual assault victim—is an important and recognized basis to limit public access to the documents in question"); *Murphy v. Warden of Attica Corr. Facility*, No. 20CV3076PAEJLC, 2020 WL 6866403, at *2 (S.D.N.Y. Nov. 23, 2020) ("Although a presumption in favor of public access exists, the basis for sealing the records at issue—protecting the identity of the sexual assault victim—provides a compelling

2



reason to limit such access.  Indeed, it is common for courts in this District to grant requests for sealing orders to protect a sexual assault victim's identity."); *Giuffre v. Dershowitz*, No. 15 CIV. 7433 (LAP), 2020 WL 5439623, at *2 (S.D.N.Y. Sept. 9, 2020) (finding that "the gravity of the privacy interests" of Epstein victims weighed heavily against public disclosure); *Scott v. Graham*, No. 16CV2372KPFJLC, 2016 WL 6804999, at *1 (S.D.N.Y. Nov. 17, 2016) ("Here, there is a compelling reason to limit the general public's access to the documents filed in this case: safeguarding the identity of a rape victim."); *Kavanaugh v. Zwilling*, 997 F. Supp. 2d 241, 256 (S.D.N.Y. 2014) (sealing records of decisions "as the decisions contain sensitive and personal information about the sexual abuse of minor").  Jane Doe 1 has steadfastly protected her anonymity, and has never publicly identified herself by, for example, giving media interviews or appearing in the many documentaries about the Epstein victims' experiences.  In the ongoing unsealing litigation in Virginia Giuffre's matter against Ghislaine Maxwell, Judge Preska has similarly protected the identities of victims.  *See Giuffre v. Maxwell*, 15-cv-7433, Tr. of Nov. 18, 2022 Hearing at 6:2–16 (protecting "the identities of victims of sexual abuse, even in the face of a presumption of public access").

The Times does not dispute that Jane Doe 1 is entitled to keep her identity sealed, and thus does not object to the redaction of only her name and the names of other victims.  But given the nature of the Excerpts, merely redacting Jane Doe 1's name is not sufficient to protect her identity or privacy interests.  As explained above, the Excerpts contain intimate details about Jane Doe 1's life that are specific to her, and whose publication could reveal her identity to the public and to those who harmed her who she fears might retaliate against her.  For example, the Excerpts reveal exactly when, where, and how Jane Doe 1 was recruited by Epstein, which could lead Epstein's co-conspirators to identify her even without her name (*Doe*, ECF No. 97-16 at 88–89); where Jane Doe 1 lived at various times in her life, even identifying the street she lived on at one point (*Doe*, ECF No. 97-16 at 94:10–17, 103:6–19, 104:7–12), and details of her specific and unique family situation that made her vulnerable to abuse (*id.* at 89:21–91:11).  The Excerpts also reveal her emotional trauma from Epstein trying to force her to recruit others (*Doe*, ECF No. 144-2 at 120:21–124:6), and an extremely detailed account of a rape that Jane Doe 1 endured—including details down to whether her rapist climaxed inside of her (*Doe*, ECF No. 209-26).  Jane Doe 1 should not be forced to relive these traumatic moments from her deposition publicly, and the mere redaction of her name would not protect her from re-traumatization.  *See Dershowitz*, 2020 WL 5439623, at *2 (finding that Epstein victims' privacy interests "are particularly acute given that the psychological and emotional wellbeing of survivors of alleged sexual assaults may be implicated by such a broad disclosure").

Jane Doe 1's significant privacy interests all outweigh the presumption of public access, and none of the interests set forth by the Times warrants a different result.  First, the Times argues that the Excerpts "would provide additional insight into not merely Mr. Epstein's abuse of women, but also the powerful people and institutions around him who may have been aware of his activities but failed to intervene" and "a uniquely comprehensive insight into his operation." *Doe*, ECF No. 291 at 2.  Apparently, the Times is not satisfied with its ability to report on the thousands of pages of discovery that Judge Preska ordered unsealed about Epstein's operation in *Giuffre v. Maxwell* (as evidenced by the title of its January article "*Unsealed Documents Shed Light on Epstein's Misdeeds, and Little Else*").  But "[c]ourts have long declined to allow public access simply to cater to a morbid craving for that which is sensational and impure." *United States v. Amodeo*, 71



F.3d 1044, 1051 (2d Cir. 1995).  In any event, the Excerpts at issue do not provide any new or "unique insight into Epstein's operation"—as argued in support of class certification, Jane Doe 1's recruitment and abuse was extremely similar to the recruitment and abuse of Epstein's countless other victims (many of whom have chosen to speak publicly about that recruitment and abuse), and publication of the Excerpts would only publish details of Jane Doe 1's recruitment and abuse that would risk identifying her after years of purposefully staying out of the public eye.

Second, the Times argues that publication of Jane Doe 1's testimony is necessary "to explain why Jane Doe 1 is suited to be the class representative." *Doe*, ECF No. 291 at 4.  But the Court explained why Jane Doe 1 was suited to be the class representative in a publicly available opinion that contained no redactions, and that specifically explained why the Court rejected JPM's arguments as to why Jane Doe 1 was not suitable to be a class representative.  *Doe*, ECF No. 171.

Third, the Times argues that publication of Jane Doe 1's testimony "helps assure the public that the court system is holding to account the powerful figures who played a role in Mr. Epstein's crimes." *Doe*, ECF No. 291 at 4.  But the Excerpts at issue do not discuss any such "powerful figures"—the Excerpts discuss (1) Jane Doe 1's own abuse and recruitment by Epstein and his other well-known, publicly identified co-conspirators and (2) Jane Doe 1's horrific rape by another, already publicly identified individual who has been sued in public lawsuits for his role in Epstein's operation.

Finally, the Times argues that "some victims of Mr. Epstein's abuse received 'carve-outs' from the previous settlement with his estate that allowed them to pursue claims against other powerful men who were complicit in their abuse" and unsealing would shed light on "whether all members of the class have been treated equitably." *Doe*, ECF No. 291 at 4–5.  But any carveouts from victims' releases with Jeffrey Epstein's Estate through the Epstein Victims' Compensation Program—a non-judicial proceeding to which the public has no right of access—have nothing to do with whether the class members in *this case* have been treated equitably.  And again, the Excerpts at issue have nothing to do with such "other powerful men" who may have been carved out of releases, other than the man who raped her and has already been publicly identified.

Accordingly, the Court should deny the Times's motion to unseal in full.

Sincerely,

*/s/ Sigrid S. McCawley*

David Boies
Andrew Villacastin
Sabina Mariella
Alexander Law
Boies Schiller Flexner LLP
55 Hudson Yards
New York, New York
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com



    Email: avillacastin@bsfllp.com
    Email: smariella@bsfllp.com
    Email: alaw@bsfllp.com

Sigrid McCawley (*pro hac vice*)
Daniel Crispino (*pro hac vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com

Bradley J. Edwards
Edwards Henderson Lehrman PLLC
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822
Email: brad@cvlf.com

Brittany N. Henderson
Edwards Henderson Lehrman PLLC
1501 Broadway
Floor 12
New York, NY
Telephone: (954)-524-2820
Fax: (954) 524-2820
Email: Brittany@cvlf.com

*Counsel for Jane Doe 1*