

The New York Times
Company

David E. McCraw
Senior Vice President
& Deputy General Counsel

T 212 556 4031
mccraw@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

March 19, 2024

**VIA ECF**

The Honorable Jed S. Rakoff
U.S. District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:     <u>*Doe v. JPMorgan Chase & Co.*</u>, No. 1:22-cv-10019 (JSR);
        <u>*Gov't of the U.S. Virgin Islands v. JPMorgan Chase Bank*, No.
        1:22-cv-10904 (JSR)</u>

Dear Judge Rakoff:

I write on behalf of non-party The New York Times Company ("The
Times") in reply to the parties' oppositions to The Times's motions to
unseal.[1] The oppositions fail to demonstrate why targeted redactions of
identifying information, rather than wholesale sealing, would not strike the
appropriate balance between privacy and the public's right of access.

---

[1] *See* Request for Unsealing of Filed Deposition Testimony, *Doe v. JPMorgan Chase & Co.*
("*Doe*"), No. 1:22-cv-10019 (JSR), ECF No. 291; Request for Unsealing of Filed Deposition
Testimony, *Gov't of the U.S. Virgin Islands v. JPMorgan Chase & Co.* ("*USVI*"), No. 1:22-
cv-10904 (JSR), ECF No. 352. *See also* Opposition of Jane Doe 1, *Doe*, ECF No. 292; *USVI*,
ECF No. 353; Opposition of James Staley, *Doe*, ECF No. 293; *USVI*, ECF No. 355;
Opposition of the Government of the U.S. Virgin Islands, *USVI*, ECF No. 354. For ease of
reference, this letter consistently uses the docket numbers in *Gov't of the U.S. Virgin Islands
v. JPMorgan Chase Bank*, No. 1:22-cv-10904 (JSR).

On February 27, 2024, The Times submitted letter motions to unseal
certain excerpts of deposition testimony by "Jane Doe 1" that were filed in
support of summary judgment and class certification motions in the *Doe*
and *USVI* cases, two proceedings that alleged JP Morgan Chase &
Company facilitated and benefitted from Jeffrey Epstein's abusive
conduct. On March 12, three of the parties filed oppositions: Jane Doe 1
and James Staley opposed the motions to unseal in both cases, and the
Government of the U.S. Virgin Islands (the "Government") opposed in the
*USVI* case.

All parties and The Times agree upon the basic framework of the
unsealing analysis as applied to judicial documents, which requires the
Court to weigh whether countervailing factors outweigh the presumption
of public access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110,
119-20 (2d Cir. 2006) (common law); *Press-Enter. Co. v. Super. Ct. of
Calif. (Press-Enterprise II)*, 478 U.S. 1, 8 (1986) (First Amendment).

As a threshold matter, Mr. Staley contends that the deposition excerpts
attached to summary judgment motions are not judicial documents
because those motions were not resolved by the Court. He relies on
*Giuffre v. Maxwell*, No. 15-cv-7433, 2020 U.S. Dist. LEXIS 5651
(S.D.N.Y. Jan. 13, 2020). That reliance is misplaced. The Second Circuit
has said: "it is well-settled that 'documents *submitted* to a court for its
consideration in a summary judgment motion are — as a matter of law —
judicial documents to which a strong presumption of access attaches,
under both the common law and the First Amendment.'" *Brown v.
Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019) (emphasis added). The *Brown*
court "expressly rejected" the idea that the access analysis turned on
whether a document was relied upon in deciding summary judgment. *Id*.
Were there any doubt about that, one need only look to *Lugosch* itself.
There, the court held that the documents should have been released at
filing and that the district court erred in holding that a determination about
access could not be made until summary judgment was decided. *Lugosch*,
435 F.3d at 120-21.

2

Accordingly, the real questions raised by the oppositions are the strength of the public interest and the degree to which countervailing interests may overcome it.

Ms. Doe raises a number of contentions to downplay the public interest in her deposition testimony. Opposition of Jane Doe 1, *USVI*, ECF No. 353, at 4. First, Ms. Doe argues that the public would learn little about the crimes of Mr. Epstein and others because the accounts of other victims are already known, and the excerpts do not discuss the "powerful figures who played a role in Mr. Epstein's crimes." The latter argument, however, is belied by the Staley opposition: Mr. Staley himself acknowledges in his letter that "[e]ach [document] contains deposition testimony regarding Doe's allegation of assault against Mr. Staley." Opposition of James Staley, *USVI*, ECF No. 355, at 1.

More broadly, Ms. Doe's account will provide greater insight into the Epstein crimes than what has been previously disclosed in the accounts involving others. As Ms. Doe's own description of the excerpts underscores, her testimony was detailed and broad-ranging, and significant to the questions before the Court. Opposition of Jane Doe 1, *USVI*, ECF No. 353, at 1-2. She, tragically, was a victim of Mr. Epstein's for longer than many other women, giving her extended observation of his insidious sex trafficking operation. In any event, a presumption of access applies to each document on its own, and "the burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). Whether the public finds a newly disclosed document redundant or novel is, under our system, a judgment the public gets to make.

Second, Ms. Doe disputes whether release of the excerpts will tell the public anything about the critical developments in the Epstein-related litigation. She points out that her qualification to be a class representative is the subject of a publicly released decision. But Ms. Doe's argument, like Mr. Staley's, is premised on the mistaken assumption that only judicial outcomes are subject to the access right. *Brown* and *Lugosch*, however, establish that the public has a right to understand the facts and

3

arguments that were used to obtain particular results, not just the results themselves. The results are consequential, but the public's oversight of judicial proceedings also comes from seeing for itself the adjudicatory process: what arguments and evidence were put forth, what was disregarded or downplayed, and what portions of the offered evidence had credibility and probative value.

Finally, in the *USVI* case, the Government attempts to further downplay the public interest in disclosure by asserting that "[t]he Government's identity as a litigant in this action has no bearing whatsoever on the request to unseal." Opposition of the Government of the U.S. Virgin Islands, *USVI*, ECF No. 354, at 1. The Second Circuit has concluded otherwise: "[I]t is essential that the people themselves have the ability to learn of, monitor, and respond to the actions of their representatives." *United States v. Erie County*, 763 F.3d 235, 239 (2d Cir. 2014) (addressing the undue sealing of court records in a case involving a public agency). It is true that *Erie County* involved litigation over the conduct of a local government rather than, as here, a government's actions in seeking compensation for a wrong. But whether a government is the target of litigation or using public resources to bring a suit, engaging in a particular litigation strategy, exposing itself to discovery, and agreeing to a settlement, the public has an interest in overseeing such governmental conduct. *See also Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978) (identifying public interest in right of access so that citizens may "keep a watchful eye on the workings of public agencies").

Because the public interest in these lawsuits, and specifically in the role that Ms. Doe's testimony played in the legal arguments, is not subject to serious dispute, the crux of the oppositions is the assertion of countervailing interests to overcome the presumption of public access. Ms. Doe rightfully points to her own privacy interests and safety concerns. These cannot be discounted. But the balancing of interests is not a zero-sum game. Both the legitimate public interest in disclosure and the important privacy interests at stake can be safeguarded through targeted redactions, rather than wholesale withholding. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995). Ms. Doe's expressed concerns

about details that may be revealing is an argument for more careful and considered redaction, rather than for blanket sealing. Details that are identifying can and should be redacted, with input from Ms. Doe's counsel, but the remainder of the excerpt should be released applying the principles set forth in *Lugosch* and *Press-Enterprise*.

For his part, Mr. Staley raises a second potential countervailing interest: his "immense" interest in keeping under wraps Ms. Doe's "false and untested testimony." That is less compelling. While it is true that "the privacy interests of innocent third parties" are often a consideration in the court's balancing, Mr. Staley is not an innocent third party who somehow finds himself caught up in a civil case in which he has no real interest in the outcome — the person mentioned in passing in a phone conversation, the minor relative of a person involved in litigation, or someone else with tenuous connections to the matter at issue. Rather, he was impleaded as a defendant. That Ms. Doe's testimony is "untested" is the result of his decision to settle rather than have the allegations adjudicated. But there is a larger point to be made: If the test for access was whether allegations were untested and subject to challenge for their truthfulness, no complaint ever filed in a civil case would be public. Nor would the public be able to see criminal indictments or information. That is not how an open judiciary works.

More broadly, Ms. Doe's contention that The Times seeks "public access simply to cater to a morbid craving for that which is sensational and impure"[2] is belied by history, both of The Times and of the American judiciary. The Times has been one of the chief sources of responsible and important reporting related to Mr. Epstein's web of abuse.[3] By exposing how Mr. Epstein was able to victimize so many girls and young women with impunity for so many years, journalism played and continues to play a role in holding abusers to account. Similarly, opening the doors of

---

[2] Opposition of Jane Doe 1, *USVI*, ECF No. 353 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)).

[3] *See, e.g.*, Jodi Kantor, Mike McIntire & Vanessa Friedman, *Jeffrey Epstein Was a Sex Offender. The Powerful Welcomed Him Anyway.*, N.Y. Times (July 13, 2019), https://nyti.ms/3ODi6Ht.

America's courthouses was never about catering to the public's morbid curiosity. Transparency both advances the search for truth by holding parties and witnesses accountable to the check of public scrutiny and provides assurance to the public that justice is being done. "[M]istakes of fact in civil litigation may inflict costs upon others than the plaintiff and defendant. Facilitation of the trial factfinding process, therefore, is of concern to the public as well as to the parties." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 596 (1980) (Stevens, J., concurring).

And when justice is being sought in the aftermath of a crime, access is even more important for society. "When a shocking crime occurs, a community reaction of outrage and public protest often follows. Thereafter the open processes of justice serve an important prophylactic purpose, providing an outlet for community concern, hostility, and emotion." *Id.* at 571 (cleaned up). Secrecy, not transparency, is the morbidity we need to guard against, and that explains why judicial documents — including those here — are presumptively open and the press free to broadly report on what goes on in courts.

We thank the Court for its continued consideration of this matter.

Respectfully submitted,

*David McCraw*

David E. McCraw